**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | No. 12 CV 004428 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Honorable Joan B. Gottschall |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION IN *LIMINE* NO. 2 TO BAR CERTAIN TESTIMONY OF
PLAINTIFF'S EXPERT MICHAEL BRASFIELD**

Defendants Reynaldo Guevara, Steve Gawrys, Daniel Noon, Joseph Fallon, Joseph Sparks, Paul Zacharias, John Guzman, Gillian McLaughlin, the Estate of John Leonard, Edward Mingey, Russell Weingart and Rocco Rinaldi ("Defendant Officers"), by their respective attorneys, move this Honorable Court to bar certain testimony of Michael Brasfield that is speculative, conclusory, beyond his expertise, and will not assist the jury

## I.     INTRODUCTION

Plaintiff's expert Michael Brasfield is a police procedures expert with experience and background in police practices. However, he has not limited his opinions to areas within his expertise. Instead he opines about all aspects of this case including: who to believe, interpretation of witnesses' testimony, medical assessments, eyewitness assessments, application of the law, Defendant Officers' states of mind, factual and legal conclusions, and opinions outside his alleged expertise. Such opinions by Brasfield are not proper and, as they have in other cases, must be barred because they do not meet the *Daubert* requirements as they are not based on specialized knowledge and will not aid the jury.

1

Prior to filing this motion and in compliance with the Court's standing orders on Motions *in limine*, counsel for Defendant Officers conferred with counsel for Plaintiff on May 14, 2018. In that discussion counsel for Plaintiff did not agree to this motion *in limine*.

## II.     LAW

Expert witnesses' opinions must be within the scope of the witness's expertise, must aid the jury's understanding of the case and must not usurp the role of the jury to determine the facts. *Mohamed v. Murphy*, 2002 WL 34558181, at * 2 (N.D. Ill. Feb. 20, 2002). Expert testimony must be relevant to be admissible. *Daubert v. Merrill Dow Pharm, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786 (1993). In addition, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Lawson v. Trowbridge,* 153 F.3d 368, 375 (7th Cir.1998). For an expert's testimony to be helpful, it must concern a matter beyond the understanding of the average person. *See United States v. Allen,* 390 F.3d 944, 949– 950 (7th Cir. 2004). An expert's opinion has significance proportional to the sources on which it is founded. *Huey v. United Parcel Service, Inc.,* 165 F.3d 1084, 1087 (7th Cir.1999). Accordingly, an expert's conclusory opinion provides nothing of value to the judicial process. *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). It is a fundamental premise of our trial system that "determining the weight and credibility of witness testimony ... 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' " *United States v. Scheffer,* 523 U.S. 303, 313, 118 S.Ct. 1261 (1998).

### III. ARGUMENT

Brasfield's Report and Deposition are replete with improper expert testimony that should be barred. He opines about the Defendants' states of mind; makes inferences using no expert analysis or experience ("non-expert inferences") and then passes his inferences off as expert opinions; exceeds his competence; speculates about facts without any expert basis; makes factual and legal conclusions and opinions; and invades the province of the jury by passing off improper conclusions of fact as expert opinion. Brasfield epitomizes the concerns of Judge Posner that, "the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit," and "there is hardly anything, not palpably absurd on its face that cannot now be proved by some so-called experts." *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,* 797 F.2d 370, 382 (7th Cir.1986). Brasfield is not new to expert work and, as discussed below, has had his opinions barred in prior cases for over-reaching. The Court as the gatekeeper should insist on reliability to ensure the integrity of the judicial process. *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir.1989). Brasfield's opinions set forth below do not meet *Daubert*'s requirements and must be barred.

**A. The Court Should Bar Brasfield From Opining about Any Defendant's State of Mind or that any Defendant Acted "Intentionally" or "Willfully" Because He Can Not Read Minds And Cannot Provide Legal Opinions**

Brasfield should be barred from testifying about the state of mind of the Defendant officers and to the legal conclusion that a defendant was deliberately indifferent or acted intentionally. *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 334-5 (N.D. Ill. 2008). Such testimony is not helpful to the jury and invades the province of the jury. Commentary regarding a defendant's state of mind is not appropriate because it would effectively allow the plaintiff's

3

expert:

> to substitute his inferences for those that the trier of fact can and should draw on its own. This is not permitted. Indeed, it is well established that "'testimony that does little more than tell the jury what result to reach' is unhelpful and thus inadmissible, and testimony regarding intent --essentially an inference from other facts – 'is even more likely to be unhelpful to the trier of fact.'"

*Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949-950 (N.D. Ill. 2010)(quoting *Dahlin v. Evangelical Child & Family Agency*, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002)(quoting *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997). "'[J]udges have no way of crawling into peoples' minds," and neither do experts." *Duran v. Davis*, 277 F.R.D. 362, 369 (N.D. Ill. 2011)(quoting Posner, Overcoming Law, 276 (1995)).

In his report, Brasfield opines that "defendants… intentionally and willfully manufactured and falsified evidence, manipulated witnesses, and withheld critically relevant information from the defendant and his attorneys." Brasfield Report, pg.1, Ex. A (hereinafter "Rpt."). Brasfield also opines: "In spite of numerous intentional malicious acts by Guevara and others of omission and/or commission; witness manipulation; false testimony and reporting; withholding of evidence; etc., murder charges were successfully filed against Jacques Rivera." *Id*., pg. 13. Brasfield also opines: "This so-called "investigation" into the homicide of Felix Valentin by the Chicago Police Department, Reynaldo Guevara, and various police officers and supervisors employed by the City was 1) intentionally and blatantly calculated to wrongfully focus on, arrest, charge and convict Jacques Rivera…" *Id*. pg. 14. And he then concludes that the defendant officers' "liabilities" include what Brasfield opines is "intentional and willful actions" and "intentional and willful omissions." *Id*.

Putting aside that Brasfield's hyperbole has no place in an expert's opinion,[1] Brasfield merely "dr[ew] inferences from the evidence," which the jury could draw equally well, so this testimony is of no help to the jury and should be barred. *Dahlin*, 2002 WL 31834881, at *3. Brasfield has been barred before for such opinions, which also constitute impermissible attempts to pass off legal conclusions as expert opinion. *See Estate of W. Scott Creach v. Spokane Cty.*, 2013 WL 12177097, at *2 (E.D. Wash. May 1, 2013)("[n]or will he be permitted to testify on the subjective state of mind of Deputy Hirzel, an area in which Mr. Brasfield would have no personal or expert knowledge"); *Thoma v. City of Spokane*, 2014 WL 5781718, at *5 (E.D. Wash. Mar. 19, 2014) (barring Brasfield). Accordingly, Brasfield's legal opinions and opinions on Defendant officers' states of mind must be barred here as well.

### B. The Court Should Bar Brasfield's "Opinion" that "Defendants" Suppressed and Manipulated Lopez into Picking Plaintiff at the September 15, 1988 Lineup Because His Inferences Are Not Proper Opinions, He Opines About Defendants' States of Mind and Lacks Foundation

Brasfield should be barred from testifying that "Defendants" suppressed information and manipulated Lopez during the September 15, 1988 lineup. In his report, Brasfield opines:

> "According to Lopez, at the 9/15/1988 physical lineup, he (Lopez) stated that Mr. Rivera was not the person who committed the shooting. Rather than accepting his statement, defendants had Lopez proceed with the identification of Rivera and then suppressed the true circumstances of the identification. In addition, defendants improperly suggested to Lopez that he should continue with his identification of a particular participant (Mr. Rivera). This is an obvious and knowing suppression of highly exculpatory evidence, and it represents a blatant manipulation of a child witness (see below). In addition, it runs contrary to accepted police practices, established in 1988, which required investigators not to suggest to witnesses anything about who should or should not be selected during a lineup procedure."

Rpt., pg.19.

---

[1] *Deltak, Inc. v. Advanced Sys., Inc.*, 574 F. Supp. 400, 406 (N.D. Ill. 1983), *vacated on other grounds*, 767 F.2d 357 (7th Cir. 1985) (hyperbole from an expert has "disturbing implications for a legal system that admits certain testimony only because it is given by experts.").

