```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
     JACQUES RIVERA,                      )   Docket No. 12 C 4428
 4                                        )
                            Plaintiff,    )
 5                                        )
                    vs.                   )
 6                                        )
     REYNALDO GUEVARA, et al.,            )   Chicago, Illinois
 7                                        )   May 15, 2018
                            Defendants.   )   10:00 o'clock a.m.
 8

 9      TRANSCRIPT OF PROCEEDINGS - MOTIONS AND PRETRIAL CONFERENCE
               BEFORE THE HONORABLE JOAN B. GOTTSCHALL
10

11   APPEARANCES:

12
     For the Plaintiff:       LOEVY & LOEVY
13                            BY:  MR. JONATHAN I. LOEVY
                                   MR. STEVEN E. ART
14                                 MR. ANAD SWAMINATHAN
                              311 N. Aberdeen Street, 3rd Floor
15                            Chicago, Illinois  60607

16
                              RODERICK MacARTHUR JUSTICE CENTER
17                            NORTHWESTERN UNIVERSITY SCHOOL OF LAW
                              BY:  MR. LOCKE E. BOWMAN, III
18                            375 E. Chicago Avenue
                              Chicago, Illinois  60611
19

20   For the Individual      THE SOTOS LAW FIRM
     Defendants:             BY:  MR. JEFFREY N. GIVEN
21                                 MR. JAMES G. SOTOS
                                   MS. CAROLINE P. GOLDEN
22                                 MR. JOSEPH POLICK
                                   MR. DAVID A. BRUEGGEN
23                            550 E. Devon Avenue, Suite 150
                              Itasca, Illinois  60143
24

25
```

```
1   APPEARANCES  (Continued):

2

3   For the Defendant        ROCK FUSCO & CONNELLY, LLC
    City of Chicago:         BY:  MS. EILEEN E. ROSEN
                                  MS. CATHERINE M. BARBER
4                                 MS. THERESA B. CARNEY
                             321 N. Clark St., Suite 2200
5                            Chicago, Illinois  60654

6
    For the Defendant        LEINENWEBER BARONI & DAFFADA, LLC
7   Guevara:                 BY:  MR. THOMAS E. LEINENWEBER
                             120 N. LaSalle St., Suite 2000
8                            Chicago, Illinois  60602

9
    Transcriber:             MS. JOENE HANHARDT
10                           Official Court Reporter
                             219 S. Dearborn Street, Suite 1744-A
11                           Chicago, Illinois  60604
                             (312) 435-6874
12
                    * * * * * * * * * * * * * * * * *
13

14                      PROCEEDINGS RECORDED BY
                          DIGITAL RECORDING
15                  TRANSCRIPT PRODUCED BY COMPUTER

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  12 C 4428, Rivera vs. Guevara.
 2              THE COURT:  Okay.  So, who is going to be speaking?
 3    Maybe we ought to deal with it that way.
 4              MR. LOEVY:  From the plaintiff's side, Jon Loevy.
 5              THE COURT:  Okay.
 6              MR. LOEVY:  And Locke Bowman.
 7              MR. BOWMAN:  Locke Bowman, also, on the plaintiff's
 8    side, Judge.
 9              THE COURT:  Okay.
10              MR. ART:  Should we go around?
11              MS. ROSEN:  Do you want the speakers?
12              THE COURT:  Well, I want speakers, because I want to
13    try to move this along.
14              MR. ART:  Then maybe the people at the table, then.
15              MR. LOEVY:  Yes.
16              MR. ART:  Steve Art for the plaintiff.
17              THE COURT:  A-r- --
18              MR. ART:  "T."
19              MR. SWAMINATHAN:  Anad Swaminathan for the plaintiff,
20    A-n-a-d.  The last name is Swaminathan.
21              MR. LEINENWEBER:  Good morning, Judge, Tom Leinenweber
22    on behalf of Rey Guevara.
23              THE COURT:  And you represent?  I am sorry.
24              MR. LEINENWEBER:  Rey Guevara.
25              THE COURT:  Okay.
```

```
 1              MR. POLICK:  Good morning, Judge, Joseph Polick --
 2   P-o-l-i-c-k -- on behalf of the defendant officers.
 3              MR. GIVEN:  Good morning, Judge, Jeff Given --
 4   G-i-v-e-n -- also for the officers.
 5              MS. ROSEN:  Good morning, Judge, Eileen Rosen on
 6   behalf of the City of Chicago.
 7              MR. SOTOS:  And Jim Sotos on behalf of the defendant
 8   officers.
 9              THE COURT:  Okay.
10              All right.  Let me begin with, I think, what could be
11   some very difficult news for you, which is I committed to this
12   as a two-week trial that could possibly go into the third week.
13   Now, you are telling me it is a four-week trial.
14              I cannot do a four-week trial.
15              MR. LOEVY:  Well, I don't think we're telling you
16   that.  I, too, believe it is a two-week trial.
17              THE COURT:  I got twenty trial days.  Somebody told me
18   twenty trial days.
19              MR. LOEVY:  That is their side.  We don't agree with
20   that estimate.
21              THE COURT:  Well, how long is your case going to take?
22   Because I am going to have to put significant time limits on
23   this or I cannot do it.  It is that simple.
24              I cannot do it for personal health reasons.  I, also,
25   have an out-of-town trip scheduled.  But, that, I could cancel.
```

1    But the health thing, I cannot.  I just cannot do it.

2            So, I want to do it, but I cannot do it if it is going

3    to go for four weeks.

4            MR. LOEVY:  The fact pattern is relatively simple.

5    There are a number of experts.

6            THE COURT:  Yes.

7            MR. LOEVY:  We don't want to, you know, prejudice

8    ourselves by saying we don't want you to let in some evidence,

9    like --

10           THE COURT:  Well, I am not going to make any decision

11   based on that.  I mean, that is so --

12           MR. LOEVY:  We are all experienced trial lawyers.  And

13   this case is no more complex than other trials that have taken

14   two to three weeks.  It is really a realistic estimate.

15           THE COURT:  So, what do I do?  I think I have to set

16   limits because if I get into Week 4, I am telling you I do not

17   think I can physically sustain it, based on my past experience.

18   I just cannot do it.

19           Three weeks is going to take everything out of me that

20   I have got to give you.  And I am happy to give you that, but I

21   cannot commit myself to something that is going to actually be

22   life and death for me.

23           So, I mean, do you know how long your case is going to

24   take?

25           I mean, it sort of depends on how much cross-

1   examination there is.  I understand that.

2          And I understand that we do not know how long jury

3   selection is going to take in this case.  And I assume it is

4   going to be difficult.

5          I am not going to count that against you.  I mean,

6   that was what I was assuming would go into the third week -- if

7   we counted jury selection taking longer than usual;

8   deliberations, who knows; and, maybe a little bit of Monell

9   spillover.

10          And the City, of course, wants to bifurcate.  And I

11   have not even gotten a response to that yet.

12          And, then, we are faced with telephone-book-size

13   motions in limine.  And with the amount of time I have, I

14   probably cannot commit to a careful decision on these motions.

15   It is going to be a rough and sloppy decision.  That may be the

16   best way to rule.  But, you know, the summary judgment took us

17   forever and it was not because we were not working on it.

18          So, you know, you have to give me some guidance

19   because I do not want to start this and, then, have to mistry

20   it because of my own issues.

21          MS. ROSEN:  Judge, from the defendants' perspective,

22   we are very concerned that we won't be done in three weeks,

23   based on the evidence that is in the Final Pretrial Order,

24   based on what our evidence is to rebut it and the number of

25   experts.

1      I mean, you know, perfect world, everything running

2 smoothly, everybody being as efficient as we can, maybe.  But,

3 I mean, I just did a Monell trial in the fall.  It was four

4 weeks, you know?  And in front of Judge Leinenweber.

5      So, I mean, they take a lot of time.

6      MR. LOEVY:  Our Monell claim and claims, actually, are

7 not that time-consuming.

8      THE COURT:  Some of it is gone.  And some of it may

9 not actually -- I mean, I am getting things in the motions in

10 limine that I did not fully know about it.  So, you know --

11      MR. LOEVY:  We don't want to encourage the Court to

12 think that if you grant our motion in limine, it will shrink.

13 I mean, our Monell claims are -- you know, they are --

14 primarily an expert.  You put an expert on for three hours and

15 that's our claim.

16      THE COURT:  So, what are we going to do if we end

17 up -- we get a jury.  Say it takes us, I do not know, a day-

18 and-a-half.  I do not know.  We get the jury.

19      You think it is going to take longer than that?

20      MR. LOEVY:  No, I think it's shorter.

21      THE COURT:  Okay.

22      And, then, after a week, we are nowhere near the end

23 of the plaintiff's case, what do I do then?

24      MR. LOEVY:  We, as the plaintiff, are amenable to a

25 schedule where we make a commitment of three weeks and that we

1     put limits on ourselves and on them, that ensures it can finish

2     in three weeks.  Because I think that is a comfortable

3     estimate.

4          THE COURT:  Well, if you can do that -- if you can

5     come up with something for me -- I am perfectly willing to go

6     along with that.  But that is it.  That is it.

7          And, as I say, I do not want to start a trial -- I

8     mean, it is a civil trial.  It is not the end of the world if

9     we cannot get to the end of it.  But that is not what I want to

10    do.

11         MR. BOWMAN:  Your Honor, what is the Court's practice

12    with respect to the scheduling of trial days?

13         THE COURT:  I -- okay.  So, I have got very strict

14    scheduling limits.  It is going to sound bad to you, but it is

15    actually not bad.  It has never caused any prolongation of any

16    trial that I have tried.

17         I start every morning at 9:30.  I take a maximum of an

18    hour for lunch -- I, actually, would like to take less, but I

19    have got to deal with the jury -- and, then, I stop at 4:00.

20    Okay?

21         So, it is possible that, because if we are talking

22    about two to three weeks, I probably have to give civil lawyers

23    some time to present motions.  And it might be that on Friday

24    mornings we start a little later, but not much later.

25         And if I have to, I will kind of deal with them at

1　lunch time, so we do not -- you know, maybe we will lose half

2　an hour on Friday morning.

3　　　　　MR. LOEVY:  What do you do with your call, your Honor?

4　Do you do it earlier or do you --

5　　　　　THE COURT:  I cancel it one day a week and put it one

6　day -- put it, I think, on Friday.

7　　　　　I do not know if I am going to want to do it earlier

8　or just do it at 9:30 and just make sure that -- all of the

9　statuses are going to be put over.  It is only going to be

10　motions.  We will rule on any motions we can in chambers.  And,

11　normally, it is pretty quick.

12　　　　　Now, if somebody comes in with some kind of a TRO or

13　something, I might have to do that earlier.  But my plan is --

14　and I have always been able to follow this -- that we are

15　starting, except for possibly Friday when it would be 10:00,

16　starting at 9:30 every morning.  And that lunch is going to be

17　kept very short.

18　　　　　As we get toward instructions, if we cannot get all of

19　that resolved ahead of time -- I would like to get a lot of it

20　resolved ahead of time -- we might have to schedule some lawyer

21　time when the jury does not come in.

22　　　　　But, you know, again, I cannot count that against you.

23　I mean, that is just something we may have to do or we may not.

24　　　　　So, let me tell you, also, that it is my practice,

25　after I go through the jury with that questionnaire that I have

1   online, to let the lawyers do the voir dire.

2           The way I do it is I have fourteen seats.  I give the

3   lawyers for each side one hour for those fourteen jurors.  And

4   we proceed that way.  We begin with the plaintiff and, then, we

5   go with the defendant.  On the next go-around, we will start

6   with the defendant and, then, go to the plaintiff.

