UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUES RIVERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-CV-04428 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| REYNALDO GUEVARA et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

In this civil rights action brought under state law and 42 U.S.C. § 1983, plaintiff Jacques Rivera has sued the City of Chicago ("the City") and 12 individual former Chicago police officers ("officer defendants") for, among other things, allegedly fabricating evidence and suppressing favorable evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See* Slip Op. at 11, ECF No. 373 (May 11, 2018) (identifying defendants); Order 4 n.2, May 17, 2018, ECF No. 436 (clarifying status of two parties). Rivera's claims stem from his incarceration for the 1988 murder of Felix Valentin ("Valentin") and the later recantation of the sole known eyewitness to Valentin's shooting, Orlando Lopez ("Lopez"). On May 11, 2018, the court granted partial summary judgment for the defendants and determined that a trial was necessary on the surviving claims ("summary judgment opinion"), ECF No. 373 (cited in this order as "Slip Op."). This order assumes familiarity with the facts and analysis in the summary judgment opinion. *See also* Order, May 17, 2018, ECF No. 436 (further clarifying summary judgment opinion).

Before the court is defendants' motion to bifurcate filed after the summary judgment opinion was entered. In this motion, defendants propose holding a two-phase trial. In the first

phase, the jury would be asked to decide the pending constitutional and state law claims against the officer defendants. Then, if necessary, the parties would try Rivera's claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691–95 (1978), against the City. *See generally* Slip Op. at 71 (discussing *Monell* principles). Ordinarily,[1] *Monell* liability cannot be imposed on a municipality without an underlying constitutional violation. *E.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (*citing Tesch v. Cty. of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998)).

Also, the possibility of splitting the trial into separate phases for compensatory and, if needed, punitive damages came up for the first time at the pretrial conference held May 15, 2018. *See* Tr. 57:6–63:9, ECF No. 438. The parties conferred about this proposal and advised the court in a statement filed May 17, 2018, that they reached an impasse. As the court directed, the statement sets forth the parties' positions and cites authority.

## Standard for Ordering Separate Trials

The Federal Rules of Civil Procedure allow the court to order separate trials "where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008); Fed. R. Civ. P. 42(b). The court looks to the case's "peculiar facts and circumstances" and weighs "considerations of convenience, economy, expedition, and prejudice." *Houskins*, 549 F.3d at 495; *see also Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)) (bifurcation may not impinge on Seventh Amendment rights).

---

[1] As defendants acknowledge, the Seventh Circuit recognized an exception to the general rule in *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). Mot. to Bifurcate 9. Defendants assert that this case does not involve a *Thomas*-like situation. *Id.* Rivera disagrees vehemently in his response. *See* Resp. to Mot. to Bifurcate, ECF No. 431 at 4–7. The court implies no view on the *Thomas* question at this juncture because doing so is unnecessary to a decision on the motion to bifurcate. The court also need not delve into Rivera's alternative Seventh Amendment argument because the court resolves the instant motion on prejudice and judicial economy grounds. *See id.* at 8 n.4.

2

### **Bifurcating Individual Liability and *Monell* Issues**

Citing the proposed pretrial order, defendants tout the number of witnesses and number of pages of exhibits that they say will be relevant solely to *Monell* issues. *See* Mot. to Bifurcate 1–2, ECF No. 392. Stratospheric page and witness counts do little on their own to inform the court's decision on bifurcation, however, because counting pages and witnesses can be misleading. Numbers alone do not give the court much information about what really matters— how those witnesses and exhibits will affect the trial. These could be one-hour witnesses, or their testimony could take days. Does counsel believe that the witnesses will need to walk through large portions of the many pages of exhibits to authenticate or explain them? Defendants do not say.[2] *See* Mot. to Bifurcate 1–2.

