# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUES RIVERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-CV-04428 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| REYNALDO GUEVARA et al., ) | |
| ) | |
| Defendants. ) | |

### RULINGS ON DEFENDANT GUEVARA'S MOTION IN LIMINE NO. 19 TO BAR AND/OR LIMIT EVIDENCE OF GUEVARA'S INVOCATION OF FIFTH AMENDMENT RIGHTS AND THE CITY'S MOTION IN LIMINE NO. 10 TO ADMIT THE DEPOSITIONS OF EDWARD MINGEY AND BAR ANY EVIDENCE OR ARGUMENT THAT HE INVOKED HIS FIFTH AMENDMENT RIGHT TO SILENCE

Two motions in limine before the court raise related issues. Defendant Reynaldo Guevara ("Guevara") moves to bar any reference to his invocations of his Fifth Amendment right not to be compelled to be a witness against himself, and defendant Edward Mingey ("Mingey") moves to preclude the same sort of evidence and admit his prior deposition testimony at which he answered questions about the investigation of the murder of Felix Valentin ("Valentin"), the subject of this this suit. As the court explained at summary judgment,

> In a criminal case, the jury cannot draw an adverse inference from the defendant's invocation of his Fifth Amendment right not to be compelled to be a witness against himself. *Griffin v. California*, 380 U.S. 609 (1965). The rule against adverse inferences does not hold in a civil case, however. The Supreme Court held in *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." *See also Hillman v. City of Chicago*, 834 F.3d 787, 792 (7th Cir. 2016) (collecting Seventh Circuit authority to the same effect). The Seventh Circuit has "interpreted *Baxter* to mean that the negative inference against a witness who invokes the Fifth Amendment in a civil case is permissive, not required." *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir.

> 2008) (citing *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993)). Here permissive means that "[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995); *accord id.* at 391–92; *National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 930–32 (7th Cir. 1983); *see also Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n.5 (1977).

Slip Op. at 40–41, ECF No. 373 (N.D. Ill. May 11, 2018).

### Guevara's Motion in Limine No. 19

Guevara makes an argument in his motion in limine that he did not make at summary judgment. He says that he "he believes there is an ongoing criminal investigation surrounding the subject of his testimony." Guevara MIL No. 19 at 3, ECF No. 412. He therefore asserts that his invocation of his Fifth Amendment rights at his deposition is unrelated to his guilty conduct in the investigation and prosecution of plaintiff for the murder of Felix Valentin. *See id.* at 2–3.

But in the Seventh Circuit case Guevara cites, the witness ceased to rely on his Fifth Amendment privilege after the criminal investigation concluded. *See Evans v. City of Chicago*, 513 F.3d 735, 740 (7th Cir. 2008). The district court cases Guevara cites turned at least in part on the unsettled nature of the rule at summary judgment, and each involved a situation in which the witness invoked the Fifth Amendment privilege when all parties agreed that the witness was the subject of an active criminal investigation. *See Genova v. Kellogg*, No. 12-CV-3105, 2015 WL 3930351, at *5 (N.D. Ill. June 25, 2015); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 919 (N.D. Ill. 2013). As plaintiff points out in his response, Guevara has offered no evidence that he is or was the subject of an active criminal investigation related to the Valentin investigation (or to anything else), so the court need not decide whether it agrees with the reasoning of cases like *Genova*. The court acknowledges counsel's bare Rule 11 representation in Guevara's motion in limine, but the argument is undeveloped, even in his reply. Nonetheless,

despite Rivera raising the issue in his response, Guevara's reply does not explain what basis he has for believing that he is or could be the subject of a criminal investigation. Without something more concrete, Guevara has not laid an arguable predicate for a finding that he is the subject of a criminal investigation. "The party attempting to invoke the privilege bears the burden of establishing its foundation." *Shakman v. Democratic Org. of Cook Cty.*, 920 F. Supp. 2d 881, 888 (N.D. Ill. 2013) (citing *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976)) (other citations omitted). Guevara has not discharged his burden here.

