```
 1                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     JACQUES RIVERA,                    )   Docket No. 12 C 4428
 4                                      )
                        Plaintiff,      )
 5                                      )
               vs.                      )
 6                                      )
     REYNALDO GUEVARA, et al.,          )   Chicago, Illinois
 7                                      )   May 24, 2018
                        Defendants.     )   10:00 o'clock a.m.
 8

 9          TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
               BEFORE THE HONORABLE JOAN B. GOTTSCHALL
10

11   APPEARANCES:

12
     For the Plaintiff:        LOEVY & LOEVY
13                             BY:  MR. JONATHAN I. LOEVY
                                    MR. STEVEN E. ART
14                                  MR. ANAD SWAMINATHAN
                               311 N. Aberdeen Street, 3rd Floor
15                             Chicago, Illinois  60607

16
                               RODERICK MacARTHUR JUSTICE CENTER
17                             NORTHWESTERN UNIVERSITY SCHOOL OF LAW
                               BY:  MR. LOCKE E. BOWMAN, III
18                             375 E. Chicago Avenue
                               Chicago, Illinois  60611
19

20   For the Individual       THE SOTOS LAW FIRM
     Defendants:              BY:  MR. JEFFREY N. GIVEN
21                                  MR. JOSEPH POLICK
                                    MR. DAVID A. BRUEGGEN
22                             550 E. Devon Avenue, Suite 150
                               Itasca, Illinois  60143
23

24

25
```

```
 1   APPEARANCES   (Continued):

 2
     For the Defendant        ROCK FUSCO & CONNELLY, LLC
 3   City of Chicago:         BY:  MS. EILEEN E. ROSEN
                                   MS. CATHERINE M. BARBER
 4                                 MS. THERESA B. CARNEY
                              321 N. Clark St., Suite 2200
 5                            Chicago, Illinois  60654

 6
     For the Defendant        LEINENWEBER BARONI & DAFFADA, LLC
 7   Guevara:                 BY:  MR. THOMAS E. LEINENWEBER
                              120 N. LaSalle St., Suite 2000
 8                            Chicago, Illinois  60602

 9
     Transcriber:             MS. JOENE HANHARDT
10                            Official Court Reporter
                              219 S. Dearborn Street, Suite 1744-A
11                            Chicago, Illinois  60604
                              (312) 435-6874
12
                  * * * * * * * * * * * * * * * * *
13
                          PROCEEDINGS RECORDED BY
14                           DIGITAL RECORDING
                     TRANSCRIPT PRODUCED BY COMPUTER
15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  12 C 4428, Rivera vs. Guevara.

2    THE COURT:  Okay.  We have got a lot to do and I have

3 to end at noon today.  So, let me go over really quickly the

4 voir dire you have given me.

5    Oh, let's -- well, yes, let's -- do that and, then, we

6 will do the writ.

7    The plaintiffs revised proposed voir dire is fine with

8 two modest exceptions.  First of all, if you ask if they have

9 heard of Detective Guevara and they say, "Yes," I would rather

10 talk to them privately then risk tainting the pool.  And, so,

11 that is the one thing.

12    If there is a "Yes," I will definitely allow a private

13 voir dire of that person.

14    No. 2, on 21, "If you concluded, after hearing this

15 case and the Court's instructions, that the evidence justified

16 a damages award, would you have any issues with awarding money

17 damages that compensate for physical and emotional," I think

18 you probably should say, "If, after hearing the evidence and

19 the Court's instructions, the evidence justified an award for

20 physical and emotional injuries," since they may not understand

21 that we are talking about that.

22    That was all on the plaintiff's.

23    I do not have anything on the defendants'.  It is

24 fine.

25    Okay.  No. 2, this writ of habeas corpus motion, I

1   guess the question I have is I talked to the marshals.  There

2   are two ways to bring this -- to have this -- witness here.

3   One is the enormous expense -- and it is also not pleasant for

4   him -- of transporting him; and, the other way is video

5   conferencing.

6        I just thought we probably should talk about how

7   important he is and if it matters.  Because, obviously, the

8   facility has video conferencing facilities and they will make

9   him available that way, as long as we give them some notice

10  about when and where we need him.

11       The other thing, you know, normally -- I do not know

12  this person, but normally -- prisoners do not like to be hauled

13  away from their facility and transported and all that that

14  entails.

15       So, this is the plaintiff's motion.  Do you care?

16       MR. ART:  We don't.

17       THE COURT:  All right.

18       MR. ART:  Video is fine with us.

19       MR. LOEVY:  We care, but I think we should accommodate

20  the system.  It will be easier and simpler.

21       THE COURT:  All right.

22       So, we will do it by video conferencing?  Okay.

23       MS. ROSEN:  Judge, you know, we have a -- there is a

24  -- motion in limine that addresses this particular witness.  He

25  is one of the 404(b) witnesses.

1          So, depending on how the Court rules on that --

2          THE COURT:  Right.  But I think we better get this in

3     the works.  And, then, if we cancel it, it is the least thing

4     that can happen.

5          So, I will sign this, but I will tell the marshals

6     that if the video conferencing can be set up, we will give them

7     some notice.

8          I think we are going to have to -- the date today is

9     May --

10          MS. ROSEN:  24th.

11          THE COURT:  Thank you.

12          I completely lost track of time.

13          I am going to put this here (indicating).

14          Okay.  Then let's quickly go through -- I have got a

15     checklist here.

16          All right.  On the jury questionnaire, this is, I

17     think, quite problematic.  It is going to be a challenge for

18     these people.  It is going to take a lot of time.  We are

19     probably not going to get very useful answers.

20          A lot of it is covered by my initial voir dire.  I

21     just wanted to find out if there is anybody that we have got to

22     get rid of before we do a voir dire.

23          So, I was going to ask them two simple questions:

24     "Are you a full-time student -- " because I have had to get rid

25     of a lot of people based on that -- "during this period?"

1          And, No. 2:  "Do you have any non-refundable airplane

2     tickets before," whatever, like, four weeks from our start

3     date.

4          MR. LOEVY:  That works for the plaintiff.  And, then,

5     skip the --

6          THE COURT:  And, then, skip the rest.

7          MR. LOEVY:  Yes.

8          THE COURT:  And, then, I will do my normal voir dire.

9     And, then, you can do your voir dire.

10          I think that is just a lot easier than having them.

11          Because the other thing is before I start inquiring, I

12     always ask if there is anybody who has difficulty speaking or

13     understanding the English language.  And if anybody says,

14     "Yes," then we will call them up separately and inquire about

15     whether that is going to be an issue or not.

16          So, those are the three things I think we will do.

17          And I will quickly do a simple two-question

18     questionnaire that they can do in five minutes in the jury

19     room.  And, then, we will just be able to get rid of anybody

20     who is not going anywhere with us.

21          Okay.  Now, let's see what else.

22          My checklist, as usual, is lost.

23          (Brief pause.)

24          THE COURT:  Oh, here it is.

25          Okay.  The joint statement regarding the length of

1    trial, I told you what my issues are.  I am going to do my very

2    best to accommodate you, but I never would have committed to a

3    four-week trial.  And I am just going to try, you know?  If I

4    can't, I can't.

5            MR. LOEVY:  It is not going to be four weeks.

6            MS. ROSEN:  Judge -- and just for clarification --

7    when you mean, "you can't, you can't," what does that mean?

8            THE COURT:  Well, I mean that I have got health

9    problems that really exhaust me after a certain amount of time.

10   And that is why I have pretty much limited myself to one-week

11   trials.

12           I wanted to try this case.  When you said two weeks, I

13   said I could do it.

14           I do not know what is going to happen to me if we go

15   for three or four weeks, frankly.  I mean, that is -- you know,

16   it is -- unknown to you and it is unknown to me.  I am going to

17   do my best.

18           MS. ROSEN:  And, so, the concern -- just on the City's

19   side of it, of course -- is that we do not believe it is

20   realistic to believe that this case can be done in less than

21   three weeks --

22           THE COURT:  I know that.

23           MS. ROSEN:  -- based on that.

24           THE COURT:  I know that is your position.

25           MS. ROSEN:  And, Judge, just to be clear, the concern

1   that we have is we will get to some point in time in the trial

2   where you can't do it anymore.  And the City has, then,

3   expended all of these resources to try this case, that they

4   have said from the get-go they don't think can be done in four

5   weeks.

6           THE COURT:  You do not think it can be done in four

7   weeks?

8           MS. ROSEN:  No, in three weeks.  I am sorry.  I

9   misspoke.

10          THE COURT:  Well, you know, I am in unchartered

11  territory here and I think if I say, "Go away, I cannot do

12  this," I am sort of giving into fear that it might happen.

13          I do not know, because I have never pushed myself

14  that -- in a long time, I have not pushed myself.  I have not

15  tried a -- I tried a two-month trial three or four years ago;

16  but, you know, I am senior now.  I have some health issues.  It

17  is very arduous.  Okay?

18          I do not think lawyers -- it is arduous for lawyers.

19  It is arduous for judges, too.

20          I do not want to say, "Go away," at this point.  I

21  mean, I think we are all -- I feel like we are all --

22  committed.

23          I am just telling you that I am just -- all I can do

24  is my best.

25          MS. ROSEN:  And, you know, just from the City's

1    perspective, based on the fact that this City has been very

2    clear that it doesn't believe -- the City and the defendants

3    don't believe -- that this case can be done in three weeks.

4    And it is unrealistic, based on all of the other cases that get

5    tried in this building on claims like this, that it is

6    unrealistic.

7          And the serious concern we have is that all of these

8    resources will be wasted because, at some point, the Court will

9    be, you know, unable to continue.

10         And, of course, you have been very upfront about that.

11   So, you know, it is not -- the City is not saying that -- you

12   know, it is unknown -- but we have this very, very serious

13   concern.

14         And the other issue is that at some point, you know,

15   we are going to -- the defendants are going to -- get cut off

16   because everybody is going to be trying to shove this -- what

17   we believe is a four-week trial -- into a three-week trial.

18         THE COURT:  Well, the other thing that is possible for

19   us is that if I get to the point where I feel like I am really

20   exhausted, there is always the possibility of just taking a

21   break for two days or something.  I mean, that is another

22   thing.

23         You know, as I say, we will probably need a long

24   vacation after.

25         (Laughter.)

1          THE COURT:  Okay?  But I have just tried to bring home

2    to you how serious it is, from my point of view, that we try to

3    be economical about this.

4          MR. LOEVY:  We have been looking at our list and I

5    think it is getting shorter.  I still feel confident we are

6    under three weeks.

7          Now, I don't want to tell the jury four weeks, because

8    I don't think that is realistic, and I think we will lose some

9    jurors, you know?

10          I guess maybe --

11          THE COURT:  Well, if we run to the 4th of July, we are

12    going to lose jurors.  There is no question about it.

13          MR. LOEVY:  But it is not going to go until the 4th of

14    July.  You know, you won't just lose judges.  You will lose

15    lawyers, too.

16          This is not a case that needs to go that long.

17          THE COURT:  Well, I think the City is telling me three

18    to four weeks, right?

19          MS. ROSEN:  Yes.

20          THE COURT:  You are not telling me six weeks.  You are

21    not telling me eight weeks.

22          MS. ROSEN:  No.

23          THE COURT:  I just --

24          MR. LOEVY:  And we are telling you two to three weeks.

25          THE COURT:  Yes.

1          I just, at this point, I think my sense is we should

2     press onward.  And we will all do our best and we will deal

3     with whatever we need to deal with.

4          MR. LOEVY:  Well, as far --

5          THE COURT:  Am I concerned about it?  Yes, I am

6     concerned about it.  But, you know, whatever.

7          MR. LOEVY:  And as far as what we tell the jurors,

8     then -- or the protective jurors -- you know, our suggestion

9     would be we estimate that the trial is going to take within

10    three weeks -- or, I guess, some people think it is going to go

11    into the next week.  Some people think it is going to be in two

12    weeks.  But, you know, we don't want to freak everybody out.

13         THE COURT:  Well, I think we should tell them -- if we

14    do four weeks, where does that take us to, in terms of the

15    holiday?

16         MR. ART:  It is the week before the holiday, I think.

17         THE COURT:  The week before.

18         You know, I think we probably ought to get a jury that

19    is willing to be with us for four weeks.  Because deliberations

20    may take two or three days.

21         MR. SWAMINATHAN:  Four weeks takes you to the 29th, I

22    believe.

23         THE COURT:  Yes.

24         MR. LOEVY:  It's just you do change the jury pool when

25    you say who can take four weeks off their life, when it isn't

1    going to need four weeks.

2          THE COURT: Yes; but, you know, the difficulty is, if

3    it does go over -- their deliberations go over -- we are

4    playing with fire by having promised them that it is going to

5    be shorter.

6          So, I do normally tell them that it is extremely

7    difficult to estimate. And I certainly hope this is way longer

8    than it is going to be, but just in case.

9          MR. LOEVY: That makes sense.

10         THE COURT: That is the way I present it to them.

11         MR. LOEVY: Okay. Thank you, Judge.

12         THE COURT: Okay.

13         I think telling them three and, then, having them look

14    at their calendars as it comes to the end and, then, not being

15    free to deliberate as adequately as they feel they need to, is

16    also a big issue.

17         I do not know. We will see how much trouble we have

18    getting a jury. We may have to go back to Square One and

19    rethink this thing.

20         Okay. I do not know in this court whether four weeks

21    qualifies, usually, as needing a special panel. I do not think

22    so, but I am unsure.

23         MS. ROSEN: I am not sure.

24         THE COURT: I will check with the Jury Department. It

25    is probably too late to get a special panel.

```
 1              All right.  Let's see what we can do with -- is there

 2    anything else?

 3              I need to make sure that your attorney and witness

 4    lists are updated.

 5              The voir dire is done.

 6              We are -- do we need -- do we have any other witnesses

 7    appearing by video?

 8              MR. LOEVY:  Possibly.

 9              THE COURT:  Does anybody need training on how to use

10    the equipment?

11              MR. ART:  We have gotten it already.

12              MR. GIVEN:  We are in the process of doing that, your

13    Honor.

14              THE COURT:  Okay.

15              MS. ROSEN:  Judge, I have one housekeeping --

16              THE COURT:  Yes?

17              MS. ROSEN:  Plaintiffs yesterday filed a response to

18    one of our motions in limine nunc pro tunc.

