## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12-CV-04428 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| REYNALDO GUEVARA et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RULING ON OFFICER DEFENDANTS' MOTIONS IN LIMINE NO. 18 TO BAR THE TESTIMONY OF RULE 404(b) WITNESSES AND NO. 14 TO BAR REFERENCE, QUESTIONING, OR INNUENDO TO OTHER LAWSUITS OR COMPLAINTS/DISCIPLINE AGAINST THE DEFENDANT OFFICERS OR OTHER CHICAGO POLICE PERSONNEL

In their eighteenth motion in limine, the police officers named as defendants ("officer defendants") in this 42 U.S.C. § 1983 action seek to bar plaintiff Jacques Rivera ("Rivera" or "plaintiff") from calling witnesses to testify about other alleged bad acts attributed to defendant Reynaldo Guevara ("Guevara") under Federal Rule of Evidence 404(b) ("404(b) witnesses"). During discovery, the court ordered Rivera to disclose no more than ten 404(b) witnesses. ECF No. 76 at 1. Five of the 404(b) witnesses Rivera disclosed later became unavailable or were withdrawn. *See* Officers' Mot. in Limine No. 18 at 1–2, ECF No. 411. Based on deposition testimony, the officer defendants also believe that a nondefendant police officer, William Dorsch ("Dorsch"), will offer testimony regarding Guevara's other alleged misconduct.[1] *Id.* at 2. In his response, Rivera says that he will not turn this trial into a "three-ring circus" of mini-trials on other acts of alleged misconduct. ECF No. 479 at 2. Rather, Rivera pledges, "consistent with Rule 403, . . . [to] limit his presentation of this evidence to calling no more than three or four live

---

[1] With the exception of Alfredo Rosario, Plaintiff lists all of these witnesses as "will call" witnesses in his proposed pretrial order.

witnesses to testify about other acts, and to cross-examining Guevara and other Defendants about other acts." *Id.* For the following reasons, the court limits Rivera to two 404(b) witnesses.

Under Rule 404(b), evidence of other acts may not be used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But evidence of prior acts can be admitted for "another purpose." *Id.* R. 404(b)(2). Permissible purposes listed in Rule 404 include (nonexhaustively) "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

In *United States v. Gomez*, the en banc Seventh Circuit held that the proponent of 404(b) evidence must demonstrate that "its admission is supported by some propensity-free chain of reasoning." 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013)); *see also id.* at 860. Even if it passes Rule 404(b) scrutiny, evidence of other acts must still satisfy Rule 403, which gives the district court discretion to exclude relevant evidence if its probative value is "substantially outweighed by a danger of unfair prejudice." *Id.* at 856–57 (quoting Fed. R. Evid. 403) (alteration omitted). *Gomez* directed district courts to consider the "degree to which the non-propensity issue actually is contested when evaluating the probative value of the proposed other-act evidence . . . [b]ecause other-act evidence almost always carries a risk of unfair prejudice . . . ." *Id.* at 860.

Rivera argues that the 404(b) evidence he intends to introduce through his witnesses and on cross examination of Guevara is admissible for a host of non-propensity purposes. He claims that the evidence will be relevant to prove intent; to prove knowledge; to prove opportunity;[2] to

---

[2] Plaintiff argues that his 404(b) evidence will prove that Guevara had the opportunity and the capacity to select a suspect and fabricate evidence implicating the suspect, even though he worked for a large, urban police department and the alleged conspiracy would have involved many people. *See* Resp. at 29–30, ECF No. 479. No such defense

prove preparation and plan; to prove the absence of mistake and lack of accident; to prove Guevara's identity as the officer to whom Orlando Lopez ("Lopez") allegedly told he had identified the "wrong guy" on September 15, 1988; to impeach Guevara, who is expected to invoke his Fifth Amendment privilege on the stand; to show that eyewitnesses in other cases told Guevara that they selected the wrong person at a lineup but the "wrong person" was prosecuted; to plaintiff's *Monell* theories; and to punitive damages. ECF No. 479 at 23, 34, 35, 36.

