```
 1                   IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
     JACQUES RIVERA,                      )   Docket No. 12 C 4428
 4                                        )
                         Plaintiff,       )
 5                                        )
                  vs.                     )
 6                                        )
     REYNALDO GUEVARA, et al.,            )   Chicago, Illinois
 7                                        )   June 1, 2018
                         Defendants.      )   11:00 o'clock a.m.
 8

 9         TRANSCRIPT OF PROCEEDINGS - TELEPHONE STATUS CONFERENCE
                 BEFORE THE HONORABLE JOAN B. GOTTSCHALL
10

11   APPEARANCES:

12
     For the Plaintiff:       LOEVY & LOEVY
13                            BY:  MR. JONATHAN I. LOEVY
                                   MR. STEVEN E. ART
14                                 MR. ANAD SWAMINATHAN
                                   MS. ANNE GOTTSCHALK
15                            311 N. Aberdeen Street, 3rd Floor
                              Chicago, Illinois  60607
16

17                            RODERICK MacARTHUR JUSTICE CENTER
                              NORTHWESTERN UNIVERSITY SCHOOL OF LAW
18                            BY:  MR. LOCKE E. BOWMAN, III
                              375 E. Chicago Avenue
19                            Chicago, Illinois  60611

20
     For the Individual       THE SOTOS LAW FIRM
21   Defendants:              BY:  MR. JAMES G. SOTOS
                                   MR. JEFFREY N. GIVEN
22                                 MS. CAROLINE P. GOLDEN
                                   MR. JOSEPH POLICK
23                            550 E. Devon Avenue, Suite 150
                              Itasca, Illinois  60143
24

25
```

```
 1   APPEARANCES   (Continued):

 2
     For the Defendant        ROCK FUSCO & CONNELLY, LLC
 3   City of Chicago:         BY:  MS. EILEEN E. ROSEN
                                   MS. CATHERINE M. BARBER
 4                                 MS. THERESA B. CARNEY
                              321 N. Clark St., Suite 2200
 5                            Chicago, Illinois  60654

 6
     For the Defendant        LEINENWEBER BARONI & DAFFADA, LLC
 7   Guevara:                 BY:  MR. THOMAS E. LEINENWEBER
                                   MR. JAMES V. DAFFADA
 8                                 MR. KEVIN ZIBOLSKI
                              120 N. LaSalle St., Suite 2000
 9                            Chicago, Illinois  60602

10
     Transcriber:             MS. JOENE HANHARDT
11                            Official Court Reporter
                              219 S. Dearborn Street, Suite 1744-A
12                            Chicago, Illinois  60604
                              (312) 435-6874
13
                  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
14
                         PROCEEDINGS RECORDED BY
15                          DIGITAL RECORDING
                       TRANSCRIPT PRODUCED BY COMPUTER
16

17

18

19

20

21

22

23

24

25
```

```
1              THE CLERK:  Case No. 12 C 4428, Rivera vs. Guevara.
2              THE COURT:  Hello.  Hello.
3              MR. LOEVY (Via Telephone):  Hello.
4              MS. ROSEN (Via Telephone):  Hi.
5              THE COURT:  Okay.  Tell me who is on phone.
6              MR. LOEVY (Via Telephone):  Good morning, your Honor,
7      for the plaintiff's side we have got Steve Art, Anad
8      Swaminathan, Rachel Brady and Anne Gottschalk and Jon Loevy.
9              THE COURT:  Okay.
10             MR. LOEVY (Via Telephone):  And Locke Bowman, as well.
11             THE COURT:  Say that, again.  We have got a court
12     reporter here and you said that really fast.
13             MR. LOEVY (Via Telephone):  Sorry.
14             The whole thing, Judge?
15             THE COURT:  Yes.
16             MR. LOEVY (Via Telephone):  Jon Loevy, Anad
17     Swaminathan, Steve Art, Rachel Brady, Anne Gottschalk and Locke
18     Bowman for the plaintiff.
19             THE COURT:  Okay.
20             And for the defense?
21             MR. SOTOS (Via Telephone):  Jim Sotos, Jeff Given,
22     Carrie Golden and Joe Polick on behalf of the individual
23     defendants, with the exception of Rey Guevara and Ed Mingey.
24             MS. ROSEN (Via Telephone):  Eileen Rosen -- go ahead.
25             MR. LEINENWEBER (Via Telephone):  For Rey Guevara and
```

