# EXHIBIT G

```
1    STATE OF ILLINOIS     )
                           )  SS.
2    COUNTY OF C O O K     )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CRIMINAL DIVISION
4
     THE PEOPLE OF THE STATE   )
5    OF ILLINOIS,              )
                               )
6              Plaintiff,      )
                               )
7      vs.                     )  No.   93 CR 1873(01)
                               )        93 CR 1873(03)
8    ARMANDO SERRANO and       )
     JOSE MONTANEZ,            )
9                              )
               Defendants.    )
10

11             REPORT OF PROCEEDINGS had at the hearing

12   of the above-entitled cause before the HONORABLE

13   MAURA SLATTERY BOYLE, Judge of said court, on the

14   15th day of May, 2013.

15        PRESENT:
          HONORABLE ANITA M. ALVAREZ,
16          State's Attorney of Cook County, by:
          MR. JAMES PAPA, MS. CELESTE STACK and
17        MR. KURT SMITKO
          Assistant State's Attorneys,
18          appeared on behalf of the People;

19        MS. JENNIFER BONJEAN
            appeared on behalf of the Defendant Armando
20          Serrano.

21        MR. RUSSELL AINSWORTH and 7-11 CAITLIN BROWN,
            appeared on behalf of the Defendant Montanez.
22
     Denise A. Gross, CSR# 084-003437
23   Official Court Reporter
     2650 S. California, Room 4C02
24   Chicago, Illinois 60608

                              1
```

Plaintiff 003525

1    that it must be yes.  It has to be yes.  This is an

2    extraordinary case.  No case like this has come

3    before this Court.

4         Your Honor when Mr. Vargas was killed that

5    day, it tore his family apart, and I understand the

6    need to have justice done for his case.  However, I

7    submit to the Court that there are two other

8    families that were destroyed as well when

9    Mr. Montanez and Mr. Serrano were convicted.  And

10   there is no need to -- there's no need to multiple

11   the tragedy that occurred to the Vargas family by

12   repeating the injustices to Mr. Montanez and

13   Mr. Serrano's families.  So, your Honor, we ask

14   that you do justice and we ask that you vacate the

15   convictions against Mr. Montanez and Mr. Serrano.

16   Thank you.

17        THE COURT:  Thank you, Mr. Ainsworth.

18            Ms. Stack?

19                   OPENING STATEMENT

20                   BY MS. STACK:

21        I don't want to say anything in these remarks

22   that are too obvious, but there seems to be in

23   these statements a lot of self-serving denial of

24   basic facts about our system.  These gentlemen had

                              38

1    every constitutional right afforded to anyone who

2    becomes a suspect and arrested.  This is not a

3    trial.  They are not here for the first time.  They

4    weren't denied access to the courts.  They weren't

5    denied access to effective counsel.  The names in

6    these transcripts are some of the most experienced

7    attorneys in this building.  These gentlemen are

8    guilty of these murders.  There was plenty of

9    evidence to more than prove our burden beyond a

10   reasonable doubt.  There's the surviving widow who

11   saw them the night before they murdered her husband

12   because her husband made the mistake of showing a

13   wad of cash in a gas station.  They followed the

14   family home, came back, sat on the place and when

15   he went to work at 5:00 in the morning, a good

16   family man, a young family, two young sons, you

17   know, hard-working man that had been at the same

18   place of employment for 12 years and he's up at the

19   crack of dawn, before Dawn, going to work, and

20   these muts who want money --

21        MS. BONJEAN:  Objection.

22        THE COURT:  Sustained.

23        MS. STACK:  I apologize.

24        THE COURT:  Everybody, please.  I am going to

                              39

Plaintiff 003563

1    remind you again, the Court's approach --

2        MS. STACK:  I apologize.

3        THE COURT:  Everyone, please remember that I

4    demand, not only for the Court, but amongst each

5    other, professional civility.  Continue on.

