UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUES RIVERA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12-CV-04428 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| REYNALDO GUEVARA et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants have filed a motion asking the court to reconsider a portion of one of its pretrial rulings barring certain opinion testimony of John Wasilewski ("Wasilewski"), one of defendants' experts. *See* Ruling on Pl.'s Mot. in Limine No. 6 at 1–2 ("Ruling"), ECF No. 550. The trial in this 42 U.S.C. § 1983 and state law action brought by Jacques Rivera ("Rivera") is underway. Rivera spent over 20 years in prison for the 1988 murder of Felix Valentin ("Valentin"). In 2010, the only known eyewitness to the shooting, Orlando Lopez ("Lopez"), recanted his identification of Rivera as the shooter, and Rivera was released in 2011. In this civil suit, Rivera claims that the City of Chicago and several Chicago police officers, among other things, suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

To prevail on his *Brady* claim, Rivera must show that "(1) the evidence was favorable to him; (2) the officer concealed the evidence; and (3) the concealment prejudiced him." *Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017) (citing *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016)). "Evidence is suppressed for *Brady* purposes when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence."

*United States v. Kimoto*, 588 F.3d 464, 492 (7th Cir. 2009) (quoting *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)) (alteration omitted). The second element, reasonable diligence, is at issue in the pending motion to reconsider.

Wasilewski, one of defendants' experts, expresses opinions on, among other matters, whether Rivera's criminal defense attorney, Kenneth Wadas ("Wadas"), acted with reasonable diligence. *See* Wasilewski Report 23–31. Plaintiff moved before trial to bar Wasilewski from expressing those opinions. Pl.'s Mot. in Limine No. 6, ECF No. 418. The court granted the motion because another pretrial ruling took reasonable diligence out of contention but expressly left open the possibility of revisiting the admissibility of Wasilewski's opinions on reasonable diligence.

> The reasonable diligence issue was taken out of contention in the ruling on plaintiff's motion in limine no. 1. ECF No. 531. Wasilewski's opinions that Wadas should have attempted to interview the 12-year-old eyewitness to the murder of Felix Valentin, served subpoenas, filed certain motions, called his client as a witness, and so on will not "help the trier of fact." Fed. R. Evid. 702. Wasilewski, who served as a prosecutor but never a criminal defense attorney, *see* Wasilewski Report 34–35, does not consider the possibility that calling his client to testify about a lineup for which Wadas had no documentation (according to his testimony) would have subjected his client to a potential perjury charge. Wasilewski also does not discuss Wadas' testimony that he was assured by prosecutors, after inquiring, that he had all of the investigative documents the prosecutors had. *See* Wadas Dep. 86:22–87:10. For these reasons in addition to the court's ruling on plaintiff's first motion in limine, the court deems Wasilewski's opinions unreliable under *Daubert*.

Ruling on Pl.'s Mot. in Limine No. 6 at 1–2, ECF No. 550.

For reasons that remain unclear to the court, plaintiff has not objected to evidence and argument relevant to reasonable diligence, and the parties agree that the court's ruling on plaintiff's motion in limine no. 1 no longer independently bars Wasilewski's opinions on reasonable diligence. Thus, defendants' motion to reconsider raises the question whether the

2

court's separate *Daubert* ruling barring Wasilewski's reasonable diligence opinions should be reconsidered. Before addressing that question, the court considers two procedural arguments made by defendants in their motion to reconsider.

## Defendants' Procedural Arguments

First, defendants repeatedly argue that the court should not adhere to the *Daubert* analysis in its ruling because plaintiff did not explicitly raise concerns about Wasilewski's qualifications and methodology in his motion in limine no. 6. This argument fails. Consistent with the role of a district court as gatekeeper for expert testimony, the Seventh Circuit has held that a "district court may consider the admissibility of expert testimony *sua sponte*." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1094 (7th Cir. 1994)).

