**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | No. 12 C 4428 |
| *Plaintiff*, | ) | |
| | ) | Hon. Joan B. Gottschall, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | Hon. Mary M. Rowland, |
| | ) | Magistrate Judge |
| *Defendants*. | ) | |
| | ) | JURY TRIAL DEMANDED |

## **PLAINTIFF'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff, JACQUES RIVERA, by his attorneys, moves this Court for the entry of an order pursuant to Federal Rule of Civil Procedure 50 for judgment as a matter of law in his favor. In support of this motion, Plaintiff states:

### **INTRODUCTION**

Plaintiff brought a due process claim against defendants Guevara, Gawrys, McLaughlin, and Mingey for concealing exculpatory evidence or fabricating evidence against him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff has presented unrebutted evidence that Defendants violated his right to due process by concealing exculpatory evidence. Defendants have presented no evidence to support a defense to this claim. Plaintiff is therefore entitled to judgment as a matter of law in his favor on this claim.

A court should enter judgment under Rule 50 when the moving party has presented sufficient evidence such that, as a matter of law, a jury should find in his favor. FED. R. CIV. P. 50(a). A court should enter judgment for Plaintiff under Rule 50 if a reasonable jury, when viewing all the evidence and drawing all reasonable inferences in Defendants' favor, could not

find for Defendants. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). Put differently, judgment under Rule 50 is appropriate here if Defendants have not presented sufficient evidence upon which a reasonable jury could find in their favor. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992).

A claim under *Brady* is an independent ground for a jury to find a due process violation; therefore it is appropriate for disposition under Rule 50. *See Fields v. City of Chicago*, No. 10 C 1168, 2015 WL 13578989, at *3 (N.D. Ill. Apr. 7, 2015) (*Brady* claim is discrete ground for Rule 50 motion); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (same); *Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 706 (D. Md. 2018) (same).

## ARGUMENT

### I. A Reasonable Jury Could Only Find that Defendants Violated His Right to Due Process

Plaintiff contends that defendants Guevara, Gawrys, McLaughlin, and Mingey violated his constitutional right to due process of law by suppressing exculpatory and impeaching evidence. To succeed on this claim, Plaintiff must show that (a) Defendants concealed exculpatory or impeachment evidence; (b) that the evidence was material; and (c) that he was damaged as a result. *See Manson v. Brathwaite*, 432 U.S. 98 (1977); *Lee v. Foster*, 750 F.3d 687 (7th Cir. 2014); *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011); *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008); *Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006). Plaintiff has introduced unrebutted evidence satisfying each of these elements.

In order to show that suppressed evidence is material, Plaintiff "must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (citing *Smith v. Cain*, 132 S. Ct. 627, 629-31 (2012)); *see also Kyles v.*

*Whitley*, 514 U.S. 419, 434 (1995). Accordingly, whether evidence is material depends on the strength of the evidence presented in the criminal case against the defendant—where a criminal case is weak, it is more likely that suppressed evidence would be considered material. *United States v. Agurs*, 427 U.S. 97, 113 (1976). Importantly, evidence that would impeach a key eyewitness is indisputably material, according to the Supreme Court and the Seventh Circuit. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *see also Smith*, 565 U.S. at 75 (impeachment evidence regarding eyewitness material when eyewitness was the only evidence connecting defendant to the crime); *Fields v. Wharrie*, 672 F.3d 505, 517 (7th Cir. 2012) ("The constitutional violation occurs when the means by which the testimony was acquired are not disclosed at trial—or when other information that impeach the testimony's reliability are not shared with the defense."); *Newsome v. McCabe*, 319 F.3d 301, 302-05 (7th Cir. 2003) (holding that "the details about how [the police] induced the witnesses to finger Newsome" was "information vital to probe whether manipulation occurred"). In addition, in assessing materiality, the withheld evidence must be considered cumulatively, not just in isolation. *Kyles*, 514 U.S. at 421-22; *Crivens v. Roth*, 172 F.3d 991, 996 (7th Cir. 1999).

### a. Plaintiff has presented unrebutted evidence that "material" information that would have tipped the scale in favor of innocence was withheld.

As a threshold matter, Plaintiff has presented unrebutted evidence that the criminal case against him was exceedingly thin. Numerous witnesses testified that this was a "single-finger identification" case, and that no other evidence, apart from the testimony of Defendant Guevara, tied Plaintiff to the Valentin murder. Plaintiff's criminal defense attorney, Kenneth Wadas, the felony-review prosecutor, Julie Rosner, and the trial prosecutor in Plaintiff's criminal case, Larry Victorson, testified—without any evidence offered to the contrary—that because the criminal case against Plaintiff was a thin case, *any* piece of evidence that could have been used to show

3

Plaintiff's innocence, or impeach witnesses Orlando Lopez or Guevara, would tip the scale in favor of Plaintiff's innocence, and in favor of dropping the case or acquitting the defendant.

