# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JACQUES RIVERA, | ) | Case No. 12 C 4428 |
| Plaintiff, | ) | Judge Joan B. Gottschall |
| v. | ) | Mag. Judge Mary M. Rowland |
| REYNALDO GUEVARA, et al. | ) | JURY TRIAL DEMANDED |
| Defendants. | ) |  |
|  | ) |  |

**DEFENDANT CITY OF CHICAGO'S RENEWED MOTION FOR JUDGMENT AS A
<u>MATTER OF LAW</u>**

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT**............................................................................................................................ 2

    **I.  POLICIES PERTAINING TO DETECTIVE DIVISION INVESTIGATIVE FILES.** 2

        **A.  Plaintiff failed to prove a constitutional violation.**...................................................... 2

        **B.  The City Cannot be Liable Because Detective McLaughlin Was Found Not Liable.** 4

        **C.  The City Does Not Have an Express Policy of Withholding Investigative Materials** 5

        **D.  Plaintiff Failed to Prove a Widespread Practice of Similar Brady Violations.** ........ 6

        **E.  Plaintiff Failed to Prove an Unconstitutional Gap in the City's Investigative File Policy**. .................................................................................................................................. 9

        **F.  Plaintiff Failed to Prove an Alleged Failure to Train Regarding Investigative Files** 11

    **II.  POLICIES REGARDING DOCUMENTING OF FILLER IDENTIFICATIONS.** . 12

    **III.   POLICIES REGARDING THE GANG CRIMES UNIT.** ...................................... 14

# CASES

*Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) ............................... 1

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015)......................................................... 7

*Calhoun v Ramsey*, 408 F.3d 375 (2005)....................................................................... 6

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).......................................................... 1

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)........................................................... 4

*Connick v. Thompson*, 563 U.S. 51 (2011) ............................................................. 6, 11, 12

*Elizarri v. Dart*, __ F.3d.__ , 2018 WL 4041200 (7th Cir. Aug. 24, 2018) .................................. 4

*Estate of Novack v. County of Wood*, 226 F.3d 525 (7th Cir. 2000)............................................. 6

*Hahn v. Walsh*, 762 F.3d 617 (7th Cir. 2014) ................................................................ 10

*Hammond Group., Ltd. v. Spalding & Evenflo Cos.,* 69 F.3d 845 (7th Cir. 1995) ........................... 2

*Harris v. Kuba*, 486 F.3d 101 (7th Cir. 2007) ............................................................... 3

*Jones v. City of Chicago*, 787 F.2d 200 (7th Cir. 1986) ..................................................... 6

*Kyles v. Whitley*, 514 U.S. 419 (1995)................................................................. 2, 3, 9

*McNobala v, CTA*, 10 F,3d 501 (7th Cir. 1993) ............................................................... 6

*McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1985) .................................................... 5

*Miranda v. County of Lake*, 17-1603, 2018 WL 3796482 (7th Cir. Aug. 10, 2018) ..................... 11

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) .................................................... 1

*Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990) ............................................................. 6

*Strickler v. Greene*, 527 U.S. 263 (1999) .................................................................. 4

*Swanigan v. City of Chicago,* 881 F.3d 577 (7th Cir. 2018) ............................................. 4, 13

*Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010) ........................................ 5

*United States v. Agurs*, 427 U.S. 97 (1976) ............................................................... 6

*United States v. Bagley*, 473 U.S. 667 (1985) ............................................................. 6

*United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002).................................................... 3

*United States v. Warren*, 454 F.3d 752 (7th Cir. 2006).................................................... 3

Defendant City of Chicago (the "City"), by and through its undersigned attorneys, moves this Court to enter judgment in its favor as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. In support of it motion, the City states:

## INTRODUCTION

Plaintiff failed to present legally sufficient evidence for the jury to find liability against the City on his *Monell* claim. To find liability pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), Plaintiff must have presented evidence that an official policy of the City caused a violation of his constitutional rights. *Monell* requires proof that a municipal decision both caused a constitutional injury and that the municipality is culpable. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). Thus, Plaintiff must have presented evidence that the City's policy was the "moving force" behind the violation of his constitutional rights and the City acted with deliberate indifference. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). When a municipality's decision did not directly cause an injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405. Plaintiff's theory of *Monell* liability concerned his right to due process and the City's compliance with *Brady v. Maryland* in three subject areas: (1) the production of Detective Division investigative material, (2) documentation of lineups where a witness identified a filler as the perpetrator, and (3) production of documents created by the gang crimes unit. Plaintiff failed to present sufficient evidence to support any of these theories.