5

This opinion should be barred for multiple reasons. Initially, Brasfield takes great liberties with characterizing Lopez's actual testimony. What precisely was and was not said by Lopez about the "wrong guy" statement, and to whom, is important; Brasfield's fast and loose mischaracterization of what Lopez said to "defendants" is reckless at best, pure speculation at worse, which Brasfield is no more qualified to engage in than the jury. Brasfield also substitutes "his inferences for those [of] the trier of fact" about what the evidence shows, again with no more expertise than the jury. *Hershey*, 697 F. Supp. 2d at 949-950. Brasfield also again inappropriately opines about the state of mind of "defendants." *Sommerfield*, 254 F.R.D. at 334-5. And, his opinion that the actions he describes "runs contrary to accepted police practices, established in 1988" should be barred because it lacks the sufficient foundation required of experts to opine. *Duran*, 277 F.R.D. at 372 (conclusions without any basis or reasonable analysis are of no assistance to a jury). Nowhere in his report or deposition does Brasfield identify any such practices established in 1988, and instead improperly relies (Brasfield Dep., pg. 18-21) on a general references to his 5-page generic bibliography as a basis for his opinion. *Id.*, 277 F.R.D. at 372 (expert did not provide any analysis for his conclusion, instead stating the opinion was based on "relying on the totality of [his] training, education, and experience.").

C. **The Court Should Bar Brasfield From Opining that Lopez Viewed Two Lineups Because Experts Should Not Make Credibility Determinations or Inferences Not Based on Expert Analysis**

Brasfield should be barred from opining that Lopez viewed two lineups, because this conclusion is not based on any special education, training, or experience. A court should not permit an expert to give testimony which could reasonably be understood as validating one party's facts as opposed to the other party's facts. *Mohamed*, 2002 WL 34558181, at * 1.

The parties hotly dispute whether Orlando Lopez actually viewed two physical lineups in the Valentin investigation. Brasfield has no personal knowledge about this question, so any testimony by him on whether there were two lineup is simply Brasfield's non-expert inferences and assessment of the credibility of the witnesses, which should be barred. *Id.*. Certainly, Brasfield should not be allowed to offer the bottom line opinion that "there is strong evidence supporting Lopez and Rivera's testimony that there were 2 physical lineups." Rpt., pg. 12. The jury does not need Brasfield to tell them what the evidence does or does not support, or how "strong" the evidence – absent any expert analysis. Brasfield's opinion simply tells the jury who to believe substituting his inference for the jury to consider. *Hershey*, 697 F. Supp. 2d at 949-950.

Brasfield's opinion on the "two lineup" issue does not require expertise, is unhelpful to a jury, and is far more prejudicial than probative because he seeks to imbue a non-expert opinion with the cloak of expertise. Accordingly, Brasfield's opinion that Lopez viewed two lineups should be barred.

D. **The Court Should Bar Brasfield From Opining About Whether to Draw an Adverse Inference from the Invocation of the 5th Amendment Because An Expert Should Not Testify about the Law**

Brasfield should be barred from testifying about the law relating to the Fifth Amendment, and about the inferences Brasfield believes should be taken from the invocation of the Fifth Amendment, because such "opinions" usurp the role of the court and the jury. *Sommerfield*, 254 FRD at 334-5; *Dahlin*, 2002 WL 31834881, at *3. Brasfield opines:

> It is a duty of a police officer to testify truthfully about investigations in which he is and was involved and a refusal to adhere faithfully to that duty is a departure from accepted police practices. I infer from Guevara's silence that there are no ready explanations for the serious holes in the Valentin homicide investigative, and that if Guevara were to testify, his statements would not exonerate him.

7

Rpt., pg. 15. Brasfield then testified in his deposition that he "would opine that there are – there are negative connotations to Mr. Guevara's not answering what he did during the course of an investigation." Brasfield Dep., pg. 295, Ex. B.

This opinion should be barred because, again, the jury does not need Brasfield to decide whether or not to take an adverse inference from any witness's invocation of their Fifth Amendment rights. It is inappropriate for Brasfield to characterize the law for the jury: *Duran*, 277 F.R.D. at 371.

> Expert testimony that usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law ... by definition does not aid the jury in making a decision; rather it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.