7           I will rule on all of our cause challenges as we go

8   through the boxes of fourteen.

9           And once we have enough jurors to allow the full

10  exercise of peremptories for both sides, I have you exercise

11  your peremptories in writing simultaneously for both sides.

12          So, is that pretty clear to everybody how that works?

13          MR. LOEVY:  Yes.

14          THE COURT:  Okay.

15          Let's see.  What else on preliminaries do we need to

16  talk about?

17          MR. LOEVY:  Well, your Honor, there is a disagreement,

18  respectfully, between the parties about how many motions in

19  limine are going to be allowed.

20          THE COURT:  Yes, indeed.

21          And, I mean, it is almost -- as I say, I am faced with

22  an almost unmanageable task.  Some of them are pretty easy --

23  or they are going to be easy, because of the sloppy way time

24  forces me to rule on them -- but some of them are not easy and

25  cannot be ruled on that way.

1          How many does the plaintiff want in addition and how

2     many does the defense want in addition?

3          MR. LOEVY:  Well, from the plaintiff, your Honor, we

4     adhered to your order.

5          THE COURT:  Right, twelve.

6          MR. LOEVY:  -- twelve or less.

7          THE COURT:  Right.

8          MR. LOEVY:  And we have worked hard to get it to that.

9          THE COURT:  Yes.

10         MR. LOEVY:  And that is what we wanted.  We want you

11    to enforce that both ways.  That is our position.

12         MS. ROSEN:  On the City's side -- the City defendant,

13    itself -- filed ten, plus the motion to bifurcate.

14         MR. GIVEN:  Judge, on the officers' side, we had a

15    total of nineteen; but, I will be honest with you.  I thought,

16    when we would have our discussion yesterday, I counted eight

17    that I thought, frankly, there would be no genuine dispute on

18    and they would fall out.  And I was a little surprised that we

19    had to file them.

20         THE COURT:  Well, so what is the total that you are

21    trying to file?

22         MR. GIVEN:  We have a total of nineteen:  Eighteen for

23    the officers, in general, and one for the defendant Guevara.

24         MR. LOEVY:  That is actually twenty-eight, because the

25    City has ten.  So, the defendants want to file twenty-eight

 1    motions and we think that is unreasonable.

 2            THE COURT:  I think that is unreasonable, too.

 3            I mean, it would not be unreasonable if I had six

 4    months to do it, but I do not.  I have about two weeks to do

 5    it.

 6            MR. SOTOS:  Well, Judge, we are prepared to withdraw

 7    seven or eight of the nineteen that we filed, which will put

 8    individual defendants under your order requiring twelve.  But I

 9    don't see how we can do it for both the City and the individual

10    police officers.

11            THE COURT:  So, how many in total am I going to get,

12    if I assume you are two parties and you might have some

13    different interests?

14            It is Monell that causes the City to need these

15    additional ones, right?

16            MS. ROSEN:  Correct.

17            THE COURT:  And the individual officers do not have

18    any Monell issues.

19            So, what are we talking about?  I mean, can we get it

20    down -- you say the officers can deal with seven?

21            MR. SOTOS:  Well, I can get rid of seven.  So, we can

22    get it down to your order that requires no more than twelve.

23            THE COURT:  And, then, how many do I have to deal with

24    from the City, if you had your druthers?

25            MS. ROSEN:  We have ten, plus the motion to bifurcate,

1    which I don't view quite as a motion in limine.

2              MR. LOEVY:  Although, your Honor, some of those are

3    greater than fifteen pages on the officers' side.  So, we would

4    ask that they --

5              MR. GIVEN:  Only one.

6              MR. SOTOS:  Right.

7              MR. GIVEN:  By three pages.

8              THE COURT:  One by three pages?

9              MR. GIVEN:  Yes.

10             THE COURT:  And that is the only one in excess of --

11             MS. ROSEN:  And one for the City that is in excess.

12             THE COURT:  How many?

13             MS. ROSEN:  Twenty, instead of fifteen.

14             It has to do with one of the experts.

15             MR. GIVEN:  As does ours, your Honor.  It is expert-

16   based.

17             THE COURT:  Well, you know, what?  Why do you not go

18   ahead and file them and I will figure out what I am going to do

19   when I see how difficult or easy they are.

20             I mean, you know, I am faced with practical limits to

21   what I can do.  And if I get too many motions and, you know,

22   you are -- as I say, you are -- going to get dirty and sloppy

23   rulings because there is nothing else that I can do.

24             So, file them and we will see what we can do.

25             I appreciate what the plaintiffs have done, but I am

1    not going to take a whole lot of time.  I think the easiest

2    thing is to look at them and just deal with what I can deal

3    with.

4           All right.  What else do we have to do?

5           MS. ROSEN:  And, Judge, just to -- I don't know if you

6    have had -- how much of a chance you had to look through the

7    Pretrial Order; but, originally, the schedule that you had set

8    at the request of the plaintiff --

9           THE COURT:  I cannot -- I cannot -- allow you any

10   additional time.

11          MS. ROSEN:  No, no, no, Judge.  Actually, no.

12          THE COURT:  I cannot.

13          MS. ROSEN:  No, we are not asking for more time.  What

14   the parties agreed to do was, instead of doing responses and

15   replies, is just do responses.

16          THE COURT:  But let me tell you why this is a dumb

17   idea.  Because you are going to want to reply.  Okay?

18          And let me tell you how this works.  I go get these

19   motions.  I have already looked at a bunch of them.  Okay?  I

20   have a pretty good sense of how I am going to rule on them.  I

21   would like to see the response before I do something.  But I

22   would say probably in 70, 75 percent of the cases, I do not

23   need a reply.

24          But if I need a reply, and you have agreed not to do a

25   reply, I just -- I do not know, unless you trust each other

1  amazingly, that no issues are going to come up in the

2  responses.  I think you are agreeing to something that is going

3  to hurt you and going to hurt me.

4        I think we ought to adhere to the schedule that I

5  provided.

6        I am going to go ahead and try to rule on these on the

7  basis of responses; but, I can tell you, based on, you know, my

8  way too much experience doing this, that there is probably

9  going to be a good 30 percent of them where I need to see what

10  somebody says in reply.

11        So, you know, do what you want, but --

12        MR. LOEVY:  We will do it your way.  I mean, you're

13  the judge.

14        THE COURT:  I think -- yes, I think -- that is so.

15        And if I can get the rulings out to you, based on the

16  response, I am going to do that.  Okay?

17        Some of these I feel pretty sure that -- well, I guess

18  where I am now, and I can tell you what I think, if we have

19  time -- I have got a pretty good feeling on some of these, of

20  what one or two issues I am waiting for the response on, which

21  might determine the ruling.  But, you know, I have seen this

22  all before pretty much.  So, okay.

23        Let's see what else we have to do today.

24        The motion to bifurcate, I am crazy to see the

25  plaintiff's response to this because I certainly do not want to

1   try two cases dealing with all of the same overlap.  And that

2   is what really concerns me here.

3           I think in terms of the prejudice to the individual

4   officers, No. 1, I think by being very careful with warning

5   instructions, we can deal with that.

6           I -- in my experience, juries are pretty good about

7   figuring out who is to blame and who is not to blame.  So, I am

8   not really worried about that.

9           You plan to respond, I assume?

10          MR. LOEVY:  Well, if you think it is necessary.

11          To us, it is a no-brainer to not bifurcate.  We don't

12  need two trials.  They will talk about each --

13          THE COURT:  Well, I need you to tell me that --

14          MR. LOEVY:  All right.

15          THE COURT:  -- and explain it to me because, you know,

16  the summary judgment motion gave me a lot of information on a

17  lot of the evidence.  But this is bringing up bits of evidence

18  that I do not know very much about at this point.

19          MR. LOEVY:  I would be happy to respond, your Honor.

20          THE COURT:  Okay.

21          When can you respond?

22          MR. ART:  Wednesday.

23          MR. LOEVY:  Wednesday, Judge?

24          THE COURT:  That would be lovely.

25          And I will get -- I do not need a reply on that.

1    Okay?

2            So, Wednesday is -- let's see.  What day is it today?

3            Is that tomorrow?  Wednesday is tomorrow?

4            MR. ART:  It is the day after tomorrow.

5            MS. ROSEN:  No.

6            MR. GIVEN:  No.

7            THE COURT:  The day after?  No, it's tomorrow.

8            MR. GIVEN:  No, the day after is Thursday.

9            MS. ROSEN:  Today is Tuesday.

10           THE COURT:  No, it is tomorrow.

11           MR. SWAMINATHAN:  Today is the 15th.

12           MR. ART:  It is tomorrow, but I stand by Wednesday.

13           (Laughter.)

14           MR. LOEVY:  Then you have to say Thursday, is what --

15           (Laughter.)

16           THE COURT:  Okay.  The close of business, response to

17    the motion --

18           MR. ART:  Yes, your Honor.

19           THE COURT:  Okay.  Response to the motion to

20    bifurcate.  That is great.

21           And I will try -- I will almost certainly get you a

22    ruling on Thursday on that.  Okay?

23           Well, I want to tell you that I am really looking

24    forward to trying this case.  I think it is an interesting case

25    and I am really hopeful that we can get it trimmed down so that

1  I can do this.  I was quite devastated when I saw that twenty

2  trial day thing yesterday.

3          All right.  What else do we need to do, that you need

4  to know about my trial procedures?

5          MR. LOEVY:  It is probably premature to be talking

6  about jury instructions.  We can just do that later.

7          THE COURT:  Yes, I would like to do it as soon as

8  possible.

9          Now, one of the things -- let me ask you this.

10         Because I think, Eugene, you told me that the

11 numbering is a little off?

12         THE LAW CLERK:  Yes.

13         THE COURT:  They are kind of a mess.

14         What can you do to get them in some kind of form so we

15 can at least talk about them coherently?

16         MS. ROSEN:  We can -- we can -- go back and try and do

17 that.  I think there was a lot of jury instruction exchange at

18 very late hours of the day --

19         THE COURT:  Yes, it looks like it.

20         MS. ROSEN:  -- that caused the mis-numbering or

21 whatever other issues.

22         THE COURT:  And, then, let me ask you this.  You have

23 all been through this numerous times before this, right?  And

24 other judges have made decisions on similar instructions,

25 right?

1           MR. LOEVY:  Yes.

2           THE COURT:  So, what are we talking about, in terms of

3    how much agreement and how much disagreement we are going to

4    end up having to deal with on these instructions?

5           MR. LOEVY:  It shouldn't be that much disagreement.  I

6    mean, Judge Kennelly, in particular, has, like, chaired, I

7    think, the Committee for the Seventh Circuit --

8           THE COURT:  Right.

9           MR. LOEVY:  -- and he had done a number of wrongful

10   conviction cases.  So, that is where we take as our starting

11   point.

12          THE COURT:  Normally, in a civil case, I like to wait

13   until I have heard the opening statements to do the

14   instructions.  But I think in this case, given how often you

15   have all confronted these issues, we ought to be able to do it

16   before trial, so that you all know going into the trial pretty

17   much what you can argue -- what you can talk -- about in

18   opening statement and what the issues are going to be.  Then we

19   have got this out of the way and we do not have to provide time

20   for it as we are going on.

21          So, I guess my question for you is should we find some

22   time for a jury instruction conference sometime after the

23   motions in limine are briefed?

24          MR. LOEVY:  It makes sense.

25          MS. ROSEN:  Yes.

1          MR. LOEVY:  And, hopefully, the parties can do even

2     more work in bringing it closer together.