Defendants tell the court that they have filed motions in limine seeking to exclude much of the *Monell*-related evidence, and raise the possibility of saving judicial resources by avoiding work on those motions if they win in the first phase. *Id.* at 3, 4–5. Judicial economy is a sufficient reason to order separate trials under Rule 42(b). *Houseman*, 171 F.3d at 1121 (citing *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983)). The savings of work would be illusory unless the *Monell* second phase is delayed. Given that this case is expected to take over two weeks to try, the jury would either have to be recessed while the court addressed the *Monell*-related motions in limine, or a new jury would have to be empaneled later. The first option seems unworkable, and with only two weeks until trial, the court would be derelict in its duties if it did not begin work on the *Monell*-related motions in limine (which raise numerous challenges to expert opinions) before the end of the proposed first phase. Indeed, the

---

[2] In his response, plaintiff asserts that "there is zero chance that all of the witnesses and exhibits on the final pretrial order will be used." Resp. to Mot. to Bifurcate 7 n.3. The court has admonished counsel that the eve of trial has arrived, so it is time to move from the maximal to the realistic to obtain a realistic trial plan. The court repeats that admonition here. This case will not go to trial as scheduled without a plan that leaves this court with reasonable certainty that it is manageable for all concerned.

court has already done so, as the minute entry entered May 17, 2018, demonstrates, *see* ECF No. 434.

Speaking of experts, the court would be remiss if it did not note that several of the parties' experts express opinions relevant to *Monell* as well as what allegedly happened during the Valentin investigation through Rivera's trial, so bifurcation will drive up the parties' expert costs and further inconvenience the witnesses. The court does not know what plans the experts have made in advance of trial, but it seems fair to infer that those who do not live in the Chicago area have not made plans to come here twice. Plaintiff tells the court that this could happen for fact witnesses as well because he contends that they would have to testify in the first phase and return in the second to testify on how the City's alleged widespread practices affected their actions. *See* Resp. to Mot. to Bifurcate 8, ECF No. 431. Without a reply, a trial plan, or the attorneys' intimate knowledge of what the witnesses are expected to say, the court has no definitive way to test this assertion, though it seems consistent with the summary judgment arguments and record.

Returning to the costs and benefits of holding a bifurcated trial, if a new jury must be empaneled, it will need to be educated about the underlying facts with evidence the first jury heard. Who knows how long that will take? Defendants do not attempt to analyze the issue. And of course, not only will the court and the parties' time be consumed by a second round of jury selection, but additional members of the public will also be summoned away from their jobs and lives to participate in voir dire. Defendants do not weigh the costs and benefits of these possibilities. *See* Mot. to Bifurcate 2–5.

Defendants also argue that they will be prejudiced if the trial is not bifurcated. *Id.* at 5–8. They point to two specific possible sources of prejudice.[3] First, the evidence of other alleged instances of failing to document lineups in which a filler is picked will, they argue, confuse the jury and prejudice them because Lopez has maintained that he picked Rivera, not a filler. Mot. to Bifurcate 7. Second, defendants maintain that introducing in the first phase hundreds of investigative files evaluated by Michael Brasfield risks unduly prejudicing the jury. Brasfield reviewed those files to form his opinion about the existence of a widespread practice discussed in Part IV.C of the summary judgment opinion—what Rivera calls the "street files" theory.[4] Defendants worry the files will overwhelm the jury and risk a finding of liability based on their sheer volume because, to put it colloquially, where there is smoke, there must be fire. *See* Mot. to Bifurcate 7–8.

Trying *Monell* claims and claims against individual defendants together always presents a risk of prejudice because, "[b]y their very nature, *Monell* claims normally invite the use of evidence of other instances where municipality employees violated an individual's constitutional rights." *Ackerman v. Allen*, No. 16 C 6199, 2017 WL 1536447, at *5 (N.D. Ill. Apr. 27, 2017) (citing *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 934 (N.D. Ill. 2012)); *see also Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."). This court has repeatedly recognized the potential prejudice of trying

---

[3] Rivera discusses a third source in his response, the introduction of similar acts evidence under Federal Rule of Evidence 404(b). *See* Resp. to Mot. to Bifurcate 9–10. Defendants do not raise this issue in their motion to bifurcate, so the court does not address it. *See generally Awalt v. Marketti*, 75 F. Supp. 3d 777, 786 (N.D. Ill. 2014).
[4] The use of this term is the subject of the City's fourth motion in limine, ECF No. 383. The court intimates nothing about the motion's merits in this order.