That said, Guevara's approach to this issue appears to at odds with the cases on the proper scope of the Fifth Amendment privilege and a trial judge's duty to assure that it is being properly used. *See Hoffman v. United States*, 341 U.S. 479, 486–87 (1951). In his reply, Guevara cites a case reasoning that because the adverse inference when a witness invokes the Fifth Amendment in a civil case is permissive, rather than mandatory, the jury must be allowed to entertain the possibility that he has invoked his Fifth Amendment rights due to the existence of a criminal investigation, rather than because the answer would tend to incriminate him. *See Ruiz-Cortez v. Lewellen*, No. 11 C 1420, 2017 WL 2080300, at *12 (N.D. Ill. May 15, 2017). The Supreme Court has spoken in terms of the answer's tendency to incriminate when describing the Fifth Amendment privilege's proper scope. A witness invoking the privilege, the Court has held, "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him in a subsequent criminal proceeding." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984) (quotation and emphasis omitted); *see also United States v. Chapman*, 765 F.3d 720, 730 (7th Cir. 2014) (citing *United States v. Longstreet*, 567 F.3d 911, 922 (7th Cir. 2009)); *In Re High Fructose Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002) (collecting additional

cases). Hence, if a witness testifies, as in *Ruiz-Cortez*, 2017 WL 2080300, at *11, that he is invoking his Fifth Amendment privilege on the advice of counsel due to a pending investigation, the attorney must have had a sufficient basis for giving that advice, and the attorney's inquiry would involve the same question of whether a rational basis exists to believe the answer would tend to incriminate the witness. *See Evans*, 513 F.3d at 743–44, 747 (emphasizing lawyers' role, and potential testimony about, the basis for advising witnesses to invoke the Fifth Amendment privilege).

Nor does the court grant Guevara's request to allow him to testify by stipulation or jury instruction. Permitting a witness invoking the Fifth Amendment privilege to avoid coming to the stand is appropriate in criminal cases like the ones Guevara cites. *See, e.g.*, *United States v. Mabrook*, 301 F.3d 503, 507 (7th Cir. 2002). But in this civil action, excusing Guevara from testifying would lead to the reversible error that occurred in *Hillman v. City of Chicago*, 834 F.3d 787, 792–93 (7th Cir. 2016); *see also* Slip Op. at 44, ECF No. 373 (making this point). In *Hillman*, the Seventh Circuit held that a new trial was required because the trial court granted a motion in limine "wholly excus[ing]" two witnesses "from testifying based on blanket assertions of their Fifth Amendment privilege against self-incrimination." 834 F.3d at 793 (citations omitted). Rivera has a right to let the jury hear Guevara (presuming he does) invoke the Fifth Amendment on the stand. As *Hillman* recognizes, stipulations do not equate to live testimony. *See also Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 2863259, at *20–22 (N.D. Ill. July 11, 2012).

Worrying that Rivera's counsel will manufacture adverse inferences by asking questions for which there is no independent evidentiary basis at trial, Guevara suggests that plaintiff be required to submit a list of questions in advance. That seems counterproductive. After reviewing

4

Guevara's deposition at summary judgment, the court is convinced that the parties have a good idea of what Guevara will be asked. Guevara argues that fronting the questions will simplify his testimony by eliminating potentially lengthy objections at trial. If the conduct of this litigation so far is any guide, the more likely outcome will be double litigation of the objections, once before trial and again at the trial where defendants will argue that the pretrial ruling should be reconsidered in light of the tesitmony at trial.

### City's Motion in Limine No. 10

The City raises a related issue in its tenth motion in limine, ECF No. 390. During discovery in this case, Mingey answered questions at two depositions about the Valentin investigation. As more fully discussed in this court's order entered May 16, 2018, ECF No. 427 at 1, Mingey later invoked his Fifth Amendment privilege in answer to questions about the Valentin investigation at a third deposition taken, in April 2018, during discovery in another civil case. The City anticipates that Mingey will invoke his Fifth Amendment privilege if called at trial, and so it moves to admit his deposition testimony and preclude evidence or argument that Mingey remained silent. ECF No. 390 at 1.

Rivera cites *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001), but that case involved Rule 403 balancing in the reverse situation. In *Harris*, the defendant invoked his Fifth Amendment privilege during discovery, waived that right shortly before trial, and tried to prevent the jury from hearing about this invocation of the privilege during discovery. *See id.* The *Harris* court explained that whether the jury should hear about defendant's reliance on the Fifth Amendment depended on the timing of the defendant's use and abandonment of the privilege. *See id.* If the defendant effectively used the privilege to deny the plaintiff discovery and then changed his tune at trial, the defendant should not be permitted to "have it both ways." *Id.* at 754

(quoting *McGahee v. Massey*, 667 F.2d 1357, 1362 (11th Cir. 1982)). Here, in contrast, Mingey answered questions during discovery and first invoked his Fifth Amendment privilege a little more than a month before trial. *Harris* does not, therefore, speak directly to the situation presented here.