19              The Court granted that order.  So, if we could just

20    get leave to file our reply today --

21              THE COURT:  Sure.

22              MS. ROSEN:  -- so we can get it done.

23              THE COURT:  So, you have got that, Eugene.

24              All right.  I think we ought to see how far we can get

25    with the instructions and that will tell us whether we need
```

1    another conference or not.

2              (Brief pause.)

3              THE COURT:  Okay.  So, Exhibit 1 and Exhibit 2, that

4    is what I need, right?

5              (Documents tendered.)

6              THE COURT:  Okay.

7              So, shall we go -- let's go through -- let's start

8    with plaintiff's and see how far we get before we run into any

9    issues.  Okay?

10             So, Plaintiffs Agreed Proposed 4 is fine, right?

11             MR. ART:  Yes.

12             THE COURT:  And that will be given.

13             And Plaintiff's Agreed Proposed 5 is fine.  And that

14   will be given.

15             Plaintiff's Agreed Proposed 6 is fine.  And that will

16   be given.

17             Plaintiff's Agreed Proposed Instruction 7 is fine.

18   And that will be given.

19             You do know I let the jurors take notes?  We will be

20   giving them pads.

21             I give them some caution about not letting notes

22   dominate their experience.  It has been done.

23             Plaintiff's Agreed Proposed 8 is fine.  And it will be

24   given.

25             All right.  Then we get into the limited purpose of

1    evidence, and defendants have -- what do I do?  Start with

2    looking --

3              MR. ART:  This one is, I think, pretty simple.  We

4    don't have any objection to the form of the instructions.  It

5    is just when it is given.  We don't think it should be given as

6    a general instruction.

7              MR. LOEVY:  We are talking --

8              THE COURT:  And it is Defendants' Proposed 9?

9              MR. ART:  Correct, your Honor.

10             THE COURT:  This is standard, though.

11             MR. ART:  Yes.

12             THE COURT:  So, you object to it being given as part

13   of the instructions or --

14             MR. ART:  Just at a general instructions at the

15   beginning of the case, when there is no evidence introduced for

16   a limited purpose.

17             THE COURT:  Oh, well, "You will recall that during the

18   course of the trial I instructed you," I think it is fine.

19             MR. ART:  Okay.

20             THE COURT:  So, that will be given.

21             The objection will be overruled.

22             You know, if we have to get to limiting instructions

23   or something like that, we will talk about that separately;

24   but, this is, I think, a standard instruction to be given at

25   the end of the case.

1      And that is what I understand you are suggesting,

2 right?

3      MS. ROSEN:  Judge, a point of clarification.  Do you

4 plan on giving pre-instructions to the jury before we start the

5 case?

6      THE COURT:  Well, I do not normally because I do not

7 have any idea what is going to happen.

8      MS. ROSEN:  Okay.

9      So, I think maybe that is part of the confusion.

10 Because I think what I heard Mr. Art say is that he was

11 objecting to this being given as a general instruction, which I

12 think he means at the beginning of the case.

13      MR. ART:  That is right.  That is right.

14      MS. ROSEN:  And, so, I didn't -- we didn't -- the

15 defendants didn't -- understand that these instructions that we

16 are working on, were instructions that were contemplated

17 before.

18      THE COURT:  If you -- if you -- want me to give

19 preliminary instructions, I will need to have those.  But I

20 think, given the complexity of this case, I think I am wading

21 into serious error if I do that before I know what has been

22 proven and what has not been proven.

23      MR. LOEVY:  Steve, did you understand that she is

24 talking about after?

25      MR. ART:  Yes, I understand now.  Thank you.

1          THE COURT:  All right.

2          So, now, do we go back to the plaintiff's?  No.

3          Then we go to Defendants' 10?

4          MR. SWAMINATHAN:  Yes.

5          THE COURT:  Well, I do not know that this suggestion

6     about the Fifth Amendment is correct.  I do not know.

7          I mean, has this been briefed?  Because I have no

8     reason to think -- there is nothing in the cases that says that

9     this is correct.

10          MR. ART:  We included it on Page 6 of the memo that we

11     submitted yesterday, which is Document No. 489.

12          THE COURT:  Well, I cannot decide this at this point

13     because I do not know.

14          MR. POLICK:  We haven't had a chance to respond to

15     that, Judge.

16          I will note that the cases cited in plaintiff's

17     objection to our instruction really don't stand for that

18     proposition that they are invoking here.

19          I don't think that the -- you know, the -- privilege

20     can be imputed to all other defendants.

21          I mean, the case that comes the closest to this is the

22     Second Circuit, the LiButti case, but that involves the

23     invocation by a non-party and what effect it would have on

24     other parties in this case.

25          But there has to be some sort of special relationship

1    between the parties in order for that to go.

2              THE COURT:  Well --

3              MR. POLICK:  So, we would be happy to brief it, if the

4    Court --

5              THE COURT:  You can brief it, if you want.

6              I would be happy to read it as soon as I can.  I mean,

7    we are wading through these motions in limine now.

8              So, I would be more comfortable without -- if the law

9    is not clear, just giving them the usual instruction about how

10   the evidence, each part -- the evidence has to be considered --

11   whatever it normally says, "Decided on the evidence that

12   applies to that party."

13             MR. LOEVY:  Well, I think our suggestion might be just

14   to say, "Look, if somebody asserts the Fifth on the grounds

15   that it could incriminate them, you are permitted, but not

16   required, to draw an inference that it would be adverse to

17   them," and, then, be silent on, "You can't use it to other

18   people" or "you can."

19             THE COURT:  All right.

20             That is sort of my instinct, because --

21             MR. LOEVY:  And, then, there are other instructions

22   that talk about --

23             THE COURT:  Right.

24             MR. LOEVY:  -- using evidence against --

25             THE COURT:  You are not going to argue that it is

1    imputed to others, right?

2           MR. LOEVY:  Well, let's say if you ask on cross, "Did

3    Steve and you commit that crime," and I take the Fifth on that,

4    obviously, you could draw an inference against me.

5           THE COURT:  Right.

6           MR. LOEVY:  And, now, my ability to prove that Steve

7    committed the crime is inhibited because the person refused to

8    answer the question.

9           But I think part --

10          THE COURT:  But Steve is going to testify in this

11   case, right?

12          MR. LOEVY:  He may.  He may not.  He might be dead.

13          (Laughter.)

14          MR. LOEVY:  You know, there might be other situations.

15          THE COURT:  Well --

16          MR. GIVEN:  So, Judge, he didn't answer your question,

17   which is, yes, he is going to argue that an invocation by, for

18   instance, defendant Guevara, the adverse inference should be

19   taken against other defendants, other than Guevara.  And we

20   think that is wrong.  We will brief it for you.

21          THE COURT:  Brief it.  I am trying to figure out if

22   that makes any sense or not.

23          I mean, you are saying it makes sense if they are

24   mutually accused of something.

25          MR. LOEVY:  Well, your Honor, what if I said, "Me and

1    Steve committed a crime."

2            Well, they are saying, "Oh, my God, can you draw that

3    inference against Steve?"

4            Yes, you could.

5            If I said, "Me and Steve committed a crime," whether

6    Steve testified or didn't testify --

7            THE COURT:  Right.

8            MR. LOEVY:  -- my testimony would permit an inference

9    against Steve.

10           THE COURT:  Right.

11           MR. LOEVY:  And, here, they are blocking -- Guevara is

12   blocking -- testimony.  He won't answer the question:  "Didn't

13   you and Steve do it?

14           "I am not going to answer that on the ground that it

15   could incriminate me."

16           Well, the law says if you are going to throw up a

17   shield and not let somebody -- and not answer that question,

18   then a permissive inference is permitted.

19           THE COURT:  Well, I think it is probably an issue of

20   first impression, but we will have to figure out what we are

21   going to do about it.

22           All right.  Let's move on.

23           Where do I go next?

24           Oh, it says, "Plaintiff's Agreed Proposed Instruction

25   11."

1            So, okay.  I see how this works.

2            That is fine.  That will be given -- Plaintiff's

3    Agreed Proposed Instruction 11.

4            And, then, Plaintiff's Agreed Proposed Instruction 12.

5    That is standard.  That will be given.

6            Then Plaintiff's Proposed Instruction 13, there is an

7    objection.  Defendants say that their 13 and 14 follow the

8    Pattern.

9            So, if I look at the plaintiff's --

10           MR. POLICK:  It is really only that last factor there,

11   Judge, that is not with -- in accord with -- the Pattern.

12           MR. LOEVY:  Are we in agreement on age, then?

13           You guys have that bracketed.  We think the witness'

14   age should be known.

15           THE COURT:  If age is an issue in the case --

16           MR. LOEVY:  It is.

17           THE COURT:  -- then I will give it.  Okay?

18           We have some people who are super annuated, who -- is

19   that what it is?

20           MR. LOEVY:  No.  There is an 11-year-old.

21           THE COURT:  Oh, we have an 11-year-old.  Oh, my God.

22           Yes, in that case, I think we have to give an age

23   instruction.

24           I do not want to give anything other than the Pattern

25   on this.  This whole issue of inconsistent statements is a

1    complicated issue, as to which there are special instructions.

2    So, I do not think it belongs in here.

3            But I think age probably is significant enough in this

4    case that we should not exclude it.

5            So, does that mean I give Defendants' Proposed 13, but

6    take the brackets away from age?

7            MR. POLICK:  Yes.

8            THE COURT:  And is that objected to, just for the

9    record?

10           MR. LOEVY:  Not from the plaintiff.

11           MR. POLICK:  No, your Honor.

12           THE COURT:  Okay.  That will be given.

13           Then 14.  Okay.  Here we get to prior inconsistent

14   statements.

15           Let me read this because --

16           MR. LOEVY:  We can simplify it.  I think with that

17   having been resolved, we are okay with the Pattern on that one.

18           THE COURT:  Okay.

19           Let me just quickly read it, because I am usually not

20   okay with the Pattern because it does not make any sense to me.

21           (Brief pause.)

22           THE COURT:  Okay.  So, this -- if it is under oath,

23   they can consider the under oath statement as evidence of the

24   truth.  If it was not under oath --

25           MR. LOEVY:  His credibility.

```
 1              THE COURT:  -- then it only goes to credibility.
 2              I guess one of the things that confused me about this
 3    is the way it starts, "With respect to other witnesses."  That
 4    is not what we are talking about.  We are talking about whether
 5    it is under oath or not.
 6              So, whoever drafted this was --
 7              MR. LOEVY:  But maybe a party admission is different,
 8    though.  Maybe it's witnesses that are not parties.
 9              THE COURT:  Oh.
10              MR. LOEVY:  That is probably what they are getting at
11    right there.
12              THE COURT:  Well, it says, "Parties or witness under
13    oath" in the first paragraph, though.  So, if a witness gave a
14    statement under oath --
15              MR. LOEVY:  I think -- well, I think -- that is in
16    brackets.  So, maybe they mean -- if you say "parties" the
17    first time, then "other witnesses" -- but you are right.
18    Somebody was --
19              THE COURT:  I do not think -- I think this is just
20    really confusing.
21              Now, I do not -- you know, it is always safer to give
22    the Pattern, even if it makes no sense.
23              (Laughter.)
24              THE COURT:  I would ask you, if it should not be with
25    respect to statements not under oath?  The law is different.
```

```
1              MR. LOEVY:  No objection.

2              THE COURT:  How does the defense feel about that?

3              MR. SWAMINATHAN:  But not for parties.

4              MR. LOEVY:  Although not for parties.  Anad is right.

5    That is why they wrote it that way.

6              THE COURT:  Oh.

7              MR. LOEVY:  So, I think the ambiguity is that -- you

8    have the one with the brackets?

9              You don't have the one with the brackets on them.

10             THE COURT:  No, I do not.

11             MR. LOEVY:  Anad, let me show her the one that has got

12   the brackets -- the one you just showed me that had the

13   Pattern.

14             Oh, here it is.

15             Your Honor, if I could tender you the one that has got

16   the Pattern.

17             So, I think if you do "parties" there (indicating),

18   then it makes more sense.

19             (Document tendered.)

20             MR. POLICK:  Which paragraph?

21             MR. LOEVY:  That is the Pattern.

22             The first paragraph has either "paries or witnesses."

23             MR. POLICK:  Right.

24             MR. LOEVY:  And I think the drafter contemplated if

25   you used "parties" in the first paragraph, then "with other
```

```
 1    witnesses" becomes more grammatically correct.
 2              THE COURT:  But --
 3              MR. LOEVY:  But if you don't use "parties," then it
 4    doesn't make sense.
 5              THE COURT:  But what is the law for a statement by a
 6    witness under oath in another proceeding?  Because we certainly
 7    have that here.
 8              MR. LOEVY:  That is substantive.
 9              So, why don't we just fix that?  Just make it --
10              THE COURT:  Well, do we know how to fix it, though?
11              Is it true that if it was under oath, it can be
12    considered no matter if it is a party or witness?
13              MR. LOEVY:  Yes.
14              MR. POLICK:  I believe --
15              MS. ROSEN:  I don't --
16              THE COURT:  For the truth?
17              MS. ROSEN:  I don't think that is true.
18              MR. BOWMAN:  Well, I am going to vote that it matters
19    whether it is a party or not, not whether the statement is
20    under oath or not.
21              So, if it is --
22              THE COURT:  So, then we have --
23              MR. BOWMAN:  -- a party, it is it substantive.  If it
24    is a witness under oath or not, it is just --
25              THE COURT:  Credibility?
```

```
1              MR. BOWMAN:  Yes.

2              MS. ROSEN:  I agree with Mr. Bowman.

3              MR. LOEVY:  Yes.

4              THE COURT:  All right.

5              If we look at Defendants' Proposed 14, it should say,

6  "You may consider statements given by parties under oath before

7  trial"?  Is that what it should be --

8              MR. BOWMAN:  No, just "parties before trial."

9              THE COURT:  Parties.

10             MR. ART:  Yes --

11             MS. ROSEN:  Yes, then "or a witness."

12             MR. POLICK:  "Or witnesses."

13             THE COURT:  We do not want to waste a lot of time on

14 this.

15             What is the law?  I do not -- what about witnesses

16 under oath?

17             MR. BOWMAN:  Go.

18             MR. LOEVY:  I have a suggestion.  Why don't we do one

19 description for parties and, then, one description for

20 witnesses, as opposed to trying to do oath and --

21             THE COURT:  Can you agree on this?  Can I leave this

22 to you?

23             MR. POLICK:  Yes, we could.  It sounds like this is

24 something that --

25             MS. ROSEN:  We can figure it out.
```

```
 1              MR. POLICK:  Yes.

 2              THE COURT:  Okay.

 3              MR. BOWMAN:  Mr. -- Art just suggested to me that some

 4   further study of Rule 801 might be a good idea.

 5              THE COURT:  That is probably good.

 6              You know, I will tell you that I have been struggling

 7   with this for decades, because it --

 8              MR. LOEVY:  You are right.  It doesn't quite work.

 9              THE COURT:  -- does not make any sense.

10              MR. ART:  So, we will confer on that one and submit a

11   new proposal.

12              THE COURT:  Okay.  All right.

13              Then we get to Defendants' Proposed -- let's see.

14              So, anyway, Plaintiff's Proposed 13 is refused.

15              Then we are up to --

16              MS. ROSEN:  15, right?

17              MR. ART:  Yep.

18              THE COURT:  What, Defendants' Proposed 15?

19              MR. ART:  That is correct.

20              THE COURT:  Okay.

21              That is impeachment of a witness?

22              MR. ART:  Right.  And we can withdraw -- it's the same

23   issue as the first one.  If it's used at the end, obviously, we

24   have no problem with that.