### *Monell* Claims, Knowledge, Impeachment-Only Evidence, and Punitive Damages

Plaintiff's *Monell* claims cannot furnish a basis for admitting this evidence because the court dismissed plaintiff's *Monell* claim that the City failed to discipline Guevara at summary judgment. All of plaintiff's alleged prior acts concern Guevara. Even if this evidence would be marginally relevant, the risk of undue prejudice and confusion outweighs that probative value. *See Rivera v. Guevara*, No. 12-CV-4428, 2018 WL 2183998, at*44–45 (N.D. Ill. May 11, 2018).

For similar reasons, Rivera's theory that his 404(b) evidence can be used to prove Guevara's knowledge that the identification procedures were improperly suggestive, and that the officer defendants lacked the skill to manipulate plaintiff, cannot be accepted, Resp. 34–35, ECF No. 479, because the court dismissed Rivera's due process claims based on the use of unduly suggestive lineup procedures at summary judgment. *Rivera v. Guevara*, 2018 WL 2183998, at * 26–27.

The court also will not allow Rivera's impeachment-only[3] 404(b) evidence of alleged other acts in the cases of David Colon, Angel Diaz, Ricardo Rodriguez, Jose Montanez, Armando Serrano, Roberto Almodovar, William Negron, and Demitrius Johnson. Rule 404(b)

---

was raised at summary judgment, however, and the court has no reason to think that it will be here. Plaintiff should alert the court outside of the jury's hearing if he believes the door has been opened to this sort of testimony.

[3] Rivera articulates an impeachment theory in his response. He argues that if Guevara invokes his Fifth Amendment privilege, as he is expected to do at trial, that is tantamount to a denial of his guilt. ECF No. 479 33–34. He cites no authority for this proposition and the court deems the argument waived. *See id.*

evidence may be used in appropriate circumstances to impeach a witness. *See, e.g.*, *United States v. Bell*, 624 F.3d 803, 810–11 (7th Cir. 2010). Because Rivera revealed his intent to inquire about these incidents for the first time in his response to the instant motion in limine, defendants did not have the opportunity to find rebuttal witnesses during discovery, so the officer defendants would be unfairly prejudiced by testimony about them at trial. *See* Fed. R. Evid. 403; Reply 3–4, ECF No. 494 (so representing).

Finally, the court can dispose of plaintiff's contention that the Rule 404(b) evidence is admissible on punitive damages in short order. Plaintiff suggests that proving other incidents of misconduct will be relevant to his claims against the officer defendants for punitive damages. This may be true in the limited sense that, as explained later in this order, some of plaintiff's Rule 404(b) evidence is relevant to prove that the officer defendants acted intentionally, and their degree of intentionality in the Valentin investigation is relevant to punitive damages. *See Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1074 n.8 (N.D. Ill. 1999). To admit other acts to increase the officer defendants' punishment irrespective of their culpability in the Valentin investigation would run afoul of Supreme Court case law holding that punitive damages must be based on the defendants' conduct in the particular case. *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3840336, at *3 (N.D. Ill. Aug. 30, 2011) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) and *Philip Morris USA v. Williams*, 549 U.S. 346, 356–57 (2007)) (granting in part motion in limine for this reason). This holds particularly true where, as here, the other acts occurred after the Valentin investigation. The court will consider a limiting instruction prohibiting the use of Rule 404(b) evidence to impose punitive damages if one is proposed.

4

## Summary of Plaintiff's 404(b) Witnesses

Plaintiff submits that his 404(b) witnesses share a common theme, defendant Guevara. His witnesses initially identified people charged with violent crimes, and later recanted. Many of the facts to which plaintiff's Rule 404(b) witnesses are expected to testify are the subject of vigorous disputes, sometimes in pending litigation.[4] The following summary describes the testimony as plaintiff summarizes it in a light favorable to him.

William Dorsch, a nondefendant police officer who was involved in the Valentin investigation, will testify about an incident that occurred in or around 1990 during a murder investigation, *see* Tr. at 68:12–69:5, ECF No. 479 Ex. 3, in which Guevara brought two juveniles to view a photo lineup. Guevara pointed to the photo of the suspect and said, "That's him." One of the two juveniles then identified the suspect in a live lineup, but both young people later told Dorsch that a third party had paid them for the identification. *Id.* at 82:11–21. Prosecutors dropped the charges after talking to the two alleged eyewitnesses.