1   Ed Mingey, it is Tom Leinenweber, Jim Daffada and Kevin

2   Zibolski.

3           THE COURT:  Okay.

4           MS. ROSEN (Via Telephone):  And for the City of

5   Chicago, it is Eileen Rosen, Theresa Carney and Catherine

6   Barber.

7           THE COURT:  Okay.

8           Do we know anything more about the condition of Mr.

9   Rivera than we knew at the time of the e-mail?

10          MR. LOEVY (Via Telephone):  No, your Honor.

11          THE COURT:  Well, let me tell you what concerns me

12   about all of this.

13          I have picked out this time for this trial because you

14   said two weeks.  And I certainly do not want a trial that runs

15   into the 4th of July.  And what is now happening is you are

16   suggesting moving it, so that we are almost certain of either

17   running into the 4th of July with the trial or even more

18   disastrous, it seems to me for fairness to whomever -- I cannot

19   guess -- having the jury deliberating on the 4th of July.

20          Now, the problem with the 4th of July, besides having

21   difficulty getting a jury, is I do not know what kind of a

22   weird jury we are going to get.  Because we are not going to

23   have anybody with kids or vacations or anything.

24          I just think this is really -- I just do not know.

25          And I can see starting this a day late, but that does

1  not help the plaintiff.

2        I mean, you are talking about picking a jury on

3  Wednesday and starting the case the next week.

4        I mean, you know, happy 4th of July.  And, then, what

5  do we do?  We give the jury the week off?

6        MR. LOEVY (Via Telephone):  Well, your Honor, we

7  firmly and strongly believe that this thing absolutely will

8  finish before July 4th.  And we have as much interest as

9  everybody else in finishing before July 4th.

10        THE COURT:  Well, you have been saying that from the

11  beginning, but the City has never even half-way agreed with

12  you.

13        MR. LOEVY (Via Telephone):  Well, they don't want this

14  trial, your Honor.  I mean, they don't.

15        We are going to call all of the witnesses and we are

16  going to finish our case in seven or eight trial days.  And

17  there is not going to be any witnesses left but experts,

18  basically.

19        And we are talking about starting on Wednesday and

20  actually getting the witnesses this week, too, which would mean

21  we would be darn close to finishing our case by the 15th.

22        And if it bled over into the week of the 18th, there

23  is no reason the trial wouldn't finish that week.  And,

24  certainly, that gives you, you know, almost two full weeks for

25  the defense case and deliberations.

```
 1              THE COURT:  And what are we going do -- what are we
 2    going to do --
 3              (Brief telephone interruption.)
 4              THE COURT:  I am sorry?
 5              MR. LOEVY (Via Telephone):  It sounds like we
 6    accidently got somebody's voicemail on there, but I think we
 7    can ignore that.
 8              THE COURT:  Okay.
 9              So, what are we going to do if your estimates are
10    wrong and we find ourselves approaching the 4th of July weekend
11    without a verdict?
12              MR. LOEVY (Via Telephone):  Well, your Honor, we are
13    prepared to impose limits on it, you know, that we will commit
14    to our --
15              (Brief telephone interruption.)
16              THE COURT:  Hold on a second.  This is something
17    happening on your end, we think.
18              MR. LOEVY (Via Telephone):  It sounds like someone's
19    voicemail got in.
20              (Brief telephone interruption.)
21              THE COURT:  Well, shall we start, again?  This is
22    hopeless.
23              MR. LOEVY (Via Telephone):  We can call the Court
24    back, your Honor.
25              THE COURT:  Okay.
```