6        MS. STACK:  Your Honor, I apologize.

7            But the bottom line, the facts of this

8    record that were proven at the trial, that they

9    already had showed that they were in a gang.  That

10   they robbed people.  They took their money and they

11   bought drugs.  And what happened was -- what the

12   law enforcement officers knew -- was that the

13   victim, Rodrigo Vargas, went to his job that

14   morning, and he -- the neighbor lady saw him out

15   there -- a number of people heard the gun shots at

16   5:30 a.m.  There's a school across the street.  A

17   number of people in the neighborhood heard 6 or 8

18   gun shots.  The victim was shot five times, I

19   believe.  At least four.  And the neighbor lady,

20   Anna Valez, who also baby-sat, looked out again

21   later, unfortunately no one in that neighborhood

22   thought much of hearing gun shots -- it was a

23   common occurrence -- and when she looked out at

24   7:00 a.m. and saw that Rodrigo's van was still

                           40

Plaintiff 003564

1    there, she knew something was wrong, because he

2    normally ran the van for a few minutes and then

3    left for work.  She went up.  She looked in and saw

4    his dead body inside his van clutching the pull-out

5    radio.  That radio they tried to take from him.  He

6    fought them and they shot him, and left him there

7    in the street to die.  But nobody knew that.

8    Nobody knew what happened other than Rodrigo was

9    found shot in the van.  And nobody knew that he had

10   been followed the night before.  And the case had

11   basically stopped.

12          But four months later Francisco Vincente

13   was in the State's attorney's office in one of our

14   offices talking to Assistant State's Attorneys

15   because, yes, he had a number of armed robberies

16   and he was cooperating with the State's Attorney's

17   Office.  He was trying to cut himself a deal.  And

18   that's the thing about this case, Francisco

19   Vincente at trial was cross-examined by a number of

20   experienced attorneys, and the thing about

21   Francisco Vincente is, he certainly is who he is,

22   and he also, like the defendants, was an armed

23   robber who preyed upon people so he could buy

24   drugs --

                         41

1      MS. BONJEAN:  Objection, your Honor.

2  Counsel --

3      THE COURT:  Overruled.  This is argument.

4  Continue on.

5      MS. STACK:  The action, the evidence clearly

6  shows --

7      MS. BONJEAN:  It's inadmissible.

8      THE COURT:  Counsel, continue on.

9      MS. STACK:  The actions and evidence shows what

10  this gentlemen did and do.  Vincente testified at

11  length about it, and when he was talking to them

12  about another case, and all of this is in the

13  record, all of this was brought out in front of the

14  jury.  Nobody tried to portray Vincente as anything

15  other than who he is.

16      MS. BONJEAN:  Objection, your Honor, misstating

17  the record.

18      THE COURT:  Ms. Bonjean, this is argument.  I

19  have afforded you the opportunity and afforded

20  Mr. Ainsworth.  Ms. Stack, continue.

21      MS. STACK:  And the record will bare that out.

22      MS. BONJEAN:  No, it won't.

23      MS. STACK:  What Vincente remembered was a few

24  hours after the murder, he ran into the three

42

1    defendants who he knew, and they were hanging out

2    on the corner in their territory, and the three of

3    them were arguing because they were mad that one of

4    them had botched the robbery by killing the victim

5    and forcing them to flee without the proceeds. And

6    that's when Vincente found out something that no

7    one else knew, he found out that they had seen the

8    young family at a gas station the night before, and

9    when one of the defendants got out and went into

10   the gas station, Mr. Vargas made the simple

11   physical action that lead to his death. He took

12   his hand out of his pant's pocket with a big wad of

13   cash. He had over $350 in his hands in a knot of

14   money as described by his wife, and they saw that

15   money.

16          Now, no one put that together until four

17   months later, Francisco Vincente did. And that was

18   the beauty of his testimony. As unbeautiful as he

19   was, with all his armed robberies, and again,

20   nobody -- that was the first thing he was asked

21   about -- the jury, the Judge, knew he had not one,

22   not two, but four cases pending. But it didn't

23   matter because when you're prosecuting people of

24   this ilk, people that have information are also

                          43

1    people of this same ilk, and that's what happened

2    here.  And it basically was a lucky break that got

3    some measure of justice for this family.  It

4    wouldn't bring the father back.  It wouldn't change

5    what happened to him, but he made the unfortunate

6    mistake of flashing a wad of cash in front of these

7    men.  And when the victim returned to his car, it

8    also happened that the defendant's car, which a lot

9    of people talked about and identified, was parked

10   in a 45-degree angle blocking the family from

11   leaving the gas station.  So you have a lot of

12   corroboration in the record.  There's a lot of

13   evidence in the record.  There's other ID's in the

14   record.

15        MS. BONJEAN:  Objection.

16        THE COURT:  Overruled.

17        MS. BONJEAN:  Misstating the record.  Complete

18   lies.