Second, Defendants submit that the court should hear from Wasilewski in open court before excluding his testimony. This court has the discretion to decide questions of the admissibility of expert testimony with or without a hearing. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999); *Lewis*, 561 F.3d at 705 (discussing district court's broad discretion to exclude expert testimony without a hearing at summary judgment); *Target Market Publ'g, Inc. v. Advo, Inc.*, 136 F.3d 1139, 1142 n.3 (7th Cir. 1998). Defendants do not explain, in their motion to reconsider or their reply, what information the court could glean from questioning Wasilewski at a hearing that is not apparent from his expert report and the other papers on file, so the court declines to exercise its discretion to hold a *Daubert* hearing.

## The Scope of Wasilewski's Opinions and Rule 702/*Daubert* Standard

On the merits, defendants argue that Wasilewski's opinions satisfy the requirements of Federal Rule of Evidence 702 and *Daubert*. Defendants also contend that Wasilewski's opinions

are relevant to the reasonable diligence component of Rivera's *Brady* claim and causation under § 1983.

The court has reviewed Wasilewski's report and finds no causation opinions. At the motion in limine stage, defendants did not argue that Wasilewski's opinions were relevant to causation. Any opinions on causation Wasilewski intends to express must therefore be barred as undisclosed. *See* Fed. R. Civ. P. 26(a)(2)(B); 37(b). Defendants could, and should, have argued that Wasilewski expressed causation opinions at least by the motion in limine stage, so the scope of Wasilewski's opinions cannot be expanded on this motion for reconsideration filed during trial. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

Having determined that the scope of Wasilewski's opinions reaches no further than Wadas' reasonable diligence under *Brady*, the court considers the merits of defendants' motion to reconsider. As explained at summary judgment and several times in the court's rulings on the motions in limine, Federal Rule of Evidence 702 allows opinion testimony by an expert "who is qualified . . . by knowledge, skill, experience, training, or education" to testify provided that four conditions are satisfied. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court declined to adopt a "'general acceptance' standard" for expert opinion testimony because it "would be at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'" *Daubert*, 509 U.S. at 588 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)). Nevertheless, "the court must ensure that the evidence is relevant and reliable before admitting it." *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 588–89). Rule 702 requires the court to ask the following questions before admitting expert testimony: (1) is the "expert . . .

qualified by knowledge, skill, experience, training, or education[?]"; (2) does "the proposed expert testimony . . . assist the trier of fact in determining a relevant fact at issue in the case[?]"; (3) is "the expert's testimony . . . based on sufficient facts or data and reliable principles and methods[?]"; and (4) has the expert "reliably applied the principles and methods to the facts of the case[?]" *Id.* at 521–22 (citing Fed. R. Evid. 702 and *Smith v. Ford Motor Co.*, 215 F.3d 713, 717–19 (7th Cir. 2000)); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 n.1 (7th Cir. 2017).

### Wasilewski's Expert Report on Reasonable Diligence

Wasilewski grounds his reasonable diligence opinions on a series of supporting opinions that "Wadas was under a duty under the Illinois Code of Professional Responsibility to interview witnesses in this case, file motions to protect [sic] evidence, supplement his discovery motion with a specific requests [sic], issue subpoenas for records, file a motion in limine, file a motion to suppress identification, and generally to make a record on the court proceedings for possible review." Wasilewski Report 23. As support, Wasilewski cites, without discussion, Section 7-101 of the Illinois Code of Professional Responsibility (since repealed) entitled "Representing a Client Zealously." *Id.* (citing Ill. Code Prof'l Responsibility § 7-101 (1987)). As its title suggests, § 7-101's text does not state who a lawyer must interview, what discovery the lawyer should pursue, what witnesses should be called, what motions should be filed, or what questions a lawyer should ask in a particular case. The rule states in general language that "[a] lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules."[1] § 7-101(a)(1). When considering the

---

[1] The full text of the rule is:
    Rule 7-101. Representing a Client Zealously
    (a) A lawyer shall not intentionally

5

appropriateness of sanctions for a violation of § 7-101, the Illinois Supreme Court stated that "each case must be considered on its own facts." *In re Weinberg*, 518 N.E.2d 1037, 1040 (Ill. 1989) (citing *In re Hall*, 447 N.E.2d 805, 806 (Ill. 1983)). In his report, Wasilewski discusses neither the text of § 7-101 nor any Illinois authority interpreting it. *See* Wasilewski Report 23; *see also, e.g.*, *In re Weinberg*, 518 N.E.2d at 1040; *In re Harris*, 514 N.E.2d 462, 465 (Ill. 1987).