> **b. Plaintiff presented unrebutted evidence that Defendants suppressed exculpatory information that had been recorded in documents and exculpatory information that was not recorded at all.**

Plaintiff presented significant evidence that Defendants suppressed a host of exculpatory and impeachment information. The suppressed evidence included both information that was memorialized in police reports, which did not get turned over to state prosecutors and to Plaintiff and his criminal defense attorney, and investigative information that was never memorialized at all.

*Suppressed Exculpatory Evidence Recorded on*
*Police Reports That Were Not Turned Over to Wadas*

Plaintiff presented a host of unrebutted evidence that Defendants had recorded exculpatory information that was never turned over to Plaintiff. First, Plaintiff has presented unrebutted evidence that exculpatory information was never produced to Wadas. (PX268.) As this Court observed during the jury instruction conference on June 26, 2018, it is unrebutted that Victorson turned over everything in his possession to Plaintiff's attorney, Ken Wadas. And Wadas testified that he kept his complete file in its original condition. Defendants presented no evidence suggesting that there were any documents that were turned over to Wadas that did not appear in his file, or that there is any difference between the contents of his file at the time he represented Plaintiff and the contents of the file as it appears today, or that there were any documents turned over to the prosecutors that Wadas did not receive. (PX47.)

The issue, then, is simply whether Wadas had the material in the Valentin investigative file. The unrebutted evidence is that the following documents were missing from his criminal defense file: (1) a rap sheet stamped August 27, 1988, establishing that he was Defendants'

suspect before any witness had identified him (PX43A); (2) a general progress report documenting that Lopez initially told McLaughlin that he was by the store, which was 191 feet away from the shooting (PX12); (3) two general progress reports (one from August 27, and one from August 27 or 28) listed in the file inventory but not contained in the investigative file and never disclosed to Wadas or to Plaintiff in this litigation; (4) a version of the general offense case report without Orlando Lopez's name on it (PX19 at 43-44); (5) arrest, hold, and release reports from August 30 and August 31, 1988 for Jacques Rivera and Jose Rodriguez, an alternate suspect that the documents say was going to be charged for the Valentin murder (PX59); (6) a general progress report from August 31 reporting people in the first lineup viewed by Lopez (PX64); and an investigative file inventory listing all the documents above that Plaintiff and Wadas did not receive, and which shows that Defendants had manipulated dates in their recordkeeping (PX19 at 2-3).

Given Wadas and Victorson's testimony that any additional evidence in Plaintiff's favor would have tipped the scale in his favor, based on each of these documents independently, a reasonable jury could only conclude that Defendants concealed material evidence that caused harm to Plaintiff. Taken cumulatively, as they must be, *Kyles*, 514 U.S. at 421-22; *Crivens*, 172 F.3d at 996, the unrebutted evidence of records withheld from Wadas compel a finding of materiality.

*Exculpatory Information That Was Never Recorded At All*

In addition to police files that were suppressed, Plaintiff also presented unrebutted evidence that Defendants suppressed exculpatory information that they never memorialized at all. Some of this suppressed evidence was revealed for the first time at trial. Defendants offered zero evidence that any of this evidence was ever turned over previously.

5

First, Gawrys testified that he obtained an "unreliable" identification of Plaintiff from the victim Felix Valentin, but falsely reported that the victim had identified Plaintiff in his and Guevara's September 16 report. Guevara and Mingey asserted their Fifth Amendment right not to incriminate themselves on this subject. Defendants did not offer any evidence that Defendant Gawrys was lying at trial or had remembered events incorrectly. Accordingly, it is unrebutted that Defendants falsely reported that the victim identified Plaintiff. Though the victim's identification was not introduced at the criminal trial (as the Court has observed previously), it is beyond dispute that Guevara's production of a false report would be *critically important* impeachment evidence when Guevara took the stand at Plaintiff's criminal trial to corroborate Lopez's testimony.

Second, Officer Letrich testified on the first day of trial that, when he visited the victim Valentin at the hospital on August 30, 1988, the victim Valentin communicated to him that he had seen the person who shot him. In addition, Letrich testified *on direct examination by Defendants' lawyers* that he knew at the time that Defendants suspected a Latin King had committed the shooting, that he set about to clarify whether Valentin had seen a Latin King or an Imperial Gangster during the conversation, and that Valentin said he "was sure" it was an Imperial Gangster and not a Latin King. There is no record of the victim's statement that he was sure it was not a Latin King who had shot him. Obviously, given the entire theory of the criminal case, this was critical suppressed evidence showing that Plaintiff was innocent.

Third, Plaintiff presented evidence to show Defendants conducted a first lineup at which Plaintiff was not identified. Plaintiff and two witnesses testified that they stood in a lineup on August 31, and Orlando Lopez testified that he viewed a lineup on August 31 and identified someone. But the unrebutted evidence shows Plaintiff was released after this lineup. (PX7.)