At the close of Plaintiff's case and before the case was submitted to the jury, the City moved for a directed verdict pursuant to Rule 50(a). (ECF 629). In ruling on the motion, the Court determined that Plaintiff's theory of liability regarding documentation of lineups did not necessitate a Rule 50 analysis but denied the City's remaining arguments. (ECF 676, p. 10).

Judgment was entered on August 3, 2018. As a result, the City renews its Rule 50 motion for judgment as a matter of law. Judgment can be entered as a matter of law if a party has been fully heard on an issue during a jury trial and there is no legally sufficient evidentiary basis for a reasonably jury to find for that party on an issue. *Hammond Group., Ltd. v. Spalding & Evenflo Cos.,* 69 F.3d 845, 848 (7th Cir. 1995). Because no legally sufficient evidence supports the jury's verdict on any of Plaintiff's theories of *Monell* liability, this motion should be granted.

## ARGUMENT

### I.   POLICIES PERTAINING TO DETECTIVE DIVISION INVESTIGATIVE FILES.

#### A.   Plaintiff failed to prove a constitutional violation.

Plaintiff alleged the City's policies caused the violation of his right due process in violation of *Brady v. Maryland*. To prove a *Brady* violation, Plaintiff must have presented evidence that the evidence at issue was either exculpatory or impeaching, the evidence was suppressed by the government, and there was a reasonable probability that, had the evidence been disclosed, the result of the criminal proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Consistent with the jury's verdict finding in favor of Defendant McLaughlin on this claim, Plaintiff's evidence was insufficient to establish that any material, exculpatory evidence maintained in the Valentin Detective Division Investigative File was withheld from him.

The only evidence in the file that Plaintiff claimed was exculpatory was the (1) the criminal history report indicating someone requested Plaintiff's criminal history on August 27, 1988; (2) Defendant McLaughlin's general progress report (GPR) that indicated Orlando Lopez told her that he was "by the store" when he saw the shooting; and (3) the investigative file inventory sheet that seemed to indicate that McLaughlin prepared two additional GPRs that are now missing. (See, Ex. A, Trial Transcript (Wadas) at 1405-12). None of this evidence is material or exculpatory. As

for the date on the criminal history, Orlando Lopez testified that he identified Plaintiff on August 27, 1988. (Ex. A, (Lopez), 3933-3935). That explains why Plaintiff's criminal history was requested. Next, Plaintiff's defense counsel admitted that the statement "by the store" might not have added much to attack Lopez's credibility. (Ex. A, (Wadas), at 1464-70). And, finally, there is no evidence that if additional GPRs existed, what, if anything, they reported, let alone if they documented material, exculpatory evidence. *See United States v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006) (without pointing to any specific exculpatory evidence, *Brady* claim does not "get off the ground").

Further, evidence is only suppressed pursuant to *Brady* if it could not have been obtained through the exercise of reasonable diligence. *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002); *Harris v. Kuba*, 486 F.3d 101, 1015 (7th Cir. 2007). Plaintiff failed to present evidence to establish this element. For instance, his criminal defense attorney admitted that he knew that CPD maintained GPRs and investigative file inventories. (Ex. A (Wadas), at 1581-1583). If the discovery he obtained from the prosecutor during the criminal prosecution did not include those documents, he could have taken steps to discover they existed, including, for example, issuing a subpoena to CPD and obtaining the Court's assistance in enforcing it. He chose not to do that. As such, Plaintiff did not establish that the alleged exculpatory evidence was suppressed. In addition, the prosecutor has an affirmative duty to discover all potential *Brady* material known only to the police. *Kyles*, 514 U.S. at 437. Plaintiff did not present any evidence that the trial prosecutor in this case requested the Investigative File but that CPD did something to conceal it from him. Therefore, even if Plaintiff established due diligence in obtaining the file, Plaintiff failed to prove that CPD is to blame for not providing it to him.