*Duran,* 277 F.R.D. at 371. It will be for this Court, and not Brasfield, to instruct the jury about whether and to what extent they may take an adverse inference form the invocation of the Fifth Amendment. Moreover, Brasfield offers no special expertise in what inferences to draw, and to the extent he purports to opine about what "the duty of a police officer is [in testifying]", that opinion also does not require any expertise because the duty of *any* witness is to testify truthfully. Accordingly, Brasfield's opinions about what inferences he would draw, and what inferences the jury should draw, must be barred.

   E. **The Court Should Bar Brasfield From Opining that Any of the Defendants Conducted the "First Lineup" Because an Expert Should Not Turn Non-Expert Inferences into Opinions**

Brasfield should also be barred from expressing an opinion that any defendant conducted the alleged first lineup because his inferences should not replace the jury's. *Hershey*, 697 F. Supp. 2d at 949-950. Orlando Lopez has testified that "I just don't remember the detective that was in

there" for the alleged first lineup; he just remembers "detectives" and the father of Israel and Felix Valentin being there. Lopez Dep., pg. 81, Ex. C. Thus, Brasfield has no expert basis whatsoever - factual or experiential - to opine that any of the defendants were responsible for conducting (much less suppressing) such a lineup. *Duran*, 277 F.R.D. at 370 (expert opinion barred because the expert "points to no proper scientific or experience-based method by which he has arrived at his conclusion.") Brasfield is simply testifying as an advocate for Plaintiff and improperly weighing factual disputes that the jury needs no assistance in resolving - "an expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *Duran*, 277 F.R.D. at 370 (quoting *United States v. Farrell,* 563 F.3d 364, 377 (8th Cir.2009)). Accordingly, Brasfield should be barred from usurping the jury's role by opining that any defendant conducted the alleged first lineup.

## F. The Court Should Bar Brasfield's "Opinion" that Lopez Picked a Filler at the "First Lineup" Because that Opinion is Based on a Non-Expert Inference

For the same reasons Brasfield should be barred from expressing any opinions about whether a "first lineup" occurred, he also should be barred from expressing any opinion that Lopez did not pick Plaintiff at such a lineup. Brasfield's inferences, absent any expert analysis, of what the evidence shows have no value to the jury. *Dahlin*, 2002 WL 31834881, at *3. However, Brasfield opines:

> Evidence discussed above supports the conclusion that an initial physical lineup procedure was performed on 8/31/1988 or 9/1/1988 that included Orlando Lopez as the witness and Mr. Rivera as a suspect, during which Mr. Rivera was not identified and after which Mr. Rivera was released from custody.
>
> A failure by the sole eyewitness Lopez to make an identification of Mr. Rivera is evidence that he did not commit the crime.

Rpt., pg. 16.

9

These opinions are speculative, and are based on Brasfield's interpretation of evidence which is not based on any specialized knowledge or expertise but instead assesses witness credibility, which is not allowed. *Mohamed*, 2002 WL 34558181, at * 1. Lopez has steadfastly and adamantly testified that he picked Plaintiff at this alleged lineup. Thus, these opinions should be barred as speculative, unsupported by the evidence, unaided by specialized knowledge, and unhelpful to the jury by substituting Brasfield's inferences and credibility determinations.

**G. The Court Should Bar Brasfield From Opining about "Defendants" Generally or that Any Individual Defendant Other Than Leonard, McLaughlin, Gawrys or Guevara Engaged in Any Misconduct Because He Has No Specific Opinions About Any Other Defendants**

Brasfield should be barred from generally referring to "defendants" as that does not aid the jury to determine if any individual defendant violated the Plaintiff's rights. Moreover, such general opinions are simply conclusions that fail to provide any basis or reasonable analysis. *Minasian,* 109 F.3d at 1216.

Throughout his report and deposition testimony, Brasfield makes numerous references to what "defendants" did or did not do. For instance: "Jacques Rivera spent more than 20 years in a maximum security prison as the result of the actions of the defendants." Rpt., pg. 1. Furthermore, Brasfield makes no more than passing mention in either his report or his deposition of any Individual Defendants besides Leonard, McLaughlin, Gawrys and Guevara, and offers no opinions of any of the other Defendants' alleged misconduct.