3          THE COURT:  I would like that because that is going to

4     really help us.  I mean, it is going to help you and it is

5     going to help me.

6          So, let me -- instead of taking time for this today,

7     let me -- have my Courtroom Deputy get in touch with you.

8          And what is the reply date, as it is now set, for the

9     motions in limine?

10          MR. ART:  The 22nd.

11          MS. ROSEN:  The 22nd.

12          THE COURT:  The 22nd.

13          So, maybe --

14          MR. LOEVY:  And the response date is, when?

15          MR. ART:  Friday.

16          MS. ROSEN:  This Friday.

17          MR. LOEVY:  Your Honor, we are at a disadvantage on

18     the response date because they filed so many more than us.

19          THE COURT:  Yes.

20          MR. LOEVY:  If we could do Monday for the responses,

21     that wouldn't affect their reply date.

22          Would that make sense to everybody?

23          THE COURT:  That is -- what is the date on Monday?

24          MR. ART:  The 21st.

25          MS. ROSEN:  The 21st.

 1             MR. LOEVY:  Instead of Friday.

 2             Oh, that is -- well, it's -- tight for the reply time.

 3             MS. ROSEN:  Then it is one day for the rely.

 4             THE COURT:  What if we -- what if we -- did the

 5   replies on the 23rd?

 6             MR. LOEVY:  That is fine.

 7             MS. ROSEN:  That is fine.

 8             THE COURT:  Okay.

 9             MR. ART:  Thank you, Judge.

10             MR. GIVEN:  Thank you, Judge.

11             THE COURT:  So, you can have until Monday.

12             And the replies on the 23rd.

13             It is just so hopeless, anyway.  I mean, I know that

14   is going to really mess us up.  We are not going to have the

15   weekend, but we will do our best.

16             Okay.  And, then, sometime after the 23rd, we will

17   find a few hours for an instruction conference.

18             MS. ROSEN:  Okay.

19             MR. ART:  Okay.

20             THE COURT:  Okay.  What else, in terms of the trial

21   procedures, do we need to talk about -- or scheduling or

22   anything else?

23             MR. GIVEN:  Judge, just one housekeeping matter with

24   regard to the Pretrial Order.

25             THE COURT:  Yes?

1          MR. GIVEN:  We were talking about all of the drafts

2     that were flying back and forth.

3          We realized yesterday -- and we told the plaintiff --

4     we inadvertently left out on our witness list three of our

5     experts.  They are listed in the Pretrial Order as experts.  We

6     just didn't -- we somehow forgot to put them in our "May Call."

7          MR. LOEVY:  We accept that that was a good faith

8     mistake, your Honor.

9          THE COURT:  Okay.

10          So, what do you want to do to fix that?

11          MR. GIVEN:  I think we can probably --

12          THE COURT:  File a supplement?

13          MR. GIVEN:  -- do a supplement.

14          MS. ROSEN:  Yes, we can supplement our "May Call" list

15     and not re-file the whole thing.

16          THE COURT:  Okay.

17          MS. ROSEN:  Yes.

18          THE COURT:  So, how many witnesses are on the

19     plaintiff's "Will Call" list and how many on the "May Call"

20     list?

21          MR. LOEVY:  We -- most of ours are not on the "May

22     Call" list.  I don't have that number here with me.

23          THE COURT:  All right.

24          I guess I am just still wondering if we are talking --

25     we can make this, realistically, in -- you can do it in a week,

 1    from the day you get the floor -- okay -- when you got the jury

 2    in the box.

 3              Can you do it in a week?

 4              MR. LOEVY:  I can't do it in a week, your Honor.  But

 5    when we -- the plaintiff -- the way we try these cases, we call

 6    a lot of their witnesses, too.  So, we generally -- and I have

 7    had -- been trying cases with everybody at this table just

 8    about, but we call the witnesses in our case.  And, then, they

 9    have to -- usually, they elect to do their exam at the time, as

10    opposed to doing it apart.  And we should maybe talk about

11    that, about --

12              THE COURT:  Well, I actually like that.  And I am

13    willing to give the jury an instruction that explains that to

14    them and how, you know, we are trying to save their time.

15              You know, another problem we are going to get into, if

16    this goes long -- well, it is just academic, because I cannot

17    do it -- but we are going to have trouble getting a jury, too,

18    when we are talking about June.

19              MS. ROSEN:  Judge, to answer your question, there is

20    91 total listed -- 91 witnesses total combined -- on the

21    plaintiff's --

22              THE COURT:  "Will" and "May"?

23              MS. ROSEN:  -- "Will" and "May" on the plaintiff's

24    list.

25              MR. LOEVY:  And we are not going to call 91 witnesses.

1          THE COURT:  Well, I hope not.

2          (Laughter.)

3          THE COURT:  Because you are going to have to get

4    another judge if you are.

5          MR. LOEVY:  And, I guess, we will need more lawyers,

6    too.

7          THE COURT:  So, what are we talking about, in terms

8    of, let's say, you get the case -- let's be optimistic.  Let's

9    say you get the case mid-day Tuesday.

10         MR. LOEVY:  I think we would finish by the end of the

11   following week, if not sooner.

12         THE COURT:  Well, the end of the following week gives

13   us, basically, twenty trial days.  Because they get -- they

14   have to -- you know, if we are doing Monell --

15         MR. LOEVY:  But Monell really is just a few experts

16   and a few fact witnesses.  So, Monell doesn't -- the roof

17   doesn't fall in when you try Monell claims.  I have tried a

18   half dozen of them.

19         You know, it is -- it adds a few witnesses.  That is

20   true.

21         MS. ROSEN:  Judge, I did a four-week Monell trial.

22         THE COURT:  You all better talk about this seriously

23   because I am telling you, at the end of three weeks I am done.

24   Okay?  That is what we are talking about.

25         So, I want to do it.  I do not want to continue it.  I

1    know you have been waiting.  But, you know, we went and got

2    transcripts and it was "two weeks," "two weeks," "two weeks."

3    And, then, all of a sudden we get this yesterday and it is

4    "four weeks."  Okay?

5              MR. LOEVY:  Well, I hope it's three weeks, your Honor,

6    and not four weeks.

7              THE COURT:  Well, hopefully does not help me.

8              MR. LOEVY:  Okay.

9              THE COURT:  Okay?

10             I hope it is three weeks, too, but it is more serious

11   than that.  So, you are going to have to figure out a way to

12   pin this down.

13             I do not waste time.  I do not keep -- when I give the

14   jury a break in the morning, we are talking ten minutes.  And

15   ten minutes in the afternoon.  There is not any fluff in this.

16   It goes fast and it goes efficiently.  But you have got to

17   figure out a way to get it down.

18             And the end of the following week, which gives you

19   eight full days, you know, basically, I do not think that is

20   going to work.

21             MR. LOEVY:  I am -- I am -- optimistic the jury

22   instructions -- or jury selection -- won't take that long.  It

23   hasn't been my experience that it takes a couple days.

24             THE COURT:  Well, I have had nothing but trouble

25   getting -- you know, you want twelve jurors.  I do not care.

1    You get three peremptories, period.  And, so, it does not take

2    a whole lot of extra time to get twelve jurors.

3              MR. LOEVY:  We would be amenable to ten.

4              Are you guys amenable to ten?

5              MR. POLICK:  The concern, I think we have there, is

6    that if this goes three weeks, the risks of losing some

7    increases.  And, I think, the Judge's procedure kind of takes

8    that into consideration.

9              We don't want to end up where, you know, people may

10   get --

11             THE COURT:  Well, you are going to lose more than

12   jurors if it goes beyond --

13             (Laughter.)

14             MR. POLICK:  Right.

15             No, I understand that, Judge.  You have made that very

16   clear.

17             THE COURT:  Yes.

18             MR. POLICK:  But I think the procedure you have kind

19   of figures -- factors -- that in.

20             MR. GIVEN:  And, Judge, with regard to jury selection,

21   I think this case is perhaps a little bit different in that

22   there is a lot of publicity out there about certain defendants

23   taking the Fifth.

24             THE COURT:  Well, I think it is always hard to get --

25   it is always hard to get -- diverse juries in these cases.

1   Whether we can get a suburban white jury, I guess, that should

2   be probably not so difficult.

3          But my experience is it is very difficult getting

4   urban diverse juries in cases like this, but that is just what

5   we are stuck with.  I mean, I do not think there is any -- you

6   know, it is what it is.

7          Whether the jurors that we get from Lake Forest and

8   Gurnee are going to know about Guevara, probably not so much.

9          MR. LOEVY:  We, from the plaintiff's side, don't want

10  to make the litmus test never heard of Guevara, because then we

11  will end up with only people from Gurnee and Lake Forest.  And

12  it is not -- there is nothing wrong with having a juror that

13  comes from --

14         THE COURT:  Well, you know, what?  The rule is if

15  these jurors tell me that they can be fair --

16         MR. LOEVY:  Right.

17         THE COURT:  -- there is not going to be a -- I am not

18  going to excuse them for cause.

19         But my experience is we get a lot of jurors who say

20  they cannot be fair.  Okay?

21         MR. LOEVY:  We'll see.

22         THE COURT:  So, we will see.  That is the way it is

23  going to go.

24         So, I do not care.  I mean, as I say, twelve -- the

25  difference between ten and twelve, it probably adds an hour.

1    It is not a big deal.

2           So, if you feel more comfortable with twelve, I do not

3    think that is the problem.  I mean, you know, we might be able

4    to get a jury in a day.  I do not know.  I do not know.

5           So, anyway, what else do we have to talk about?

6           So, we will pick twelve.  And you know the procedure.

7    And you know you are doing the voir dire beyond my initial

8    questions.

9           And I am going to -- I can go -- let's go through this

10   voir dire very quickly now because I can tell you the way this

11   works is I need to approve your questions.  But, then, you can

12   ask them.  Okay?

13          Let's see.  Where is mine?

14          MS. ROSEN:  So, Judge, we are just then limited to the

15   questions, or questions and follow up or --

16          THE COURT:  Any follow-up --

17          MS. ROSEN:  Okay.

18          THE COURT:  -- that is within -- I do not know where

19   it is.  I had it when I left my chambers.

20          Ah, here there they are.  Okay.

21          All right.  On the defendants', which is the first one

22   I picked, is this both -- this is all of the defendants, right?

23          MS. ROSEN:  Yes.

24          MR. GIVEN:  Yes, Judge.

25          THE COURT:  Question 14, basically, if it is reworded,

1　and I am not -- I cannot tell you exactly how it needs to be

2　reworded, but I can tell you why it needs to be reworded --

3　these jurors know nothing about the rules.  And they have not

4　heard the instructions yet.  And they are going to get

5　testimony -- they are going to get rules -- on how to asses

6　credibility.

7　　　　　So, give them a question like this, where they have no

8　idea what the law is, is really unfair.  They are just going to

9　be guessing all kinds of ways.

10　　　　　So, the objection is it improperly conditions

11　perspective jurors, but it also -- well, I think the worst part

12　of it is that it calls on them to opine on something that they

13　are going to be instructed about.

14　　　　　So, what has got to happen in situations like this, as

15　far as I am concerned, is you have got to give them some sense

16　of how they are going to be instructed.  And the question has

17　to be can they follow the instruction or not.  Okay?

18　　　　　If you reword 14 to achieve that, I will allow it.

19　　　　　MS. ROSEN:  Okay.

20　　　　　THE COURT:  So, I will wait for that.

21　　　　　You know, when we get to 21, it is the same problem .

22　They are not going to understand anything about this.  So, they

23　are going to be sitting there guessing what the right answer is

24　-- or the wrong answer, depending on whether they want to serve

25　or not -- what they should say about this.