5

*Monell* and individual § 1983 claims together. *See, e.g.*, *Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011); *Taylor v. Kachiroubas*, No. 12 C 8321, No. 12 C 8349, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013). Nevertheless, at least where city officials claim to be following official policy, evidence of the existence of widespread practices is also relevant to the individual claims. *Coleman v. City of Peoria*, No. 1:15–cv–01100–SLD–TSH, 2016 WL 5497363, at *6 (C.D. Ill. Sept. 27, 2016) (denying motion to bifurcate in part because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices").

While bifurcation always completely avoids the possibility of this kind of prejudice, the law presumes that juries follow limiting instructions, and they can be properly used to avoid prejudice and save time and expense at trial. *Ackerman*, 2017 WL 1536447, at *5 (citing *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 870–71 (7th Cir. 1994)). In *McLaughlin*, for example, the Seventh Circuit affirmed a decision not to bifurcate compensatory and punitive damages in a breach of contract case because the evidence overlapped and the jury was presumed to follow limiting instructions. 30 F.3d at 871; *see also United States v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. 2014). With so undeveloped a record on the costs and benefits of bifurcation, the court concludes, on the record available on this last-minute motion, that the risk of undue prejudice to defendants from including the *Monell* claims can be adequately mitigated through limiting instructions and rulings on motions in limine. The parties must determine the proper form of limiting instructions well in advance of trial, so they had better get started.

Regarding the possible prejudice flowing from the *Monell* lineups theory, the court concluded at summary judgment that a genuine fact dispute over who Lopez picked exists. *See* Slip Op. at 30–32. The evidence from which the jury could find Lopez picked a filler at the first

6

lineup requires inferences from circumstantial evidence of the subsequent conduct of the Valentin investigation, *see id.* at 32, but the propriety of drawing inferences from the circumstantial evidence will not, as far as the court can discern, be the subject of the expert opinions, if admitted, on the *Monell* failure to document lineups theory. And defendants identify no authority for the proposition that the court should weigh the evidence when conducting a bifurcation analysis. Mot. to Bifurcate 7; *see also Bonds v. City of Chicago*, No. 16-CV-5112, 2018 WL 1316720, at *3 (N.D. Ill. Mar. 14, 2018) (resolving issue against the City on motion to bifurcate because "[t]he City asserts the proposition as an *ipse dixit* in its motion").

Nor do defendants explain why limiting instructions could not dispel any confusion. *See* Mot. to Bifurcate 7. As the parties moving for bifurcation, defendants bear the burden of persuasion. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 837 (N.D. Ill. 2006) (citing *Real v. Bunn–O–Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000)). The fact that no documentation of a first lineup exists was undisputed at summary judgment, so the expert testimony and the issue of whether the first lineup occurred appear to involve different types of inferences and proof. In this situation, the court does not see how a limiting instruction would be insufficient to cure any prejudice.

This brings the court to the second source of potential prejudice defendants identify in the instant motion, the investigative files Brasfield analyzed. Defendants' argument here partially rests on the premise that plaintiff must prove that the withheld evidence was material in the *Brady* sense, *see* Mot. to Bifurcate 7–8, but the court rejected that proposition at summary judgment. Slip Op. at 87–88 (citing *Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 4553411, at *3 (N.D. Ill. Oct. 12, 2017)) (other citations omitted). Defendants generally raise concerns about whether all of the different files here—various Chicago Police Department files

kept in warehouses and filing cabinets, criminal defense attorneys' files, and files maintained by the Cook County State's Attorney's Office—are in the same condition as they were during the prosecution. But those concerns apply equally to the files produced regarding Rivera's case. That is, defendants' challenges to the adequacy of the proof of suppression in Rivera's particular case and their challenges to Brasfield's analysis raise similar alleged systemic concerns, so Brasfield's analysis may well be admissible on individual liability. *See Coleman*, 2016 WL 5497363, at *6. With limiting instructions, the court finds the potential prejudice and confusion of the jury from admission of the investigative files to be manageable.