In the situation presented here, where the defendant has recently invoked his Fifth Amendment privilege after earlier testifying to a partial lack of recollection, the plaintiff may have some fact discovery from the witness, contrasting *Harris*, but the later Fifth Amendment invocation is nevertheless highly probative. The City seems to forget that, as already explained, Mingey's later invocation has independent probative value in a civil case, as even the only case the City cites shows. The City relies on oral rulings on motions in limine of Judge Leinenweber at a hearing held October 2, 2017, in *LaPorta v. City of Chicago*, 14-CV-9665 (N.D. Ill.). *See* Tr. of Hr'g, ECF No. 390-1. As far as the court can tell from the transcript excerpt made a part of the record here, Judge Leinenweber allowed presentation of prior deposition testimony for a witness who later invoked his Fifth Amendment privilege because the plaintiff "had every motivation and opportunity to cross-examine [the officer] at his 2012 deposition" at which he apparently did not invoke his Fifth Amendment privilege. *Id.* at 19:13–15. Judge Leinenweber nevertheless rejected the defendants' arguments that telling the jury about the officer's later invocation of the Fifth Amendment was irrelevant and unduly prejudicial, concluding that the Fifth Amendment invocation was "extraordinarily relevant testimony." *Id.* at 19:25.

For essentially the same reasons, the same conclusion obtains here: Mingey's decision to invoke the Fifth Amendment is highly relevant. Indeed, because the jury may draw a negative inference from Mingey's invocation of the privilege, it potentially undermines his prior deposition testimony. *See* Fed. R. Evid. 613(b). In addition to Judge Leinenweber's decision,

6

*Hillman*, *supra*, confirms that Mingey's Fifth Amendment invocation is probative enough to warrant a new trial if the jury does not hear it.

Against this highly probative evidence, the City contends in a single sentence that it will be unduly prejudiced because the jury will unfairly impute Mingey's invocation of the Fifth Amendment at trial to the City. ECF No. 390 at 2. This argument is undeveloped. *See id.* The City does not explain why the court's instructions on *Monell*[1] liability would be insufficient to cure any potential prejudice. *See* ECF No. 390 at 2. After all, the law presumes that the jury will follow the court's instructions. *E.g.*, *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 298 (7th Cir. 2010).

Nonetheless, Mingey's two depositions taken in this case at which he answered questions without invoking his Fifth Amendment privilege will be admissible at trial for the truth of the matters asserted in his answers. The parties agree that Mingey's invocation of his Fifth Amendment rights renders him unavailable for purposes of triggering the exceptions to hearsay for unavailable witnesses. *See* Fed. R. Evid. 804(a)(1); *United States v. Shalash*, No. 11 CR 0627, 2013 WL 4820927, at *8 (N.D. Ill. Sept. 10, 2013). His deposition testimony therefore falls under the hearsay exception for prior testimony. Fed. R. Evid. 804(b)(1). The City argues that Mingey's deposition testimony is all the jury should hear, but as already explained, his anticipated invocation of the Fifth Amendment privilege will also be highly probative. So, if Mingey invokes his Fifth Amendment privilege when called at trial, the jury will hear his live testimony and his prior deposition testimony about the Valentin investigation, and the jury will be instructed that it can consider Mingey's deposition testimony for the truth of the matters asserted.

---

[1] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

7

Rivera argues that the City will confuse and prejudice the jury by cherry picking excerpts from Mingey's depositions. *See* Fed. R. Evid. 403. After reviewing the materials Rivera cites, the Court believes that Rivera's opportunity to place Mingey's deposition testimony in context on redirect will sufficiently address Rivera's concerns.

\* \* \*

For the reasons stated and subject to the foregoing rulings, Guevara's Motion in Limine No. 19, ECF No. 412, and the City's Motion in Limine No. 10, ECF No. 390, are denied. Plaintiff may call Guevara and Mingey and elicit relevant testimony, for which a proper foundation is laid, invoking their Fifth Amendment privilege. If Mingey invokes his Fifth Amendment privilege, he will be considered unavailable under Rule 804(a), and provided the requirements of Rule 804(b)(1) are met, his prior deposition testimony will be admissible.

Date: May 29, 2018 /s/
Joan B. Gottschall
United States District Judge