25              THE COURT:  Okay.
```

```
1              So --
2              MR. LOEVY:  Objection withdrawn.
3              THE COURT:  -- that will be given without objection.
4              MR. LOEVY:  Uh-huh.
5              THE COURT:  All right.
6              Then we are at "Lawyer interviewing witness."  Do I
7   have the Pattern?  That is Pattern -- oh, it is Plaintiff's 16.
8              MR. POLICK:  Yes, that is agreed.
9              THE COURT:  And it is fine and it will be given.
10             "Number of witnesses."
11             We have Plaintiff's Agreed Proposed 17 --
12             MR. POLICK:  Yes.
13             THE COURT:  -- without objection.  That will be given.
14             Plaintiff's Agreed Proposed 18, no objection.  That
15  will be given.
16             All right.  Then we are at Plaintiff's Proposed 19 and
17  is there -- oh, the defendants' objection is that it is not
18  supported.
19             Okay.  Let's see.
20             (Brief pause.)
21             THE COURT:  Well, I think this has to be reserved,
22  right?  We have to see what the --
23             MR. POLICK:  Right.  That would be our position,
24  Judge.
25             THE COURT:  Okay.
```

| | |
|---|---|
| 1 | MR. POLICK:  We have to see what the evidence is. |
| 2 | THE COURT:  Sure. |
| 3 | Then we are at -- where do we go? |
| 4 | MR. ART:  Defendants' 20. |
| 5 | THE COURT:  Defendants' No. 20? |
| 6 | MR. LOEVY:  Is that the counterpart? |
| 7 | MR. POLICK:  Yes. |
| 8 | MS. ROSEN:  Yes. |
| 9 | You probably have to reserve on that. |
| 10 | MR. GIVEN:  Yes. |
| 11 | MR. ART:  We disagree with that, actually, your Honor. |
| 12 | We think as a matter of law, a third-party witness cannot be |
| 13 | the subject of a spoliation/destruction of evidence instruction |
| 14 | in the Seventh Circuit. |
| 15 | MR. GIVEN:  Well, Judge, our response to that briefly |
| 16 | is that it not a third-party witness.  It was plaintiff's |
| 17 | counsel. |
| 18 | THE COURT:  Well, this is -- you talked about this in |
| 19 | the memo you filed already.  I think I have to resolve this.  I |
| 20 | do not think I can resolve it just sitting here. |
| 21 | MR. GIVEN:  Would you like us just to brief that? |
| 22 | THE COURT:  Well, if you would like to brief it -- |
| 23 | MR. GIVEN:  We can submit something very briefly, just |
| 24 | in response to what they filed. |
| 25 | THE COURT:  Can you make a list for us where the |

1    spoliation -- the application of spoliation -- to what else?

2          Whether that is an appropriate instruction?  That is

3    the question, right?

4          MR. GIVEN:  Absolutely, Judge.

5          MR. POLICK:  Yes, your Honor.

6          MR. GIVEN:  More precisely, it is Northwestern who

7    lost their file.

8          THE COURT:  Oh, okay.

9          MR. ART:  Well, your Honor, the proposed instruction

10   just references Kenneth Wadas losing or destroying portions of

11   his file.

12         So, if they have a different proposal --

13         MS. ROSEN:  No, it says, "Defendants contend that

14   plaintiff, through his attorneys, at one time possessed Wadas'

15   file and lost or destroyed certain portions of it."

16         THE COURT:  Right.  So, that is going to go on our

17   list as something we have to resolve.

18         But you are going to file something.  And when are you

19   going to file something?

20         MR. GIVEN:  We will try to do it by the end of the day

21   or the first thing in the morning, if that is okay?

22         THE COURT:  Okay.

23         MR. LOEVY:  Your Honor, we actually missed that.  We

24   thought we were talking about Wadas.  So, what we briefed is

25   less relevant than what we would like to file today, explaining

1    Northwestern.

2            We didn't understand the objection was --

3            THE COURT:  Well, you can both file dueling things.

4            MR. LOEVY:  Okay.

5            THE COURT:  I can look at two things at once.

6            MR. LOEVY:  That is it.

7            THE COURT:  Okay.

8            Where do we go next?  The Defendants' Agreed Proposed

9    22, demonstrative exhibits.  That is not objected to, right?

10   That will be given.

11           MS. ROSEN:  We skipped 21.

12           MR. POLICK:  Yes, we skipped 21, Judge.

13           MS. ROSEN:  Experts.

14           MR. POLICK:  I don't think there is any objection.

15   That is the Pattern.

16           THE COURT:  No, it looks agreed.

17           MR. POLICK:  Yes, it is.

18           THE COURT:  That will be given.

19           Then we go to Defendants -- oh, it says, "Modified."

20           MR. LOEVY:  What number, your Honor?

21           THE COURT:  23.

22           MR. ART:  22.

23           MS. ROSEN:  22 was the demonstrative and given, right?

24           MR. POLICK:  That was agreed.

25           MS. ROSEN:  Okay.

1          THE COURT:  We are up to multiple claims.  And that is
2   the defendants'.
3          What is wrong with it, Plaintiff?
4          MR. LOEVY:  Well, in this case actually it is not
5   accurate because the City of Chicago is vicariously liable for
6   the liability of certain defendants on state court claims.  So,
7   that is our --
8          THE COURT:  So, it is the "13" that bothers you?
9          MR. LOEVY:  No.  I mean, the concept that if one
10  defendant is liable for --
11         THE COURT:  Oh, oh.  There is a respondeat --
12         MR. LOEVY:  -- that is not true.
13         MR. POLICK:  But isn't that cured by the Pattern
14  language that says it does not necessarily follow?
15         MR. LOEVY:  But it does necessarily follow.
16         THE COURT:  Well, wait a minute.
17         It does not necessarily follow there.  You are talking
18  about the multiple police officers, right?  That is what you
19  have in mind?
20         MS. ROSEN:  Correct.
21         MR. POLICK:  Correct.
22         MR. GIVEN:  Correct.
23         THE COURT:  Well --
24         MS. ROSEN:  I mean, the City is going to be -- there
25  is not going to be a separate finding or a required finding.

```
 1              If a police officer is found liable under state law
 2    claims, the respondeat is by operation of law.
 3              THE COURT:  Is that what we are talking about?
 4              MR. LOEVY:  That is our objection.
 5              It is operation by law, but it would be inaccurate to
 6    say it does not necessarily follow if one is liable, any of the
 7    others aren't.
 8              THE COURT:  But, then, why do we not just say,
 9    "Because there are 13 police officer defendants"?
10              MR. LOEVY:  That would solve our problem.
11              THE COURT:  Okay?
12              MS. ROSEN:  It is 12, then.
13              MR. POLICK:  Right.
14              THE COURT:  12 police officer defendants.  All right.
15              MR. LOEVY:  In other words, our objection no longer
16    has the logical force, right?
17              THE COURT:  Because it is true as to that.
18              MS. ROSEN:  Right.
19              THE COURT:  As to them?
20              MS. ROSEN:  Correct.
21              MR. POLICK:  Right.
22              MR. LOEVY:  As to them.
23              THE COURT:  All right.
24              So, with that change, it will be given and the
25    objection will be overruled.
```

```
 1              Now, is somebody responsible for getting these ready?
 2              MR. POLICK:  How do you what them ready, Judge?  What
 3  do you need from the parties?
 4              THE COURT:  Well, I need somebody to be responsible
 5  for putting together a set of instructions.
 6              MR. POLICK:  In a certain form?
 7              Do you want it -- I guess I looking for the format you
 8  want it in.
 9              MS. ROSEN:  Just one set, clean and marked?
10              THE COURT:  Clean and marked, but I think without any
11  of this -- it can have the title, but it cannot have whose
12  instruction it is.
13              MS. ROSEN:  Right.
14              MR. POLICK:  Okay.  Sure.
15              THE COURT:  But I would prefer that you not number
16  them because, obviously, there are going to be a lot of
17  reserved issues.
18              MR. POLICK:  Yes.
19              THE COURT:  There are going to be a lot of changes as
20  the trial goes on.  So, do not prepare them with page numbers.
21  I will number them at the last minute, as we figure out what
22  kind of order they should be in.
23              MS. ROSEN:  Okay.
24              So, we will take the numbering out?
25              THE COURT:  Yes.
```

1          MS. ROSEN:  Are you listening?

2          MR. BOWMAN:  Yes.

3          Are you doing this or am I?

4          MS. ROSEN:  I think the plaintiff.

5          THE COURT:  I think it is normally the plaintiff's

6    responsibility.

7          MR. ART:  You guys have the army.

8          THE COURT:  And, then, I also need you, as we get

9    close to the instructions, to bring me a disk or something; so,

10   if, at the last minute, there is something we need to change,

11   we can do it here.

12         MR. BOWMAN:  Understood.

13         THE COURT:  Okay.

14         So, everybody has got Defendants' Proposed 23?

15         MR. LOEVY:  Actually, may we have a moment, your

16   Honor?  We actually have to --

17         THE COURT:  Sure.

18         (Brief pause.)

19         MR. LOEVY:  Thank you, your Honor.

20         THE COURT:  Then, the next one I would go to 24 -- the

21   Defendants'.  It is agreed, right?

22         MR. LOEVY:  Correct your Honor.

23         THE COURT:  And that will be given.

24         And, then, we go to Defendants' 25.

25         So, has the plaintiff given me anything on this or are

1    we just talking about defendants'?

2            MR. ART:  Just defendants', your Honor.

3            MR. LOEVY:  And, your Honor, our objection is drawn

4    from the comments that this instruction is appropriate in some

5    cases and not in others.  And we are in "others," because there

6    is a conspiracy claim.  There is the failure to intervene

7    claim.  And there is a respondeat claim.

8            THE COURT:  Let me just read it.

9            MR. LOEVY:  Sure.

10           THE COURT:  This is not the kind of instruction I like

11   to give.  It is way too specific.  So, that alone is

12   problematic.  But let me see.

13           (Brief pause.)

14           MR. GIVEN:  Judge, it's from the officers'

15   perspective.  As you know, personal involvement is a live issue

16   in this case --

17           THE COURT:  Right.

18           MR. GIVEN:  -- and it is an important issue.

19           And even --

20           THE COURT:  Well, right.  But -- right.

21           I do not -- I am not -- I do not have any quarrel with

22   that.  I do not like this instruction.  I think it is

23   confusing.  And I like to give claims instructions.  I do not

24   like to give instructions -- I mean, what we should have is on

25   each claim we should have the elements.  And you can argue that