Plaintiff also intends to call two witnesses who testified at depositions and hearings in *Johnson v. Guevara*, No. 05 C 1042 (N.D. Ill.), Samuel Perez ("Perez") and Saul Ortiz ("Ortiz"). *Johnson* arose from the September 1989 murder of Ricardo Fernandez ("Fernandez") outside a nightclub located in Humboldt Park. Defendants Guevara, Gawrys, and Mingey investigated the crime. Perez and Ortiz testified that Guevara approached them shortly after the murder, showed them photographs of Johnson (later convicted and eventually freed), and said that Johnson and others should be charged with the murder. *See* Perez Dep. at 89:12–91:19, ECF No. 479 Ex. 6; *id*. Ex. 4 at 1016:15–1019:9 (Ortiz's testimony at the *Johnson* trial). Ortiz also testified that

---

[4] Defendants suggest that the contested nature of some of the witnesses' testimony counsels against admission. The witnesses the court will allow appear not to justify this concern, and the officer defendants make clear in their motion and reply that they stand ready to rebut the testimony. The rule that the court need not make a preliminary finding that the prior acts be proven by a preponderance of the evidence answers this argument sufficiently. *See Gomez*, 763 F.3d at 854 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

Guevara showed him three photographs and told him whom to pick at a live lineup. *Johnson*

Trial Tr. at 1046:6–18. Ortiz complied, according to his testimony. *Id*. at 1047:11–20.

The next two 404(b) witnesses, Jose Melendez ("Melendez") and Alberto Rodriguez

("Rodriguez"), purportedly identified the car involved in the May 23, 1995, shooting of Noel

Andujar ("Andujar"). Thomas Sierra ("Sierra") spent 22 years in prison for the Andujar murder

before his release in January 2018. *See* Compl. ¶ 1, *Sierra v. Guevara*, No. 18 C 3029, ECF

No. 1 (N.D. Ill. Apr. 30, 2018). Melendez has testified that before a May 30, 1995, lineup,

Guevara showed him a photo of Sierra and told him he believed Sierra was the shooter. *See*

Resp. Ex. 11 at 208. Melendez and Rodriguez also testified that Guevara showed them a car he

said was involved in the shooting, but they told Guevara that he had the wrong car. *See id*. Ex.

12 at 147:10–55:15. Guevara's report summarizing the shooting omits those exculpatory facts.

*See id*. Ex. 9 at CPD 1004.

Plaintiff expects Wilfredo Rosario ("Rosario") to testify about his identification, later

recanted, of Xavier Arcos as the person who murdered Orlando Guirila ("Guirila") in or around

1989. Rosario testified that two years after the murder, Guevara and defendant Gawrys arrested

him for an unrelated charge and threatened to charge him with the Guirila murder if he did not

fabricate an identification. *See* ECF No. 479 Ex. 14 at J-36:1–J-37:3, J-47:11–24.

Rivera's next witness, Robert Ruiz ("Ruiz"), implicated Concepcion and Freddie

Santiago in the 1997 murder of Oscar Arman. Ruiz testified that, contrary to police reports,

Guevara showed him a photo array and told him whom to identify. *See* ECF No. 479 Ex. 16 at

77:1–16; *id*. Ex. 17 at 137:13–38:15 (deposition testimony). Police reports state that Ruiz picked

one of the Santiagos at a live lineup, but Ruiz later testified that he did not recall any lineup

occurring. *Id*. Ex. 17 at 139:23–140:5. At the criminal trial, Ruiz testified that Guevara forced

him to come to the police station three or four times, keeping him locked in a room for seven or eight hours each time. *See id.* Ex. 16 at 75:4–22, 79:5–18.

Evelyn Diaz ("Diaz"), the final 404(b) witness plaintiff has listed, testified as an eyewitness to the 1995 shooting of Luis Serrano ("Serrano").[5]  An interview report prepared by Guevara states that Diaz identified Serrano from a photo array on August 22, 1997.  ECF No. 479 Ex. 18 at JR-JJ 018776–77.  At a deposition taken in 2008, Diaz testified that Guevara told her that she had to come to the police station with him, or he would take her child from her. *Id.* Ex. 19 at 46:7–49:12.  Guevara showed her a photo book and repeatedly indicated one photo, telling Diaz that the indicated person was the shooter. *See id.* at 56:21–57:6, 69:7–71:24.  When Diaz protested that she did not recall seeing the shooter, Guevara again threatened to take her child from her and added that he would see that she was sent to jail. *See id.* at 70:7–71:21.