7

```
 1          MR. LOEVY (Via Telephone):  Bye.
 2          (Brief pause.)
 3          THE COURT:  Hi.  Is everyone the same who was here
 4   when we talked the first time -- the same lawyers?
 5          MS. ROSEN (Via Telephone):  Yes.
 6          MR. LOEVY (Via Telephone):  Yes.
 7          MR. SOTOS (Via Telephone):  Yes.
 8          THE COURT:  All right.
 9          MR. LOEVY (Via Telephone):  Judge, I was saying for
10   the plaintiffs, that we --
11          MR. SOTOS (Via Telephone):  Judge, this is Jim --
12   excuse me, Judge.  This is Jim Sotos.  Can I, at least, apprise
13   the Court of the defendants' view of this?
14          THE COURT:  Sure.
15          MR. SOTOS (Via Telephone):  Okay.
16          You know, first of all, I want to say that we are
17   really -- we are genuinely -- sorry to hear about Mr. Rivera's
18   health scare.  We hope that the next news that he gets is
19   encouraging.
20          With respect to the contention that, you know, we
21   don't want the trial, we have expressed skepticism about
22   whether the trial can be completed in the time that the
23   plaintiff is estimating, from the time he said this originally.
24   It is not about not wanting a trial.
25          We want a trial as much as anybody.  The case is
```

1    six years old.  We understand that.

2            But we have a Pretrial Order in a case that the

3    plaintiff has set forth that makes it impossible for us to

4    think that the plaintiff can present his case in a week-

5    and-a-half.

6            THE COURT:  All right.

7            Let me interrupt because I do not realistically

8    believe that the plaintiff's estimate can be counted on,

9    either.  It may be.  It may not be.

10           I think we have to agree on some ground rules if we

11   are going to start when you are talking about.

12           Now, first of all, I would like to tentatively set

13   Tuesday as our start date.

14           We will hear from you on Monday as to what the

15   doctors -- actually, I am going to provide for you to let us

16   know over the weekend.

17           If Mr. Rivera's situation is okay, I do not think we

18   should wait until Wednesday.  I think we should start Tuesday.

19           If it is not okay, if the doctors are still saying it

20   is problematic, we can talk about Wednesday.  But I think we

21   ought to do everything we can.

22           I mean, plenty of people facing something like this

23   have anxiety and it turns out to be nothing.  And we do not

24   know if that is what we are dealing with or we are dealing with

25   something more significant.

1     So, I think we ought to, at least for current

2 purposes, believe the best and tentatively talk about picking

3 this jury on Tuesday.

4     We can tell our Jury Department by Monday afternoon if

5 we cannot start on Tuesday and if we need to start on

6 Wednesday.  So, that is the first thing I would say.

7     The second thing I will say is this:  If we get into

8 the Friday before the 4th of July and are not finished, I think

9 we need to give this jury the week of the 4th off because the

10 4th is on a Wednesday.  And I do not see any way that we can

11 require people to be here -- I mean, everybody -- everybody who

12 has got any kind of life -- is going to be taking that week

13 off.

14     And I think we need to be able to tell the jury that

15 we will not require them to be here the week of the 4th.  And

16 we will go through the Friday before and we will start the

17 Monday after.

18     That lets people not worry about the 4th and do what

19 they need to do in their lives.

20     And those are the conditions under which I would be

21 willing to do this.

22     We would try for the Tuesday.  When we get more

23 medical opinions, we see where we go from there.  And if we at

24 least have an agreement that if the plaintiff's estimate is off

25 base -- and nobody, nobody, ever is able to plan exactly how

 1   long the trial is going to take, especially with these complex

 2   issues and the possibility of deliberations -- that we assure

 3   the jury that if they -- I mean, you know, I certainly would

 4   give the jury a choice.

 5          If they want to keep working -- if they are close -- I

 6   do not mind giving them a choice the week before.  But I think

 7   we need to tell them now that we will not require them to work

 8   the week of the 4th.

 9          With those conditions, I would be willing to go ahead.

10   But without those conditions, I do not think we ought to be

11   starting this case at this point.

12          MR. LOEVY (Via Telephone):  Well, that makes sense to

13   the plaintiff, your Honor.

14          And, obviously, we can update everybody as soon as we

15   know more.

16          We are supposed to know more tonight, we believe, by

17   the close of business about his tests.