19        THE COURT:  Ms. Bonjean.

20        MS. BONJEAN:  It's complete lies.

21        THE COURT:  I am going to impose sanctions.

22   Continue on.

23        MS. STACK:  Because they had blocked Rodrigo's

24   van in, his wife testified that when he got in the

                        44

```
 1    car, the three men, there were two still in the
 2    car, one was in the gas station and they were
 3    blocking his exit from the vehicle, from the gas
 4    station.  He honked the horn, Ms. Vargas testified
 5    that then her husband blasphemed.  He swore.  Not
 6    at them, but inside the privacy of his van.  He
 7    swore.  He was angry she said because he was
 8    blocked in by these people.  So both he and his
 9    wife were focused on the defendant's car in the gas
10    station that night.  Then one of them came out,
11    they moved the car, and they -- and the Vargas'
12    left the gas station.  And Rodrigo was still angry,
13    and they both noted that the defendant's vehicle
14    followed them out of the gas station and down the
15    street for a ways, and she said at one point she
16    stopped looking out the window.  She wasn't aware
17    whether they followed them all the way home.  But
18    we know from Francisco Vincente that they did, and
19    when they saw where the family stopped and exited,
20    they marked the place, and they went back.  And
21    that unfortunate display of cash in a gas station,
22    lead to this case.
23              And, again, from all the arguments that
24    sound like trial closing arguments, you would think
```

Plaintiff 003569

1    that we've never been through this process, but we

2    have. These men asserted their rights. They had

3    counsel. They had motions, trial, et cetera. And

4    they had direct appeals. We have a wonderful

5    criminal justice system here, and in Illinois we

6    have extensively extended it through the

7    post-conviction litigation. Your Honor is well

8    aware of the stages of post-conviction litigation.

9    How it works is inmates are allowed to start their

10   own litigation from prison. And if you make an

11   actual innocence claim, there's no statute of

12   limitation, and because the legislature anticipated

13   that inmates would be filing their own petitions

14   without the help of lawyers and from prison, they

15   get a first stage, where the State does not

16   participate and the Judge reviews their pro se

17   petition to see whether there's anything there that

18   merits further review and the standard is very

19   liberal to docket or move the petition on to

20   Stage 2. And at Stage 2, even inmates who have no

21   resources whatsoever, which most inmates don't,

22   they are given free counsel. So the second stage

23   takes place and they get counsel to review their

24   case, investigate and draft a petition. And the

                          46

1    point of all this is, at the second stage and at

2    the first stage, we are not allowed to attack the

3    substance or credibility of any of these arguments

4    or any of the evidence or affidavits or documents

5    that are put forth.

6            At the second stage we either have to

7    agree to a hearing like this or argue that as a

8    matter of law, even if you believe their

9    affidavits, they simply don't have any right to a

10   PC third stage hearing.  So the point I want to

11   make is one that your Honor is well aware of, but

12   that is very significant.  Today marks the

13   beginning of the time when we get to attack the

14   evidence for the first time.  Vincente has

15   recanted.  What wasn't mentioned here was that

16   Vincente is his recantation was given after a

17   number of encounters with people who were very

18   interested in getting his recantation that worked

19   for Northwestern University and their Innocence

20   Projects.  And we have documents that show the

21   incentives that were offered.

22       MS. BONJEAN:  Objection, your Honor.

23       THE COURT:  Overruled.

24       MS. STACK:  None of that has been given to your

47

Plaintiff 003571

```
1    Honor to consider.  We have not yet begun this
2    hearing.  What you have are documents selected by
3    the defense, gathered together in petitions, and
4    your Honor has to look at those and treat them as
5    if they were true in order to decide whether there
6    is a hearing.  We submit they are not true.  We
7    submit that Vincente's recantation is very, very
8    clearly the result of manipulation, and Vincente
9    hoping to gain a benefit through that manipulation.
10   We also submit that as far as the 14 unrelated
11   cases, they have another name.  They are
12   inadmissible in Illinois, and it's known as prior
13   bad acts or propensity evidence.  In 2000 the
14   Supreme Court, because of the Area 2 John Berg
15   scandal, created a remedy where there was a unique
16   pattern.  Out of Area 2 you had allegations of
17   electro shock and torture that weren't made in any
18   other area of the city, and to this day have not
19   been made in any other area.  And in that case the
20   Supreme Court said that the situation was so unique
21   that fundamental fairness required allowing that
22   all those unrelated cases to be explored because
23   the law is, collateral cases are inadmissible.
24   Otherwise you get into trials within trials that
```