Instead of discussing the Illinois rules, Wasilewski expressly couches most of his opinions in terms of the options Wadas had. Wadas "could have filed a motion for a protective order." *Id.* at 24. He also "could have filed a motion to suppress identification," *id.* at 25, and Wasilewski explains the questions that Wadas "could have" put to witnesses, including his client, at the motion hearing and the trial, *id.* at 24–26. And Wadas, according to Wasilewski, "could have" called two witnesses at Rivera's trial to perfect an impeachment and "could have" asked Rivera certain questions at trial. *Id.* at 26, 27. Then, even if unsuccessful, Wadas "could have" listed certain grounds in a motion for new trial.[2] *Id.* at 27. Finally, Wadas "should have presented mitigation evidence" at Rivera's sentencing proceeding. *Id.* at 28.

---

      (1)  fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules, except as provided by Rule 7-101(b); however, such "reasonably available means" do not include
          (A)  refusing to accede to reasonable requests of opposing counsel which do not prejudice the rights of his client,
          (B)  failing to be punctual in fulfilling all professional commitments,
          (C)  engaging in offensive tactics, or
          (D)  failing to treat with courtesy and consideration all persons involved in the legal process;
      (2)  fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under Rules 2-110, 5-102, and 5-101; or
      (3)  prejudice or damage his client during the course of the professional relationship, except as required under Rule 7-102(b).
  (b) In his representation of a client, a lawyer may refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal.

[2] The defendants concede that Wasilewski's opinions about filing a motion to disqualify the state trial judge, Wasilewski Report 27–28, are barred by a separate ruling of this court.

After listing all of the things Wadas allegedly could or should have done, Wasilewski recites the familiar elements of a *Brady* claim and the reasonable diligence component of the suppression requirement. *See id.* at 29–30. He describes the reasonable diligence analysis conducted in *Petty v. City of Chicago*, 754 F.3d 424 (7th Cir. 2014), Wasilewski Report 30, and then transitions without further discussion to his opinions about this case, *see id.* at 29–31. He cites these as "examples of Attorney Wadas not exercising reasonable diligence in his representation of Mr. Rivera." *Id.* at 31.

### Admissibility of Wasilewski's Reasonable Diligence Opinions

When it ruled on plaintiff's motion in limine, the court noted that Wasilewski, a former state judge and prosecutor, did not consider the possibility that calling Rivera would subject Rivera to a perjury charge (if he testified about a lineup the state says never happened) and for failing to address Wadas' testimony that the prosecutor assured Wadas that he had everything the prosecutor had. Ruling at 1–2.[3] Defendants recognize in their motion to reconsider that the court's conclusions rested on three independent grounds: Wasilewski's lack of adequate knowledge, skill, and experience to express his opinions; a conclusion that his opinions would not "help the trier of fact" even if they were admissible, Fed. R. Evid. 702; and the related conclusion that he did not employ a reliable methodology in reaching his conclusions. The court discusses the last two issues first because they help explain why Wasilewski is not qualified by knowledge, skill, and experience to express his reasonable diligence opinions.

Defendants argue that this court should reconsider. They analogize Wasilewski's opinions to malpractice suits in which experts testify on the standard of care lawyers, doctors, and accountants owe their clients. Expert testimony is frequently admissible in malpractice

---

[3] This has now been confirmed by the prosecutor's trial testimony that his practice was to turn over everything to defense counsel.

actions (indeed, it is often required) to assist the jury in understanding the appropriate standard of care. *See, e.g.*, *Hassebrock v. Bernhoft*, 815 F.3d 334, 341–42 (7th Cir. 2016); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 743–44 (7th Cir. 2004) (collecting Illinois cases); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013) (police practices).