6

Numerous witnesses testified that this information would have been exculpatory. Based on this evidence, a jury must conclude that Defendants suppressed information relating to this lineup.

Fourth, Plaintiff presented evidence that he told McLaughlin and Guevara that his eyewitness identification of Plaintiff was inaccurate and that he had identified the wrong guy. Plaintiff presented unrebutted evidence that Lopez told a white-haired woman and a male "Hispanic" police officer with a "fro," moustache, and glasses he had identified the wrong guy. (PX33, PX37, PX211; DX103). Plaintiff also unequivocally established that the people Lopez told were McLaughlin and Guevara. Defendants had years to procure any document, picture, or other evidence to show that McLaughlin was not working the day Lopez went to the station, or to figure out who the woman or the Latino officer were, and did not do so.

Finally, Plaintiff presented evidence proving Defendants had other exculpatory information that did not appear in Wadas's file, including the reports Daniel Noon and John Boyle testified they had written about the Valentin investigation, which they have not seen in 30 years (and have never been disclosed). This would have been valuable evidence to impeach Guevara at Plaintiff's criminal trial, which, as previously discussed, would have tipped the balance in Plaintiff's favor. Multiple witnesses have also testified that Gang Crime Specialists, including Guevara and Gawrys, would have made notes during their investigations and created daily "humper" reports of their work that day; Defendants and the City's 30(b)(6) designees established that all of these were destroyed. Again, given the unrebutted evidence that such exculpatory material could have prevented Plaintiff's conviction, a jury must conclude that this information was material and caused harm to Plaintiff.

Again, any single one of the above examples of suppressed evidence—standing alone—would justify directing a verdict against Defendants on Plaintiff's claim that they suppressed

material evidence. Certainly together the unrebutted evidence outlined above would require a reasonable jury to find in Plaintiff's favor.

## II. Defendants Have Presented No Evidence That Would Permit a Reasonable Jury to Conclude that Wadas Was Not Reasonably Diligent

Defendants' only defense to this unrebutted *Brady* evidence is a reasonable diligence defense. To establish a reasonable diligence defense, Defendants must prove that the exculpatory or impeachment evidence was otherwise available to Plaintiff, through the exercise of reasonable diligence, to make use of at his criminal trial. *Carvajal*, 542 F.3d at 566; *Boss v. Pierce*, 263 F.3d 734, 741 (7th Cir. 2001). Defendants presented no evidence that Wadas could have obtained additional evidence through reasonable diligence. At best Defendants presented evidence that there were additional steps Wadas *could have* taken to investigate the case, but they certainly did not elicit any evidence that those steps would have yielded any additional evidence.

On the other hand, Plaintiff presented evidence that Wadas took a number of reasonable steps to obtain missing information and was unable to do so. Specifically, Wadas made formal and informal discovery requests to the state for all evidence, including all police reports and information about witnesses, in its possession, and the state responded to that request with an answer and provided what it had. Both Victorson and Wadas testified that the state provided everything in its possession to Victorson, who provided everything in his possession to Wadas. And Plaintiff also elicited testimony from Wadas that any further efforts to obtain missing information would have been futile. Defendants presented no evidence that these efforts were not reasonable, and certainly have not presented any evidence to show that Wadas's performance was a *superseding cause* of Plaintiff's conviction—one that renders the consequences of the defendants' actions unforeseeable. *Whitlock v. Brueggemann*, 682 F.3d 567, 584 (7th Cir. 2012). No jury could conclude that Defendants have established this defense.

8

**Conclusion**

For all of the foregoing reasons, Plaintiff request that this Court enter judgment as a matter of law in his favor as to Plaintiff's due process claim based on suppression of exculpatory evidence under *Brady*.

Respectfully submitted,

**JACQUES RIVERA**

By:   /s/ Jon Loevy
*One of Plaintiff's Attorneys*

| | |
|---|---|
| Arthur Loevy | Locke E. Bowman |
| Jon Loevy | David Shapiro |
| Russell Ainsworth | Alexa Van Brunt |
| Anand Swaminathan | RODERICK MACARTHUR JUSTICE CENTER |
| Steven Art | Northwestern University School of Law |
| Rachel Brady | 375 E. Chicago Avenue |
| Sean Starr | Chicago, Illinois 60611 |
| LOEVY & LOEVY | (312) 503-0844 |
| 311 N. Aberdeen St., Third Floor | |
| Chicago, IL 60607 | J. Samuel Tenenbaum |
| (312) 243-5900 | BLUHM LEGAL CLINIC |
| | Northwestern University School of Law |
| | 375 E. Chicago Avenue |
| | Chicago, Illinois 60611 |
| | (312) 503-8576 |

**CERTIFICATE OF SERVICE**

I, Jon Loevy, an attorney, hereby certify that on June 26, 2018, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Jon Loevy
*One of Plaintiff's Attorneys*