**B.** **The City Cannot be Liable Because Detective McLaughlin Was Found Not Liable.**

The jury could not have found the City liable for any of its alleged *Brady*-compliance policies, as they pertain to detectives, because the sole Defendant Detective in this case, Defendant McLaughlin, was found not liable. Each piece of evidence that Plaintiff claimed Defendants withheld in the Valentin Investigative File was either created by, or in the possession, custody, or control of Defendant McLaughlin. Yet, the jury found that Defendant McLaughlin did not withhold or fabricate evidence in violation of Plaintiff's rights to due process. As such, the City's *Brady*-compliance policies as to the production of detective investigative material are irrelevant. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (concluding if no individual violated the plaintiff's constitutional rights, then the municipalities policies are "quite beside the point")*; Elizarri v. Dart*, __ F.3d.__ , 2018 WL 4041200, at *2 (7th Cir. Aug. 24, 2018) (holding organizational liability pursuant to *Monell* does not exist in the absence of an underlying constitutional violation by one of its employees); *Swanigan v. City of Chicago,* 881 F.3d 577, 582 (7th Cir. 2018) ("holding the City cannot be liable based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no harm).

Further, Plaintiff's Investigative File production theory cannot stand independently of individual liability. As explained, if material, exculpatory evidence existed in the Valentin Investigative File, then Defendant McLaughlin possessed it and had a duty to produce it to the prosecutor. *Strickler v. Greene*, 527 U.S. 263, 288 (1999) (stating a *Brady* violation occurs when material exculpatory evidence is withheld irrespective of good or bath faith). The jury determined, however, that Defendant McLaughlin did not violate Plaintiff's constitutional rights. Therefore, any finding that the City had a policy of withholding detective investigative material creates an inconsistent verdict. For that reason, the City cannot be held liable for any of its alleged policies

pertaining to the disclosure of the detective investigative material. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (observing that a municipality cannot be found liable under Monell when "such a finding would create an inconsistent verdict") (emphasis omitted).

**C.    The City Does Not Have an Express Policy of Withholding Investigative Materials.**

Even if the jury's verdict was not inconsistent with Plaintiff's theory of *Monell* liability, Plaintiff nevertheless failed to establish any alleged policy caused a deprivation of his constitutional rights.

To start, Plaintiff failed to prove an express policy theory of *Monell* liability. To prevail on an express policy theory, Plaintiff must have presented evidence that an express policy, when enforced, caused him a constitutional deprivation. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1985). The express policy at issue in this case was Detective Division Special Order ("DDSO") 86-3.[1] There is nothing in the order that calls for the concealment of exculpatory evidence. To the contrary, it specifically requires the preservation of all pertinent investigative material to protect the due process rights of the accused. Further, James Hickey testified that CPD overhauled its record-keeping policies in the early 1980's, including introducing new forms like GPRs and investigative file inventory sheet, specifically with the purpose of preserving all investigative material. (Ex. A (Hickey), at 3222-31). Therefore, Plaintiff offered no evidence for which the jury could find the City liable on an express policy theory.

---

[1] DDSO 86-3 was the order in effect at the time of the Valentin investigation. Much of the testimony at trial concerned DDSO 83-1, which marked significant changes CPD put in place after the George Jones case, including institutionalizing the use of Investigative Files and GPRs. DDSO 86-3 is substantially similar to 83-1.

**D.      Plaintiff Failed to Prove a Widespread Practice of Similar Brady Violations.**

Plaintiff's implicit policy theories also fail. First, to prove *Monell* liability on a practice or custom theory, Plaintiff must have presented evidence of widespread, enduring practice that violated constitutional rights in a systematic manner. *McNobala v, CTA*, 10 F,3d 501, 511 (7th Cir. 1993). Isolated acts committed by non-policymaking officers do not amount to a "custom" as contemplated by *Monell*. Rather, Plaintiff must prove a habitual practice of a course of action that "characteristically is repeated under like circumstances". *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) (*quoting Jones v. City of Chicago*, 787 F.2d 200, 2004 (7th Cir. 1986)). It is the "series of unconstitutional acts" that is necessary to demonstrate indifference to the deficiencies in the policies. *Estate of Novack v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000). Further, these violations must arise in "similar" circumstances – otherwise, a municipality lacks notice that the policy deficiencies "will cause violations of constitutional rights". *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff must have presented evidence to prove that a "true municipal policy at issue, not a random event." *Calhoun v Ramsey*, 408 F.3d 375, 380 (2005).