Liability for individual defendants under Section 1983 is premised on personal responsibility and involvement. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Similarly, under the Illinois Tort immunity Act, individual defendants are not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Brasfield offers no

opinions about personal misconduct by any Individual Defendant except Leonard, McLaughlin, Gawrys, and Guevara.

An expert's report must contain "a complete statement of all opinions to be expressed and the basis and reasons therefore," and "the data or other information considered by the witness informing them." *Fed. R. Civ. P.* 26(a)(2)(B)(i),(ii); *see also Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007). The failure of a plaintiff to comply with Rule 26(a)(2)'s requirements to disclose a complete statement of all opinions results in precluding the plaintiff from introducing those opinions as "evidence on a motion, at a hearing, or at a trial." *Fed. R. Civ. P.* 37(c)(1); *Jenkins*, 487 F.3d at 488. Brasfield's report and deposition are devoid of any specific opinions against Defendant Officers Noon, Fallon, Sparks, Zacharias, Guzman, Mingey, Weingart and Rinaldi. Accordingly, Brasfield should not be able to opine about those defendants at trial, or attempt to bootstrap them by generally referring to the acts or omissions of "defendants."

### H. The Court Should Bar Brasfield From Opining About the Quality of the Valentin "Homicide" Investigation Except As to Those Alleged Acts or Omissions that Violate the Constitution and Are Causally Connected to Plaintiff's Injuries

Throughout his report, Brasfield opines about the Valentin "homicide investigation," even though he admits it was not a homicide investigation until Valentin died on September 14, 1988. Brasfield Dep., pg. 287-288. Brasfield also opines that the Valentin investigation was not of a good quality. Rpt., pg. 13-23. But while the Constitution requires police officers refrain from certain proscribed actions, Plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction." *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015).[2] The Seventh Circuit "has consistently held that 42 U.S. C. §

---

[2] Also, the Illinois Tort Immunity Act absolutely immunizes police from "failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102

1983 protects plaintiffs from constitutional violations." *See e.g., Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (the violation of police regulations or even a state law "is completely immaterial as to the question of whether a violation of the Federal constitution has been established.").

Accordingly, any criticisms of the Defendant Officers that do not rise to the level of a constitutional violation and/or do not have evidence causally connecting the criticism to the Plaintiff's alleged injuries should be barred. Such opinions are irrelevant and will confuse the jury, and do not meet the requirement for expert testimony under Federal Rule of Evidence 702 that it be helpful to the jury. *Duran*, 277 F.R.D. at 368. In addition, any such opinions have little probative value that is substantially outweighed by the prejudicial effect. FED. R. EVID. 403.

### I. The Court Should Bar Brasfield's "Opinion" that Plaintiff Was Convicted Based Solely on Guevara's Testimony in the Criminal Trial Because It Is Based On Unfounded Speculation – Not Expert Analysis

Brasfield should be barred from speculating about why a judge determined Plaintiff was guilty more than 25 years ago. Under the application of *Daubert*, "the district court must determine whether the testimony has been subjected to the scientific method; in other words, it must exclude testimony based on 'subjective belief or unsupported speculation.'" *Korte v. Exxonmobil Coal USA, Inc.*, 164 Fed. Appx. 553, 556 (7th Cir. 2006)(quoting *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995).

In his report, Brasfield opines: "Rivera was convicted in July 1990 for the murder of Felix Valentin, based on the testimony and in-court identification of then 13-year-old juvenile, Orlando Lopez, and the testimony of Reynaldo Guevara." Rpt., pg. 13. This opinion requires no specialized expertise held by Brasfield, and rests on pure speculation. Brasfield does not and

cannot point to any testimony or statements that Judge Close relied on Guevara's testimony in finding Plaintiff guilty. Opinions not based on any specific methodology applied to the facts is unsupported speculation and properly excluded. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 815-816 (7th Cir. 2004)

Brasfield's opinion that Plaintiff was convicted based on Guevara's testimony is pure speculation. Guevara only testified briefly (4 pages in the transcript) in rebuttal, and it concerned only a few discrete topics, on one of which he offered exculpatory testimony (that he had not seen Plaintiff playing baseball at Humboldt Park). Guevara 4/16/90 testimony, pg. JR 1052-1056, Ex. D. Brasfield's opinion is completely unfounded and based on his entirely incorrect impression that Guevara testified about "his work on the case and the identification and the process that he went through with Orlando Lopez and with the other efforts…" and that "his role in the trial" was as the "lead representative" of the Chicago Police Department. Brasfield Dep., pg. 283-85. Accordingly, Brasfield should be barred from speculating about why Plaintiff was found guilty.