1    I think 21 -- I do not know.  I think that is -- I

2  think it is -- problematic.  I cannot even figure out how to

3  reword it.  So, I am going to sustain the objection to this.

4    If you want to give me another version of it, I will

5  look at it.  But where I think we need to deal with this is you

6  know that --

7    Do I have the Agreed Statement of the case, Eugene?

8  Did we get that?

9    MR. LOEVY:  We had two versions.

10    THE COURT:  Good, because that ought to -- that ought

11  to -- tell them that, so that when you start voir diring them,

12  they know that that is going to be an issue.  And they know --

13  you can ask some question about whether, you know, they are

14  prejudiced against one side or the other because of that.  But

15  they will at least understand that that is going to be the

16  issue in the case.

17    We will do that in a minute.  That would be a good

18  thing to go to, after this.

19    The same thing with 23.  They don't have any idea how

20  they should answer that.

21    And the law is so complicated on this.  And they are

22  going to get an instruction on it.  I do not think there is any

23  fair question we can ask them about that.

24    I am going to say "No."  Again, if you want to try,

25  again, I am not going to keep you from doing it.  But I am

1    going to say "No" to 23 at this point.

2         25, I think it is okay.  I think both sides can ask

3    them if hearing all of the evidence and the instructions, they

4    came to the conclusion that blah-bidy, blah-bidy blah, would

5    they be willing to enter a verdict.  So, I think that is okay.

6         And I think the plaintiffs can ask the same kind of

7    question.

8         28, without instructions, there is no way that they

9    know what a Certificate of Innocence is or what it means.  And,

10   again, I think this is something we need to deal with in the

11   Agreed Statement of the case, so that you can question about

12   prejudice.

13        But that is, you know, asking would the fact that

14   plaintiff received the Certificate compel you to find in favor

15   of the plaintiff.  How would a non-lawyer have any idea how to

16   answer that question?

17        "Would it prevent you from making a finding in favor

18   of the defendants?"

19        That is not -- this just does not work.

20        So, my response to 28 at this point is "No."

21        Let's go to the plaintiff's.

22        The same rule applies.  If you want to try, again, I

23   do not have any problem with it.

24        I am good until we get to 13.

25        Boy, I --

```
1           MR. LOEVY:  We will withdraw the question, your Honor.
2           THE COURT:  Yes, will you withdraw it?
3           I mean, there might be a question you can ask, but I
4   do not think it is this.
5           I guess the question that affects my view of this and
6   some of the ones that follow is -- okay -- "Do you believe that
7   it is possible that the police would tell a witness who they
8   should pick out of a lineup?"
9           Why is it not a legitimate point of view of some
10  ordinary person that that is what happens and is supposed to
11  happen?
12          I do not know.  You know, maybe they have watched
13  enough Law and Order so that they understand something; but,
14  you know, people are unsophisticated.
15          Some are, anyway.
16          So, again, I am not going to -- I think the way this
17  is framed, I have a real problem with it.
18          There might be a way, again, to do it.  But I do not
19  know -- I do not know -- how you would do that before they hear
20  from -- I assume you are going to have an expert, or somebody
21  is going to tell them what the proper lineup procedure is?
22          MR. LOEVY:  Yes.
23          THE COURT:  So, I think the question has got to be
24  would they listen to the rules and follow the rules and the
25  instructions?
```

1     Because I can tell you they are not going to know the

2     answer to that question.  They are going to think that that is

3     what the police -- probably some of them will think that is

4     what the police -- are supposed to do.

5     Let's see.  "Do we think that citizens who have been

6     treated illegal and unfairly have a right to bring a lawsuit?"

7     Again, you know, in substance, that is okay.  But I

8     think, again, it has got to be that citizens have a right.  And

9     do they have any problem with that.

10     I would like to ask it a different way.

11     And, of course, 18 is just a copy of 15, as the City

12     has pointed out.

13     19, I do not know why, but I do not like it --

14     "improperly conditioning."

15     MR. LOEVY:  We -- I don't see myself asking that

16     question, your Honor.

17     THE COURT:  All right.  Let us get rid of it.

18     On 21, I just think there is a little bit of a wording

19     problem:  "If you hear evidence in this case that conflicts

20     with your training, will you be able to accept the evidence?"

21     Well, if anybody has psychological or psychiatric

22     training -- oh, you know, there is something else I need to

23     tell you about how I select juries, that might take away some

24     of these problems.

25     If anybody says that they want to talk about something

1   only in private, or if any of their answers to any of these

2   questions suggest to you that we might have an issue with some

3   juror, in terms of fairness, my normal practice is to have you

4   all come back and talk to -- and have the juror come back and

5   talk to -- that juror privately.  Which means that if you are

6   inquiring of anybody and you are getting into some kind of hot

7   water that is likely to prejudice the rest of the panel, I will

8   try to remember to tell them ahead of time that if they want to

9   talk about anything in private, they should just let us know.

10          But something like that, if anybody has any

11  psychological or psychiatric training, maybe that is something

12  where we need a follow-up because how do they know at this

13  point -- you know, this also relates to an instruction.  And I

14  am not sure what the instruction is going to be.

15          The instruction is going to be that they have to put

16  aside their training and listen to the witness.  And what if

17  the witness has been so cross-examined, that they do not

18  believe the witness?

19          I mean, you can ask them if they have psychological or

20  psychiatric training, but I think that is probably what we

21  need.  That is probably the limit of it on that point -- at

22  that point.

23          But I will allow some follow-up privately, if you feel

24  there is an issue.

25          My next question is about 25.

 1          MR. LOEVY:  That one is our -- our -- reciprocal

 2    attempt as one of the defense.

 3          THE COURT:  Well, remember that they are not going to

 4    know what compensatory damages are.  Okay?  But I think you

 5    could ask them something like, "If you concluded, after hearing

 6    the case and the Court's instructions, that damages" -- "the

 7    plaintiff had proven damages for physical and emotional

 8    distress injuries, would you have any problem awarding them,"

 9    that I would allow you to do.

10          I think the rest looks pretty much okay to me.

11          So, if anybody wants to re-submit voir dire, I will be

12    happy to look at it.  Just do not wait until the moment before

13    trial.

14          All right.  Let's talk about the Agreed Statement of

15    the case.  What do you have?

16          MR. LOEVY:  Page 5 of your Pretrial Order.

17          THE COURT:  Okay.

18          MR. LOEVY:  We were close, but ours were a little more

19    cogent --

20          THE COURT:  Hold on.

21          (Brief pause.)

22          MR. LOEVY:  And, your Honor, consistent with what you

23    said about the Certificate of Innocence, I think what we would

24    like to propose is, "He spent more than twenty years in

25    prison," on the second line, "before his conviction was

1   overturned in 2011, and he received a Certificate of

2   Innocence."

3            And, then, we can ask them if that, you know --

4            THE COURT:  Received a Certification of Innocence?

5   Since they do not know what that is, from --

6            MS. LOEVY:  From the Illinois courts.

7            THE COURT:  From the Illinois courts.

8            MR. SOTOS:  Judge, our feeling about that is that it

9   over-emphasizes this Certificate of Innocence in regards to --

10           THE COURT:  I do not know how we can get a jury in

11  this case if they do not know what these issues are.

12           Give me a minute.  Let me look at defendants'.

13           (Brief pause.)

14           THE COURT:  Well, I do not like the defense.  Let's

15  look at the plaintiff's.

16           (Brief pause.)

17           THE COURT:  I do not think you have to tell them at

18  this point that he spent more than twenty years in prison.  I

19  think that is argumentative.

20           You can say that his conviction was overturned in

21  2011.  He received a Certificate of Innocence from the Illinois

22  courts.

23           MR. LOEVY:  Okay.

24           MR. GIVEN:  I am sorry, Judge?  They can mention the

25  Certificate of Innocence?

```
 1            THE COURT:  I think we have to because, otherwise,
 2   there is no way we are going to be able to select a jury in
 3   this case.
 4            They are going to find it out soon enough, anyway,
 5   right?  In opening statement, they are going to hear all about
 6   it.
 7            MR. GIVEN:  We do have a motion in limine on that,
 8   too.
 9            THE COURT:  Well, if the motion -- if I grant the
10   motion -- what is the motion in limine?
11            MR. GIVEN:  To bar mention of the Certificate of
12   Innocence.
13            MR. LOEVY:  Well --
14            THE COURT:  Well, it is hard.
15            MR. SOTOS:  There are judges who have allowed it
16   despite --
17            THE COURT:  Yes.
18            MR. SOTOS:  I take it, it is not the law, it's --
19            THE COURT:  Well, I will look at the motion in limine.
20            The motion in limine may change everything, but I
21   cannot imagine.  Because what is going to happen -- I mean, the
22   reason to let it in is this jury, then, is going to think that
23   he is probably guilty of what he has been charged with, "Hum,
24   he got lucky and somehow there was a technically," or something
25   like that.
```

1          So -- I mean, it seems to me that is a huge part of

2    his damages in the case, are that he was convicted and he was

3    incarcerated, but he also has now been declared innocent.

4          I do not know.  I will look at your motion in limine

5    and that may change everything; but, for now --

6          MR. LOEVY:  "His conviction was overturned in 2011 and

7    he received a Certification of Innocence from the Illinois

8    courts," for now?

9          THE COURT:  Yes.

10         Get rid of the "twenty years in prison."

11         MR. LOEVY:  Uh-huh.

12         (Brief pause.)

13         THE COURT:  You know, I think in the issue -- in the

14    interest -- of not having this be argumentative, I would say

15    something like, instead of, "by fabricating evidence,

16    manipulating witnesses and hiding evidence -- "

17         MR. LOEVY:  It is just his contention, your Honor.

18    That is what he contends.

19         THE COURT:  Yes.

20         MR. SOTOS:  And, for what it's worth, we view those to

21    mean -- to be inflammatory terms that we don't believe are

22    consistent with the evidence.  And we think that by emphasizing

23    them in an Agreed Statement of the case, it is prejudicial.

24         MR. LOEVY:  Yes, but his contentions are --

25         THE COURT:  You know, what?  I am going to resolve

1   this.  You do not have to argue it.  Okay?  Let me just try to

2   think about it.

3          (Brief pause.)

4          THE COURT:  Well, some of this is okay, but I think we

5   are gilding the lily.  And I am trying to figure out how we can

6   make it a little bit more --

7          MR. LOEVY:  We could say, "right to a fair trial by

8   violating his right to due process," and just -- that's just a

9   general category.

10         THE COURT:  Yes.  I mean, in various respects.

11         And, then, in the opening statement, you can go into

12  that.

13         MR. LOEVY:  Okay.

14         THE COURT:  I think that would be preferable because

15  none of this is going to be key in their -- the purpose of the

16  Agreed Statement of the case is to help them understand why we

17  are asking them the voir dire questions that we are asking

18  them.  Everything else can be in opening statements.

19         And I do not see that the details of "fabricating

20  evidence, manipulating witnesses and hiding evidence," is

21  important at this point.  I did not see anything in any of your

22  voir dire that required it.

23         But I did see something that required the Certificate

24  of Innocence issue to be talked about.