### **Bifurcating Compensatory and Punitive Damages**

Under Illinois law, the City must indemnify the officer defendants for compensatory damages, but Illinois prohibits the City from indemnifying the officer defendants for punitive damages. 745 ILCS 10/9-102(a), 10/2-302 (West 2018) (municipal employee must be "acting within the scope of his employment"); *Winston v. O'Brien*, 773 F.3d 809, 813–15 (7th Cir. 2014) (holding that indemnification for compensatory damages is mandatory but indemnification for attorney fees is discretionary). Ordinarily, the jury should not hear evidence of an indemnification obligation, *see* Fed. R. Evid. 411, but evidence that a defendant will likely be indemnified becomes relevant when an individual defendant opens the door in § 1983 litigation by testifying that, as is the defendant's right, he has limited resources to satisfy any punitive damages award. *See Lawson v. Trowbridge*, 153 F.3d 368, 380–81 (7th Cir. 1998); *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030 (N.D. Ill. 2011) (Gottschall, J.).

At the pretrial conference held May 15, 2018, the parties discussed the possibility of bifurcating punitive damage issues on the presumption that the officer defendants will open the

door by testifying about their ability, or rather their inability, to pay punitive damages at trial. *See* Tr. at 57:6–63:9, ECF No. 438. After conferring following the pretrial conference, Rivera opposes bifurcating punitive damages issues while defendants favor it. Defendants apparently assume that the door will be opened at trial, for they argue that bifurcation would best balance the City's interest in avoiding prejudice from the jury knowing that a "deep pocket" is available for compensatory damages awarded against the officer defendants against the officer defendants' right to present evidence that they have modest means to pay punitive damages. *See* Statement Regarding Bifurcation 3–4, ECF No. 437. Rivera raises his own concerns regarding bifurcation. *See id.* at 1–3. He cites a case for the proposition that bifurcation is generally disfavored. *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000). He also asserts that the trial will be prolonged unnecessarily and witnesses will be inconvenienced because certain evidence relevant to punitive damages would also be relevant to his claims against the officer defendants. *See* Statement Regarding Bifurcation 2. Finally, Rivera raises concerns about potential prejudice should the jury learn that it will be discharged more quickly because a punitive damages phase would be unnecessary if a defense verdict is returned in the first phase. *See id.* at 2–3.

The cases cited by the parties provide limited help in resolving this issue. The City has referred to litigation before Judge Grady to demonstrate that bifurcation of compensatory and punitive damages phase is workable. *See* Tr. at 57:20–24, 58:24–59:5. But workable does not equal desirable. The parties agreed to bifurcation in that case. Minute Entry, *Johnson v. Guevara et al.*, No. 05-CV-1042, EC F No. 213 (N.D. Ill. Apr. 29, 2009). Similarly, this court granted an unopposed motion to bifurcate punitive and compensatory damages in *Betts v. City of Chicago*, and so the court granted a motion in limine preventing presentation of indemnification evidence unless the door was opened in the trial's first phase. 784 F. Supp. 2d at 1030; *see also*

*Charles v. Cotter*, 867 F. Supp. 648, 663 (N.D. Ill. 1994) (apparently single trial; plaintiff did not oppose motion in limine to bar references to the City's indemnity obligations).