```
 1    that goes to each defendant.  Okay?
 2            So, whether there is respondeat superior or not or
 3    conspiracy, there ought to be separate instructions; and, then,
 4    you can argue this.
 5            This, I find really difficult to follow.
 6            MR. LOEVY:  We agree.
 7            You know, the instruction on the claims says, "You
 8    must find, as to each defendant, that they did each thing."
 9    So, that particular --
10            THE COURT:  Well, are there separate instructions for
11    each claim?
12            MR. ART:  Yes, your Honor.
13            MR. LOEVY:  Yes.  Of course.
14            So, this is redundant and it actually is confusing and
15    misleading because --
16            THE COURT:  All right.
17            Well, I am going to reserve this and see what the
18    claims instruction says.
19            MR. ART:  All right.
20            THE COURT:  I do not like it.  It is not the way I
21    like to instruct juries, whether it is a correct statement of
22    the law or not.
23            So, then, the next one we go to is 26 and that is --
24    is that going to raise the same question that we were talking
25    about earlier -- that you are going to brief?
```

1          MR. LOEVY:  Not necessarily.

2          THE COURT:  Okay.

3          MR. LOEVY:  No, your Honor.

4          You know, what?  Our instruction incorporates the

5   concept that you can't assert the Fifth unless you have a

6   tendency to incriminate yourself.

7          THE COURT:  Okay.

8          Hold on a minute.

9          (Brief pause.)

10         THE COURT:  And what is the difference?

11         MR. LOEVY:  They have eliminated the concept of why

12  you can take the Fifth -- that it may incriminate you -- which

13  is, you know -- if you read theirs, they can be, like, you took

14  the Fifth because you didn't want to answer the question.

15         The law provides a very limited set of circumstances

16  when you can take the Fifth.  That is when the answer would be

17  tending to incriminate yourself.  And the jury should

18  understand that.

19         THE COURT:  Hold on a minute.  I was looking at the

20  defendants'.

21         (Brief pause.)

22         THE COURT:  Oh, okay.

23         Well, you know, since the jury is not going to know

24  what the Fifth Amendment is, I think "not to incriminate

25  themselves" is okay; and, "to, instead, remain silent," I do

1   not think we need that.

2            MR. LOEVY:  So, a period after "themselves"?

3            MR. POLICK:  Yes.

4            THE COURT:  Yes.

5            MS. ROSEN:  Are you looking at the plaintiff's?

6            THE COURT:  Yes.

7            MR. LOEVY:  Yes.

8            THE COURT:  I am looking at plaintiff's.

9            And, then, are they different?

10           MR. ROSEN:  The last sentence -- or the last clause --

11   of the second paragraph, after the comma, "and you may assume

12   that any response that they might have given to the questions

13   asked would have been unfavorable to them, by incriminating

14   them," that is the part that we object to.

15           THE COURT:  And you have -- well, okay.

16           In terms of "adverse" or "unfavorable," I prefer

17   "unfavorable," because -- so that is that.  Because they might

18   not know what "adverse" is.

19           But what is it -- oh, "by incriminating."

20           But I do not think we need "by incriminating them."

21           MR. LOEVY:  Right.  And it is arguably redundant at

22   that point.

23           THE COURT:  It is arguably redundant.

24           But I think this concept in the defendants', "but you

25   may not find a defendant liable on the basis of silence alone,"

1     I think that is the law.

2          So, I guess what we have is -- let's see.

3          MR. BOWMAN:  Just add that at the end of Plaintiff's

4     26.

5          THE COURT:  Right.

6          So, it would read, "In response to questions here and

7     during discovery in this case, defendants," whoever, "have

8     asserted their Fifth Amendment right not to incriminate

9     themselves.  You may draw an inference against defendants,"

10    whoever, "as a result of their decision to invoke their Fifth

11    Amendment right instead of testifying; and, you may assume that

12    any response that they may have given to questions asked would

13    have been unfavorable to them, but you may not find a defendant

14    liable -- "

15         MR. LOEVY:  That should be better.

16         THE COURT:  " -- on the basis of settlements alone."

17         MR. LEINENWEBER:  And, Judge, I have one other

18    objection to that.

19         THE COURT:  Yes?

20         THE COURT REPORTER:  I cannot hear you, Mr.

21    Leinenweber.

22         MR. LEINENWEBER:  I am sorry, Joene.  Sorry.

23         In the first sentence it says, "In response to

24    questions here and during discovery in this case -- "

25         THE COURT:  Yes.

1          MR. LEINENWEBER:  -- I would ask that "during

2    discovery" be removed.

3          The jury -- I think that is unnecessary and confusing

4    to them.  I mean, they are going to -- they are going to --

5          THE COURT:  Well, let me ask you this, because I get

6    the feeling from the motions that I have been reading that some

7    people invoked the Fifth during discovery and some did not?

8          MR. LEINENWEBER:  One did during discovery.

9          MS. ROSEN:  Only Guevara has invoked --

10          MR. LOEVY:  Your Honor --

11          THE COURT:  Wait.

12          MR. LOEVY:  Sorry.

13          MS. ROSEN:  -- all the way through.

14          So, he invoked during discovery.  He is invoking --

15    will invoke -- at trial.  So, I mean, the jury is going to know

16    that he has invoked.

17          MR. GIVEN:  And the converse is not true.  There is no

18    defendant who took the Fifth during discovery and is now not

19    taking the Fifth.

20          THE COURT:  So, why do we not just say, "In response

21    to questions at various times during this case"?

22          MR. LOEVY:  You know, to us, discovery is an important

23    part of it because we didn't -- during this entire

24    investigation, we didn't -- get any answers.

25          If we asked Guevara, "How did -- " you know, all of

1    the facts that the jury is going to be hearing about, Guevara

2    refused to participate.

3            THE COURT:  So, are you going to introduce his

4    deposition, then?

5            MR. LOEVY:  Well, we will introduce the concept that,

6    "When we were trying to do our discovery, you would not

7    cooperate with discovery.  We asked you how did you find Lopez,

8    for example.

9            You know, "I am not going to answer that question."

10           So, I think the jury should know that he has asserted

11   the Fifth throughout.

12           MR. GIVEN:  And, Judge, that is not not cooperating

13   with discovery.  It is giving an answer to discovery.

14           THE COURT:  You know, what?  I think in the context of

15   everything, it does not really matter.  I think it is okay.

16           So, if it might be relevant to the issues, fine.

17           If it turns out not to be relevant to the issues as

18   they play out at trial, I will get rid of it.  You can bring it

19   to my attention at that point.

20           MR. LOEVY:  Your Honor, this is an issue that -- you

21   know, now that we have a little bit of time before the battle

22   of trial -- I think that we are going to have a clash at trial

23   about what the jury can be told about why Guevara is taking the

24   Fifth.

25           And there was some briefing that suggested, "Hey, we,

1   the lawyers, want to get up there and say there is benign

2   reasons why you take the Fifth;" or, "We'll tell you Guevara

3   taking the Fifth has got nothing to do with incriminating

4   himself."

5         THE COURT:  Well, if he took the Fifth and it is not

6   for the reasons given in the Fifth Amendment, it was illegal.

7         MR. LOEVY:  Yes.

8         THE COURT:  I mean, you are not allowed to take the

9   Fifth because you do not want to testify.

10         Is that what somebody is claiming?

11         MR. LOEVY:  Somebody -- I fear that there is -- and it

12   probably would have been better as a motion in limine, but I am

13   fronting it to you now -- that it is going to be an issue.

14         THE COURT:  We are not -- I do not know what you

15   intend to do, but it is not appropriate.  You have to have a

16   fear -- a well-grounded fear -- of prosecution to take the

17   Fifth.

18         MR. LOEVY:  And if anybody -- what if -- what might

19   happen is they say, you know, it is not that -- the motions

20   that you are going to read, you are going to see that there is

21   people proposing other reasons why he would have taken the

22   Fifth; and, actually going so far as to say, "We, the

23   attorneys, are going to explain to the jury that there are

24   other reasons to take the Fifth," and, you know --

25         THE COURT:  Well, what are the other reasons to take

1    the Fifth?  Because I do not know what they are.

2            MR. LOEVY:  I guess that would be for Mr. Guevara's

3    counsel.

4            MR. LEINENWEBER:  I don't -- I don't remember.  I

5    don't think that is correct.

6            I mean, as your Honor stated, there is one reason to

7    take the Fifth:  "That it may incriminate me."

8            However, I should be able -- or we should be able --

9    to explain that the Fifth Amendment protects the innocent, as

10   well as the guilty, as the Supreme Court has said.

11           And maybe that is what counsel is talking about.

12           But I don't think there is -- I don't think I,

13   certainly speaking for myself -- am going to step and say,

14   "Well, he is taking the Fifth Amendment because he -- "

15           THE COURT:  Well, I would say -- you know, I do not

16   know what the argument is going to be, but make an objection --

17           MR. LOEVY:  All right.

18           THE COURT:  -- because I do not think -- you have to

19   protect the innocent, as well as the guilty.  But the innocent,

20   who is not concerned about prosecution, cannot assert it.

21           You know, you may be innocent, but you have got to

22   have a fear -- a well-grounded fear -- of a prosecution.

23           MR. LEINENWEBER:  Sure.

24           MR. LOEVY:  That's fine.

25           So, it's out there.  We'll --

1    THE COURT:  It is out there.  And, I mean, I will be

2  happy to instruct the jury on what the law is, if that comes

3  up.  I do not want them to be misled on that.

4    MR. LOEVY:  Your Honor, is there going to be an update

5  on other defendants taking the Fifth, too?  Because --

6    THE COURT:  Well, Mingey is taking --

7    MR. LOEVY:  Correct.

8    THE COURT:  -- the Fifth, right?

9    MR. LOEVY:  Correct.

10    MR. GIVEN:  Correct, that is the update.

11    MR. LOEVY:  And I will be filing my --

12    THE COURT:  Now, can I ask you a question?

13    MR. LOEVY:  Yes.

14    THE COURT:  I do not want to create trouble -- and we

15  do not have a lot of time -- but Eugene will be mad if I raise

16  this --

17    (Laughter.)

18    THE COURT:  -- but we talked about it this morning.

19    How can somebody testify and, then, take the Fifth?

20  Is there not a waiver in that situation?

21    You know, I have been a criminal defense lawyer for a

22  lot of my life and, you know, you have to be really careful

23  that you take it at the first possible opportunity or it is

24  gone.

25    MR. LEINENWEBER:  I disagree with that, Judge,

1  because, obviously, things can change.  And if two years ago

2  you had no --

3           THE COURT:  Okay.

4           MR. LEINENWEBER:  You know, let's say two years ago

5  there was no --

6           THE COURT:  Okay.  Well, that is legitimate.

7           MR. LEINENWEBER:  -- you had no idea of an

8  investigation.  The lawyer did not tell you that there may be a

9  grand jury --

10          THE COURT:  Maybe.  That may be legitimate.  I do not

11  know.

12          MR. LOEVY:  That raises another question.

13          I am sorry, your Honor.

14          THE COURT:  Yes, go ahead.

15          MR. LOEVY:  What prosecution?  Is Guevara being

16  investigated?  We didn't know about any prosecution.  Maybe we

17  are wrong about that.  But that would be responsive to

18  discovery.

19          THE COURT:  Well, I do not think he has to be -- I do

20  not think -- there has been a lot of debate about this in the

21  motions, but I do not think -- you have to be under

22  investigation.  I think you have to have a legitimate concern

23  that what you say could be used to convict you of a crime.

24          MR. LEINENWEBER:  It could lead to an investigation.

25  If you go up there and say, "I murdered five people," like,

1  "Whoa, I guess we will start an investigation."

2          THE COURT:  Yes.

3          MR. LOEVY:  All right.

4          That is not, I think, what the Judge is saying.

5          But could we all agree at this table that none of us

6  are aware of an ongoing investigation?

7          At least we're not.

8          THE COURT:  Well --

9          MR. LOEVY:  And if anybody was, I think they would

10  have an obligation to put it on the table.

11          THE COURT:  Why do we not go on because -- you know,

12  you can talk about this, but I am not sure it makes a

13  difference.  I do not know that it makes any difference to me

14  at this point.

15          I mean, nobody -- nobody -- raised with me the

16  problems, if any, with anybody asserting the Fifth at their

17  deposition.  So, I mean, that is water over the damn.

18          MR. LOEVY:  Your Honor, in the brief, do you remember

19  I told you it was in there?  Mr. Leinenweber's brief said,

20  "Notably, the Court ruled prior to trial that the defendant, as

21  an attorney, would be permitted to explain to the jury the

22  defendant's other reasons for remaining silent."

23          And, so, that is what triggered my flag.

24          But I think we are not hearing that they are going to

25  try to explain other reasons for remaining silent.

```
 1              THE COURT:  Well, as I say, be ready with an
 2    instruction on that subject if there is.  Because I do not know
 3    of any legitimate reasons, other than fear of prosecution.
 4              Okay.  Let's go on.
 5              Are we at Defendants' Proposed 26?
 6              MR. POLICK:  No, 26 we just --
 7              THE COURT:  No, we just talked about that.
 8              MR. POLICK:  And 27 --
 9              MR. ART:  And 27 is another version of the same issue,
10    your Honor.
11              THE COURT:  Well, what is the status of Defendants'
12    26?
13              MS. ROSEN:  Defendants' 26 -- you took a piece of
14    Defendants' 26 and put it into --
15              THE COURT:  So, it is going to be --
16              MR. BOWMAN:  26 is refused, 27 is given as -- or 26 is
17    given as modified.
18              MS. ROSEN:  As marked or as edited.
19              THE COURT:  Plaintiff's Proposed 26 is given as
20    notified.  Therefore, Defendants' 26 is being refused.
21              All right.  Then we move along to 27.  That is also a
22    Fifth Amendment.
23              MR. ART:  It is just an alternate version, is my
24    understanding.
25              MR. LOEVY:  So, is it subsumed in what we covered?
```

```
 1              MR. ART:  Yes.

 2              THE COURT:  I think it is subsumed.

 3              Okay.  That something be refused.

 4              All right.  Now, we are finally at 28 and we are at

 5    issues, right?

 6              Or what about Plaintiff's 28?

 7              MS. ROSEN:  There are competing 28s.

 8              THE COURT:  What is the difference, besides the fact

 9    that they are worded differently?

10              MR. POLICK:  I think an explanation to the jury about

11    the Estate of Leonard and what that is all about.

12              That is going to be --

13              THE COURT:  Hold on.  Hold on.

14              Okay.  Let me read it.

15              (Brief pause.)

16              THE COURT:  I actually do not -- well, let's see.

17              Defendants' just has more details?

18              Oh, the Estate of John Leonard.

19              MR. LOEVY:  Yes.  We don't think that is appropriate

20    for this instruction or, really, any.  That is an operation of

21    law after trial, not for the jury.

22              And it is sort of the counterpart to they don't want

23    it to say, "If you find liability against Zacharias, the City

24    will have to," you know, have judgment.