### Guevara's Identity at the September 15, 1988, Lineup

Rivera asserts that his Rule 404(b) evidence should be admitted to prove Guevara's identity as the officer Lopez allegedly told Rivera was the "wrong guy" at the September 15, 1988, lineup.  After he recanted, Lopez testified that he told two people that Rivera was the "wrong guy" before the September 15, 1988, lineup, but a fact dispute exists over who those people were. *See Rivera*, 2018 WL 2183998, at *11 (discussing Lopez's testimony about this event).

Evidence of other acts may be admitted under Rule 404(b) "to prove a defendant's identity through a 'distinctive manner of operation, or *modus operandi*.'"  *Gomez*, 763 F.3d at 854 (quoting *United States v. Simpson*, 479 F.3d 492, 497–98 (7th Cir. 2007)).  But the inference only becomes relevant where there is "'a singular strong resemblance to the pattern of the

---

[5] In its ruling on Officer Defendants' motion in limine no. 4, the court ruled that Diaz may not testify because she was not properly disclosed.

offense charged' with the similarities between the two [acts] sufficiently idiosyncratic to permit an inference of pattern." *Id.* 763 F.3d at 854 (quoting *Simpson*, 479 F.3d at 498).

The court can see nothing sufficiently idiosyncratic about the police officer's alleged response when Lopez said Rivera was the "wrong guy" to warrant a pattern inference. Lopez testified that after he told the two people Rivera was the "wrong guy," the officer went forward with the identification anyway. Plaintiff points to no similar clothing worn by Guevara or distinctive physical features common to the Valentin investigation and the 404(b) evidence; he elicits at most a generalized pattern of nonresponse to a "wrong guy" statement. *Contrast United States v. Clark*, 774 F.3d 1108, 1114 (7th Cir. 2014) (pattern of physical descriptions of person who committed the robberies); *United States v. Vance*, 764 F.3d 667, 669 (7th Cir. 2014) (group of robbers used same masks, gun and practice when robbing restaurants and bank). True, some of plaintiff's Rule 404(b) witnesses testified that their protestations to Guevara that a person or a car was not involved in the crime fell on deaf ears, but ignoring something does not seem idiosyncratic and does not make the identification "more likely," Fed. R. Evid. 402, that Guevara, as opposed to someone else in the photograph, ignored Lopez. To accept this inference would unduly risk a pure propensity inference that Guevara is the sort of police officer who ignores complaints, so he must have been the one to ignore Lopez's complaint. *See Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000) ("If defined broadly enough, modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits." (alteration and citation omitted)). Accordingly, plaintiff's Rule 404(b) evidence will not be admissible to prove Guevara's identity or modus operandi at the September 15, 1988, lineup. *See Patterson v. City of Chicago*, No. 15-cv-4139, 2017 WL 770991, at *4 (N.D. Ill. Feb. 28, 2017).

### Intent, Absence of Mistake, and Knowledge

The court next considers Rivera's theories that his 404(b) evidence is relevant, through a non-propensity chain of reasoning, to intent, absence of mistake or accident, and knowledge. In so doing, the court heeds *Gomez*'s admonition to "not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." 763 F.3d at 856. Mixed propensity and non-propensity chains of inference must be present. "Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id.*

As plaintiff acknowledges, his theories of intent, absence of mistake, and knowledge bear a close relationship to one another. *See* Pl.'s Resp. 27, ECF No. 479 (describing intent and absence of mistake as "closely related"). On intent, Rivera says that the evidence will rebut the officer defendants' contentions that they were duped by Lopez and did not violate his rights intentionally. *See id.* at 23–24. Rivera also tells the court that intent is at issue on the question of whether defendants told Lopez to pick Rivera or coerced him to do so. *Id.* at 24.