18          THE COURT:  I --

19          MR. SOTOS (Via Telephone):  Judge, on behalf of the

20   individual defendants --

21          THE COURT:  This is Mr. Leinenweber, right?

22          MR. SOTOS (Via Telephone):  No.

23          THE COURT:  No?

24          MR. SOTOS (Via Telephone):  No, this is Mr. Sotos,

25   Judge.

1          THE COURT:  Oh, Mr. Sotos.  Okay.

2          Thank you.

3          MR. SOTOS (Via Telephone):  I apologize.

4          So, we have a Pretrial Order that lists twelve

5  defendants.  We have seven or eight experts.  We have two

6  404(b) witnesses which will be talking about other cases.  And

7  if the plaintiff is saying that he is going to finish in a

8  week-and-a-half, then he -- I know he -- can't be planning to

9  call all of these people.  Because that would be physically

10 impossible.

11          So, what we are doing is preparing for these 40 or 45

12 witnesses.  And we think, at a minimum, if this is -- if there

13 is any realism to this, that we at least have a right to be

14 apprised of what kind of a case we are going to be defending.

15          Because if this can get done in the time that he is

16 saying, we think it makes sense, too.  We are not trying to

17 kick the trial date if it can actually get done.

18          But, based on the case that we are preparing to

19 defend, we know that it is impossible.

20          THE COURT:  All right.

21          Well, I have a very limited amount of power to drop

22 the plaintiff in boiling oil, to make them make what I think is

23 a reasonable disclosure.  But can you not talk to one another

24 and do this?

25          I mean, this is only fair -- that the City and the

1  defendants have some idea of what they are going to be expected

2  to meet.

3          MR. LOEVY (Via Telephone):  Your Honor, absolutely.

4          And what we told Mr. Sotos -- and we will continue to

5  tell him -- is that if we started this trial on Friday or even

6  Wednesday, we would shrink it to fit it.

7          If we start it on Tuesday, we are only losing one day.

8  And, so, it shouldn't come as a surprise to the defendants what

9  case we are trying, because it is the same case we have been

10 trying for six years.

11          Even if we start it later in the week and we have to

12 shrink it to a week-and-a-half, we will tell them how we are

13 shrinking.

14          You know, we are going to finish this trial, your

15 Honor.  It is in our -- it is not in our interest to have this

16 thing go into July.

17          THE COURT:  So, you are saying if we start on Tuesday,

18 your case is going to -- you are expecting the same three-week

19 trial we have been talking about; but, if we start on

20 Wednesday, you are going to shrink it to a week-and-a-half?

21          MR. LOEVY (Via Telephone):  And if we start on Friday,

22 we would shrink it even more.

23          We want to finish this trial in June.

24          THE COURT:  Well, you have to communicate with each

25 other.  I do not want to be hearing this kind of thing because,

1   you know, there is little I can do about it.  It is just basic

2   fairness -- that the defense understands what they are going to

3   be dealing with.

4           MR. LOEVY (Via Telephone):  Mr. Sotos and I have been

5   talking about the other defendants and we are going to continue

6   talking about the other defendants.

7           THE COURT:  All right.

8           So, let me tell you, then, we are going to aim for

9   Tuesday.  You are going to give me --

10          Do you have Marlan's e-mail address?

11          MR. LOEVY (Via Telephone):  That is probably on the

12  Web site, right?  I bet we do.

13          THE COURT:  Well, you know, what?  We will get an

14  e-mail out to you this afternoon with both her e-mail address

15  and my law clerk Eugene's e-mail address.  And as soon as you

16  know something, please let them know so that they can

17  communicate it to me.  Okay?  No. 1.

18          As I say, if we have to start Wednesday, we will have

19  to start Wednesday.  We are going to go with this, if we can.

20          At some point, I am not going to want to try this case

21  in June.  But as long as we can get it started pretty soon --

22  you know, making no commitments -- let's go with it.

23          MR. LOEVY (Via Telephone):  Very good.

24          THE COURT:  Now, the other thing I tell you is I am

25  going to tell this jury that we expect it to be finished before

1    the 4th of July; but, regardless, they will not be expected to

2    work the week of the 4th of July.

3            Is that okay with everybody?

4            MR. LOEVY (Via Telephone):  That sounds very

5    appropriate from the plaintiff's side, your Honor.

6            MS. ROSEN (Via Telephone):  Judge, from the City's

7    side, I am concerned that if the case runs long, that this jury

8    is going to fault the defendants because we are going to be in

9    the defendants' case.  So, that is a concern.