48

1  aren't relevant.  When we try a criminal case, the

2  issue is, can the State prove the person guilty

3  beyond a reasonable doubt.  Do we have evidence to

4  show that the person on trial actually committed

5  the crime?  Getting into what other people did is

6  not allowed normally.  An exception was made for

7  Area 2.  And that exception is now case law.

8          We submit that when you see the witnesses

9  that the defense decides to bring into Court and

10  allow you to see and assess their credibility, you

11  will see that the other witnesses who claim that

12  Guevara engaged in misconduct are incredible.  And

13  in many of those other cases, the judges that

14  originally heard those claims in their own trials

15  found them to be incredible.  It's an interesting

16  concept where you can take a defendant in his own

17  trial filed a motion, testified his statement was

18  coerced, a Judge found him to be incredible and

19  denied his motion, and now you can bring it over

20  into someone else's case and have it be treated in

21  stages 1 and 2 of the PC as being true.  But we

22  submit that when your Honor hears the live

23  testimony and examines the full records from these

24  14 unrelated cases, you will see that what you have

49

1   here is a detective who had a long and busy career.

2   He lived in his area.  He worked in his area.  He

3   was a gang officer.  He knew the gang members and

4   they knew him.  And he stayed in that area

5   basically his entire career which lasted for

6   decades.  Also, there's another convenient

7   oversight here, and that most of these cases are

8   gang cases.  And people that testify in gang cases,

9   witnesses are very brave people indeed.  In fact,

10  there is a national media campaign now where star

11  athletes, et cetera --

12       MR. AINSWORTH:  Objection, your Honor.

13       MS. BONJEAN:  This is irrelevant.

14       THE COURT:  Overruled.  I am aware of the "no

15  snitch" campaign.

16       MS. STACK:  You can take judicial notice then.

17       THE COURT:  I am aware of it.

18       MS. STACK:  People who stand up to gangs, face

19  special obstacles, your Honor, now that we've

20  reached a point where we can finally challenge the

21  evidence that has been submitted to you on paper

22  only.  You will see that the recantation of

23  Francisco Vincente is incredible, ridiculous.

24  Again, we are not trying to retry this case.  The

                        50

```
1    arguments again want to retry the case but that is

2    not the purpose for decades if in post-conviction

3    law when defendants try to raise new defenses or at

4    that take the State's evidence the case was kicked

5    out because they were trying to retry the case.   In

6    1996 the Illinois Supreme Court created a new claim

7    but placed a very high burden on the defendants.   A

8    burden that these defendants cannot meet.   They

9    have to have new evidence that is material,

10   conclusive and couldn't have been recovered

11   earlier.   Recantations of under oath testimony are

12   inherently reliable.   And that is axiomatic comes

13   from justice Brennan in the U.S. Supreme Court.

14   Francisco Vincente's recantation is indeed very

15   incredible, and we expect that when we are allowed

16   to challenge the evidence, you will not only find

17   Francisco Vincente's recantation to be incredible,

18   but whatever witnesses they decide to bring here as

19   concerning the propensity allegations are also

20   incredible.   And there's no way that based upon the

21   evidence that they are going to present that they

22   will meet the very high standard of actual

23   innocence or the Patterson issue that there's newly

24   discovered evidence, that fundamental fairness
```

51

```
1    requires a new trial.  Thank you.

2         THE COURT:  Thank you, Ms. Stack, just to

3    reiterate to all the parties.  This is not a

4    retrial.  This is the issue of whether or not there

5    should be a new trial or conviction based on that

6    evidence.  This is not a re-trial of the facts in

7    this case.  This is based on the issue of Patterson

8    and what the Court has previously ruled.

9              That being said, arguments have been

10   presented, Ms. Bonjean, Mr. Ainsworth, your first

11   witness.

12        MS. BONJEAN:  Your Honor, at this point what we

13   will be admitting into evidence are exhibits that

14   have already been admitted into evidence.

15        THE COURT:  All right.  What exhibit numbers

16   are those?

17        MS. BONJEAN:  Your Honor, for the sake of ease

18   -- as your Honor is aware we had extensive

19   hearings.  This Court had extensive hearings with

20   Mr. Urdangen and Mr. Ainsworth and myself and the

21   Court ruled on relevancy and admissibility of these

22   exhibits, which is precisely why we were having a

23   hearing.  So at this point we are offering into

24   evidence under as permitted under the
```

52

Plaintiff 003576