Focusing exclusively, as Wasilewski's opinions do, on the standard of care under general state ethics rules requiring zealous representation runs the risk of obscuring the whole point of reasonable diligence analysis under *Brady* case law: determining whether evidence was suppressed. To the extent they are not cumulative,[4] Wasilewski's opinions will not assist the jury in understanding the evidence or deciding a fact in issue, Fed. R. Evid. 702, because he expresses opinions on Wadas' performance as though this were a malpractice action or claim for ineffective assistance of counsel. It is not. To repeat, under the *Brady* suppression element, a plaintiff must prove "the evidence *was not otherwise available* to the defendant through the exercise of reasonable diligence." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001) (emphasis added; citations omitted).

Wasilewski says only what "could have" been done without purporting to analyze the real-world tradeoffs for a criminal defense lawyer in Wadas' situation or how likely taking those steps would have been to bear fruit, i.e., to uncover the allegedly suppressed material. *See* Wasilewski Report 23–31. Instead, Wasilewski treats failures to pursue all available options as discrete incidents of which he can cite examples, as though they are instances of alleged deficient

---

[4] Through the testimony on June 21, 2018, of Larry Victorson, the Assistant State's Attorney who prosecuted Rivera, defendants introduced evidence that Wadas had most of the procedural and tactical options Wasilewski discusses in his report. Thus, even if Wasilewski's freestanding explanation of Wadas' options would have helped the jury understand the evidence, Fed. R. Evid. 702, his testimony would be cumulative and likely to waste the jury's time, Fed. R. Evid. 403.

performance in an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 30–31. Indeed, in their motion to reconsider, defendants argue that Wasilewski's experience deciding *Strickland* claims as a judge qualifies him to express his opinion. Defs.' Mot. to Reconsider 4–5, ECF No. 609. For instance, Wasilewski states that Wadas should have interviewed Lopez, but he does not purport to opine on what difference the interview would have made, stating, "[I]t is unknown whether Orlando Lopez would have talked to Attorney Wadas because he did not try." Wasilewski Report 23. Of course, even if Lopez had talked to Wadas, there is no reason to believe that he would have told Wadas that what he was telling the police was untrue. And as to filing certain motions, Wasilewski opines that at least Wadas could have created a record. *Id.* at 24–25. Wasilewski's report is bereft of any opinion on the likelihood that taking those steps have yielded *Brady* material. *See id.* at 24–25, 30–31; *cf. Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark*, 39 F.3d 812, 816 (7th Cir. 1994) ("Judges ought not by taking an expansive view of the tort of legal malpractice create incentives for lawyers to engage in busy 'motion practice' in order to insulate themselves from legal liability.").

Moreover, without explanation or support, Wadas equates constitutional reasonable diligence with the general requirement of zealous representation under the Illinois Rules of Professional Conduct. Wasilewski Report 23. Even the most thorough criminal defense attorney, however, would be hard pressed to unearth evidence that is truly suppressed when it is, say, locked in a police officer's desk drawer, as in *Jones v. City of Chicago*, 856 F.2d 985, 991, 995 (7th Cir. 1988), or in a witness's head, as in *Boss*, *supra*, 263 F.3d at 741. So there is more to reasonable diligence than the criminal defense attorney's duties under state ethics rules, but Wasilewski offers no opinion on whether the allegedly suppressed evidence would have been

9

available had Wadas done as Wasilewski opines he should have done. Accordingly, Wasilewski's opinions on reasonable diligence would likely confuse, rather than assist, the jury, *see* Fed. R. Evid. 702, 403, because they depart from the governing *Brady* standard to the standard of care he believes § 7-101 required. *See Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, No. 1:05-CV-207, 2007 WL 1850858, at *6 (N.D. Ind. June 25, 2007) (excluding expert testimony in part because expert utilized incorrect standard of care).

The initial and final steps of Wasilewski's analysis have an additional, though related, *Daubert* problem. As already mentioned, Wasilewski simply cites § 7-101 of the Illinois Rules without discussing the text or law applying that rule. Wasilewski Report 23. After reviewing what Wasilewski believes Wadas could and should have done, Wasilewski gives his bottom line that each instance provides an example of Wadas' lack of reasonable diligence. Wasilewski Report 30–31.