Here, setting aside Plaintiff's failure to prove that material, exculpatory evidence contained in the Valentin Investigative File was withheld from him, he needed to present evidence of a series of "similar *Brady* violations" to establish an implicit policy. Put another way, Plaintiff must have presented evidence that, on similar facts, alleged exculpatory evidence was withheld, and that, in each case, there was "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *United States v. Bagley*, 473 U.S. 667, 682 (1985), after considering that evidence "in the context of the entire record" of that proceeding, *United States v. Agurs*, 427 U.S. 97, 112 (1976). Plaintiff elicited evidence from his expert, about

investigative material in four other criminal cases – Fields, Robinson, Kluppelberg, and Johnson – but failed to establish a *Brady* violation occurred in any of them.

For Robinson, Plaintiff presented evidence of one report that his expert determined related to an alternative suspect that was not disclosed to the criminal defense attorney but should have been. (Ex. A (Brasfield), at 2252-54). Yet, Plaintiff did not elicit any evidence that the information contained in the report was not provided to the criminal defendant, nor did Plaintiff elicit any evidence that it would have had any material effect on the case considering the other evidence against that person. Even accepting Plaintiff's contention that the information was not disclosed, without evidence of the criminal proceedings themselves, the jury could not determine whether any undisclosed material effected the result. For instance, Plaintiff did not even establish that Robinson was convicted. As such, Plaintiff did not establish any constitutional violation in the Robinson case.

The same is true for Fields. Plaintiff offered three reports containing information about a supposed alternative suspect that he alleged were not provided to the criminal defense attorney. (Ex. A (Brasfield), at 2255-61). Yet, Plaintiff did not demonstrate that information contained in the reports was not disclosed to the prosecutor. Disclosing the information to the prosecutor would discharge CPD's *Brady* obligations. *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015). Nor did he establish that information was not provided to the criminal defense attorney in some other form or establish that the information was material, considering the other evidence against Fields. Plaintiff also presented a criminal history report that his expert alleged was not disclosed to Fields, but, for that report, Plaintiff failed to even elicit evidence that it was exculpatory. (Ex. A (Brasfield), at 2262-63). Thus, Plaintiff did not establish any constitutional violation in the Fields case.

Nor did Plaintiff establish a constitutional violation in Kluppelberg or Johnson. In both cases, Plaintiff failed to present any evidence that the document he claimed was not provided to the criminal defendant, or that the information it contained was information that was not otherwise provided to the prosecutor and/or the criminal defense attorney in some other form. (Ex. A (Brasfield), at 2264-71). Nor did Plaintiff establish that any information in the document was material in the context of the proceedings.

Plaintiff addressed documents from a few other cases in his examination of the City's expert, but, again, did not elicit any evidence that any document contained information that was not provided to the prosecutor or the defendant. (Ex. A (Murray), at 3873-84). Nor did he establish that any information contained in any document he alleged was withheld would have impacted the outcome of any case.

On this score, Plaintiff's expert's file comparison analysis is also insufficient to establish a pattern of constitutional violations. For all the reasons stated in the City's briefing on Summary Judgment (ECF 306, 337) and its Motion in *Limine* No. 6 (ECF 424, 491), Plaintiff's expert, Michael Brasfield, should not have been permitted to testify. His file comparison opinions failed to meet the *Daubert* standard for expert testimony and were not relevant to the issues tried. But, even so, his testimony was insufficient to establish the requisite pattern of constitutional violations necessary to establish *Monell* liability.

First, Brasfield's analysis could not prove that any piece of evidence was withheld. The most he could say was that a document within CPD's possession did not appear in a criminal defense attorney's file thirty years after the fact. Plaintiff did not offer any evidence that information contained in the document was not provided to the criminal defendant in some other form. Nor did Plaintiff establish that the document was not provided to the prosecutor in criminal

discovery. This is fatal to his claim considering a police officer's *Brady* obligations are discharged when evidence is provided to a prosecutor, *Beaman*, 776 F.3d at 512, and the prosecutor has a duty to discover any *Brady* material known only to the police, *Kyles*, 514 U.S. at 437 (1995). Thus, even if the jury accepted Plaintiff's premise that the documents Brasfield identified as "missing" were not produced in criminal discovery, Plaitniff failed to present evidence that CPD is to blame. Even considering that Brasfield reviewed six prosecutor files, Plaintiff never established that any "missing" document was exculpatory and material. Brasfield could only speculate that some documents *might* be important to the criminal case. (Ex. A (Brasfield), at, 263-64, 2272). Coupled with the uncertainty of whether the evidence was ultimately disclosed, Brasfield's testimony is pure speculation, which is insufficient to establish liability.