**J. The Court Should Bar Brasfield From Opining About "Eyewitness Identification" Issues Because It Is Irrelevant And Beyond His Expertise**

The purpose of experts is to aid the jury to understand an area beyond the jury's expertise. *See United States v. Allen,* 390 F.3d 944, 949– 950 (7th Cir.2004). However, expert testimony should be excluded when it is beyond the expert's expertise. *Duran*, 277 F.R.D. at 372; *Mohamed*, 2002 WL 34558181, at * 2.

Brasfield provides several opinions about the "difficulties" of a "single eyewitness" murder case due to issues relating to eyewitness misidentifications; for instance, he opines that:

> [T]he presence of a weapon during an incident can draw visual attention away from other things, such as the perpetrator's face, and thus affect an eyewitness's

> ability to identify the holder of the weapon.
>
> This is further aggravated when the lineup does not contain the offender. In that situation young children and the elderly commit mistaken identifications at a rate higher than young adults.

Rpt., pg. 13-14. Brasfield further opines that "Lopez was 12 years old at the time of the investigation and 13 years old at the time of trial, making him less reliable, and also susceptible to manipulation and suggestion. As discussed, mistaken identifications occur at a higher rate with juvenile witnesses." *Id.* at 21.

At his deposition, Brasfield admitted he was not retained as an expert witness about eyewitness identification and reliability; he did not intend to offer any expert opinions on those topics, and; he was "not purporting to be an eyewitness identification expert." Brasfield Dep., pg. 291 and 312-13. Accordingly, Brasfield's opinions on eyewitness testimony should be barred as beyond his competence.

### K. The Court Should Bar Brasfield From Offering Any Opinions About the Medical Condition of Felix Valentin Because Such Opinions Are Beyond His Competence and are Irrelevant

Brasfield should be barred from providing opinions about medical conditions because he has no medical education or training. Police practices experts, absent some medical training, should not speculate about medical conditions that are beyond their area of expertise. *Mohamed*, 2002 WL 34558181, at * 1. An expert who has no training or experience in medicine is not qualified to offer an opinion on the subject or anything else that is dependent on that expertise. *Ammons,* 368 F.3d at 816 (an expert must be qualified in the relevant field).

Brasfield's report details medical assessments that are beyond his competence:

The failure to contemporaneously document this purported identification and the physical impossibility of such an identification being made by a victim who on 9/10/1988 was unresponsive, could not breathe, had unreactive pupils, was

14

paralyzed with medication, and who could not have made an identification according to the doctors treating him, demonstrates that the information about an identification of Mr. Rivera by Valentin is false.

Rpt., pg. 21. Brasfield also opines that Valentin was an "unresponsive witness" (*Id*., at 19) and testified that Valentin was at "death's door for a 12-day period" in the hospital. Brasfield Dep., pg. 49. Brasfield also admitted: "I did not review the medical records, and I don't have the qualifications to opine on his medical condition." *Id*., pg. 283.

Brasfield's own admission of his lack of qualifications belies his medical opinion so his medical opinions should be barred. *Duran*, 277 F.R.D. at 372. Additionally, Felix Valentin's medical condition on, about or after September 10, 1988 is irrelevant in light of this Court's summary judgment ruling. *See,* Defendants' Motion in Limine No. 9.

**L. The Court Should Bar Brasfield From Opining That Any Defendant Improperly Dealt With a "Juvenile Witness" and that Reliance on a Single Eye Witness Was Inappropriate Because It Is Beyond His Expertise and Unsupported by Expert Analysis**

The Court should bar Brasfield from providing any opinion that any Defendant Officer's interactions with Orlando Lopez were improper because it lacks any expert value. Similarly, Brasfield's opinion that relying on a single juvenile witness in a murder case is inappropriate is beyond his competence because he is not a lawyer. Brasfield opines:

> Improper use, interaction, and influence of juvenile witness. The sole eyewitness and only evidence connecting Mr. Rivera to the murder of Felix Valentin was 12-13 year old Orlando Lopez. As discussed, relying on a single child eyewitness in support of a homicide charge, under the circumstances presented here, is unprofessional absent corroborating evidence. Established police practices dictate that juvenile witnesses should be treated with extreme care. There is no evidence that such steps were undertaken in the Valentin investigation regarding Lopez.