25         MR. LOEVY:  We'll say, "Violated his constitutional

```
 1   right to a fair trial by violating his due process rights in

 2   various respects."

 3            THE COURT:  "In various respects," yes.

 4            MR. LOEVY:  And that, "His conviction was caused by

 5   the policies and practices of the Chicago."

 6            THE COURT:  Why do you not say, "He also alleges"?

 7            MR. LOEVY:  Got it.

 8            Two sentences?

 9            THE COURT:  Uh-huh.

10            And, then, what is the difference between -- I mean,

11   what is wrong with the denial that the defendants have

12   proposed, if that is the way the defendants like it?

13            MR. LOEVY:  No objection.

14            THE COURT:  All right.

15            So, instead of the --

16            MR. LOEVY:  The last sentence?

17            THE COURT:  -- the last sentence, we are going to use

18   the defense last sentence.

19            (Brief pause.)

20            THE COURT:  Okay.  Let me see that, as soon as you can

21   get it together.  And I think that will do what I need this to

22   do.

23            MR. SOTOS:  For what it's worth, Judge, we actually

24   prefer the way the plaintiff --

25            THE COURT REPORTER:  Mr. Sotos, I cannot hear you.
```

```
 1              MR. SOTOS:  Oh, I am sorry.

 2              For what it's worth, Judge, we actually prefer the way

 3    the plaintiff described that last sentence.

 4              THE COURT:  Okay.

 5              MR. SOTOS:  We would be fine with that.

 6              (Laughter.)

 7              THE COURT:  All right.

 8              So, there it is.

 9              MR. LOEVY:  We are trying to make it fair.

10              (Laughter.)

11              THE COURT:  Okay.

12              MR. SOTOS:  We appreciate that.

13              THE COURT:  Okay.  What should we do next?

14              MR. LOEVY:  Your Honor, there is an issue about

15    defendants taking the Fifth.  And we have asked them to tell us

16    if police officers, other than Guevara, are going to exercise

17    their constitutional right --

18              THE COURT:  Well, Mingey is, right?

19              MR. LOEVY:  And Mingey, apparently, has at other

20    proceedings and may at this trial.

21              The response, in fairness to them, is they are not

22    sure.  But, at some point, they have got to be sure because we

23    have to prepare trial outlines and we would like to know if

24    witnesses aren't going to testify.

25              MR. GIVEN:  Part of it, Judge, is that you haven't
```

1   ruled on Mingey yet.

2           THE COURT:  When -- let's see.  Is Mingey fully

3   briefed?

4           MR. GIVEN:  Yes.

5           MR. SOTOS:  Yes.

6           MR. LOEVY:  He would be a witness either way, though.

7   So, him taking the Fifth --

8           THE COURT:  Yes.

9           I mean, the law is that -- the law is that -- and I

10  think this is raised in a motion in limine -- that if a witness

11  is going to take the Fifth, the jury has a right to see the

12  witness take the Fifth.

13          MR. LOEVY:  Yes.

14          MS. ROSEN:  No, I think that's a -- yes, but I don't

15  think that is the question that Mr. Loevy is asking your Honor.

16          THE COURT:  Right, right.

17          MR. LOEVY:  What I am -- what I am -- asking is can

18  they tell us?  Because I am going to go home this weekend and

19  start working on an outline; and, then, the guy is going to

20  take the Fifth.

21          Maybe it's a matter of courtesy.  Maybe it's a matter

22  of the Court ruling.  But it seems like they should declare if

23  people are going to not testify in advance.

24          THE COURT:  Well, is your position that you do not

25  know?

```
 1              MR. GIVEN:  He's -- how do I put this?  He would like
 2     to know what the ruling on his summary judgment motion is.
 3              And I don't mean to throw it on the Court, your Honor,
 4     but his final decision --
 5              THE COURT:  Well --
 6              MR. GIVEN:  He has told me that he would like to know
 7     what his standing in this case is, whether it is a witness or
 8     as a defendant.
 9              THE COURT:  -- give us a second to consult.
10              (Brief pause.)
11              THE COURT:  You will have it by Thursday at the
12     latest.
13              MR. GIVEN:  All right.
14              MR. LOEVY:  Your Honor, our position, of course, is it
15     shouldn't matter whether you are a defendant or not.  If the
16     testimony incriminates you, you have a right to assert the
17     privilege.
18              If it doesn't incriminate you, you don't have a
19     legitimate right.
20              THE COURT:  Right.
21              MR. LOEVY:  It is not a strategic thing.
22              THE COURT:  Well, right.  But if the lawyers do not
23     know -- I mean, I do not know why you do not know, because you
24     know what kind of jeopardy these people are in.
25              MR. LOEVY:  Either way.
```

1            THE COURT:  Have they testified?  Have they given full

2    depositions?

3            MR. LOEVY:  Mingey gave a full deposition in this

4    case; and, then, more recently, in another proceeding, he went

5    on the Fifth.  That is where it is.

6            THE COURT:  So, okay.  Let's get beyond Mingey because

7    you are going to have an answer on Mingey.  And, then, I think

8    you should tell plaintiff's counsel --

9            MR. GIVEN:  Sure.

10           THE COURT:  -- what Mingey is going to do.

11           MR. LOEVY:  There may be others.

12           THE COURT:  Well, that is my question.  Others?

13           MR. GIVEN:  I am not aware of others at this point,

14    your Honor.

15           MR. SOTOS:  I'm not either.

16           THE COURT:  Okay.

17           That is an answer to your question.

18           I think if you learn that somebody is going to take

19    the Fifth before the trial starts, you have an obligation to

20    let counsel know.

21           MR. SOTOS:  Certainly.  We understand.

22           THE COURT:  Because, otherwise, it seems to me if

23    there is an opening statement that promises that they are going

24    to hear certain testimony and, then, I have got a witness

25    taking the Fifth, then I am going to have to intervene and tell

1    the jury how this works.  And that is not going to be helpful

2    to the witness.

3           So, you know, I think it is in the witness' interest

4    to make some decision before they hit the stand in this case

5    and, so, plaintiff's counsel can know.

6           Okay.  So, Mingey by Thursday at the latest.

7           What else should we talk about?

8           We have got instructions that we are going to do on

9    another day.

10          MR. LOEVY:  We told the defendants that we were going

11   to bring up the securing witnesses at trial.

12          They control former Chicago police officers.  We don't

13   have their addresses.

14          In the past, every trial we have done with the City of

15   Chicago, they have been able to cooperate with us without a

16   subpoena for both witnesses and defendants.  Now, we understand

17   they need advance notice, so that we can address that.  But we

18   did say we were going to mention in front of the Court that it

19   was our understanding that they were going to undertake and be

20   responsible for bringing people to trial, without a subpoena,

21   or they are going to give us their addresses so that we can get

22   them under subpoena.

23          MS. ROSEN:  Judge?

24          THE COURT:  Yes, go ahead.

25          MS. ROSEN:  For most of them, I have contact and

```
 1   control.  You know, part of the problem is, obviously, this is
 2   a very old case and people retire.  And, so, I don't have
 3   contact with all of them.  I have --
 4         THE COURT:  Well, how are we -- okay.  How are we
 5   going to figure out who you have contact with and who you do
 6   not?
 7         MS. ROSEN:  I will -- I will -- tell plaintiff's
 8   counsel everybody who -- he can rest assured -- I will bring to
 9   trial, if he wants them.  And I will tell him who I cannot
10   find.
11         THE COURT:  And, then, in the case of people you
12   cannot find, then what do you want?  Last known address?
13         MS. ROSEN:  Yes.
14         MR. LOEVY:  I wanted it already, so we could have got
15   them.
16         I did not know there were people missing.
17         MS. ROSEN:  Well, there are people -- one of the
18   people on your witness list is somebody who is in Canada, who
19   has been in Canada the whole time, and everybody knew was in
20   Canada.  And that is why we took his deposition, with the idea
21   that he wasn't ever coming to trial.  So, that is that
22   particular witness.
23         There is another witness who I had contact with and
24   now I don't.  So, as soon as I can confirm I don't have it -- I
25   mean, he can have the information that we have about him.  And
```

1      --

2              THE COURT:  Well, I think you have got to sit down and

3      bring me a motion right away if you do not have the information

4      that you need.

5              MR. LOEVY:  Well, they send a pension check to the

6      guy.  So, they usually can find him.

7              THE COURT:  Okay.

8              I am thinking of that Judge Posner opinion, "Where is

9      Wallinger," or whatever.

10             (Laughter.)

11             THE COURT:  I think that was his name.

12             MR. SOTOS:  One of the related issues is that there is

13     talk about them being prepared for trial; outlines for Officer

14     Mingey; but, they have got 90 witnesses listed in the case that

15     everybody knows nobody is going to call anywhere near 90

16     witnesses.

17             And it would seem to me that if both sides submitted

18     witness lists that were realistic, in terms of who they

19     really were going to call --

20             THE COURT:  That would really be helpful.

21             MR. SOTOS:  Because this is just unwieldy.  And it

22     just seems like it makes a lot of sense.  So --

23             MR. LOEVY:  Your Honor, you know, there are 90, but I

24     agree with Mr. Sotos that as we get closer, we can certainly --

25     well, first of all, we can't --

1      THE COURT:  We are pretty close.

2      (Laughter.)

3      MR. LOEVY:  We can't expect them to bring the police

4  here unless we tell them who they are.  So, we have to give

5  them advance notice to get them.

6      THE COURT:  I mean, 90 witnesses is ridiculous.  We

7  are not going to start this case with 90 witnesses.  We have

8  got to get it down to something that I think I can do in the

9  time that I am going to allow you.  So, you better start

10  culling and have some discussions.

11      You know, I understand -- and the City and the defense

12  is going to have to understand, too -- if something really

13  unexpected happens and you have got to go back to the list and

14  call somebody that you did not think you would need to call.

15  But, I mean, at this point it seems to me we ought to get this

16  down to a manageable number.

17      MR. LOEVY:  Understood, your Honor.

18      MR. GIVEN:  Judge, one other related thing.

19      THE COURT:  Yes?

20      MR. GIVEN:  We have two -- well, we have three --

21  clients all together who have medical issues.  Two of them live

22  out of town.

23      The defendant Weingart's wife has Alzheimer's.  He is

24  the sole caregiver.  He lives in Arkansas.

25      And the other out-of-town is Rinaldi, who has cancer.

1   He cannot travel.  He is over 90 years old.

2          They have both been deposed.  And we would like -- our

3   position is they are, essentially, unavailable because of

4   health reasons and we should be able to put them in through

5   their deposition.

6          MR. LOEVY:  We have a strong objection to that and I

7   think it has to do -- it might have to do -- with the Fifth

8   Amendment issue, your Honor.  They want to -- people that

9   previously gave depositions now are starting to take the Fifth.

10         MR. GIVEN:  Well, neither of them are taking the

11  Fifth.  So, that is not an issue.

12         MR. LOEVY:  Well, what is being proposed is that they

13  don't testify at all.  So, we won't know if they are going to

14  take the Fifth or not.

15         MR. SOTOS:  Judge, can I add one thing in regards to

16  this?  The man is very, very sick and dying.

17         THE COURT:  Yes.  We are not going to have any -- we

18  are not going to cause the death of any witnesses.

19         MR. LOEVY:  Well, I would suggest a video.

20         MR. SOTOS:  Well, beyond that, these are three of the

21  five witnesses for whom your summary judgment order dismissed

22  claims based on lack of personal involvement.

23         We don't know -- we couldn't tell, from the opinion,

24  whether or not they are not part of the case at all or whether

25  they are still in on any claims.

1          So, I don't know if you can clarify that for us now or

2    --

3          THE COURT:  I can clarify it without any further

4    information?  Because we would have clarified it as much as we

5    were capable of.

6          How do I know if there is anything left?  I mean, you

7    should know if there is anything left.

8          MR. LOEVY:  We read it as they are in.

9          THE COURT:  For, what?  For certain claims?

10         MR. LOEVY:  Yes.  And the conspiracy.

11         MR. SOTOS:  Except that they were dismissed for lack

12   of personal involvement.  So, we don't read it that way.