The City argues that if the jury learns of the City's indemnification obligations, it may improperly increase compensatory damages because the City has deeper pockets than the officers. *See Lawson*, 153 F.3d at 379 ("In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." (citation omitted)). The case law the City cites strikes the balance in the ordinary case where ability to pay is not at issue, however. Once the defendant opens the door by making inability to pay an issue, the prejudice rationale "dissolve[s]." *Id.* Indeed, the Seventh Circuit in *Kemezy* ordered a new trial because indemnification evidence should have been introduced after the defendant opened the door to it. 79 F.3d at 37. The whole point of this rule is that when the defendant raises inability to pay as a defense, the jury deserves to know that a deeper pocket is available. *See id.* Every insurer, or indemnitor like the City here, would be prejudiced in a certain sense when the door is opened in the sense that the insurer might have to cough up more than it would have paid if the jury had been left with the misimpression that the defendant could not afford the damages, but the cases teach that the evidence must be admitted anyway to avoid misleading the jury to underpunish the defendant. *See Lawson*, 153 F.3d at 379–80; *Kemezy*, 79 F.3d at 37. The City cites no authority to show that it deserves some special solicitude as the officers' indemnitor here. *See* Statement Regarding Bifurcation 3–4. Unitary trials were held in *Lawson* and *Kemezy*, so they strike the balance in favor of disclosure in a single proceeding. The City has not shown that it will be unduly prejudiced by a single trial of compensatory and punitive damages. *See Betts*, 784 F. Supp. 2d at 1030–31 (explaining that if the door is opened, the City and officer

10

defendants "cannot have it both ways. . . . [T]here is no danger that compensatory damages will be inflated because the jury knows the defendants will be indemnified, since compensatory damages will be limited to actual losses.") (citing *Mohr v. Chi. Sch. Reform Bd. of Trs.*, 155 F. Supp. 2d 923 (N.D. Ill. 2001)); *Frost v. Teco Barge Line, Inc.*, No. 04-CV-752-DRH, 2007 WL 420152, at *7 (S.D. Ill. Feb. 5, 2007) (recognizing that evidence of payments from collateral source would be prejudicial but holding that it would not be unduly so on the case's facts).

Meanwhile, Rivera's contentions that some of the evidence would overlap and require witnesses to be recalled if compensatory and punitive damages were bifurcated stands unchallenged. *See* Statement Regarding Bifurcation 2–3; Tr. 58:8–12. Indeed, the court has been told that some officer defendants live out of state, are very ill, and may have to travel for hours to appear by video deposition. *See* Tr. 48:25–49:1. What is more, assuming, as the parties seem to do, that the officer defendants will make their ability to pay an issue, a two-phase trial risks prejudicing plaintiff and the officer defendants by leaving the jury with an incomplete and unrealistic picture of the effects of its damages decisions. The Seventh Circuit has taken a realistic view of these issues, upholding an award of punitive damages without compensatory damages and surmising that "the jurors [may have] preferred to award a single sum under the punitive category rather than apportion between compensatory and punitive damages." *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1011 (7th Cir. 1998) (Easterbrook, J.). If the jury awards damages serially without an understanding of the indemnity rules, the officer defendants may find themselves saddled with a judgment they can never pay, and the jury's intent may be thwarted. With that danger in mind and with the understanding that the case law holds that the City will not be unduly prejudiced if the door is opened, the court finds that the balance of potential harms to the parties here favors a single trial on damages.

11

To be clear, the court will not allow indemnity evidence until the door has been opened to it. *See Lawson*, 153 F.3d at 379. The parties must therefore refrain from referring to the City's indemnity obligations in their opening statements at trial.

## **Conclusion**

For the reasons stated, defendants have not carried their burden to show that ordering separate trials of *Monell* and individual § 1983 claims is warranted. Their motion to bifurcate, ECF No. 392, is therefore denied. Defendants have also failed to demonstrate that the trial of compensatory and punitive damages should be bifurcated.

Date: May 18, 2018  /s/
Joan B. Gottschall
United States District Judge