25              This is just not relevant information right here,
```

1   certainly not in an issues instruction.

2           THE COURT:  Why does the defense think that this is

3   important?

4           He is being sued in his -- his estate is being sued?

5           MR. POLICK:  Yes.

6           THE COURT:  They will know that he is deceased, I

7   assume?

8           MR. POLICK:  Yes.

9           That is the reason it is in there.

10          THE COURT:  Well, I think simple is always better and

11  plaintiff's is way simpler.  So, I am going to give the

12  plaintiff's 28 and refuse the defendants' 28.

13          I will specifically agree with the plaintiffs that we

14  do not need to go into this estate issue explicitly at this

15  point.

16          If there is anything else in the defendants' that I am

17  missing, let me know.  But it looks like the plaintiff's

18  basically covers everything.  And, then, they launch into

19  issues.

20          All right.

21          MR. LOEVY:  Your Honor, we forgot failure to intervene

22  on our issues instruction.  Can we just add it?

23          It says, "Violated civil rights."

24          Oh, I guess it's subsumed.

25          MS. ROSEN:  That is covered by "violated civil

1    rights."

2          MR. LOEVY:  Yes.

3          THE COURT:  All right.

4          MR. LOEVY:  I stand corrected.

5          THE COURT:  So, we can move on to 29.

6          MS. ROSEN:  Yes.

7          THE COURT:  Now, you have to know, just so some things

8    make sense, that I like to keep the instructions really simple,

9    to the extent possible, and allow you all to argue whatever,

10   without putting a lot of -- you know, these are hard enough for

11   them if they are kept simple.

12         So, we are looking at 29 and I guess the question is

13   what is the difference?

14         MR. GIVEN:  The difference is ours explains terms

15   like, "exculpatory evidence" and "impeachment evidence -- "

16         THE COURT:  Okay.

17         MR. GIVEN:  -- which jurors may not know what they

18   mean.

19         MR. LOEVY:  Well, ours does, too.

20         MR. ART:  So does ours, your Honor.

21         THE COURT:  Well, so does the plaintiff's --

22         MS. ROSEN:  And reasonable diligence.

23         MR. GIVEN:  Reasonable due diligence.

24         THE COURT:  -- except it is single spaced.

25         MR. LOEVY:  Fair.

1          The plaintiff's --

2          MS. ROSEN:  It says the parties --

3          MR. POLICK:  It mandates the "knowingly" factor or

4    element there.

5          THE COURT:  Hold on.

6          MR. POLICK:  I think it has to be "knowingly."

7          THE COURT:  Hold on a second.

8          MR. POLICK:  Yes.

9          THE COURT:  So, let's begin with plaintiff's.

10          The plaintiff's first claim is that defendants --

11    whatever -- violated his constitutional right to due process of

12    law.

13          And the defense has gone into a description of what

14    the plaintiff claims makes up that due process claim.

15          I assume that that is what the difference is here?

16          MR. LOEVY:  It looks like it.

17          MS. ROSEN:  Correct.

18          THE COURT:  Just --

19          MR. LOEVY:  But the numbers, then, get into it, too --

20    what they are.

21          (Brief pause.)

22          THE COURT:  Defendants have a materiality -- oh, I

23    see.  The plaintiff's do not break that out.

24          MR. POLICK:  We are following the Pattern on that,

25    Judge, and modifying it.  I think that is some concern.

1          THE COURT:  Well, if the Pattern breaks out material,

2     I think we should break out material.

3          And, then, let's see.

4          The "exculpatory evidence" definition.  Is there any

5     difference?  It does not look like it.

6          MR. LOEVY:  That is Pattern language.

7          THE COURT:  "Impeachment" is Pattern language, I

8     assume -- I hope?

9          MR. POLICK:  Yes.

10         MS. ROSEN:  Yes.

11         THE COURT:  Let me ask this.  I have been working on

12     this motion in limine about reasonable diligence and does the

13     defense have an expert on this subject?

14         MS. ROSEN:  Yes.

15         MR. GIVEN:  We do.

16         THE COURT:  Okay.

17         Some lawyer who is going to --

18         MR. GIVEN:  A judge.

19         MS. ROSEN:  It is Judge Wasilewsky.

20         THE COURT:  Okay.

21         MS. ROSEN:  And there is motions on -- maybe you

22     haven't gotten there yet, but there is motions on -- him, as

23     well, on the reasonable diligence prong.  So --

24         THE COURT:  All right.

25         So, that, I think, we have to hold until the motions

 1   are resolved.

 2            MS. ROSEN:  Okay.

 3            THE COURT:  But reasonable -- we may have to -- it may

 4   be appropriate to define "reasonable diligence," but I cannot

 5   tell you that yet.

 6            Oh, and I see the materiality is defined.  It is just

 7   not broken out.  But I think it needs to follow the Pattern and

 8   be broken out.

 9            MR. POLICK:  Yes, it is defined --

10            MS. ROSEN:  It is defined in the Pattern, the way we,

11   the defendants --

12            MR. POLICK:  Right.  We follow the Pattern, Judge.

13            MS. ROSEN:  That is the way --

14            THE COURT:  Well, if that is the way the Pattern

15   defines it, that is going to be fine if I am willing to give

16   it.  I am working on it.

17            MR. POLICK:  That is fine.

18            THE COURT:  As I say, I am working on all of this.

19            MR. POLICK:  Okay.

20            THE COURT:  Then, this last language that the defense

21   has, "If you find the plaintiff has proved each," I think that

22   is useful.  It is boring, but it is useful.

23            MR. ART:  Your Honor, we have put that at the

24   beginning of our damages instruction, so that it doesn't have

25   to be repeated every single claim.

1          THE COURT:  Which instruction is that in?

2          MR. ART:  That is No. 46.

3          THE COURT:  How many claims are there?  How many times

4 do I have to read this?

5          MR. ART:  We are assuming something like six or seven,

6 I think.

7          THE COURT:  Well, I suspect you want it?

8          MR. POLICK:  Yes.

9          MS. ROSEN:  Yes.

10          MR. POLICK:  We are just following the Pattern.

11          THE COURT:  I think it is, basically, a good caution

12 for the jury.

13          MR. LOEVY:  Fair enough.

14          THE COURT:  So, hopefully, you can make some -- I

15 think, basically, we have got to reserve this.  But I think

16 that we are going to break out "material"; we are going to have

17 to decide if "reasonable diligence" is going to be defined;

18 and, we are going to include the "If you find" language from

19 Page 30 of the defendants'.

20          Is there anything else?

21          MS. ROSEN:  Judge, the only other thing that we have

22 specifically talked about, that is in the defendants', which is

23 in the Subparagraph 1 of defendants', you are considering

24 either "knowingly concealed from the prosecutor" -- that

25 "knowingly" language is omitted from plaintiff's, and that

1  comes right out of the Pattern.

2          THE COURT:  Okay.

3          Then --

4          MR. LOEVY:  We agree, then, your Honor.

5          THE COURT:  Then "knowingly" should be in there.

6          MS. ROSEN:  Okay.

7          THE COURT:  And is that on both of them or just on A?

8          MR. ART:  On both of them, your Honor.

9          THE COURT:  Okay.

10         All right.

11         MR. LOEVY:  Or you could say, "The defendant

12  knowingly"?

13         MS. ROSEN:  We are just doing it the way the Pattern

14  does.

15         THE COURT:  Just follow -- stay as close to the

16  Pattern.

17         MR. POLICK:  That is what we were doing.

18         THE COURT:  That is my preference.

19         MR. BOWMAN:  Well -- I am sorry, just to be clear, on

20  the first sentence, we are going to go with just the simple

21  "Due process of law," as opposed to the defendants' proposal?

22         THE COURT:  Correct.

23         MR. POLICK:  We did follow the Pattern on that, as

24  well, Judge.

25         MS. ROSEN:  The Pattern has the detail.

1        MR. ART:  Our issue with the Pattern is that it just

2    simply repeats in the preamble paragraph what is in the

3    elements instruction that follows directly after it.

4        THE COURT:  Yes, I do not think it is necessary.  This

5    is going to go on too long.  And I do not see why we have to

6    say it twice in one instruction.

7        So, I do not think we need that.

8        But I also think that what the defendants have --

9    which is that, "Plaintiff was damaged as a result" -- also is

10    the right way to do this, and not, "was as a result of" blah,

11    blah, blah, blah, blah or blah, blah.

12        MR. POLICK:  That is straight out of the Pattern, too,

13    Judge.

14        THE COURT:  Well, simplify.  Simplify.

15        MR. LOEVY:  All right.  We will do that.

16        THE COURT:  All right.

17        We are going to have to probably go over this, again,

18    but we stick to the Pattern -- unless it is repetitive -- in

19    which case I do not want to be repetitive.

20        Then we move along to -- is it Defendants' 30?  Is

21    that the next one?

22        MS. ROSEN:  Yes.

23        MR. ART:  Yes, your Honor.

24        THE COURT:  Plaintiff, explain your objection to me.

25        MR. ART:  So, our objection is that:  One, two due

1　process instructions shouldn't be given; and, if there is a

2　claim that two of the defendants intentionally fabricated false

3　evidence, that was not disclosed to the defense, then there is

4　also a claim that that evidence -- that the impeachment

5　evidence -- was suppressed.

6　　　　And it is something that we have discussed in the memo

7　in a bit more detail, but we think recent Seventh Circuit

8　cases, like Avery, stand for the proposition that a knowing

9　fabrication is the flip side of the coin of a knowing

10　suppression of material evidence.

11　　　　And, so, the jury should be instructed once on due

12　process, and the jury will find the defendants liable or not

13　individually, you know, but when those elements are satisfied.

14　　　　MR. LOEVY:　There would be no prejudice, either.

15　　　　I mean, if they found there was no concealing, then

16　they won't find concealing.

17　　　　THE COURT:　So, Defense, what is your position on

18　this?

19　　　　MR. POLICK:　We were breaking it out in accordance

20　with your Honor's ruling on the summary judgment -- that there

21　was only a single claim left against these -- single

22　substantive claim left against Sparks and Zacharias.

23　　　　THE COURT:　Oh, oh, oh, oh.

24　　　　MR. POLICK:　So, we were kind of following just the

25　letter of the ruling.

1          MR. LOEVY:  Although won't the jury instruct -- on the

2     jury's verdict form --

3          THE COURT:  Hold on.

4          MR. LOEVY:  Sure.

5          THE COURT:  We have to then say that -- let's see.

6          Everybody is in agreement that as to Sparks and

7     Zacharias, only this one claim remains?

8          MR. ART:  Our position is that the claim is a unitary

9     due process claim.  And when someone fabricates an

10    identification -- if the jury so finds -- that the liability

11    should attach both on a fabrication theory and a suppression

12    theory.

13         So, it is not necessary to break it out separately

14    into its own instruction.

15         THE COURT:  Well, was that part of the summary

16    judgment?

17         MR. LOEVY:  Your ruling did say, "Brady out,

18    fabrication in," for those two.  That is the base line we are

19    starting from.

20         MR. GIVEN:  What they filed yesterday, Judge, with

21    their -- whatever it was called to talk about jury

22    instructions -- they actually brought a motion.  But it,

23    essentially, was a motion to reconsider your Brady, and saying,

24    "Oh, in fact, the law is if you fabricate, then it is always a

25    Brady claim."

1        That is not accurate.  We disagree with that.

2        MR. LOEVY:  It seems really almost impossible to

3    imagine a scenario that if I fabricate evidence --

4        THE COURT:  Well, yes.  But I am drowning in motions

5    in limine; and, if you are filing a motion for what is really a

6    motion for reconsideration, and you do not flag it for me, it

7    is very difficult.

8        Now, you are saying there is a recent Seventh Circuit

9    case that says this?

10       MR. ART:  Yes, your Honor.

11       Avery says this.  Avery is a case where there is a

12   fabrication of three identifications from jailhouse informants.

13   And the Seventh Circuit reinstates a jury verdict on that

14   fabrication claim.

15       THE COURT:  And, so, we need to take a look at Avery.

16       MR. GIVEN:  And, Judge, our position is that Avery is

17   in conflict with Saunders L, which says Brady does not require

18   police officers to accurately disclose the circumstances of

19   their investigation.

20       And in a case Mr. Loevy had in Cleveland recently, the

21   court found that Avery and Saunders L were, in fact, in

22   conflict with each other.

23       So, it is not a simple answer.

24       THE COURT:  Well, which is the more recent?

25       MR. GIVEN:  Avery is more recent, because it doesn't

1  address Saunders L.

2          MR. ART:  Well, Avery is the Seventh Circuit's most

3  recent statement on this opinion -- or on this issue; and, if

4  the Seventh Circuit thought there was some conflict, they would

5  have circulated --

6          THE COURT:  Well, they do not.

7          (Laughter.)

8          THE COURT:  So, we better look at Saunders L, too.

9  Okay?

10          THE LAW CLERK:  Yes.

11          THE COURT:  All right.

12          MR. ART:  And, your Honor, our position is that this

13  isn't a motion to reconsider.  This is a statement about what

14  the appropriate jury instruction is, given the evidence that is

15  going to come in at some point.

16          THE COURT:  All right.

17          Well, obviously, I cannot resolve this today.

18          MR. POLICK:  So, this is reserved?

19          THE COURT:  Yes.

20          MR. POLICK:  Okay.

21          THE COURT:  So, then we get to "illegal detention."

22  Okay?

23          There is a plaintiff's and --

24          MR. POLICK:  Our position here, Judge, is this was

25  never a claim that was plead.  It wasn't part of the summary

1   judgment.  And, I mean, even at this point, even in light of

2   Manuel, you know, the Supreme Court has not given us much

3   guidance as to what this claim actually is.

4           What plaintiff has here, it sounds to me, is a

5   malicious prosecution, and I do not think that is what Manuel

6   says.

7           I think Manuel -- basically, that decision dumped the

8   case back on the lower courts to figure out the contours of his

9   claim.

10          And if it is a Fourth Amendment claim, it might -- at

11  this point it might -- even be time barred.  And I think that

12  is the tension here between the plaintiff's bar and the defense

13  bar, you know, as to when this type of claim accrues.

14          So, I think it is going to be very difficult to

15  instruct the jury on a claim where not even the lawyers -- and,

16  possibly, the judges -- know what the elements of this claim

17  is.

18          THE COURT:  Okay.

19          Hold on a second, please.

20          MR. LOEVY:  Well, we --

21          THE COURT:  Hold on a second.

22          (Brief pause.)

23          THE COURT:  First of all, if the plaintiff proves it,

24  it really does not matter that it was not alleged.  I think the

25  law is pretty clear on that.

1          You are telling me that whether or not this is a claim

2    or whether -- where -- when the statute of limitations -- what

3    is the issue here?

4          MR. GIVEN:  The issue is that when the Supreme Court

5    ruled in Manuel, it sent the question of is there a malicious

6    prosecution claim or Fourth Amendment illegal detention claim

7    in the Seventh Circuit?  And, if so, what are the elements.

8          It did not define the elements.  It asked the Seventh

9    Circuit to do that.  The Seventh Circuit, in the last

10   year-and-a-half, has not told us anything.

11         THE COURT:  Is it still pending?

12         MR. ART:  Yes, your Honor.

13         MR. GIVEN:  It is.

14         MR. POLICK:  Yes.

15         MR. ART:  So, your Honor, we disagree that the Supreme

16   Court didn't say what this is.  The Supreme Court in Manuel

17   said that it is a Fourth Amendment claim.

18         THE COURT:  Well, let's take a look at Manuel.  I have

19   not read it in a while and we will see.

20         And, obviously, we need to reserve that one, too.

21         MR. LOEVY:  Now we see why a child's a --

22         THE COURT:  Well --

23         MR. LOEVY:  You do a lot of work with the lawyers,

24   too, obviously.

25         THE COURT:  Is there an easier way?

1          If there is an easier way, I probably would not be on

2     senior status right now.  I probably would not have my health

3     issues now.  I never knew there was an easier way.

4          All right.  Then we have 32.

5          Okay.  What are we fighting about here?

6          MR. ART:  Your Honor, we don't think that Defendants'

7     Instruction 32 instructs the jury properly on the law of

8     conspiracy.  It -- the first element treats a due process

9     violation as a predicate to proving a conspiracy.  It is not a

10    conspiracy -- an agreement --

11         THE COURT:  So, you are looking at the Defendants'

12    Proposed 32 and you are saying that -- tell me, again.

13         MR. ART:  Element One is not a correct statement of

14    law.  They don't need to first find that one defendant violated

15    the due process rights of the plaintiff.

16         THE COURT:  Okay.  I got it.

17         What is the defense view?

18         MR. POLICK:  We disagree.  We believe the Cefalu case

19    and the Hill vs. Shobe case stand for that proposition -- that

20    this is really derivative.  If you don't have the substantive

21    claim, the conspiracy claim falls by the wayside.

22         MR. ART:  And, your Honor, to respond to that, we

23    think that that issue -- that you do need to show that the

24    Constitution was violated by the -- in the course of the

25    agreement -- is dealt with by the third element in our Proposed

1  Instruction 32.

2       THE COURT:  And there is no Pattern on this, I take

3  it?

4       MR. ART:  That is correct.

5       MR. POLICK:  No, not on the conspiracy.

6       We just also think their No. -- Plaintiffs' Paragraph

7  No. 1 there is very convoluted, in terms of keeping it simple,

8  as your Honor has indicated.

9       MR. ART:  And we have no objection to moving that

10 definitional content to later in the instruction and giving

11 them three elements that say it is an agreement to --

12      THE COURT:  Violate due process rights?

13      That is what we are talking about, right?

14      MR. ART:  Correct.

15      And, then -- and, then -- the jury should be

16 instructed, though, that the participants don't need to have a

17 formal agreement; that they don't need to all, you know, commit

18 a due process violation, themselves, in the course of that

19 agreement, consistent with this Court's decision on the motion

20 to clarify.

21      THE COURT:  So, you are suggesting that No. 1 be, "The

22 defendant joined an agreement between two or more persons,"

23 what?  To violate plaintiff's due process rights, as defined in

24 Instruction whatever?

25      MR. ART:  I think it should just say, "To violate

1   plaintiff's due process rights and his right not to be deprived

2   of liberty without probable cause," which is our Manuel

3   instruction.  All right?

4           MR. LOEVY:  That is the dispute that we say it's due

5   process and Manuel and they are just saying due process.

6           MR. ART:  No, no.

7           MR. LOEVY:  You said due process and Manuel.

8           MR. ART:  Right.

9           MR. BOWMAN:  There is that, but the agreement -- or

10  the disagreement -- encompasses other problems, as well.

11          THE COURT:  Well, I think we should decide what we are

12  going to do with due process.  And Manuel will work itself out

13  when we resolve that issue.

14          MR. BOWMAN:  Right.

15          (Brief pause.)

16          THE COURT:  Well, I do not like any of it.

17          (Laughter.)

18          THE COURT:  I think 2 and 3 in plaintiff's are fine.

19          What needs to go in 1?

20          I mean, the defendants' does not have any of this

21  stuff about "shared common purposes, no formal agreement."

22          I mean, obviously, the defense does not think that is

23  necessary.  So --

24          MR. ART:  We think it is important for the jury to

25  understand that each individual defendant doesn't have to

1   violate the Constitution in order to be found liable for

2   conspiracy.

3           We think that that language, which was given by Judge

4   Kennelly in Fields, does that.

5           We don't have an objection to moving it to the end of

6   the instruction, because it is definitional, but --

7           THE COURT:  Well, how would it read?

8           You are citing Judge Kennelly, but I do not see Judge

9   Kennelly cited anywhere.  What am I missing?

10          MR. ART:  No, that is right, your Honor.  We omitted

11  that.

12          But, revised, the first element would read, "The

13  defendant joined an agreement between two or more persons to

14  violate plaintiff's right to due process."

15          THE COURT:  Okay.

16          MR. ART:  And, then, reserved on the Manuel issue.

17          THE COURT:  Okay.

18          MR. ART:  And, then, the first element would stop

19  there.  You would have Element Two, Element Three; and, then,

20  the language that begins with, "The plaintiff must prove,"

21  which is currently in the first element, would move to the end.

22          MR. LOEVY:  Like a breakout.

23          THE COURT:  So, is this another element, though?  "The

24  plaintiff must prove that the parties have shared one of these

25  common purposes.  He does not have to prove there was a formal

1   agreement."

2          MR. ART:  I mean, that is why we put it in the first

3   element because it sort of explains what kind of agreement

4   there needs to be.

5          THE COURT:  I do not know.  You know, I am not going

6   to re-write this.  You have convinced me that is not my job.

7          So, I do not like this one.  Try, again.

8          It is a mess.  It is too much detail.  It is too

9   confusing.

10         2 and 3 are, obviously -- well, let me ask you this.

11  The defendants just want, "The defendants' acts caused

12  plaintiff harm."

13         The plaintiff wants, "Plaintiff's constitutional

14  rights were violated."

15         MS. ROSEN:  Well, but, then, Judge, the reason to

16  break out -- the reason defendants break it out that way is

17  because defendants have their different element one, which

18  plaintiff -- that his due process right was violated, as

19  defined in the previous instruction.  So --

20         THE COURT:  Wait.

21         MS. ROSEN:  -- the plaintiff's position is that that

22  is sort of subsumed in their 3.

23         MR. ART:  Our position is that their proposed

24  instruction requires a finding of a due process violation as a

25  predicate, when the proper instruction should instruct the jury

 1    that if the agreement results in a due process violation, that

 2    is sufficient to show conspiracy.

 3              And that is what distinguishes it from the underlying

 4    due process claims against the individual.

 5              THE COURT:  Okay.  Say that, again, because I think

 6    that is right.  I think that is right.

 7              MR. ART:  So, their first and fourth elements right

 8    now set up an instruction --

 9              THE COURT:  Yes -- no.  I mean, that does not belong

10    in a conspiracy instruction --

11              MR. ART:  Right.

12              THE COURT:  -- I do not think, the way it is.

13              MR. ART:  Right.

14              And, so, our view is that the elements are an

15    agreement -- and I understand the Court's complaint about the

16    complexity of our instruction about agreement.

17              THE COURT:  Right.

18              MR. ART:  An overt act committed by a participant and

19    the result of the agreement is -- his due process is violated.

20              And, so, that is why we have set out those three

21    elements that way.

22              THE COURT:  But you do not say that.  You just say

23    "constitutional rights were violated," right?

24              MR. ART:  Right.

25              And I guess we say that and, then, reference the first

1    and second claims, which is due process and Manuel

2    respectively, so that the jury will, you know -- doesn't have

3    to think about what kind of constitutional violations, again.

4         But it could say, "As a result, the plaintiff's due

5    process rights were a right to be free of seizure, without

6    probable cause, were violated."

7         THE COURT:  All right.

8         So, it is probably easier to just say "constitutional

9    rights" and not have to deal with that other problem at this

10   point.

11        So, what do we end up with, if I am with you on that?

12        MR. ART:  Well, your Honor, the unresolved issue,

13   then, is how to instruct the jury that on essential elements or

14   essential definitions about conspiracy -- that are in the

15   Court's most recent opinion; namely, that the -- that the --

16   participants don't need to know about what everyone else is

17   doing; they don't each need to take an overt act, they just

18   have to share a common purpose.

19        THE COURT:  Well, is there not maybe an instruction in

20   the criminal instructions that lays this out, so we are not

21   inventing the wheel?

22        MR. ART:  Yes, I will check.

23        THE COURT:  Yes, I think that would be useful.

24        Because, you know, trying to decide what conspiracy

25   law is, all by ourselves at this point, seems not a good thing

1    to be doing.

2            All right.  This whole issue is going to have to be

3    reserved because I think that I do not have anything that I am

4    the least bit comfortable with at this point.

5            So, now we move onto 33.  That is "Failure to

6    intervene."

7            Again, what are we -- what is going on here?  What is

8    the dispute?

9            The defendants say that the plaintiff's is incomplete,

10   that Defendants' 33 is an alternative.

11           What is missing?

12           MR. ART:  I guess we just think ours is closer to the

13   Pattern.

14           MR. POLICK:  And we heard you say that and we have the

15   Pattern on ours, Judge.

16           THE COURT:  Yes, yours is modified.

17           I guess I do not know that I have those instructions

18   here.  I have them in my office.  But what is the modification?

19           MR. ART:  Are you --

20           MR. POLICK:  I think it's --

21           THE COURT:  The defendants say theirs is modified --

22   the Pattern is modified.

23           Both say the Pattern is modified.

24           MR. POLICK:  Right.

25           I think it's probably just the brackets that are used

1    in the Pattern instruction.

2            MS. ROSEN:  Judge, do you want to see the Pattern?

3            THE COURT:  That would be nice, but I am trying to

4    figure out how these are different, besides the fact that they

5    word things slightly different.

6            MR. POLICK:  Plaintiff omits that language that you

7    included on the other -- you know, "If you find the plaintiff

8    has proved," and, "If not, on the other hand."

9            So, it is out of that Pattern.  So --

10           THE COURT:  Well, I always liked that language.  I

11   think that belongs there.  So, that is -- we will include that.

12           So, let's go to the defendants', then, and tell me

13   what else the plaintiffs objects to, besides the lack of that

14   language.

15           MR. ART:  You know, I think that it is not a vigorous

16   dispute.  We would object to saying, "One or more officers."

17   We don't think that is in the Pattern for the first element.

18           You know, ours proposes just saying, "The plaintiff's

19   constitutional rights were violated."  That is the thing that,

20   you know, that, you know, the Pattern -- or the instruction --

21   starts with.

22           THE COURT:  Well, we are going to be instructing them

23   about how to treat the individual officers.  So, I think the

24   plaintiff's easier formulation of this is fine.

25           What about 2?

1          MR. ART:  Again, it's -- we think it's -- a bit

2    similar -- our Proposed 2 -- but it is not a big dispute.

3          MS. ROSEN:  Judge, here is the Pattern.

4          (Document tendered.)

5          THE COURT:  Thanks.

6          It is not helpful because it does an end-around this

7    problem.

8          (Laughter.)

9          THE COURT:  Okay.  I think the plaintiff's is

10   preferable with the additional language that the defendants add

11   in theirs.

12         If the defense has anything else to point out to me,

13   fine, but I think simple is better.  And they are going to be

14   instructed elsewhere about all of these.

15         Now, wait a minute.  On the plaintiff's it begins --

16   let's see.

17         Is this all of the defendants?

18         MR. ART:  It should be all of the individuals.  If it

19   is not, that is a typo.

20         THE COURT:  So, why do we have to name them here?

21         MR. ART:  We don't.

22         THE COURT:  Okay.  Good.  Let's get rid of the names.

23         And does the defense object to, "To succeed on this

24   claim, as to the particular defendant you are considering," as

25   a reminder to them that they have to do that?  Do you have any

1   problem with that?

2          MR. POLICK:  No, Judge.

3          THE COURT:  All right.  So, that is okay.

4          So, let's get rid of the names of the individuals;

5   and, let's include the additional language from the

6   defendants'.  And, I think, then, the plaintiff's can be given

7   as modified.

8          I think, for now, the defendants' can be refused

9   because we covered everything.

10         Now, obviously, you are going to have to put this

11  together and go over them, again --

12         MS. ROSEN:  Yes.

13         THE COURT:  -- and bring any issues to my attention.

14         This is will not be the last time we visit these.

15         MR. POLICK:  Okay.

16         THE COURT:  Okay.

17         Then we are going to the -- okay.  We have got -- I am

18  looking at Plaintiff's 34 and --

19         MS. ROSEN:  And Defendants' 34.

20         THE COURT:  -- Defendants' 34.

21         Okay.

22         MS. ROSEN:  So, the Defendants' 34 comes right out of

23  the Pattern.  I have left the bracketed language in there

24  because it is our view at this point that it is premature to

25  determine how to fill that in --

1          THE COURT:  Uh-huh.

2          MS. ROSEN:  -- because of how the evidence is going to

3   come in.

4          Plaintiff has an express policy, wide-spread practice,

5   decision or policy statement.  From the defendants'

6   perspective, we don't think that all of that is going to be

7   brought in at the trial.  And, so, it seems --

8          THE COURT:  So, is there any of this we can agree on

9   at this point?

10          (No response.)

11          THE COURT:  Whose is closer to the Pattern?

12          MS. ROSEN:  That is on the Pattern.  It is -- all I

13   did was substitute "City of Chicago" and the plaintiff.

14          THE COURT:  Okay.

15          So, it would read, "If you find that plaintiff has

16   proved a constitutional violation by a preponderance of the

17   evidence, you must consider whether the City of Chicago is

18   liable to plaintiff.

19          "The City of Chicago is not responsible simply because

20   it employed" whoever.

21          "To succeed on this claim, plaintiff must prove each

22   of the following."

23          (Brief pause.)

24          THE COURT:  Oh, yes.  Okay.

25          So, I think it is probably right that we ought to wait

1   for the evidence to tell us what -- although I am looking at

2   the plaintiff's.  I mean, A, B, C --

3           MS. ROSEN:  Well, "C" is the Manuel question, right?

4   That is --

5           THE COURT:  No.

6           MR. ART:  If I could just explain our thinking on our

7   proposal.

8           So, we, obviously, agree that the City's language is

9   closer to the Pattern.  We are proposing something based on

10  what Judge Kennelly gave in Fields.  And I think I accurately

11  cited it this time.  And we have now provided you with those

12  instructions, with our memo.

13          But when there are a lot of different policy theories

14  at play, we think that the Pattern gets overly complicated, in

15  terms of following what the different issues in play are.

16          And, so, this is an attempt to simplify that and to

17  instruct the jury on the four Monell theories that we think

18  will be in play -- an express policy, a wide-spread practice, a

19  decision of a final policy maker; and, finally, failure to

20  train or supervise, in a way that doesn't confuse the jury

21  about what they have to find.

22          But we admit that it is a difficult task.

23          MR. LOEVY:  Just to add to that, the idea of a Pattern

24  Monell instruction is a new concept.  You know, there wasn't a

25  Pattern Monell instruction for the longest time.  And this is

1  the first attempt at it.

2          But Monell claims can be four-pronged.  And this one

3  doesn't really contemplate all of the different Monell theories

4  that we have.

5          And Judge Kennelly confronted that.  And I think Judge

6  Kennelly was part of the author of the Pattern Monell

7  instruction.

8          But in Fields, since we had -- our Monell claim was

9  complicated because it had many different aspects of it -- this

10  is how he did it.

11          MR. GIVEN:  And, Judge, just from our side I would

12  add, just as a general matter, that while everybody would agree

13  simple is better, Monell is not a simple --

14          THE COURT:  I understand that, but at the time it was

15  the policy of the City of Chicago to -- oh, this is what the

16  plaintiff must prove:  That the plaintiff's constitutional

17  rights were violated.

18          (Brief pause.)

19          THE COURT:  I am trying to figure out where you are at

20  loggerheads.  I mean, we --

21          MR. GIVEN:  There is nothing --

22          THE COURT:  Why would the plaintiff have to prove the

23  Manuel issue as part of a Monell claim?

24          MR. BOWMAN:  Well, he has to prove a constitutional

25  violation.