Attending to the chain of inferences plaintiff wants the jury to draw, *see Gomez*, 763 F.3d at 857, Rivera argues that "[i]n all of the [Rule 404(b)] cases . . . Guevara intentionally instructed witnesses to select individuals from photo arrays or lineups before they had made any selection." Resp. at 26, ECF No. 479. He makes a similar argument under the heading of mistake: defendant "did not make a mistake in causing the wrongful prosecution and conviction of Plaintiff." *Id.* at 27. The same holds for Rivera's theory of knowledge. *See id.* at 28–29 (arguing that the Rule 404(b) evidence will prove Guevara's "knowledge that he suppressed the true circumstances of Lopez's identification").

For support, Rivera relies most heavily on *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993). In *Wilson*, the Seventh Circuit held that evidence of other acts performed by police officer defendants was admissible in a § 1983 case stemming from a wrongful conviction. *Id.* at 1238. The 404(b) testimony was that the officers beat another suspect "shortly before" the plaintiff there was arrested, and another witness testified that some of the officer defendants subjected him to electrical shocks during an interrogation nine days before the plaintiff said he was tortured by police. *Id.* Not only did the Seventh Circuit hold that the first witness's testimony was "plainly" relevant; it also decided that the testimony fit the Rule 404(b) categories of intent, opportunity, preparation, and planning. *Id.*

Defendants suggest no material way to distinguish *Wilson*. In their reply, the officer defendants fault plaintiff for relying on pre-*Gomez* cases. ECF No. 494 at 3. *Gomez* made clear, however that, although the Seventh Circuit was abandoning its four-part test used to evaluate the admissibility of Rule 404(b) evidence in favor of a rules-based approach, the "change is less a substantive modification than a shift in paradigm that we hope will produce clarity and better practice in applying the relevant rules of evidence." 763 F.3d at 853. *Gomez* did not cite or discuss *Wilson*. And the officer defendants have not explained how *Gomez* abrogates *Wilson*. ECF No. 494 at 3.

This court reads *Gomez* as harmonious with *Wilson*. As *Gomez* emphasizes, Rule 404(b)'s permitted purposes stand in "inherent tension" with the rule forbidding evidence of a person's propensity from prior acts, *Gomez*, 763 F.3d at 856, and indeed, "[o]ther-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference," *id.* at 857 (citing *Lee*, 724 F.3d at 978); *see also id.* at 858 ("Our circuit also requires special caution when other-act evidence is offered to

prove intent, which though a permissible non-propensity purpose is nonetheless 'most likely to blend with improper propensity uses.'" (quoting *United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012)). What the court has just quoted comes from *Gomez*'s explication of how Rule 403 balancing should be conducted when Rule 404(b) evidence is introduced to prove intent. *See id*. at 857–58. *Wilson* addresses the Rule 404(b) issues here, compelling the conclusion that Rivera's other acts evidence is relevant and admissible through a non-propensity chain of inferences to prove intent, opportunity, knowledge and planning to frame Rivera. *See Wilson*, 6 F.3d at 1238. *Gomez* then provides further guidance on determining whether the 404(b) evidence is relevant and for conducting the Rule 403 balancing to decide whether this 404(b) evidence is more prejudicial or confusing than probative. *See Gomez*, 763 F.3d at 857–58; *see also Hill*, 2011 WL 3840336, at \*4 (finding, pre-*Gomez*, that *Wilson* controlled admissibility question and turning to other questions of Rule 404(b) admissibility and Rule 403 balancing).

### Rule 403 Balancing

Mindful that "Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to another purpose," *Gomez*, 763 F.3d at 859 (quoting *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012)), the court balances the undue prejudice here against its probative value under the Rule 403. The *Gomez* opinion stresses that 404(b) evidence's importance generally increases in proportion to the degree to which the relevant facts are disputed. *See id*. at 857 (describing this as an "important issue"). If a party offers to stipulate to a fact, for instance, the risk that the jury will draw an unacceptable propensity inference gains greater importance. *Id*. This example stands at one end of a "spectrum" of factual disagreements. *Id*. (citations omitted).