10           THE COURT:  Well, I think that is unlikely.  And we

11   can do -- we can do -- whatever we need to do so that does not

12   happen.

13           I have never seen a jury be that stupid.  And I have

14   been doing this for a long time.

15           My guess is --

16           MR. SOTOS (Via Telephone):  Judge, this is Jim Sotos

17   talking.

18           Judge, I just want you to know that this happened to

19   the City last year in a case where, once the plaintiff's case

20   was over and it was running long, and the judge was pushing it

21   -- and the jurors were openly perturbed at the length of the

22   case -- and they did appear to take it out on the defendants.

23   And that was a very real situation that happened last week.

24   And that is what Ms. Rosen is talking about.

25           THE COURT:  And how did you --

1          MR. SOTOS (Via Telephone):  That is a concern.

2          THE COURT:  How do you conclude that they were taking

3    it out on you, rather than just having you lose?

4          MR. SOTOS (Via Telephone):  Well, it was from the

5    trial lawyers' reaction to the jury's behavior during the last

6    week of trial and it was going beyond what was expected.

7          THE COURT:  Well -- okay.

8          So, tell me how I am supposed to fix that.

9          MR. SOTOS (Via Telephone):  Judge, the problem is we

10   don't -- we are not seeing how this can realistically get done

11   with this July 4th date coming.  And it just appears to us to

12   be unworkable, unless we know that the plaintiff -- you know,

13   it would be one thing if the Court would direct the plaintiff

14   to -- if the Court would tell the plaintiff -- "I am going to

15   close your case" on such and such a date.

16         And if the lawyers are saying, "Well, we don't know

17   how long the crosses are going to take," that is something the

18   Court can control and make sure everybody is asking relevant

19   questions.

20         But with the uncertainty; and, then, everybody is

21   manipulating to try and figure out a way to avoid the July 4th

22   issue, we think that is the only way that that can be avoided.

23         And if the Court is willing to do that -- and I think

24   that is within the Court's power -- I do think that it is

25   workable.

1          THE COURT:  Well, given --

2          MR. SOTOS (Via Telephone):  The other thing I wanted

3    to --

4          THE COURT:  Yes.  Go ahead.

5          MR. SOTOS (Via Telephone):  I am sorry, Judge.  I am

6    sorry.

7          THE COURT:  No, go ahead.

8          MR. SOTOS (Via Telephone):  I was going to say -- this

9    is on a little bit of a different issue, but I wanted to raise

10   with the Court the fact -- so the Court knew this was something

11   we were planning on doing before any of this happened -- we are

12   going to be filing later today a motion for a Rule 1292

13   certification on the reasonable diligence defense because we

14   believe that is clearly a controlling question of law; and,

15   that if there is an immediate appeal taken on that, it will

16   dramatically reduce the likelihood of a second trial, given the

17   Court's view that that is a matter of first impression.

18         I am raising it now only because I didn't want the

19   Court to think --

20         THE COURT:  Yes.

21         MR. SOTOS (Via Telephone):  -- that this is something

22   we came up with now.  We actually had this brief.  It has been

23   prepared.  It is being finalized.  And this all came up well

24   before you --

25         THE COURT:  Well, let me just give you -- let me give

1    you -- the bad news.  I am not going to grant a 1292 -- I will

2    read your brief, but I do not think I am going to grant a 1292

3    -- certification requiring a continuance of this trial date.

4              So, I would suggest --

5              MR. SOTOS (Via Telephone):  Understood.

6              THE COURT:  -- getting it over to me as soon as

7    possible, so you can get it in front of the Seventh Circuit as

8    soon as possible.  Because if I deny it, you can still go to

9    them, right?

10             MR. SOTOS (Via Telephone):  You know, what, Judge?  I

11   had not even really thought that through.  I am -- I just

12   wanted the Court to know that that is something we were going

13   to be filing.  And it is completely unrelated to the issue that

14   came up this morning.

15             THE COURT:  Yes.

16             I cannot do that at this point.  It is just -- this

17   all came -- I did these motions as quickly as I could, given

18   the schedule that you all suggested to me.  And I am not going

19   to order a trial continuance because of what I think is -- I

20   just do not see it is a big enough, important enough issue.