Wasilewski offers no analysis of Illinois law explaining his opinion that the general language of § 7-101 required the specific steps he claims Wadas should or could have taken. *See* Wasilewski Report 23. By way of example, Wasilewski does not discuss § 7-101(a)(1)(C) which states that a lawyer's duty of zealous representation does not require the lawyer to "engag[e] in offensive tactics." When, if ever, is filing a baseless motion an "offensive tactic?" Wasilewski opines that if Wadas had filed a motion to suppress the lineup that everyone agreed occurred, he could have used it as a means to ask questions about the lineup that the state denied occurred. Is this realistic? Wasilewski doesn't say, but it seems to assume a comatose trial judge. He provides a bottom line: § 7-101 was violated. Wasilewski Report 23–28. He does the same at the end of his report where he states that Wadas could have taken certain steps and then asserts the conclusion that Wadas was not reasonably diligent for not taking them. As defendants point

out, Wasilewski cites rules and case law he contends would have allowed Wadas to take certain steps. Mot. to Reconsider 7. But surely, Wasilewski does not mean that everything that can be done must be done. Nevertheless, he does not explain how he narrows the universe of all steps that could be taken to those that governing Illinois professional standards required. *See* Wasilewski Report 23–31. What is worse, he offers no explanation for leaping from his opinion on what § 7-101 required to what *Brady* case law requires. *See id.* Thus, on all of those issues, Wasilewski provides a "bottom line" without adequately explaining his "methodologies and principles." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)) (required by Rule 702).

The methodology and reliability discussion so far helps to illuminate the problem with Wasilewski's qualifications by knowledge, skill, training, and experience. An admissible expert opinion must be "informed by the witness's expertise[,] rather than simply an opinion broached by a purported expert." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) (quoting *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991)). Wasilewski spent his career as a prosecutor and state judge; he has never tried a case as a criminal defense attorney and he has not conducted discovery as a criminal defense attorney. *See* Wasilewski Report 34–35. He has never analyzed a case as a criminal defense attorney must, considering the strength of the State's case, the resources he has available, and the concern not to aggravate the judge by pressing losing points.

The court "must look at each of the conclusions [an expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery* (hereinafter "*Hall*"), 840 F.3d 922, 926 (7th Cir. 2016) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). Thus, in a legal malpractice suit, an expert on the standard of professional care does

not necessarily need to be qualified by experience in the particular specialty; a lawyer may instead be qualified by studying the law, i.e., by "knowledge" rather than "experience" under Rule 702, but general legal training and even standing in the local legal community do not always qualify a lawyer to opine on the standard of professional care. *Compare CDX Liquidating Trustee ex rel. CDX Liquidating Trust v. Venrock Assocs.*, 411 B.R. 571, 585 (Bankr. N.D. Ill. 2009) (holding law professor specializing in corporate governance law was qualified to opine on fiduciary obligations under Delaware law even though he had not practiced in Delaware), *with Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 848 (S.D. Ind. 2007) ("Although the Court has no doubt that [the witness] has considerable experience as a lawyer in the Indianapolis community, there is no specialized training, experience, or education in [the witness]'s background that would qualify him as an expert on matters of legal malpractice."); *Noske v. Friedberg*, 713 N.W.2d 866, 872 (Minn. Ct. App. 2006) (affirming exclusion of law professor's testimony because "his lack of practical or academic experience in the criminal-law area made it unlikely that his testimony on the duty of a criminal-defense attorney would have been admissible as expert opinion").

This fact-intensive inquiry depends in part on the area of specialty and the scope of the opinion expressed, so, for instance, the Seventh Circuit has upheld a state trial judge expressing opinions on whether a lawyer met the applicable standard of care in an ordinary negligence lawsuit tried in state court. *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461–62 (7th Cir. 1996). But a lawyer who has never tried a medical malpractice case has been disqualified from expressing an opinion second-guessing trial strategy in such a case. *Dean v. Tucker*, 517 N.W.2d 835, 837 (Mich. Ct. App. 1994) (per curiam). These case-specific outcomes flow from the rule that the expert's qualifications are not considered in the abstract; the court concerns itself

"instead with his foundation for answering a specific question." *Hall*, 840 F.3d at 928 (alterations and quotation omitted); *see also generally* Mallen, 4 Legal Malpractice § 37:141 (2018 ed.).