What's more, even if Plaintiff's evidence was sufficient to establish a pattern of similar constitutional violations (it was not), Plaintiff failed to present any evidence that the City's policymakers had any knowledge of the alleged practice Plaintiff described. Even accepting Plaintiff's theory of production, Plaintiff presented no evidence that the City's policymakers knew that any random piece of paper that may or may not have any importance was not produced to any criminal defendant. For these reasons, this theory of *Monell* liability fails.

E.    **Plaintiff Failed to Prove an Unconstitutional Gap in the City's Investigative File Policy**.

Plaintiff also claimed the City's policies as to Detective Division Investigative Files were deficient because they did not address certain concerns. According to Plaintiff, the policies were deficient because they allowed for the maintenance of two files (Records Division Files and Investigative Files) for each homicide investigation. Secondly, he claimed the policies were inadequate because CPD did not test its compliance by ensuring the completion of an audit. He also claimed the written policy did not specifically state detectives must disclose Investigative

Files to criminal defendants. Again, these theories fail because Plaintiff did not present evidence of a pattern of similar constitutional violations to put the City on notice that its policies were deficient necessary to establish an implicit policy. *Hahn v. Walsh*, 762 F.3d 617, 636–37 (7th Cir. 2014). And, in any event, Plaintiff failed to establish that any of these alleged deficiencies resulted in the systematic suppression of material, exculpatory evidence.

As to maintenance of two files, Plaintiff's expert testified that the best practice would be to have one centralized file, such that there would be one "central repository" for all documents pertaining to an investigation. Yet, Plaintiff did not establish that such a process would have been feasible for a police department the size of Chicago's. Further, Plaintiff did not establish that any document in a Records Division File did not also appear in the corresponding Investigative File. Even more, Plaintiff's expert admitted that every criminal defense attorney file he reviewed contained documents that were found exclusively in the Investigative File for that case, thereby undercutting the theory that CPD did not produce Investigative Files. (Ex. A (Brasfield), at 2443, 2296). Essentially, Plaintiff did not offer any evidence to dispute that the Investigative File is the central repository for all investigative material for each investigation, as his expert suggested was best practice.

Regarding audits, Plaintiff failed to prove that CPD did not actually conduct audits of its record keeping policies. Plaintiff's expert claimed the evidence he reviewed indicated that CPD did not conduct them, but, quite obviously, Plaintiff's expert did not have personal knowledge about whether audits were conducted or not, and Plaintiff failed to elicit what evidence his expert relied on to make that determination. In contrast, Hickey testified that exempt commanding officers were required to completed audits and that he completed them himself. (Ex. A (Hickey), at., 3318).

Finally, Plaintiff's claim that the written orders did not explicitly instruct detectives to disclose Investigative Files to criminal defendants is misleading, considering the actual words of the order stress the importance of preserving all pertinent investigative material, whether inculpatory or exculpatory, to protect the due process rights of the accused. (Ex. A (Hickey) at 3230-31). Nevertheless, whether the written policy spells out the expectation in black in white does not define what the actual practice is. Plaintiff offered no evidence to suggest that anyone in CPD believed that Investigative Files would not be disclosed in criminal cases. And, again, Plaintiff offered no evidence that Investigative Files were withheld in their entirety.

Even accepting these alleged deficiencies, Plaintiff did not present any evidence that any of them resulted in the systematic suppression of material, exculpatory evidence. For all the reasons explained above, he did not link any alleged gap in policy to any constitutional violation. Thus, there is no basis on which the jury could infer that curing any of these alleged deficiencies would have made a difference in this case. *See Miranda v. County of Lake*, 17-1603, 2018 WL 3796482, at *4 (7th Cir. Aug. 10, 2018) (*Monell* liability fails without evidence of causation)

**F.      Plaintiff Failed to Prove an Alleged Failure to Train Regarding Investigative Files.**

Lastly, Plaintiff claimed the City's Investitive File policies were deficient because CPD did not adequately train its detectives when implementing the changes in policy described in Detective Division Special Order 83-1. To be clear, Plaintiff's claim is not that there was a complete failure to train, but that it was not enough. According to Plaintiff's expert, the previous practices regarding the creation and maintenance were so "entrenched" that the City should have spent more time training detectives on the change in policy. Relatedly, Plaintiff claimed the Subpoena Service Unit was not adequately trained to gather documents and make copies.