Rpt., pg. 21.

This rambling opinion should be barred for several reasons. First, Brasfield never

15

identifies the "established police practices" on which he relies for the opinion. *Duran*, 277 F.R.D. at 372 (conclusions without any basis or reasonable analysis are of no assistance to a jury). Second, he does not identify what he means by "extreme care." Third, he claims that relying on a juvenile witness is "unprofessional" absent "corroborating evidence," and states that no "such steps were undertaken." Apart from the fact that this opinion is factually wrong,[3] Brasfield is not qualified to opine on what is proper evidence in a legal proceeding; further, Brasfield takes no account of the fact that it is prosecutors, not police, who decide whether to prosecute a person based on the evidence they have. Accordingly, Brasfield should be barred from opining that any defendant "improperly" dealt with a juvenile witness, and that reliance on a single eyewitness was inappropriate.

### M. The Court Should Bar Brasfield's "opinions" that Gang Crime Specialists Ran the Valentin Investigation Because There Is No Foundation for this Speculative Opinion

Brasfield should be barred from opining that gang crime specialists ran the Valentin investigation because he has no foundation for such an opinion as he has failed to produce the alleged documents which form the basis of his opinion. *Duran*, 277 F.R.D. at 370. Instead he again attempts to improperly opine on his interpretation of the facts. *Hershey*, 697 F. Supp. 2d 949-950.

Brasfield testified: "that oftentimes a homicide investigation would be, for all intents and purposes, conducted by gang specialists" and that "basically a homicide detective would technically be the person in charge of the investigation, but it was being run by people from an entirely different division" and that detectives "would have gang specialists basically run the operation." Brasfield Dep., pg. 51-52, Ex. B. When asked the basis for that opinion, Brasfield

---

[3] Two Felony Review Assistant State's Attorneys were called to interview Lopez before Plaintiff was charged with murder. ASA Rosner Dep., pg. 14-15, Ex. E.

stated "from depositions." When asked which depositions, he stated "I cannot point to a specific one, but I would be more than happy to cite a Bates number at a later time." But, Brasfield has never provided cites to the alleged material forming the basis for his opinion. Accordingly, Brasfield's opinion lacks any foundation, will not assist the jury, and should be barred.

### N. The Court Should Bar Brasfield From Opining That Defendant Guevara Was the "Hispanic Detective" that Lopez Testified About Because It Usurps the Role of the Jury

The Court should bar Brasfield from opining that Guevara was the Hispanic detective Lopez described was present when Lopez said "wrong guy." Expert testimony is improper if it usurps the jury's function. *Wells v. City of Chicago*, 2012 WL 116040, at *10 (N.D. Ill. Jan. 16, 2012). Testimony that simply tells the jury what facts to believe does not assist the jury in its fact finding role. *Dahlin*, 2002 WL 31834881, at *3, citing *Farrell,* 563 F.3d at 377–78 (expert improperly commented on strength of government case, credibility of witnesses, and fact finding role of jury).

Lopez testified that he said "wrong guy" to a male police officer that he has subsequently described as a Hispanic detective with a "fro," glasses and moustache. Lopez Dep., pg. 74-75 & 93, Ex. C. Lopez has never identified this person. Brasfield has never met Guevara (Brasfield Dep. at 272-78, Ex B), so he has no personal knowledge upon which to base his opinion that the person was Guevara. Instead, being an advocate for Plaintiff, he usurps the role of the jury by connecting the dots in favor of Plaintiff, even though Brasfield has no more expertise in this respect than the jury would. *Duran*, 277 F.R.D. at 370 (quoting *Farrell,* 563 F.3d at 377). Accordingly, Brasfield should be barred from opining that the person Lopez was describing was Guevara.