13         Perhaps -- so we don't take up all the Court's time --

14   maybe you should just file something by the end of the day

15   today.  And, then, we have a complicated motion.  But we think

16   it's -- we think it's -- fairly simple that they were dismissed

17   for lack of personal involvement.  And we can't imagine that

18   there is any claim that --

19         THE COURT:  Well, go ahead and do it because -- I

20   mean, we did what we could, based on what you gave us.  So, if

21   we missed something, let me know.

22         But I think the video approach is the fallback

23   approach we need to take.  I am not going to require anybody

24   with cancer, who is not supposed to travel, to come here.

25         MR. LOEVY:  We wouldn't expect it, your Honor.

```
 1              THE COURT:  Okay.

 2              MR. LOEVY:  But we don't want them to be able to rely

 3    on a previous deposition to avoid the Fifth.

 4              But there is video, you know, in this day and age with

 5    that boundary.  They can testify by video.

 6              In other words, the defendants can't, by not coming,

 7    read their depositions.

 8              THE COURT:  I understand that.  I understand that.

 9              So, if he is still in the case, you are just going to

10    have to make arrangements to go and do a video deposition.

11              MR. LOEVY:  Or a video hookup.  It could be live --

12    live, depending on -- we have done that in plenty of federal

13    courts.  There is -- you know, if he goes to a courthouse where

14    he is, he can testify live.  We can do that technology.

15              MS. ROSEN:  Well, but he might not be able to do

16    that.

17              THE COURT:  Well, we do not know that.

18              You do not know that, either, do you?  I mean --

19              MR. GIVEN:  As I sit here right now, I don't.

20              And with regard to Mr. Weingart, my understanding --

21    my recollection -- with regard to his deposition, was he had to

22    travel, like, two hours just to get to a place where there was

23    a court reporter.  And he lives in rural Arkansas.

24              THE COURT:  Well, I am not sure we need -- do we need

25    a court reporter if we are doing a video?
```

```
 1              MR. GIVEN:  I meant only in regard to where video

 2   conferencing --

 3              THE COURT:  Well, you know, this is all a very

 4   abstract discussion.  First of all, you are telling me that

 5   there is an issue about whether these people are even in the

 6   case at this point; and, secondly, you are telling me that it

 7   may be that he has to travel farther than he is able to travel.

 8   And I do not know any of that.  So, I think --

 9              MR. SOTOS:  We will file something.

10              THE COURT:  I think you have to figure it out.  Okay?

11              MR. LOEVY:  I may able to work with you on some of the

12   witnesses that we have less concern about.

13              THE COURT:  But they do not have to come.  We can do

14   it another way.  Okay?

15              MR. SWAMINATHAN:  There is -- we heard Weingart and

16   Rinaldi.  I think you said there was a third person?

17              MR. GIVEN:  Noon --

18              MR. SWAMINATHAN:  Noon.

19              MR. GIVEN:  -- has serious health issues.

20              He lives in Chicago.

21              MR. LOEVY:  And he is in the case, by your admission?

22              MR. GIVEN:  No.  He is also one of the five that we

23   think falls within what Mr. Sotos was talking about.

24              THE COURT:  All right.

25              When am I going to get that?
```

1          MR. SOTOS:  Can we file that by the end of the day

2     today or tomorrow.

3          MR. GIVEN:  It will be very short.

4          MR. SOTOS:  It will be short, but I --

5          THE COURT:  Right.

6          But, then, I am going to need your response about why

7     you think they are in.

8          MR. ART:  We can respond the next day.

9          MR. LOEVY:  Yes, twenty-four hours.

10          THE COURT:  All right.  All right.

11          Let's see where else we go.

12          There was some motion that I looked at this morning

13     regarding witnesses and/or evidence that either the City or the

14     defendants claim they had not gotten yet.

15          MR. LOEVY:  Is that one of the motions in limine, your

16     Honor?

17          THE COURT:  Yep, yep, yep.

18          Let's see.

19          MR. LOEVY:  I haven't read all 30 of them yet.  They

20     came in last night, but I am not sure I know that one.

21          THE COURT:  The motion for excess pages we dealt with,

22     I think, right -- from those two examples?  I think I was going

23     to allow that.

24          MS. ROSEN:  Yes.

25          (Brief pause.)

1          THE COURT:  Boy, I am sure I saw that.

2          Do you know what I am talking about?

3          MS. ROSEN:  Off the top of my head, no, your Honor.

4          MR. LOEVY:  Eileen hasn't had a chance to read it,

5     either.

6          (Laughter.)

7          THE COURT:  I am sure there was one that dealt with --

8     and I just really wanted to see if we could get to the bottom

9     of that and get it resolved and get it off the table.  But I

10    guess it is not going to happen because I do not see it.

11         Oh, wait a minute.  Wait a minute.

12         Motion in Limine No. 8:  "To bar witnesses who were

13    not properly disclosed pursuant to Local Rule 16.1."

14         MS. ROSEN:  Yes.

15         THE COURT:  It is City's --

16         MS. ROSEN:  Yes.

17         There is still -- well, there are still -- witnesses

18    on the Pretrial Order for which there is no address.  And they

19    are not lawyers or Public Defenders or people that are easily

20    located.

21         And, so --

22         THE COURT:  So, do you know who the plaintiff -- the

23    City -- is talking about?

24         MR. LOEVY:  Do you want to respond to that?

25         MR. ART:  We -- I do not think that we have read that

1    one yet, but I assume that it relates --

2           THE COURT:  Well, let me read it to you, because it

3    will take ten minutes.  I mean, five minutes.  I mean, three

4    minutes.

5           (Laughter.)

6           THE COURT:  "Defendant, by its undersigned attorneys,

7    moves -- " blah, blah, blah.

8           "Local Rule 16.1(6)(d) states that all instructions

9    and footnotes must be followed."

10          Of course.

11          "The Final Pretrial Order requires that each party

12   submit and make part of the order a list of names and addresses

13   of all potential witnesses.

14          "In several instances, plaintiff's witness list does

15   not comply.  Specifically, plaintiff fails to provide contact

16   information for eleven witnesses, the majority of which were

17   never deposed in this case and are not easily located.

18          "Specifically, this number includes nine of the

19   proposed investigative files' witnesses, which is subject to a

20   motion in limine, and the City seeks to bar them."

21          That is the motion.

22          MR. LOEVY:  Thank you, your Honor.

23          We got an objection from them either less than 12

24   hours before the thing was due, after a lot of back and forth

25   of the lawyer objecting to a lack of addresses.  And that was

1    an objection that was held back.  And if it had been brought to

2    us timely, we could have done a better job of getting those

3    addresses.

4         That said, nobody can call a witness that we don't

5    know where they are.  So, we certainly -- they are certainly

6    entitled to addresses.  I presume some of these witnesses we

7    have listed, although have not yet found.

8         May we have a moment to confer?

9         THE COURT:  Yes.

10        MR. LOEVY:  Thank you.

11        (Brief pause.)

12        MR. LOEVY:  Your Honor, I will tell you what.  Here is

13   our proposal.

14        THE COURT:  Okay.

15        MR. LOEVY:  We did preserve these witnesses without

16   addresses.  If we can't find them, we can't call them.

17        So, give us two days to supplement with addresses.  If

18   we can't supplement, then these witnesses, we will withdraw

19   them.

20        THE COURT:  Okay.  I think that is reasonable.

21        MR. LOEVY:  Thank you.

22        THE COURT:  You are saying that at this point you do

23   not have that information?

24        MR. LOEVY:  Otherwise, we would give it to them.

25        THE COURT:  Okay.

1          Two days.

2          MR. LOEVY:  Two days.

3          THE COURT:  All right.  What else can we do?

4          What else should we do?

5          Is there any -- yes?

6          MR. SOTOS:  We have one other issue we wanted to

7  raise.

8          So, you know, there is the compensatory damages and,

9  then, there is the punitive.

10          THE COURT:  Right.

11          MR. SOTOS:  And, so, with the punitive damages, there

12  is this issue that comes up in all of these cases about whether

13  the officers are going to introduce evidence of a failure to

14  pay -- of an inability to pay.

15          THE COURT:  Inability to pay, right.

16          MR. SOTOS:  Which then raises the question about

17  whether the jury should then be instructed that, in fact, they

18  have to pay punitives, but the City indemnifies for

19  compensatories.

20          So, the way this has been resolved before is -- in

21  fact, in the last case that Loevy and I tried against each

22  other; ironically, enough, involving Mr. Guevara, which worked

23  out better for him than it did for us -- there was a

24  separate -- we had a separate hearing on punitive damages after

25  the trial on compensatories was completed.

1          I thought that worked out best and could directly be

2     done on this side, without trying to figure out the best way to

3     approach it here.  We thought that would be the way to go.

4          We haven't talked to the plaintiff about it yet, but I

5     think we need to address that at some point.

6          MR. LOEVY:  I think we should confer.  I think the

7     focus was to bifurcate punitives.

8          One of our concerns would be some of our evidence that

9     goes to punitives, also goes to the -- you know, the bad faith

10    and the state of mind also goes to liability.  And some of the

11    evidence you are trying to bar bears on punitive damages.  So,

12    we don't want to be prejudiced in that respect.

13         But there is no inability-to-pay defense in this case

14    yet, your Honor, because nobody has provided any proof about an

15    inability to pay.

16         THE COURT:  Well, I am coming at this from a different

17    perspective.  I have seen verdicts in these cases where the

18    jury, not understanding any of this, slaps a big punitive

19    damages award on some poor officer who is retired and is never

20    going to be able to pay it.

21         I mean, it is just -- I think that there is, the way

22    this is normally done -- an inherent conflict in all kinds of

23    ways.

24         So, if we bifurcated this, what would we do?  We would

25    get a -- we would get a -- jury verdict on compensatories; and,

1  then, let the officers testify as to inability to pay

2  punitives, and give them separate instructions?

3       MR. SOTOS:  Right.

4       MR. LOEVY:  That is what Judge Grady did in the case

5  that Mr. Sotos was referring to.

6       It does elongate the procedure.

7       THE COURT:  Yes.

8       MR. LOEVY:  Another thing is you cannot, from the

9  plaintiff's perspective, tell the jury, "If you find for the

10 plaintiff, there is going to be more," because -- so, you

11 almost have to mislead the jury.  Otherwise, there is a big

12 incentive to say, "If you find for the defendants, you don't

13 have to come back."

14      So, we would object to any procedure that gave them

15 that notice.

16      THE COURT:  Well, the other problem is there is some

17 recent Seventh Circuit cases that say the jury always mixes

18 these things up and it is okay that they do.

19      MR. LOEVY:  Shall we confer, your Honor?  Because I

20 will ask Mr. Sotos.  I am happy to do that -- to discuss this.

21      Maybe we can come to an agreement and present it to

22 your Honor.

23      THE COURT:  That would be great because this is

24 something that has worried me a lot.  I think it is really

25 unfair that the juries come out with these awards, where they

1   so lack understanding of what the consequence is going to be.

2           MR. LOEVY:  Although, your Honor, as Mr. Sotos

3   alluded, the case law isn't quite clear that if they put on

4   inability to pay, then the case law is that you have to tell

5   the jury that they only pay the punitives and that they are not

6   paying the compensatories.

7           It is sort of like insurance --

8           THE COURT:  Right.

9           MR. LOEVY:  -- indemnification.

10          THE COURT:  Right.

11          MR. LOEVY:  It opens the door to indemnification.

12          If you say, "It is going to be a hardship on me," that

13  opens the door to indemnification in an insurance concept.