```
 1              THE COURT:  That is right.  I don't know why --
 2              MS. ROSEN:  Well, no.  My point is, in their proposed
 3   instructions --
 4              THE COURT:  Yes.
 5              MS. ROSEN:  -- they have identified the Manuel claim.
 6              THE COURT:  Right.  But I do not think we need to
 7   complicate the Monell instruction by going over the claims,
 8   again.  I mean, that is for arguments.
 9              MS. ROSEN:  Right.
10              Well, that is -- right.  So, that is part of what
11   plaintiff does, right?
12              Plaintiff's proposed instructions break them all out.
13              THE COURT:  I do not -- I am having -- well, "To
14   succeed on this claim, plaintiff must prove each of the
15   following things by a preponderance of the evidence."
16              I am reading plaintiff's.
17              "The plaintiff's constitutional rights were
18   violated -- "
19              MR. LOEVY:  Period.
20              THE COURT:  " -- as defined in these instructions.
21              "Two, at the time -- " maybe what we need to say here
22   is something, like, "The City of Chicago had a policy which,"
23   what?  A policy --
24              MR. ART:  And, then, we do have to instruct in general
25   on the types of --
```

1           THE COURT:  Right.

2           That, I think, we have to do.  But looking at No. 2,

3   "It was the policy of the City of Chicago to," you have got,

4   "A:  Conceal material," this; "to fabricate false evidence; to

5   deprive individuals of their liberty."

6           Is not what they have to prove that it was the policy

7   of the City of Chicago to violate the plaintiff's

8   constitutional rights in manner that you have found?  Is that

9   not what we are talking about?

10          MS. ROSEN:  Well, but it has to be -- yes, it has to

11  be -- the policy has to be tied to whatever the specific

12  constitutional violation is.

13          THE COURT:  That they found.

14          MS. ROSEN:  Right.

15          THE COURT:  That they found.

16          So, I do not know that we have to define all of this

17  -- go over the definition of all of these separate things at

18  this point.

19          Then, I think, we do have to talk about the

20  alternatives, in terms of policy, wide-spread practice,

21  decision or fault.  That, they need to know.

22          MR. LOEVY:  We can live with another period:  "Had a

23  policy of violating -- "

24          THE COURT:  "It was the policy of the City of Chicago

25  to -- " and, I mean, we have to put it in some way that is not

1  offensive, but to do whatever they found to, you know,

2  whatever.

3          "The policy of the City of Chicago to -- " is it to

4  allow?  Is it to actually do it?

5          What does the law require?

6          MR. ART:  I am -- so, on that point that your Honor

7  has just raised --

8          THE COURT:  Yes?

9          MR. ART:  -- we think it is a -- "or a policy of doing

10 X," whatever "X" is, we will define.

11         And, then, "The ways -- " the ways -- you can show a

12 policy are A, B, C and D.

13         THE COURT:  That is fine.  I do not have a problem

14 right now with A, B, C and D.  I have a problem with 2.

15         MR. LOEVY:  What if we said it, "The constitutional

16 rights, if any -- " you know, " -- if any violations, were

17 pursuant to a policy of the City of Chicago"?

18         MR. BOWMAN:  That is 3.

19         MR. LOEVY:  Yeah.  We are talking about how to fix the

20 3 -- fix 2.

21         THE COURT:  Oh.

22         MS. ROSEN:  Because I think the policy has to be, "It

23 is the policy of the City of Chicago to do X."

24         THE COURT:  All right.

25         MS. ROSEN:  And the question is:  What is the "X"?

```
 1              THE COURT:  What is the "X"?

 2              MS. ROSEN:  And my point was only that it seems like

 3    at this juncture it may be difficult to --

 4              THE COURT:  Well, all right.

 5              MS. ROSEN:  -- confine that.

 6              THE COURT:  Then if that is what everybody thinks

 7    needs to be done, then we just have to hold off on what goes

 8    into 2, right, to see what the evidence establishes?

 9              But, then, 3 is okay.

10              MS. ROSEN:  And, then, can we go back to 2 for a

11    second?

12              THE COURT:  Sure.

13              MS. ROSEN:  This instruction, in Subparagraph D, still

14    includes the "failure to discipline."

15              MR. ART:  And that is just a -- that is just a --

16    typo.  It should say, "A practice of failing to train or

17    supervise employees of the City of Chicago."

18              THE COURT:  Okay.  All right.

19              And, then, we are just going to have to take that up,

20    again, after the evidence.

21              MS. ROSEN:  Yes.

22              THE COURT:  But, then, when we get to, "Express

23    policy," that is okay?

24              "A widespread practice that is so permanent,

25    well-settled," et cetera, that looks kind of Black Lettery to
```

1  me.

2          MR. LOEVY:  I think it is probably Pattern.

3          MS. ROSEN:  It is not Pattern.  I am looking at it.

4          MR. LOEVY:  I guess Kennelly pulled that one from

5  here.

6          (Brief pause.)

7          THE COURT:  What do we have in this case that amounts

8  to a decision or policy statement that is a decision or policy

9  made by someone else?

10          MR. ART:  So, the Seventh Circuit in this recent

11  Glisson case essentially decided that an intentional or a

12  failure on the part of a municipality to adopt a needed policy

13  is -- can either be conceived of as an application of an

14  express policy or a decision of a final policy maker.  They

15  weren't very clear.

16          THE COURT:  I do not have a problem with your first

17  sentence.  I have a problem with your second sentence.  And the

18  question is:  Does the evidence support that?

19          MR. ART:  Yes.

20          THE COURT:  "A decision or policy statement, including

21  a decision not to adopt the needed policy," I think that is

22  fine.

23          MR. ART:  Okay.

24          THE COURT:  But "Such a decision or policy statement

25  includes the City of Chicago's approval of a decision or policy

 1 │ made by someone else."

 2 │         I am just wondering if there is any evidence in this

 3 │ case of that?

 4 │         MS. ROSEN:  There isn't.

 5 │         MR. ART:  I suppose that is a question of whether

 6 │ policy making that happens, for example, at the Area 5 level --

 7 │ and I am -- obviously, these are all contested factual issues;

 8 │ but, if the evidence shows that Area 5 needed a particular

 9 │ policy having to do with the recording of filler lineup

10 │ identifications, we think that that would fit within that

11 │ language potentially.

12 │         MR. LOEVY:  And it is Pattern, your Honor, made my

13 │ someone else.

14 │         THE COURT:  Oh, it is?

15 │         MR. LOEVY:  Yes, this is the Pattern.

16 │         (Document tendered.)

17 │         THE COURT:  Thank you.

18 │         Wait a minute.  This is a little different.

19 │         MR. LOEVY:  "Made by someone else," though.  That

20 │ phrase, we didn't make that up.

21 │         THE COURT:  Where is "Made by someone else"?

22 │         Oh, I am looking at the wrong one.

23 │         So, we are saying that if Area 5 had a policy or

24 │ failed to have a policy, the way the City of Chicago is liable

25 │ for that is if they approved a decision made by somebody else?

1          MR. LOEVY:  Or don't adopt a policy to fix it.

2          Like, let's say, Area 5 had a really terrible policy

3  and they said, "Wait a minute.  The Area 5 commander is not a

4  policy maker.  So, we are not liable for that."

5          THE COURT:  So, why is that not covered by, "Includes"

6  -- "A decision or police statement, including a decision not to

7  adopt a needed policy"?

8          MR. LOEVY:  We can live with that, your Honor.

9          THE COURT:  Good.

10          Thank you.

11          All right.  Okay.  I think -- are we okay, then, with

12  this one, except with respect to what goes into No. 2 on the

13  Plaintiff's?

14          MS. ROSEN:  And I still have a question about "C" --

15          THE COURT:  Yes?

16          MS. ROSEN: -- and whether or not the evidence is going

17  to support any of this.  But we can --

18          THE COURT:  Well, that -- yes, that -- goes through

19  the whole shebang.

20          MS. ROSEN:  Yes.  Okay.

21          THE COURT:  Okay.

22          So, with that -- with 2 -- still in doubt, and "C"

23  modified, as we have discussed, Plaintiff's 34 will be given.

24          The Defendants' 34 will be refused.

25          Okay.  Now, we are at 35?