On that spectrum, it would be fair to say that the dispute over whether the officer defendants, and Guevara in particular, set out intentionally to frame Rivera forms the white-hot nucleus of the disputed fact issues in the case at hand. Defendants do not disagree that they will dispute those issues vigorously at trial. Plaintiff's case on this issue rests primarily on the criminal history report stamped issued on inquiry on August 27, 1988, and inferences drawn from the course of the Valentin investigation. The officer defendants, for their part, point to Lopez's testimony that the police did not coerce him to misidentify Rivera. So Rivera's 404(b) evidence going to intent, absence of mistake, opportunity, and plan falls on the highly probative end of the *Gomez* spectrum. *See Gomez*, 763 F.3d at 858; *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008); *see also Wilson*, 6 F.3d at 1238.

But the probative value of some of plaintiff's Rule 404(b) witnesses are still too likely to confuse the issues, waste the jury's time on mini-trials on dissimilar acts, and result in undue prejudice to defendants. First, the court finds Rosario's testimony about Guevara's alleged conduct to be too dissimilar, and therefore unfairly prejudicial, to be admitted. The passage of time as well as the alleged threat to charge Rosario if he did not cooperate differs from the officer defendants' alleged conduct in the Valentin investigation, where there is expected to be no evidence that a threat was issued.

The court also finds the testimony of Ruiz would be unduly prejudicial and likely to confuse the jury. First, all of the misconduct about which Ruiz testified at his deposition occurred nine or more years after the Valentin investigation. Ruiz testified that Guevara showed him several photographs before a live lineup and told him whom to identify. ECF No. 479 Ex. 16 at 77:1–16; *id*. Ex. 17 at 137:13–38:15. But critically, Ruiz testified to the use of tactics not present here, such as making him come to a police station on at least three occasions and locking

him up for seven or eight hours. *See id.* Ex. 16 at 75:4–22, 79:5–18. The parties have not mentioned similar strong-arm tactics used during the Valentin investigation, and the risk that the jury will use this evidence for pure propensity purposes looms large.

Primarily because the factual fit also seems remote and the different facts are likely to be unduly prejudicial and inflammatory, the testimony of Diaz that Guevara repeatedly showed her a single photo when she told him she could not identify the shooter does not squarely fit the alleged facts here. Moreover, she testified that Guevara threatened to take her son away and have her jailed if she did not identify the shooter. *See* Ex. 19 at 46:7–49:12; *id.* at 70:7–71:21. Plaintiff has no evidence of similar threats made to Lopez and has never argued that such threats were made. Introducing these facts would needlessly confuse the jury, risk a wasteful mini-trial, and invite a propensity inference.

But Perez and Ortiz's testimony regarding Guevara's 1989 investigation of the Fernandez murder raises fewer Rule 403 concerns as it is closer in time and involves an allegation that Guevara showed eyewitnesses photo books and told them whom to pick. Melendez testified to a similar course of events in the 1995 investigation of the murder of Andujar, but Rodriguez testified at most that Guevara commented before the lineup that he thought he had the right suspect. The court has no reason to believe that this comment involved pointing to a particular suspect. Its probative value is therefore too ambiguous to justify its admission.[6] The testimony of Melendez and Rodriguez that Guevara showed them the car he said was involved in the shooting comes close to what the plaintiff alleges here. *See id.*

---

[6] Based on what plaintiff has submitted, Rodriguez did not testify that he was coached. He testified that "just before the detective showed [him] the photographs, [the detective] told [Rodriguez] that they probably got the guy." *Id.* Ex. 13 at 139. That statement certainly expresses confidence, and it can be read as suggesting that the suspect is among the photos. Without more context, it does not appear to rise to the level of the alleged steering here.

13

Lastly, the court will allow Dorsch to testify about the 1989 or 1990 investigation, which the jury could view as fitting plaintiff's version of the facts closely here. The court initially excluded Dorsch's testimony that the juvenile witnesses were paid in its minute order advising the parties of this ruling. ECF No. 534. Upon further reflection, the prejudice to defendants of hearing about witness payment is overshadowed by the prejudice that is likely to result if the jury does not hear Dorsch explain why the witnesses suddenly became forthcoming about intentionally framing someone for murder. Allowing Dorsch to tell the whole story of what happened is necessary to prevent the jury from becoming confused and speculating about the hole left in the narrative.