21   And I have a good idea of how they are going to rule, anyway.

22   So, otherwise, I would not have done what I did.

23             But, in any event, that is fine.

24             MR. SOTOS (Via Telephone):  Okay.

25             THE COURT:  And I think your idea of setting limits

1  makes a lot of sense, but I think it is really hard for me to

2  do until I know when we are going to start.  Okay?

3          So, if we start on Tuesday, I think you know how

4  things are going to go.  Nothing has changed from what we have

5  been talking about forever, except we are starting a day late.

6          If we start beyond that, I think that the defense

7  suggestion that we have strict limits probably makes an

8  enormous amount of sense.  Because, otherwise, it is just all

9  pie in the sky.

10          So, think about that and be ready to talk about it if

11 we cannot start on Tuesday.

12          The other thing I want to -- and I did not hear from

13 the defense on my proposal on the 4th of July week.

14          MR. SOTOS (Via Telephone):  Judge, we're -- honestly,

15 Judge, we're just really concerned about stopping the trial for

16 July 4th and, then, starting, again.

17          THE COURT:  Yes.

18          And how concerned are you or should you be with what

19 is going to happen if we do not do that?  That is the problem.

20          I do not want to stop a trial for a week.  God only

21 knows what is going to happen.  But I think the alternative is

22 that somebody is -- somebody's ox is -- going to be gored

23 because this jury is not going to be want to be here that week.

24          MR. SOTOS (Via Telephone):  Well, Judge, that is why

25 we think it makes most sense to, you know, try the case in

1    August, September or October.

2           We will do everything we can to make sure everybody is

3    available and as flexible as possible.  We just thinks it makes

4    a lot more sense.

5           THE COURT:  Okay.

6           In my heart --

7           MR. SOTOS (Via Telephone):  It's not true that the

8    defendants don't want a trial.

9           THE COURT:  In my heart of hearts, I would love to say

10   yes to you, because I agree with you.  But I have been

11   promising everybody this date from the beginning of time.  And

12   starting one day late, to me, does not seem to justify anything

13   as drastic as throwing out a trial date.

14          So, you can talk to me, again, about that if we cannot

15   start on Tuesday.  Okay?

16          MR. LOEVY (Via Telephone):  Judge, thanks, again, for

17   accommodating Mr. Rivera.

18          THE COURT:  Wait.  Wait.  I have something I want to

19   talk about.

20          I have read the Hillman case very closely and thought

21   about it a lot.  And I have to suggest I do not know what the

22   plaintiff has in mind, but one thing that is not going to

23   happen at this trial is the torture of the defense witnesses

24   who are going to take the Fifth.

25          And I do not know what plaintiff intends to do.  You

 1   certainly have a right to call them to the stand.  You have a
 2   right to ask them some questions, so the jury can draw its
 3   inferences that it has to draw.  But I really need this to be
 4   limited.
 5          So, we are not going to keep people on the stand for a
 6   day-and-a-half while they take the Fifth.  You are going to
 7   need to sort of categorize your questions so that you can ask
 8   them, at some reasonable point -- and I would think probably
 9   spending an hour with these witnesses is probably enough,
10   although I am a little flexible on that -- at some point asking
11   them, "If we ask you questions about X, would your answer be
12   the same?
13          "If we ask you questions about Y, would your answer be
14   the same?"
15          And put it into a couple of categories, so we can get
16   them on and off.  Because, otherwise, I think it is cruel to
17   the witnesses.  And I do not think it is going to do anything
18   but make the jury uncomfortable.
19          MR. LOEVY (Via Telephone):  Understood, your Honor.
20   And we agree.  And that was our intention.
21          THE COURT:  Okay.
22          All right.  Thank you, everybody.  We will be looking
23   for updated information.
24          And, then, if we cannot start on Tuesday, we are going
25   to talk seriously about time limits on Monday.  Okay?

1          MR. LOEVY (Via Telephone):  Thank you.

2          THE COURT:  All right.  Thank you.

3          MR. SOTOS (Via Telephone):  Thank you, Judge.

4          THE COURT:  Bye-bye.

5          MS. ROSEN (Via Telephone):  Thank you, Judge.

6          THE COURT:  Bye.

7                        *   *   *   *   *

8   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
9

10  /s/ Joene Hanhardt                June 1, 2018
    Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25