Here, defendants have not demonstrated that Wasilewski is qualified by knowledge, skill, and experience to answer the specific *Brady* suppression questions on Wadas' reasonable diligence discussed in his report. Wasilewski's failures to consider the danger of a perjury charge against Rivera if he were called as a witness in a motion to suppress a lineup the State contends never happened and Wadas' testimony that the prosecutor assured him that he had everything provide concrete examples of a gap between expertise in the general field of "criminal law," Wasilewski's claimed area of expertise, and the more specific field of criminal defense law needed here to opine on whether Wadas acted with reasonable diligence. *See Hall*, 840 F.3d at 930 (collecting cases in which expert was qualified to opine on one subject but not a more specific, often more specialized, subject); *Noske*, 713 N.W.2d at 872 (recognizing need for knowledge or "practical" experience in criminal law to render opinions on criminal defense lawyer's decisions at trial). "Lawyers often have reasons for not going by the book—not making all the objections that might be well founded in the law of evidence, not cross-examining every witness for the other side, not calling every potential witness, not fussing over the particular wording of an instruction, not using up all one's peremptory challenges, and so forth." *Am. Int'l Adjustment Co.*, 86 F.3d at 1466.

Defendants point out that Wasilewski has supervised criminal discovery as a state trial judge and enforced discovery rules, tried criminal cases, decided habeas cases with *Brady* issues (they do not say whether reasonable diligence was at issue), and enforced substantive rules in criminal cases. Mot. to Reconsider 5. Clearly Wasilewski has a great deal of experience. But he

13

has no experience relevant to criminal defense strategy. Wasilewski's opinions necessarily implicate strategic decisions peculiar to the practice of criminal defense in Cook County, including handling of witnesses, his client, and his relationship with a prosecutor with whom he testified he had a relationship of trust. As a prosecutor and trial judge, Wasilewski never found himself in the position of making the out-of-court tactical tradeoffs Wadas faced when considering all of the options for interviewing witnesses, conducting discovery in the face of the vast Cook County bureaucracy described at trial, and filing the motions he discusses in his report. So his experience has limited utility in enlightening the jury on the issues that would be most helpful to the jury on reasonable diligence, namely the likelihood that any particular tactic would have made otherwise suppressed material available. Defendants point out that Wasilewski served for over twenty years on the Illinois State Bar Association's ("ISBA") Criminal Justice Section Council. Defendants do not explain what, if any, knowledge of the realities of private criminal defense practice he gained thereby, and his experience as described by defendants sounds like policy work, which, while important, does not show that he is qualified here. *See* Mot. to Reconsider 5 (stating that the Commission's "purpose is to review, study and analyze the field of criminal law and make recommendations to the ISBA on proposed changes to the field of criminal law in Illinois").

For these reasons, the court finds that Wasilewski is not qualified by knowledge, skill, and experience to opine on Wadas' reasonable diligence under *Brady*. *See Landeen*, 519 F. Supp. 2d at 848; *Noske*, 713 N.W.2d at 872; *Dean*, 517 N.W.2d at 837. That said, the decision to exclude Wadas' opinions does not rest exclusively on a qualification decision. "The fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall*, 840 F.3d at 929 (collecting cases)

14

(medical standard of care). As already explained, the court also excludes his opinions on reasonable diligence because they will not assist the jury and because they are unreliable. *See id.* (stating in dictum that would have been error to exclude doctor's opinion "on the sole basis that his medical specialty was something other than gynecology or obstetrics" (quoting *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*, 345 F.3d 15, 24–25 (1st Cir. 2003))). They are likely to confuse the jury into thinking that because Wadas had an option to do something under Illinois law, he failed the reasonable diligence test by not doing it, and to cause the jury to speculate on whether doing any of the things Wasilewski opines Wadas should have done would have made any difference at all in uncovering the allegedly suppressed evidence.

**Conclusion**

For the reasons stated, defendants' motion to reconsider the court's ruling barring Wasilewski's opinions on reasonable diligence, ECF No. 609, is denied.


Date:  June 22, 2018                                  /s/
                                                                    Joan B. Gottschall
                                                                    United States District Judge