This claim fails, as well, because Plaintiff did not establish a pattern of similar constitutional violations to infer deliberate indifference. *See Connick*, *supra.* Further, Defendant McLaughlin testified about the training she received regarding 83-1 and explained that it was quite comprehensive. (Ex. A (McLaughlin), at 876-77). Further, Hickey testified the Subpoena Service Unit received on-the-job-training because it was a small unit with little turn-over. (Ex. A (Hickey), at 3233). Plaintiff offered nothing to contradict this testimony besides his expert's bald conclusion that the training was not good enough, which he presented without any methodological reasoning or analysis, leaving nothing for which the jury could use to assess the validity of his opinion. In addition, CPD's training of the members of the Subpoena Service Unit is particularly irrelevant, considering Plaitniff did not elicit evidence that he issued a subpoena in his case. Even so, the theory that the CPD's training could have been better or more complete is specifically foreclosed by the Supreme Court's decision in *Connick*. Indeed, as the Court reasoned, such a claim could be made in "virtually every instance." *Connick*, 563 U.S. at 68. *Monell* liability requires a much more stringent standard, and, therefore, Plaintiff's evidence falls well short.

## II.     POLICIES REGARDING DOCUMENTING OF FILLER IDENTIFICATIONS.

To prove his claim that the City is liable pursuant to *Monell* because of its policies regarding the documentation of lineups, Plaintiff presented the expert testimony of Dr. Gary Wells. In sum, Wells testified that CPD did not document lineups where a witness identified a filler, as opposed to the suspect. According to Wells, those lineups were either mislabeled as something else, such as "negative" or "witness failed to identify suspect", or a report for the lineup would not be created at all. Besides asking questions to the officers who testified about their personal practices related to lineups, Plaintiff presented no evidence about the City's practices besides the testimony of Dr. Wells. In ruling on the City's Rule 50(a) Motion, this Court concluded that the jury instructions

did not embrace the practice described by Wells, making a Rule 50 analysis unnecessary. The City agrees and believes the Court's ruling makes a Rule 50(b) analysis moot. Nevertheless, for purposes of preservation, the City briefly reiterates its arguments here.

For one, Plaintiff did not prove an underlying constitutional violation in his case. Orlando Lopez never testified that he identified anyone other than Orlando Lopez from any lineup. Further, Plaintiff alleged that Defendant McLaughlin conducted the so-called first lineup on August 31, and fabricated the report documenting the lineup did not occur. The jury, however, found Defendant McLaughlin not liable for fabricating or withholding evidence. Nor did Plaintiff present any evidence that any of the other defendants conducted the August 31 lineup or were responsible for fabricating the report. If there is no finding that any officer committed any constitutional violation, then *Monell* liability cannot stand. *See Swanigan*, *supra*.

As to the policy, the only theory of liability for which Plaintiff presented evidence was his theory that the City had a pattern and practice of failing to document filler identifications. As this Court concluded, the practice Wells described did not amount to a pattern of concealing material, exculpatory evidence. While Wells opined that if a witness identified a filler that evidence could be exculpatory, he did not offer any testimony that any failure to specifically document that fact caused a constitutional violation in any case. For instance, Plaintiff did not present any evidence of any instance where detectives allegedly failed to document a filler and that witness was used in a subsequent criminal proceeding or even that any suspect was criminally charged. Without that evidence, Plaintiff failed to support his theory with anything more than speculation. As with Plaintiff's other theories of *Monell* liability, this is fatal to his claim. Without a series of similar constitutional violations, for which the City had knowledge, Plaintiff failed to prove that the City was deliberately indifferent to the issue.

What's more, for the reasons stated in the City's briefing on Summary Judgment (ECF 306, 337) and its Motion in *Limine* No. 7 (ECF 387, 500), Wells should not have been permitted to testify. As explained in those pleadings, his methodology did not satisfy the *Daubert* standard of admissibility, and, Plaintiff offered nothing to link the practice Wells described to the facts of this case. For instance, there is no lineup report in the Valentin investigation that is mislabeled "negative", as Wells suggested. Nor is there no documentation of the so-called "first lineup". To the contrary, there was a report; it documents the fact that the lineup did not actually happen, which Plaintiff argued Defendant McLaughlin fabricated. (Ex. A (McLaughlin), at 624-27; Exhibit B, DX 1.13). As such, Wells' testimony is irrelevant, and Plaintiff failed to present sufficient evidence to establish *Monell* liability on this theory.