## O. The Court Should Bar Brasfield From Offering Any "Opinions" About the "Liability" of Any Defendant Because It Is an Improper Legal Conclusion and Usurps the Role of the Jury

Brasfield should be barred from opining that any Defendant Officer is "liable" because this legal conclusion usurps the role of the jury. Brasfield's attempt to offer legal conclusions has been barred in more than one case. *Estate of W. Scott Creach*, 2013 WL 12177097, at *2; *Thoma*, 2014 WL 5781718, at *5.

Brasfield's report asserts the Defendant' "liabilities in this investigation include, but are not limited to" nine bullet points of subject matter, including what Brasfield opines is "intentional and willful actions" and "intentional and willful omissions." Rpt., pg. 14. Whether any Defendant is or is not "liable" is of course for the jury to decide; Brasfield has no special expertise upon which to offer an opinion on that ultimate issue, and the jury does not need Brasfield to make that determination. Accordingly, Brasfield should be barred from testifying that any Defendant officer is "liable."

## III. CONCLUSION

WHEREFORE, Defendant Officers request that the Court enter an Order *in limine* bar certain improper testimony of Brasfield that is beyond his expertise and will not assist the jury.

| | |
|---|---|
| Dated: May 15, 2018 | Respectfully submitted, |
| | |
| /s/Thomas M. Leinenweber<br>THOMAS M. LEINENWEBER<br>*One of the Attorneys for Reynaldo Guevara* | /s/ Jeffrey N. Given<br>JEFFREY N. GIVEN<br>*One of the Attorneys for Individual Defendants* |
| | |
| Thomas M. Leinenweber<br>James V. Daffada<br>Kevin E. Zibolski<br>Leinenweber Baroni & Daffada, LLC<br>120 N. LaSalle Street, Suite 2000<br>Chicago, IL 60602<br>Tel:(312)663-3003<br>thomas@ilesq.com<br>jim@ilesq.com<br>kevin@ilesq.com | James G. Sotos<br>Jeffrey N. Given<br>Caroline P. Golden<br>Jeffrey R. Kivetz<br>Joseph M. Polick<br>David A. Brueggen<br>The Sotos Law Firm, P.C.<br>550 E. Devon Avenue, Suite 150<br>Itasca, IL 60143<br>Tel: (630)735-3300<br>jgiven@jsotoslaw.com |

## CERTIFICATE OF SERVICE

       I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on May 15, 2018, I electronically filed the foregoing City **Defendants' Motion in *Limine* No. 2 to Bar Certain Testimony of Plaintiff's Expert Michael Brasfield** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants below.

**Attorneys for Plaintiff**
Arthur R. Loevy
Jonathan I. Loevy
Elizabeth N. Mazur
Russel Ainsworth
Michael I. Kanovitz
Steven E. Art
Anad Swaminathan
Rachel Brady
311 N. Aberdeen
Chicago, IL 60607
(312)243-5900
(312) 243-5902 (Fax)
loevylaw@loevy.com
jon@loevy.com
Elizabethm@loevy.com
russell@loevy.com
mike@loevy.com
steve@loevy.com
annad@loevy.com
Brady@loevy.com

J. Samuel Tenenbaum
Bluhm Legal Clinic
375 East Chicago Avenue
Chicago, IL 60611
(312)503-4808
s-tenenbaul@law.northwestern.edu

Locke E. Bowman, III
Alexa Van Brunt
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Aveneu
Chicago, IL 60611
(312)503-0844
(312)503-1272 (fax)
l-bowman@law.northwestern.edu
a-vanbrunt@law.northwestern.edu

**Attorneys for City of Chicago**
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60654
(312)494-1000
(312)494-1001(fax)
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com


**Attorneys for Reynaldo Guevara**
Thomas M. Leinenweber
James V. Daffada
Kevin E. Zibolski
Leinenweber Baroni & Daffada, LLC
120 N. La Salle Street, Suite 2000
(312)663-3003
thomas@ilesq.com
jim@ilesq.com
kevin@ilesq.com

                                   /s/ Jeffrey N. Given
                                   JEFFREY N. GIVEN, Attorney No. 6184989
                                   *One of the Attorneys for Individual Defendant*