14          MR. SOTOS:  I think Eileen Rosen would jump up and

15  down if that is the agreement, to --

16          THE COURT:  Well, you know, what?  You can talk -- you

17  can talk -- among yourselves.

18          Personally, I am concerned about bifurcation because I

19  cannot extend this any more.  I mean, I do not know what it

20  would mean.  It might be able to be quick.  I mean, I do not

21  know what we are talking about, in terms of punitive damages.

22          We would have to -- we would have to -- figure out

23  some way to tell them that there are going to be two phases to

24  this.  And that is problematic.

25          MR. SOTOS:  It probably could be, depending on the

 1    verdict.

 2            THE COURT:  Well, of course.

 3            MR. LOEVY:  And Judge Kennelly did the same thing,

 4    too.  And it is just, like, bang, bang.  You know, it is like,

 5    "Thank you for your verdict.  In fifteen minutes, we are going

 6    to take another hour."

 7            That is not a disaster.  That is not the end of the

 8    world.

 9            THE COURT:  And he did it in an hour?

10            MR. LOEVY:  Yes, because there is nothing to say.

11            MR. BOWMAN:  He didn't actually do it.

12            MR. LOEVY:  Oh, we resolved the case.

13            MR. BOWMAN:  That was the -- that was the --

14    expectation.

15            MR. LOEVY:  The Grady case was resolved.

16            MR. SOTOS:  Judge Grady had read a short warning after

17    we --

18            MR. LOEVY:  And, you know, your Honor, that is the

19    other thing.  Sometimes the cases do settle in the interim.

20            THE COURT:  Well, we are not going to exclude any

21    evidence -- okay -- on this, except for the inability to pay

22    issue, and see what agreement you can reach.

23            How many officers will have to hit the stand if there

24    is a liability verdict?

25            MR. LOEVY:  It depends on his motion.

1      MR. SOTOS:  It depends on the motion to clarify, but
2  there is currently twelve.
3      The motion that we will file will address five who we
4  believe will be removed as a result of the summary judgment.
5  So, it will be anywhere from seven to twelve --
6      THE COURT:  So, what happens --
7      MR. GIVEN:  Or --
8      THE COURT:  So, what happens is we get a compensatory
9  damages award -- presuming, there is liability -- and, then, we
10  tell the jury about who pays that and that they have -- I mean,
11  how does this work?
12      MR. LOEVY:  My recollection is he said, "All right.
13  Thank you for that.  Now, in fifteen minutes, we are going to
14  start a very brief phase," and they get up there and say, "Oh,
15  this would be a big hardship on me."
16      But the compensatory verdict is already in.  They
17  award compensatory in the first phase.  So, then, the only
18  issue left is --
19      THE COURT:  Right.  But at that -- at the second
20  phase, do we explain to them what happens with the
21  compensatories -- who pays the compensatory damages award and
22  who pays the punitive?  How do they understand why they are
23  having to do this separately?
24      MR. LOEVY:  A good point.
25      MR. SOTOS:  I don't remember -- that is a really good

1  question.  I don't remember if Judge Grady addressed that.

2          There were, like, really brief openings; and, then, we

3  had a truncated procedure.  But I don't remember if they were

4  specifically told that the City would have --

5          THE COURT:  All right.

6          Well, you better -- you better -- try to come up with

7  something and get these details for me, because this is a huge

8  problem, I think, in all of these cases.

9          Okay.  Anything else?

10          MR. LOEVY:  Not from the plaintiff.

11          MR. POLICK:  Judge, just to circle back for

12  clarification --

13          THE COURT:  Yes.

14          MR. POLICK:  -- in terms of the order of the

15  examination.

16          So, once the witness is up there, just to move this

17  along, we are going to -- each side is going to -- do their

18  examination and we are going waive scope objections?

19          THE COURT:  Yes.

20          MR. LOEVY:  We will waive scope.

21          THE COURT:  And waive scope.  Thank you.  Thank you.

22  Because I cannot keep track of scope when we were doing that.

23          But I also wanted some kind of an instruction for the

24  jury in case they are used to, like, Law and Order, about how

25  we are going to be following a different procedure in order to

 1   save time.  Okay?

 2          All right.  So, you have a whole list of things you

 3   have to do.  And if there is nothing else today --

 4          Eugene, can you think of anything else?

 5          THE LAW CLERK:  Nothing, your Honor.

 6          THE COURT:  All right.

 7          And we are going to set up an instruction conference.

 8          I am wondering if we can quickly go through some of

 9   these remaining motions in limine.  I have a little time

10   myself.  You probably expected to spend more of the morning

11   here, too.

12          So, unless somebody has some place to go, maybe we can

13   get through some of these issues.

14          The Motion in Limine No. 9, to bar any argument or

15   innuendo that the jury should punish or send a message to the

16   City, what is the plaintiff going to respond to that?

17          MR. LOEVY:  This is a stock motion.  We have a stock

18   response.  And the judge usually has a stock order.

19          We cannot argue punitive damages.  We can't --

20          THE COURT:  Because the City cannot -- well, punitive

21   damages aren't awardable against the City, right?

22          MR. LOEVY:  Correct.  But there -- you know, you still

23   can -- you can award compensatory damages.  So --

24          THE COURT:  So, you have got something that other

25   judges have done?

```
 1            MR. LOEVY:  Right.

 2            This has been -- this one gets decided --

 3            MS. ROSEN:  Judge, if I could, there is case law out

 4   there about this whole, "Send a message to the City, so that

 5   this doesn't happen, again."

 6            And, in fact --

 7            THE COURT:  Well, these are the cases you have cited?

 8            MS. ROSEN:  Correct.

 9            THE COURT:  All right.  Fine.

10            MR. LOEVY:  And we do have those, too.

11            THE COURT:  Well, good.

12            Okay.  Let's move on.

13            So, Mingey, we are waiting -- you are waiting -- on

14   me.  And, then, the Mingey -- let's see.  I am not so sure.

15            MR. LOEVY:  Yes, this one doesn't make any sense --

16            THE COURT:  No.

17            MR. LOEVY:  -- at least based on the filing.

18            If the guy wants to take the Fifth now, you can't get

19   his dep in from before.

20            THE COURT:  Wait a second.

21            (Brief pause.)

22            THE COURT:  I do not think this is consistent with the

23   law.

24            MS. ROSEN:  Well, Judge, if he takes the Fifth, he is

25   unavailable.  And since he provided prior testimony in this
```

1   case, as any other witness who would be unavailable, we would

2   be able to read in his deposition, particularly on behalf of

3   the City, because, obviously, the City --

4           THE COURT:  Right.  You may be able to read in his

5   deposition, but that does not keep the plaintiff from being

6   able to call him and have him take the Fifth.

7           MR. LOEVY:  And say he is disavowing the deposition,

8   as he just said.

9           MS. ROSEN:  Well, he is not disavowing it.

10           MR. LOEVY:  Well, he --

11           THE COURT:  I do not want to have an argument.

12           MS. ROSEN:  Right.

13           THE COURT:  I think the law is clear, but we will see.

14           MS. ROSEN:  But the proposal is that if he does take

15   the Fifth --

16           THE COURT:  Yes.

17           MS. ROSEN:  -- whether the Court allows him to

18   actually get up on the stand and take the Fifth, or whether the

19   Court -- because other -- there are some judges that allow that

20   procedure.  They have him get up on the stand.

21           THE COURT:  Right.

22           MS. ROSEN:  Other judges simply instruct:  "If the

23   witness were called to testify here today, he would be taking

24   the Fifth."

25           THE COURT:  That is not how I read the law.  Okay?

1    So, I can tell you that.

2         I think the plaintiff has a right to call him and have

3    him take the Fifth.

4         MS. ROSEN:  Okay.

5         THE COURT:  Okay?

6         MS. ROSEN:  So, if that is the Court's view of it --

7         THE COURT:  Right.

8         MS. ROSEN:  -- then he would have a right to call him

9    and take the Fifth.  Then the City would have a right to read

10   in his prior testimony.

11        But because by him taking the Fifth, he is now

12   unavailable --

13        THE COURT:  Unavailable.

14        MS. ROSEN:  -- and we would get that evidence that has

15   been recorded.

16        MR. LOEVY:  We'll have to take a look at that legally.

17        THE COURT:  So, that is what you have got to respond

18   to.

19        MS. ROSEN:  Yes.

20        THE COURT:  Okay?

21        I think it is clear that you have a right to call him,

22   even if he is going to take the Fifth.  But, I think, I need to

23   know what happens next.

24        I do not want to waste a lot of time with these, but

25   there is this motion to bar any evidence regarding the

1  Kluppelberg, Fields or Taylor litigation.

2          MR. LOEVY:  Well, that -- that -- is a non-starter,

3  from our perspective.  Your summary judgment opinion explains

4  quite clearly that -- oh, I am sorry.  I was thinking of Palmer

5  and --

6          THE COURT:  That is different.

7          MR. ART:  There is another motion on that.

8          THE COURT:  Yes.

9          MR. LOEVY:  All right.

10          Let's -- I am in somewhat of a disadvantage in not

11  having read their stuff.

12          THE COURT:  You have not read it.

13          (Laughter.)

14          THE COURT:  All right.  So, maybe we should not do

15  this.  Maybe it would be a better use of our time to leave you

16  alone and go back and do all of this.

17          MR. GIVEN:  Judge, at the risk of prolonging this very

18  slightly, I think we can go through some of the officers'

19  motions in limine, especially the ones that I think there is no

20  genuine dispute about.

21          THE COURT:  Well, why do you not give them to me,

22  because, unfortunately -- or maybe I have them -- because I

23  have not read them.

24          MR. GIVEN:  They are by number.

25          THE COURT:  I have not read them.

```
 1                THE LAW CLERK:  We do not have courtesy copies.

 2                THE COURT:  Oh, no courtesy copies.  That is why they

 3     are not read.

 4                MR. LOEVY:  There are plenty of raw motions that

 5     aren't read --

 6                MR. SOTOS:  These are the courtesy copies.

 7                MR. LOEVY:  -- and you have said you don't have.

 8                THE COURT:  Those are the courtesy copies?

 9                MR. SOTOS:  They are, yes.

10                THE COURT:  Well, let's see if we can get them

11     resolved by agreement because, obviously -- let me take these

12     Eugene.

13                (Documents tendered.)

14                THE COURT:  Obviously, not having read them, I am at a

15     disadvantage.

16                MR. GIVEN:  Your Honor, on resolving them by

17     agreement, we did have an extensive motion in limine conference

18     yesterday --

19                MR. ART:  Yes, we had a whole --

20                MR. GIVEN:  -- with the other side, where we talked

21     about these motions in limine.

22                THE COURT:  Well, let's get on the record whatever we

23     can get on the record;  and, then, I will not read them if they

24     are agreed.

25                MR. LOEVY:  No, they filed ones that weren't agreed.
```

1           We did agree to, at least, some at the conference.

2           THE COURT:  Oh, none of these are agreed?

3           MR. GIVEN:  None of those are agreed, Judge, but --

4           THE COURT:  I cannot even pick them up.

5           MR. GIVEN:  -- I can run through very quickly and tell

6    you which ones -- I don't, frankly, understand why there is not

7    an agreement.

8           MR. SWAMINATHAN:  So, some, from -- our perspective is

9    we conferred on these.  We are not in agreement.  The only

10   thing that has changed is they filed them and we haven't had a

11   chance to review even what they filed.