```
1              MR. ART:  Yes, your Honor.

2              THE COURT:  Okay.  Let's start with the plaintiff's.

3              (Brief pause.)

4              THE COURT:  Okay.  So, the alternatives under 1, that

5     is the Manuel issue, right?

6              MR. ART:  That is right.  That is an issue that is,

7     obviously, reserved.

8              THE COURT:  Okay.

9              MR. ART:  And, then, we have just broken it out in

10    more detail --

11             THE COURT:  Okay.

12             MR. ART: -- in the Pattern.

13             THE COURT:  Okay.

14             MR. LOEVY:  We are hearing what you are saying, and

15    you like simpler and you like Pattern.  So, we are okay with

16    the defendants'.

17             THE COURT:  Okay.  Thank you.

18             Let's take a look at defendants'.

19             (Brief pause.)

20             THE COURT:  Okay.  So, the defendants' is based on the

21    Pattern.  What are the modifications?

22             MS. ROSEN:  The only modifications that I have made so

23    far are to insert "City of Chicago."

24             I have left it all bracketed, with the idea that we

25    are fine with this formulation and that we will plug in what
```

 1   needs to be plugged in --

 2            THE COURT:  Okay.

 3            MS. ROSEN:  -- as the evidence bears out.

 4            THE COURT:  And the plaintiffs are good with this, for

 5   the time being?

 6            MR. ART:  Yes.

 7            In fact, your Honor, our No. 2 and their No. 2, and

 8   our No. 3 and their No. 3 are, essentially, the same, except

 9   for the issue Ms. Rosen just identified.

10            THE COURT:  All right.

11            So, I am going to, then, with -- obviously, we are

12   going to have to revisit this after the evidence, but the

13   Defendants' 35 will be given and the plaintiff's will be

14   refused.

15            And, then, we are up to this nasty "reasonable

16   diligence."

17            Obviously, whether anything is going to be given

18   remains to be seen, but maybe we can agree on what the language

19   should be.

20            MR. ART:  Your Honor, I am not sure we are going to

21   agree on that because we have sort of a diametrically opposed

22   ideas --

23            THE COURT:  Okay.

24            MR. ART:  -- about what the law says "reasonable

25   diligence" requires.

1            THE COURT:  Oh, I see.

2            MR. GIVEN:  Ours is simpler, Judge.

3            (Laughter.)

4            THE COURT:  Yes, yours certainly is simpler.  I like

5    that.

6            (Laughter.)

7            THE COURT:  Well, I do not like the plaintiff's for

8    the obvious reasons that it is complex in ways that are

9    dizzying.

10           I think that -- I guess my question is, except for not

11   going into any detail, what is wrong with the defendants'?

12           "An officer need not disclose evidence that is

13   available to the defendant through the exercise of reasonable

14   diligence.  Reasonable diligence does not require that a

15   defendant inquire into matters of which he could not reasonably

16   be expected to know."

17           I mean, that sounds really like Black Letter Law to

18   me.

19           (Brief pause.)

20           THE COURT:  All right.  Honestly, I think that this

21   whole issue is up for grabs, in all kinds of reasons, but I do

22   not see anything wrong with this Defendants' 36.

23           MR. ART:  Well, your Honor, this is very close to the

24   definition that is in the underlying due process instruction.

25   So, obviously, we have an objection to reasonable diligence --

1   the jury being instructed about the issue, in general.

2         THE COURT:  Right, right.

3         MR. ART:  And, then, if it is instructed, it should be

4   instructed within the due process instruction.

5         MR. LOEVY:  It is in one of the breakouts.

6         MR. ART:  It is already proposed in their due process

7   instruction.

8         THE COURT:  Explain that to me.

9         MR. LOEVY:  Remember, there was four breakouts:

10   Materiality, impeachment -- one of the four breakouts --

11         MS. ROSEN:  On that issue instruction.

12         MR. LOEVY:  Do you remember when we were on that?

13         THE COURT:  Yes.

14         MR. ART:  So, the jury will already have been

15   instructed in the due process settled instructions.

16         THE COURT:  Oh, we defined it in the early

17   instruction.

18         MR. ART:  Right.

19         THE COURT:  Oh, okay.

20         MR. ART:  Yes.

21         THE COURT:  Okay.

22         I think that is enough.  So, I will refuse both of

23   them.

24         This definition is what is in the breakout?  Is this

25   different?

1      MR. ART:  It should be the same, your Honor.

2      THE COURT:  This is a nice -- this is a nice --

3  definition.

4      MS. ROSEN:  It is not -- it is not.  It is No. 29 --

5  Defendants' 29 -- "Reasonable diligence is what would expected

6  of a defense attorney of ordinary prudence under the

7  circumstances."

8      MR. POLICK:  Yes, that is wrong.

9      THE COURT:  Yes.

10      MR. LOEVY:  Why don't we use the good definition and

11  put it in there?

12      THE COURT:  Let's use the good definition from

13  Defendants' 36 and put it in there.

14      Okay.  Great.

15      You know, I have to tell you -- I do not want to take

16  us -- I am always making trouble -- but has anybody ever tried

17  this to a jury?  Because I have got to tell you that, you know,

18  I spent a lot of my life defending criminal cases.  And I do

19  not know how a jury could possibly evaluate this.

20      I mean, that is my problem.

21      Here is -- you have to look at your resources.  You

22  have to look at the amount of time the judge has given you.

23  You have to look at the other evidence that you must

24  investigate, to determine if you should -- whether wild goose

25  chases that might potentially yield are worth pursuing.

1          I just do not understand.  I mean, I will be very
2   interested to hear the expert's testimony, I guess.  But I do
3   not understand how a jury can make this determination.
4          And I have been e-mailing my colleagues, trying to
5   find somebody who has done this, so they can tell me how it
6   plays out, and I do not know how.  I just do not get it.
7          I do not understand how you can take a lay jury and
8   tell them that they have to decide what a criminal defense
9   lawyer should have done with certain specific problems.  I do
10  not get it.
11         MR. GIVEN:  Well, that is one reason we have an
12  expert, your Honor.
13         THE COURT:  Well, you need an expert.
14         MR. GIVEN:  And in this case it is actually -- without
15  going into all of the details, we think it is actually --
16  fairly simple and obvious why there was not reasonable
17  diligence by Mr. Wadas in the particular case.
18         THE COURT:  Well, do I have Judge Wasilewsky's -- or
19  whoever it is -- do I have his testimony somewhere?
20         MS. ROSEN:  His deposition or his report?
21         THE COURT:  His report.  Do I have it?
22         MS. ROSEN:  You do have it.
23         MR. ART:  You have it because we have moved to exclude
24  him --
25         MS. ROSEN:  Yes.

```
 1              MR. ART:  -- on the reasonable diligence.

 2              THE COURT:  Okay.  Okay.

 3              MS. ROSEN:  Yes, you have it.

 4              MR. LOEVY:  So, your Honor, that is why we say that

 5  the reasonable diligence point is up in the air.  We are saying

 6  it is not properly before the jury.  It is, as a matter of --

 7              THE COURT:  Well, I think it is a mess, but I have got

 8  to try to figure out what to do with it at this point.

 9              I mean, it is --

10              MR. GIVEN:  And to answer your question, I am not

11  aware that it has been tried one way or the other.

12              MR. LOEVY:  Yes, we think it is a matter of law not

13  for the jury, but for the Court.

14              THE COURT:  Oh, you think I should decide it?

15              I do not know how I would decide it.

16              I mean, does Mr. Wadas or Judge Wadas remember how

17  much time he had?  How much money he was being paid?

18              Was he a public defender or was he being paid?

19              MR. GIVEN:  Your Honor, private.

20              MR. BOWMAN:  He was a private lawyer at the time.

21              He recalls, I think -- counsel will correct me -- what

22  he was paid.

23              MR. GIVEN:  We know how much he was paid, 10,000.

24              MR. BOWMAN:  Yes.

25              MR. GIVEN:  And he had two years and he had --
```

1           THE COURT:  He had two years?

2           MR. GIVEN:  Yes.

3           THE COURT:  Okay.

4           MR. GIVEN:  And he had lots of documents with lots of

5   information and admits he did no investigation at all, among

6   other things.

7           MR. LOEVY:  As long as we are making our arguments

8   here, he also didn't get the documents that would have allowed

9   him to break the case open.

10          THE COURT:  All right.

11          MR. GIVEN:  Well, there is a dispute about that.

12          But if you just look at what there is no dispute that

13  he got, there is no dispute that he did nothing with them.

14          MR. LOEVY:  They didn't give him anything.

15          MR. GIVEN:  Well, I mean, to be clear, there is --

16          THE COURT:  All right.  Let's not go there.  I am just

17  telling you I think it is a nightmare.

18          All right.  That does not say that it is not going to

19  be part of our nightmare, but --

20          (Laughter.)

21          THE COURT:  -- that is why the Federal Defender

22  Program always believes and is afraid -- and never tells

23  defendants that they should not pay money to have some private

24  lawyer represent them.

25          If they do not have a ton of money, they are better

1   off --

2           MR. LOEVY:  People don't believe it, though, do they?

3           THE COURT:  They do not believe it.

4           Okay.  Where are we?

5           MR. ART:  Defendants' 37, your Honor.

6           THE COURT:  Thank you.

7           MR. LOEVY:  You know, at this point we are getting

8   into those argumentative case snippet jury instructions that

9   are really improper.

10          THE COURT:  Well, what does this mean?

11          MR. LOEVY:  It means don't trust circumstantial

12  evidence, you know, which is inconsistent with your

13  instruction.

14          THE COURT:  Well --

15          MS. ROSEN:  That is not --

16          MR. GIVEN:  That is hardly what it means.

17          THE COURT:  What is the speculation that you are

18  concerned about?

19          MS. ROSEN:  The speculation about whether or not

20  documents -- I mean, it goes right to a lot of what plaintiff's

21  expert, Brasfield, talks about being -- missing documents, when

22  he doesn't know that they are missing.

23          So, we can't bootstrap his conclusion that when he

24  compares one file to another, a page isn't there; therefore, it

25  is missing and withheld, to, "It must have been -- "

1          THE COURT:  I am not sure this would adequately direct

2    anybody's attention to that problem.

3          MR. LOEVY:  Your Honor, it is also -- it is argument.

4          THE COURT:  Well --

5          MR. LOEVY:  The Seventh Circuit in -- the Pattern

6    instruction in the Seventh Circuit says, "You are allowed to

7    make inferences."

8          And, so, this is their attempt to improve on the

9    Pattern with a --

10          THE COURT:  You know, what?  I do not need to hear

11    that.

12          MR. LOEVY:  All right.

13          THE COURT:  I do not like it.  It is going to be

14    refused.

15          So, then, we are up to 40, malicious prosecution.

16          Do not tell me there is not a Pattern on this?

17          MR. ART:  There is not an Illinois Pattern on

18    malicious prosecution.

19          So, from plaintiff's perspective, on the actual

20    instruction, itself, the defendants' version is missing an

21    element -- that the proceedings were terminated in plaintiff's

22    favor.

23          Even if it is not contested, we think the jury should

24    be instructed that that element has been established.

25          THE COURT:  Well, I think that is right; but, then, we

1   say, "The parties have agreed that this is satisfied."

2           MR. ART:  That is right.

3           THE COURT:  So --

4           MR. ART:  And then, your Honor, we propose an

5   instruction that simply defines the elements in the

6   instruction, itself.  And the defendants have proposed three

7   additional instructions.

8           THE COURT:  Oh, my.  Let's start with the plaintiff's.

9           So, the defense says that Guevara and the City

10  maliciously cause this?

11          MR. ART:  The plaintiff says that, yes, your Honor.

12          THE COURT:  Oh, the plaintiff says that?

13          MR. ART:  Right, because the City is liable on this

14  claim.

15          MS. ROSEN:  Yes.  But, Judge, they are only liable

16  under respondeat.  And, so, we think it is improper for the

17  jury to be instructed that the City is liable.

18          MR. ART:  I mean, respondeat is not like

19  indemnification.  It doesn't require payment of the judgment

20  after the fact.  It is a theory of liability.

21          THE COURT:  I got it.  Hold on a second.

22          (Brief pause.)

23          THE COURT:  Well, do we have a respondeat superior

24  instruction that goes along with this?

25          MS. ROSEN:  No.

1      MR. ART:  No, your Honor, because if liability is

2  found against -- on these elements, then the City is liable.

3      MS. ROSEN:  But as a matter of law -- I mean, the City

4  is liable.  So, why do we need -- we don't need to instruct the

5  jury.

6      That is why it is improper to put the City in the --

7      THE COURT:  The City is liable in a respondeat

8  superior theory as a matter of law?  Is that what you are

9  saying?

10      MS. ROSEN:  Yes.

11      THE COURT:  Okay.

12      MS. ROSEN:  I mean, if there a state law claim and

13  there is liability found against one of the defendant police

14  officers, the City is liable.

15      I don't -- there is no --

16      THE COURT:  Not on indemnification, but on respondeat

17  superior.

18      MS. ROSEN:  Under respondeat, yes.

19      THE COURT:  All right.

20      Well, then, I do not think we need to add the City in

21  here.

22      All right.  Then we get to the elements.  And, of

23  course, we then do not need, "as to the particular defendant

24  you are considering."

25      1 is the same.

```
 1                2 is, essentially, the same.

 2                3 is -- so, you know, 1 takes care of "bringing or

 3     continuing."  So, "acted with malice" is sufficient.

 4                4 is --

 5                MR. POLICK:  The one that is submitted?

 6                THE COURT:  I think 4 we need -- I think the

 7     plaintiffs are entitled to that determination in plaintiff's

 8     favor.  And, then, the next one is the same.

 9                And what else is different?

10                MR. LOEVY:  We have added the breakout definitions.

11                They have also proposed definitions, but as Steve

12     said, they proposed them as separate instructions.

13                So, with "probable cause," "commensurate," "continued

14     the malice," should all be defined.

15                THE COURT:  All right.

16                I think it is helpful to have them altogether in the

17     malicious prosecution instruction.

18                That being said, is there any difference in how they

19     are defied?