After performing a Rule 403 balancing, the court finds find that the 404(b) evidence's probative value outweighs any undue prejudice or confusion likely to result from the admission of the testimony discussed in the prior two paragraphs. *Gomez* explains that limiting instructions to the jury are the preferred way of curing any prejudice from Rule 404(b) evidence, and the court finds that they will be adequate here (assuming that the defense proposes them). *Gomez*, 763 F.3d at 860–61. Plaintiff remains free to argue, when the jury is not present, that the door has been opened to any of his 404(b) evidence.

### Ruling on Officer Defendants' Motion in Limine No. 14 to Bar Evidence and Argument About Complaints and Lawsuits Against Officer Defendants and Their Discipline

The officer defendants' fourteenth motion in limine also raises a Rule 404(b) claim that the court should bar references to other lawsuits filed against the officer defendants and complaints of alleged misconduct filed by members of the public in complaint registers ("CRs"). *See* Officer Defs.' Mot. in Limine No. 14 at 1, ECF No. 407. The officer defendants say that evidence in these categories will inevitably be used to prove the officers had a propensity to

14

engage in misconduct and would be unduly prejudicial, will waste the jury's time, and will confuse the issues. *See id.* at 2–3, 5–6; *see also* Fed. R. Evid. 403, 404(b).

Plaintiff responds that he intends to rely exclusively on sustained CRs, but he does not mention prior lawsuits. *See* Resp. to Officer Defs.' Mot. in Limine No. 14 at 1, ECF No. 478. He points to cases admitting sustained CRs for non-propensity purposes, including those listed in Rule 404(b)(2) and for impeachment. *See, e.g.*, *Petrovic v. City of Chicago*, No. 06 C 6111, 2008 WL 818309, at *2 (N.D. Ill. Mar. 21, 2008); *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1074 (N.D. Ill. 1999).

As plaintiff argues, the record made by the parties leaves the court unable to perform a Rule 404(b) analysis and Rule 403 balancing required by *Gomez*. Plaintiff lists the sustained CRs he wishes to introduce by number in a footnote and indicates the officer defendant against whom the CR was lodged. ECF No. 478 at 3 n.1. The officer defendants include a table in their reply summarizing the CRs, but the summaries are too terse for a full Rule 404(b)/403 analysis. *See* Reply 2–3, ECF No. 501 (for example, "[p]hysical altercation with female family member" and "[d]isobeyed a direct order"). On this record, the court cannot say unequivocally that the sustained CRs will be inadmissible for any purpose at trial and cannot meaningfully assess their prejudicial effect. *See Austin v. Cook Cty.*, No. 07 C 3184, 2009 WL 799488, at *4 (N.D. Ill. Mar. 25, 2009); *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *26 (N.D. Ill. June 12, 2015)

Accordingly, the court declines to bar evidence of other lawsuits and CR files involving the officer defendants categorically. Because of the potential prejudicial effect of this evidence, the court will nevertheless require plaintiff to seek a ruling from the court outside of the jury's hearing before making reference to any prior lawsuits against the officer defendants or any CR

files.

***

For the reasons stated, the Officer Defendants' Motion in Limine No. 18, ECF No. 411, is granted in part and denied in part. Consistent with this ruling, plaintiff may not cross examine Guevara about the other acts associated with David Colon, Angel Diaz, Ricardo Rodriguez, Jose Montanez, Armando Serrano, Roberto Almodovar, William Negron, and Demitrius Johnson. Plaintiff is limited to William Dorsch and Jose Melendez. The Officer Defendants' Motion in Limine no. 14, ECF No. 407, is granted in part and denied part. Before referencing prior lawsuits against officer defendants or CR files against officer defendants, plaintiff must obtain a ruling from the court outside of the jury's hearing.

<u>Lawyers note</u>: based on reflection, and contrary to the minute order issued on May 31, ECF No. 534, the court will permit Dorsch to tell the whole story of the witnesses' change of heart (specifically, what the witnesses said about being paid). This order supersedes ECF No. 534.

Date: June 1, 2018

_____/s/_____
Joan B. Gottschall
United States District Judge