## III.   POLICIES REGARDING THE GANG CRIMES UNIT.

In addition to his claim that the City's Investigative File policies were deficient in how they applied to detectives, Plaintiff also claimed the City's record keeping policies were deficient in how they applied to the gang crimes unit. Plaintiff claimed the City's policies were deficient because they did not require the gang crimes unit to preserve their notes, like CPD required of the detectives and did not require the routine disclosure of gang crimes daily activity reports. To that end, Plaintiff elicited evidence that gang crimes specialists would sometimes take notes, meaning they might occasionally write something down during their workday. Plaintiff also elicited evidence that if a gang crimes specialist took notes pertaining to a homicide investigation that piece of paper would not necessarily be preserved in the Detective Division Investigative File, like a GPR would be preserved in the file. According to Plaintiff, that note then might not be produced to a criminal defendant during discovery. In addition, according to Plaintiff, a gang crimes specialist might write down something he did one day on an activity report that could pertain to a

14

homicide investigation. In that case, Plaintiff argued, the report would not be provided to a criminal defendant if CPD did not routinely produce them during discovery. Neither of these theories is sufficient to establish *Monell* liability.

First, as with all the other implicit theories of liability, Plaintiff needed to present evidence of a pattern of constitutional violations resulting from the alleged policy for which the City's policymakers were made aware. Plaintiff did not offer any evidence at all about the failure of gang crimes documents to be disclosed in any case, let alone that the failure amounted to a *Brady* violation that the City's policymakers knew about and were deliberately indifferent. To the contrary, the City's evidence established that if gang crimes specialists obtained information pertinent to a homicide investigation, they would provide that information to the Detective Division, such that the information could be included in the Detective Division Investigative File and produced to the criminal defendant in discovery. Plaintiff offered no evidence to dispute that, and therefore, did not establish deliberate indifference.

More to the point, however, Plaintiff did not present evidence of any note or document prepared by gang crimes that was withheld in this case. While Defendants Guevara, Mingey, and Gawrys were found liable on Plaintiff's due process claim, there was no evidence for which the jury could find them liable for failing to disclose some evidence documented in notes or daily activity reports. While Plaintiff's counsel insinuated that such documentation might have existed, he did not actually present any evidence of it. Instead, Plaintiff asked the jury to speculate that either Defendants Guevara, Gawrys, or Mingey wrote down information relevant to this case, on either a note or a daily activity report, that the note or report contained exculpatory evidence, and that the information was material. He then asked the jury to speculate that the note or report was not produced to Plaintiff because of the City's policies and that the City had knowledge and

15

consciously disregarded that such a constitutional violation would occur. Quite obviously, Plaintiff did not prove that any gang crimes document containing exculpatory evidence existed that should have been produced. Without that, Plaintiff cannot establish a constitutional violation on that theory, and the City's policies are irrelevant.

Relatedly, Plaintiff criticized the City's training of gang crimes specialists with respect to *Brady*. Yet, Plaintiff did not elicit any evidence of how or why the training was deficient. For instance, the City's Rule 30(b)(6) witness testified that gang crimes specialists did receive training in the patrol division. (Ex. A (Spratte), at 3396-3398). He also testified they knew the importance of preserving and disclosing exculpatory evidence. *Id.* Further, Plaintiff failed to present any evidence of a pattern of constitutional violations of which the City was made aware, such that the policymakers would have known that the training was deficient. Indeed, just like Plaintiff's claim regarding detectives, any allegation that the training could have been better is not sufficient to establish *Monell* liability in the *Brady* context.

Wherefore, Defendant City of Chicago, by and through its undersigned attorneys, moves this Court to enter judgment in its favor as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

Dated:   August 31, 2018                                    Respectfully submitted,
                                                            City of Chicago

Eileen E. Rosen                                      By:  ____/s/ *Eileen E. Rosen*_____
Catherine M. Barber                                             One of its attorneys
Theresa Berousek Carney
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
(312) 494-1000
erosen@rfclaw.com

16