12          MR. GIVEN:  Well, okay.

13          So, for instance -- can I just give one for instance,

14   Judge?

15          THE COURT:  Give me a for instance.

16          MR. GIVEN:  Okay.

17          Our Motion No. 5 -- actually, No. 6 -- to bar someone

18   named Juliarez Chavez from testifying, that is a person that

19   has never been -- no location has ever been disclosed.

20          The plaintiffs admit they don't know where Mr. Chavez

21   is.

22          The Pretrial Order still doesn't have any location.

23          THE COURT:  Okay.

24          Well, we just made an agreement that, what, by

25   tomorrow or the next day -- two days -- you are going to

1  provide any addresses that you can get or you are going to

2  withdraw the witness.

3          MR. LOEVY:  And we did say that, your Honor.

4          THE COURT:  So, does that not take care of Juliarez

5  Chavez?

6          MR. GIVEN:  No, he is still in the Pretrial.

7          THE COURT:  But in two days this person may disappear

8  from the Pretrial, for all intents and purposes.

9          So, I think we --

10         MR. GIVEN:  Okay.

11         THE COURT:  Okay?

12         So, you know, I am not going to -- I am not even going

13 to -- read this until I know if that is still an issue.

14         MR. LOEVY:  You know what the problem is, Judge, every

15 one we take off, they are going to throw another one on --

16         MR. GIVEN:  No, we are not.

17         MR. LOEVY:  -- because you gave them a limit of

18 twelve.

19         THE COURT:  No more.  No more.

20         MR. SOTOS:  We are not doing that.

21         (Laughter.)

22         THE COURT:  No more.  Anything else goes in the trash.

23 So --

24         MR. GIVEN:  You know, what, Judge?  In light of what

25 they have said, I don't want to waste your time.

```
 1            MR. SOTOS:  And, Judge, if they want to respond, that
 2   is fine.
 3            MR. GIVEN:  Sure.
 4            MR. SOTOS:  You know, the only thing I wanted to bring
 5   up about the motions in limine that we have filed, that we
 6   think could become an issue, is the motion to bar the 404(b)
 7   witnesses.
 8            The issue with that is that if the Court allows any
 9   404(b) witnesses to testify, we have rebuttal witnesses that we
10   then have to subpoena and get them here.
11            THE COURT:  I do not -- I think your motion was called
12   something else.  I do not remember anything called 404(b).
13   Maybe I am wrong.
14            MR. SOTOS:  I thought No. 18 was --
15            MR. GIVEN:  No. 18.
16            MR. SOTOS:  --- about 404(b) witnesses.
17            And, I guess, I am --
18            THE COURT:  Is that the City's?
19            MS. ROSEN:  No, the individual defendants'.
20            MR. SOTOS:  No, that is the individual defendants'.
21            MR. GIVEN:  No.
22            THE COURT:  Oh, oh, oh.
23            MR. SOTOS:  I am not trying to raise it, to be argued
24   now or anything.  I am just saying in terms of your priorities,
25   the sooner we get a ruling on that, the better it would be so
```

1   that we can contact rebuttal witnesses.  Because I think they

2   have listed eight or nine.  And I don't know whether the Court

3   is going to allow any of them.

4           But to the extent that it does, we are going to have

5   to jump through some hoops to get people here to rebut.

6           MR. LOEVY:  Your Honor?

7           THE COURT:  Well, I have told you what I can do.  I

8   mean, I am going to rule on anything I can when I have got the

9   responses.

10          And if I need a reply, I am going to wait for the

11  reply.  I cannot do anything else.

12          MR. SOTOS:  No, that is fine.

13          I guess I was just trying to move that one to the top

14  of the list because of the concerns it would create.

15          MR. LOEVY:  You guys shouldn't have made it No. 18,

16  then.

17          MR. SOTOS:  Fair point.

18          THE COURT:  Okay.  Anything else?

19          MS. ROSEN:  Do you want us to file the revised Agreed

20  Statement of the case?

21          THE COURT:  Yes, yes, yes, hopefully.

22          Let's see.  Is there anything else, in terms of jury

23  selection, that we need to do?

24          Do I have -- I have not even looked at the Pretrial

25  from beginning to end, but do I have -- a list of all of the

1    lawyers who are going to be participating in the case?

2            And I need --

3            MS. ROSEN:  No.

4            MR. ART:  No, no, you don't.

5            We will provide it.

6            MS. ROSEN:  We'll do that.

7            THE COURT:  Okay.  I need that.

8         But I also need -- and I know you cannot get it to me

9    yet, but I need -- to have a list of all of the witnesses

10   and/or involved people.

11           Now, I am going to put it in those terms.  So, the

12   fact that the person is not called, does not matter.

13           MR. LOEVY:  Right.

14           THE COURT:  I just need to qualify this jury, so that

15   if they know anybody who is going to be prominently mentioned,

16   I can get rid of them.  Okay?

17           MS. ROSEN:  Okay.

18           MR. ART:  Your Honor, do you want us to re-file jury

19   instructions when we solve our numbering issue?

20           THE COURT:  Yes, please.

21           MR. POLICK:  Judge, in terms of just your ground rules

22   here, are there -- is there -- anything reasonable I should be

23   aware of, like are we confined to the podium or are we free to

24   move about the courtroom?

25           Are there any specific dos and don'ts we should know

1    of, just in terms of trying a case in your courtroom?

2           THE COURT:  Yes, I am not very big on dos and don'ts.

3           So, you know, for instance, I would just assume -- if

4    you are in agreement -- to not have you ask permission

5    constantly to approach witnesses, to show them documents.  I

6    mean, it is just a waste of time.

7           If something gets out of hand, I would rather have

8    somebody raise it to me at that point.

9           In terms of the podium, our biggest problem in voir

10    diring in this courtroom -- and they just did some kind of new

11    wiring -- I don't know if it is improved.

12           Joene, let's go off the record for a second.

13           (Discussion had off the record.)

14           THE COURT:  The problem is, when you are voir diring,

15    it is really hard to get any spontaneity going if there is this

16    hand mike that has to be passed around.

17           So, the one thing I do like is if you can make sure it

18    is audible to the court reporter at all times.

19           And, you know, I may ask the jurors to stand when they

20    are speaking, to the extent possible, because the acoustics are

21    so bad in here.

22           There are mikes in the jury box, but they have never

23    worked very well.  So, that is the biggest problem I have.

24           In terms of whether you need to be at the podium or

25    not, I do not care.

```
 1              It is just that -- well, the podium has the mike,
 2   right?  And if you are going to walk around, just you have got
 3   to make sure that this is audible both to me and to the court
 4   reporter at all times.  Other than that, I do not care.
 5              If we can agree -- how many exhibits are agreed and
 6   how many are exhibits are not agreed?
 7              Can we do something so that we do not have to move for
 8   the admission of everything?  That is a huge time-waster.
 9              MR. LOEVY:  Usually, it sort of works out.  We have --
10   we are very at issue on these exhibits.
11              THE COURT:  Okay.
12              MR. LOEVY:  The amount of objections on them.
13              THE COURT:  And some of the rulings that you are
14   waiting for will resolve some of those issues.
15              MS. ROSEN:  Yes.
16              THE COURT:  Yes, okay.
17              Any other dos and don'ts?
18              (No response.)
19              THE COURT:  Okay.
20              My biggest do or don't is that when I tell the jury
21   that we are going to take a ten-minute break or a one-hour
22   break for lunch, at the end of that amount of minutes, I want
23   this jury back in the box.
24              So, if, before a recess, you see some huge problem
25   coming, you need to let me know.  Because I am not going to
```

1    take -- have them sit back there and wait for me.

2            Let's see.  There was another -- yes?

3            MR. LOEVY:  We thought of one.

4            There are three, technically, sets of lawyers.  And we

5    would object to tag-team cross-examination.

6            While everybody can do what they want, we would hope

7    that you would impose some kind of order, like, not to

8    re-double "X" areas that have already been covered; and, if

9    they, maybe, want to divide it, so they don't duplicate areas

10   that have been covered.

11           THE COURT:  Well, I think that is fair, that we do not

12   hear the same cross-examination from two sets of lawyers.

13           MS. ROSEN:  We weren't planning -- we are planning to

14   do that.

15           MR. SOTOS:  We will agree to that.  We will work that

16   out.

17           MS. ROSEN:  Yes.

18           MR. LOEVY:  That could help us --

19           THE COURT:  Yes.

20           MR. LOEVY:  -- fit in this time allotment.

21           THE COURT:  Yes.

22           Let me see.  I had another one.  What was that?

23           I let the jurors take notes.

24           MR. LOEVY:  Questions?  Do you say they --

25           THE COURT:  You know, I like to let them ask

1   questions, but I need to have basic agreement from the lawyers.

2          The way I do questions is -- and, you know, I guess

3   part of the problem in a case this long is that they are going

4   to be asking questions, anticipating things that are going to

5   be answered in the course of things.  So, it is kind of a

6   problem, I think, in a case like this.

7          I do not have any problems with it.  The way I do it

8   is I let them write down their questions and, then, I meet with

9   the lawyers privately and go over the questions with you and

10  ask anything that I think is okay.

11         But I think in a long trial like this, especially with

12  Fifth Amendment issues, we may be biting off more than we can

13  chew.

14         MR. SOTOS:  Agreed.

15         MR. GIVEN:  It also adds a lot of time.

16         THE COURT:  It adds a lot of time, yes.

17         MR. LOEVY:  Plus, they are always so wacky -- the

18  questions -- that I --

19         THE COURT:  Not -- you know, not -- always.

20         MR. POLICK:  Not all.

21         THE COURT:  I have never had a problem with wacky

22  questions.  But I do think that they are going to want to know

23  a lot about this case, that they will probably hear --

24         MR. LOEVY:  Right.

25         THE COURT:  -- if they just wait.

```
 1            I am sorry that I had something else in my mind and it

 2   has gone away, but I will let you know.

 3            Oh, I let the jurors -- I let the jurors -- bring in

 4   bottled water, but nothing else.

 5            It goes for you, too.

 6            Let's see.  Anything else?

 7            I do not want to waste anybody's time, but I am not

 8   very big -- I am just not very big -- on rules.  The fewer

 9   formalities we can get rid of, the happier I am.

10            Okay.  I guess we will have another conference.  So,

11   if anything else comes up, we can talk about it.

12            And Marlan will be in touch with you all.

13            And thank you all.

14            And anything you can get agreed, please.  But,

15   remember, at the end of three weeks, I disappear.

16            MR. LOEVY:  Thank you, Judge.

17            MR. SOTOS:  Thank you, Judge.

18            MS. ROSEN:  Thanks, Judge.

19            MR. GIVEN:  Thank you, Judge.

20            MR. BOWMAN:  Thank you.

21            THE COURT:  Well, you know, you might be having a

22   great time, but I will tell you I will not be.

23            (Brief pause.)

24            THE COURT:  One more thing, if you are not all gone.

25            We should probably get some kind of a very modest
```

1    questionnaire to the jurors before we begin the voir dire, to

2    get rid of anybody who has got non-refundable plane tickets

3    before the end of three weeks.  Okay?

4            MR. LOEVY:  Fair enough.

5            THE COURT:  And you might want to add if anybody works

6    for the City.

7            I mean, I am just -- two or three things that we could

8    get, so we can get people out of here before we question them.

9    Okay?

10           MS. ROSEN:  Okay.

11           MR. LOEVY:  Okay.

12           MR. ART:  Okay.

13           MR. POLICK:  All right, Judge.  Thank you.

14                        *   *   *   *   *

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
16

17   /s/ Joene Hanhardt              May 16, 2018
     Official Court Reporter
18

19

20

21

22

23

24

25