20                MR. ART:  Yes, your Honor, because what happens in the

21     broken-out instructions -- which are Nos. 39, 40 and 41, I

22     believe -- is that both parties have proposed competing

23     instructions.

24                You know, anyone can go pull a case that more

25     favorably supports a plaintiff or a defense position on what
```

```
 1    the definitions of these terms are.
 2              THE COURT:  Okay.
 3              MR. ART:  And, so, in our view, they should be one or
 4    two-sentence definitions and not in a separate instruction
 5    where the Court --
 6              THE COURT:  Well, okay.
 7              They are going to go in this malicious -- they are
 8    going to go in the malicious -- prosecution instruction.
 9              So, your want me to look at --
10              MR. ART:  So, our -- if you look at Plaintiff's 38,
11    for our proposed instructions; and, then, I suppose you look at
12    Defendants' 39, 40 and 41 for theirs.
13              THE COURT:  Okay.
14              So --
15              MR. LOEVY:  And, I think, probable cause is 40.
16              THE COURT:  All right.  I am looking at Defense 39,
17    "Commencing or continuing."
18              No, no, no.  We are not going to get into usurping the
19    State's Attorney's decision-making role.  That is --
20              (Brief pause.)
21              THE COURT:  Although maybe I am oversimplifying this.
22              So, what the plaintiff's says is, "Playing a
23    significant role"?
24              MS. ROSEN:  We don't think --
25              MR. GIVEN:  And, Judge --
```

1    MS. ROSEN:  -- that is an accurate statement of the

2    law.

3    MR. GIVEN:  Right.

4    This is -- and I will tell you Mr. Bowman knows this

5    very well, as does Mr. Art, as do I -- this topic is, in fact,

6    in play, as we speak, in the Illinois Supreme Court, a Fourth

7    District opinion.

8    THE COURT:  That is reassuring.

9    (Laughter.)

10   MS. ROSEN:  Yes.

11   MR. GIVEN:  The Fourth District recently held that

12   "significant role" language was not the test; and, in fact, it

13   was the language that the defendants used and offered in Beman,

14   from the Beman case.

15   That is the case that is currently in the Supreme

16   Court on this very issue.

17   MR. ART:  So, the posture, your Honor, is that the

18   Fourth District held what the defendants have proposed.  And

19   the Supreme Court has granted a review on that question.

20   MR. GIVEN:  I would also add that the language from

21   the Fourth District picked up --

22   THE COURT:  We do not need all of this gabbing.

23   MR. GIVEN:  -- from the Seventh Circuit.

24   THE COURT:  I am going to make it simple.  If it is

25   wrong, the Seventh Circuit will fix it.  Simple.

1        What does it mean and how could -- "The police officer

2   usurped the State's Attorney's decision-making role and is

3   responsible for commencing or continuing.  And the plaintiff

4   must establish that the officer pressured or exerted influence

5   on the prosecutor's decision."

6        I do not like that at all.

7        MR. GIVEN:  And, your Honor, if I may?

8        THE COURT:  Yes.

9        MR. GIVEN:  Taking out the "usurp" language, "the

10  pressure or exerted influence" is, in fact, what the Seventh

11  Circuit and Beman have held.

12       "Significant role," there is language from other

13  Illinois cases that you use "significant role."  And the

14  essence, I think, of the -- one of the -- issues in the Supreme

15  Court is that "significant role" is meaningless.  It is a vague

16  term that adds nothing.

17       MR. BOWMAN:  We would --

18       THE COURT:  Well, the way I --

19       MR. GIVEN:  I am just telling you what the argument

20  is.

21       THE COURT:  All of this chatter is not helpful.

22       So, this is, obviously, is not in the brief.  What do

23  I need to look at to decide if the nice, simple, significant

24  role is or is not sufficient?

25       MR. BOWMAN:  There is a -- there is a -- lot of

1   decisional authority in the Illinois Appellate Courts and in

2   other district court opinions here that uses "significant

3   role."  There is just a -- there is a -- ton of them.

4           And I -- our impression of the situation is that the

5   Supreme Court granted review in the Beman case because of the

6   fact that the Fourth District's language was inconsistent with

7   a whole wealth of authority.

8           THE COURT:  Okay.  I am going to read Beman.

9           Give me one good Seventh Circuit case that uses

10  "significant role" language.

11          MR. BOWMAN:  I can't off the top of my --

12          MR. GIVEN:  Judge, I can give you a Seventh Circuit

13  case that uses our language.

14          THE COURT:  Good.

15          MR. GIVEN:  It is called Colbert -- C-o-l-b-e-r-t.  I

16  think it is versus City of Chicago.  I could be wrong.

17          THE COURT:  Okay.

18          And that is a Seventh Circuit?

19          MR. GIVEN:  It is.

20          THE COURT:  Okay.

21          MR. GIVEN:  I don't have the cite right this very

22  second.

23          THE COURT:  Fine.  I can find it.  We can find it.

24          MR. BOWMAN:  It is actually cited in your brief.

25          THE COURT:  Okay.  Enough.  Enough.

1    MR. LOEVY:  We are going to have to get the cite to

2  your Honor.

3    THE COURT:  You know, you do not really need to do

4  that.  I will read this and see if I am satisfied with it or

5  not.

6    I have a very strong prejudice in favor of not adding

7  a whole separate trial in this about what happened between the

8  State's Attorney and the police.

9    Are we going to hear -- are we going to have a State's

10  Attorney testify?

11    MR. GIVEN:  Yes.

12    MS. ROSEN:  Yes, Judge.

13    THE COURT:  Okay.

14    So, they are going to hear that -- what are they going

15  to hear?

16    MS. ROSEN:  They are going to hear from the Felony

17  Review assistant, who is going to say, "I don't remember all of

18  the details of this case from 30 years ago," but would say that

19  it would be her practice to come out and talk to the

20  eyewitness, particularly with great care with a young

21  eyewitness.

22    THE COURT:  And what is the evidence that Guevara or

23  somebody influenced?

24    MR. LOEVY:  Well, when they called the State's

25  Attorney -- it's the detective who brings them in and says, "I

1   think charges should be filed."

2            And the young State's Attorney -- that is how it is

3   set up.  He's the felony review --

4            THE COURT:  Right, right.

5            MR. LOEVY:  -- and says, "Why?"

6            And they go over the file and they go over the reports

7   and Guevara says, "I built the case.  It should be prosecuted

8   and here is why."

9            THE COURT:  So --

10           MR. GIVEN:  Judge -- I am sorry to interrupt, but what

11  is key there is that the State's Attorney said she did not talk

12  to Guevara.

13           In fact, as Mr. Loevy points out, she talked to the

14  detectives who, in fact, are not defendants in this case.

15           THE COURT:  Uh-huh.

16           MR. GIVEN:  She said, "I would not talk to Gang Crimes

17  specialists.  I would talk to the detectives because they are

18  running the case."

19           MR. LOEVY:  And there is a dispute --

20           THE COURT:  Okay.

21           MR. LOEVY:  -- and Mr. Guevara is not denying it.

22           THE COURT:  I have to leave at noon.  Do you want to

23  try to finish this up this afternoon or not?

24           Do you want to find other time to finish up?

25           MR. LOEVY:  How close are we, your Honor?  Is there a

1    lot left?

2            MS. ROSEN:  Do you mean leave and come back?

3            THE COURT:  Well, I am wondering because I have five

4    more minutes.

5            MR. LOEVY:  Okay.

6            THE COURT:  And it looks to me like we have -- well,

7    not -- let's see what we can do in five minutes.

8            MR. LOEVY:  Yes.

9            THE COURT:  All right.  So, that is "commencing or

10   continuing."

11           Do we have -- do we have -- any dispute on "probable

12   cause"?

13           MR. ART:  Yes, it is the same dispute, your Honor.  We

14   have defined it in the actual "malicious prosecution"

15   instruction and they have provided an additional definition.

16           THE COURT:  It is going in the "malicious prosecution"

17   instruction.  That is decided.  So, the question is:  Is there

18   any difference on the language?

19           MR. ART:  Yes, I think so, your Honor.  I think that a

20   simple definition is better.  This is an incredibly long

21   definition of "probable cause," based on case law that gets

22   into sort of this --

23           THE COURT:  All right.

24           Let me read the plaintiff's because I do not ever --

25   let me explain -- I do not do that.

1          Okay.  Let's see.

2          "Defendant commences -- " oh, I have the wrong one.

3          MR. LOEVY:  Ours is embedded in the "malicious

4  prosecution" instruction, right?

5          MR. ART:  It is in Plaintiff's 38 that you will find

6  ours.

7          MR. LOEVY:  In the "malicious prosecution"

8  instruction.

9          THE COURT:  Okay.

10         (Brief pause.)

11         THE COURT:  I have them mixed up here.

12         Okay.  So, I am looking at Plaintiff's 38.

13         MR. LOEVY:  Yes.

14         THE COURT:  Okay?

15         MS. ROSEN:  Right under, "I will now define some

16  terms."

17         THE COURT:  Is that the definition of "probable

18  cause"?

19         MR. ART:  Yes, your Honor.

20         THE COURT:  What is the defendants' problem with that,

21  if any?

22         MR. POLICK:  I think we could live with that, but it

23  is incomplete.  Perhaps if we added the second paragraph of

24  Defendants' proposed, which is No. 40.  I think it informs the

25  jury of what actually "probable cause" is and rounds out

 1    that --

 2              THE COURT:  Well, tell me what you want to add.

 3              MR. POLICK:  It would be the second paragraph of

 4    Defendants' No. 40, which I believe is taken right from the

 5    Pattern.

 6              MR. ART:  That is bracketed language in the Pattern

 7    for "probable cause to arrest."

 8              THE COURT:  Hold on a second.

 9              (Brief pause.)

10              THE COURT:  What does the bracketed mean?  Is that

11    explained?  Because some of it -- I mean, I do not know that we

12    need all of this, but I think we might need some of it.

13              "Probable cause exists for a criminal proceeding if,

14    based on the evidence known at the time, a reasonable person

15    would have believed that the plaintiff had committed the crime

16    that was charged.

17              "But it does not need to be based on evidence that

18    would be sufficient to support a conviction."

19              I mean, I think that is enough.

20              MR. LOEVY:  Yeah, the last sentence isn't going to

21    apply, right?

22              THE COURT:  Well, why do we not just add, "but it does

23    not need to be based on evidence that would be sufficient to

24    support a conviction"?

25              MR. LOEVY:  We could live with that, your Honor.

1        THE COURT:  Good.  Okay.

2        What is next?

3        MS. ROSEN:  The definition of "malice."

4        Defendants' 41 and, then, it is the --

5        THE COURT:  Okay.

6        What is wrong with the plaintiff's?

7        MR. POLICK:  I think we can -- if we can modify the

8    first sentence?

9        THE COURT:  I do not think we need "in commencing or

10   continuing a criminal prosecution."  So, "Defendant acts with

11   malice if he acts for any reason other than -- "

12       MR. POLICK:  "Other than to bring a party to justice."

13       MS. ROSEN:  "To bring a party to justice," yes.

14       THE COURT:  Oh, "other than to bring a party to

15   justice," I like that better.

16       MR. POLICK:  And, then, we have no quarrel with the

17   second sentence there.  I think that is Black Letter Law.

18       THE COURT:  Okay.

19       So, this is going to -- we have got "malice."  We put

20   in what we need from the defendants'; and, then, we are back to

21   the plaintiff's.

22       All right.  "Prior judicial determination not

23   conclusive."  Let's see.

24          (Brief pause.)

25       THE COURT:  Okay.  You are going to get my ruling on

1    this.  The Certificate of Innocence is coming in.  Okay?  So, I

2    think we do need to tell them -- let's see what.

3             (Brief pause.)

4             THE COURT:  The State's decision to issue a

5    Certificate of Innocence is not binding on you in this case?

6             MR. LOEVY:  It is not binding on the police officers.

7             THE COURT:  Oh, wait a minute.

8             Do you mean innocence or guilt is up for grabs in this

9    case?

10            MR. LOEVY:  No, they have agreed that -- not to

11   contest innocence.

12            THE COURT:  So, what are we --

13            MR. ART:  Your Honor, we don't think that they should

14   be instructed about how to view this particular piece of

15   evidence.  That is our first issue.

16            And our second is that it states that the state court

17   decided different issues than those before you.  But the state

18   court didn't decide different issues.

19            MR. GIVEN:  It most certainly did.

20            MS. ROSEN:  Yes, it --

21            THE COURT:  Hold on.  Hold on.  Hold on.  I know what

22   the issues are.  You do not need to argue this.

23            Let me tell you what I will do.  I do not think that

24   this belongs in the final instructions, but I do think

25   something may belong at the time we give them this as a

1   cautionary or a limiting instruction.

2              And I think that telling them that the state court --

3   I mean, we ought to tell them what the state court decided.

4   The state court decided that -- whatever -- plaintiff was

5   innocent or whatever -- and did not decide any of these other

6   things.

7              MR. LOEVY:  There is going to be testimony on that,

8   too, your Honor.

9              THE COURT:  Well, I do not -- I do not -- have any

10  problem with giving them a limiting instruction, but I do not

11  think it needs to be in the final instructions.  You can argue

12  it.

13             So, it is going to be refused as this; but, if you

14  re-draft this for me, I will give it at the time the

15  Certificate of Innocence comes in.

16             I have to break.

17             MS. ROSEN:  Okay.

18             THE COURT:  I think we are pretty far along.  I do not

19  know if there is anything else.

20             Is there anything else really difficult coming down

21  the road here?

22             MR. ART:  No, your Honor.

23             MR. POLICK:  No, your Honor.

24             THE COURT:  Okay.

25             So, you will have another instruction conference at

1   some other point.  I will see what I can do with these without

2   your help.  And I will try to let you know -- you are going to

3   be giving me papers within the next day or two on the things we

4   discussed?

5              MR. LOEVY:  Yes.

6              MR. POLICK:  Yes.

7              THE COURT:  So, I will try to resolve whatever issues

8   I can as soon at possible.

9              MR. GIVEN:  Judge, very quickly, I did get a cite for

10  you on that Colbert case, if you want it?

11             THE COURT:  Yes.

12             MR. GIVEN:  It is 851 F.3d 649.

13             THE COURT:  Okay.  All right.

14             MR. GIVEN:  Also, Judge, one other thing very quickly

15  with regard to -- I know you are going through all of the

16  motions in limine.  From our perspective, the 404(b) one, we

17  would like a ruling on that as soon as possible only because --

18             THE COURT:  I will get it to you as soon as possible,

19  but somebody is taking me out to lunch for my birthday and I am

20  not going to risk not --

21             (Laughter.)

22             MS. ROSEN:  Happy birthday.

23             MR. LOEVY:  Happy Birthday.

24             THE COURT:  No, no.  It was a long time ago.  It was a

25  month ago.

```
 1              MS. ROSEN:  Well, happy belated birthday.

 2              THE COURT:  Thank you.

 3              Okay.  Thank you, everybody.

 4              MR. ART:  Thank you.

 5              MS. ROSEN:  Thank you, Judge.

 6              MR. POLICK:  Thank you.

 7              MR. LOEVY:  Thank you.

 8              MR. GIVEN:  Thank you, Judge.

 9              THE COURT:  We made a lot of progress, at least in

10    terms of what I know is coming.  Thank you.

11              All right.

12              MS. ROSEN:  Thank you.

13                        *   *   *   *   *

14    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
15

16    /s/ Joene Hanhardt              May 25, 2018
      Official Court Reporter
17

18

19

20

21

22

23

24

25
```