# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | No. 12 CV 004428 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Honorable Joan B. Gottschall |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Steve Gawrys, Edward Mingey and Reynaldo Guevara ("Defendant Officers"), by their attorneys, move this Honorable Court for the entry of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and state:

## INTRODUCTION

After the Court ruled on Summary Judgment (Dkt. 373), and clarified that ruling (Dkt. 436), and after Plaintiff dismissed certain claims with prejudice, the only claims against one or more of the Defendant Officers and Defendant McLaughlin that went to the jury were:

- Count I alleging a violation of Plaintiff's due process rights against Defendant Officers and McLaughlin, based on suppression or fabrication of: (1) Plaintiff's gang book identification on August 27, 1988; (2) an alleged line up on August 31, 1988; and (3) an alleged "recant" by Orlando Lopez on September 15, 1988;

- Count II alleging a federal claim for conspiracy against Defendant Officers and McLaughlin;

- Count III alleging a claim for failure to intervene against Defendant Officers and McLaughlin; and

- Count VII alleging a state law intentional infliction of emotional distress ("IIED") claim against Defendant Guevara only.

Based on the evidence at trial and the jury's verdict, Plaintiff failed to present sufficient

evidence to meet his burden of proof on his constitutional claims against Defendant Officers, and judgment should be entered for the Defendant Officers on those claims. Additionally, the derivative conspiracy and failure to intervene claims fail because there is no underlying constitutional violation. Similarly, Plaintiff's IIED claim was premised on the same alleged acts which supported his failed constitutional claims; thus, that claim also fails. Finally Guevara is entitled to qualified immunity based on the particular facts surrounding Lopez's "recant."

At the close of Plaintiff's case, Defendant Officers and McLaughlin moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). See Dkt. 626 and 665. On June 29, 2018, the jury returned a verdict in favor of McLaughlin on all claims against her and in favor of Plaintiff on all claims against the Defendant Officers. The Court denied Defendant Officers' Rule 50(a) motions on July 20, 2018 and entered judgment on the verdict on August 3, 2018.

Rule 50(b) allows a movant to renew his motion for judgment as a matter of law based on the lack of a legally sufficient evidentiary basis for a reasonable jury to have found for the non-moving party. The Court must determine "whether [the jury] was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Ill*, 226 F.3d 922, 924 (7th Cir. 2000). The standard is fundamentally the same as summary judgment, except the court knows exactly what evidence has been placed before the jury to consider. *Id.* If the non-movant presents the jury with insufficient evidence upon which a reasonable person could properly base a verdict in his favor, judgment as a matter of law for the movant is appropriate. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992). Entering judgment is proper if reasonable people, viewing the facts most favorably to the plaintiff, could not conclude that the plaintiff has made out a prima facie case. *Cannon v. Teamsters & Chauffeurs Union*, 657 F.2d 173, 175-76 (7th Cir. 1981). Because there was no

legally sufficient basis for Plaintiff's verdict on the constitutional claims, the Defendant Officers are entitled to judgment as a matter of law.

## ARGUMENT

There was nearly four weeks' worth of evidence adduced at trial; however, that evidence was lacking specific elements of Plaintiff's constitutional claims upon which he bore the burden of proof. Despite the large amount of evidence, only a few documents, and even fewer witnesses who were present for the alleged constitutional violations, could provide Plaintiff the necessary evidence for him to bear that burden. There is, however, an irreconcilable gap in the evidence that Plaintiff relied on to prove a constitutional violation.

As explained below, each of the alleged events underlying the constitutional claims is not supported by sufficient evidence. The only evidence about the alleged "recant" ("wrong guy, wrong guy") was from Orlando Lopez, and he clearly testified that the "white haired lady" and "cop" did not understand what he was trying to tell them, thus negating a claim they suppressed what they believed was exculpatory evidence. Moreover, the jury's verdict for Detective McLaughlin cannot be reconciled with Plaintiff's claim that there was a "first lineup" on August 31, 1988, again negating a claim that evidence of any "first lineup" was suppressed. Similarly, the documents referencing, and testimony about, Lopez's August 27, 1988 identification fail to support the notion that Defendant Officers were involved in the investigation or present at the time of the identification, again negating a fabrication or suppression claim against them. Accordingly, Plaintiff has no evidence to support his claimed constitutional violations. Plaintiff's conspiracy and failure to intervene claims are derivative of his constitutional claims and therefore also fail. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)(conspiracy); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001)(failure to

intervene). And, Plaintiff's IIED similarly fails because this claim is premised on the same alleged constitutional violations that Plaintiff failed to prove. *See Cooney v. Casaday*, 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010). Finally Lopez's recant was not understood so Guevara is entitled to qualified immunity for the alleged *Brady* violation because the alleged suppression was not clearly established based on the particularized facts. *White v. Pauley*, 580 U.S. \_\_\_\_, 137 S.Ct. 548, 552, (2017).

An adverse inference stemming from Guevara and Mingey's assertion of their Fifth Amendment rights alone is insufficient to prove liability: "the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)); *Evans v. City of Chicago*, 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For an adverse inference of a fact to be appropriate, there must be some other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them.*") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer."). Here, Plaintiff lacked the corroborating evidence to allow a proper adverse inference and to meet the burden of proof for his claims. Thus Defendant Officers are entitled to judgment as a matter of law.

I.     **Plaintiff Failed to Prove His Due Process Claims**

To establish Section 1983 liability against an individual, a plaintiff must prove by a preponderance of the evidence that the defendant acted under color of state law, and violated the

plaintiff's constitutional rights. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017); *Armato v. Grounds*, 766 F.3d 713, 719-20 (7th Cir. 2014). Where, as here, a review of the evidence at trial reveals that the nonmoving party did not introduce enough evidence to support his claim, then judgment as a matter of law is proper. *Massey*, 226 F.3d at 924. Plaintiff had two theories of due process violations (fabrication and suppression) based on three events (the August 27, 1988 identification; the alleged August 31, 1988 lineup; and the alleged September 15, 1988 recantation).[1] Under either theory and in all three events, however, Plaintiff presented insufficient evidence to meet his burden of proof that any Defendant Officers deliberately violated Plaintiff's constitutional rights.

A. There is no legally sufficient evidence that the Defendant Officers were present for Lopez's August 27, 1988 identification of Plaintiff

Gawrys was not involved in the Valentin murder investigation until September 1988. His name is on no reports prior to September 15, 1988 and there is no reference to him in any reports being involved in the investigation until September 10, 1988. DX 1.13; DX 1.22; DX 1.24; DX 1.25; DX 1.27; DX 1.28; DX 1.29; DX 1.31; DX 1.32; DX 1.33; PX 6; PX 12; PX 14; PX 15; PX 16PX 19B; PX 19D; and PX 19D. No witness testified that Gawrys was involved in the investigation on August 27, 1988. Tr. (Guzman), at 2681-2716; Tr. (Noon), at 2717-2756; Tr. (Machain), at 3498-3515; Tr. (Sparks), at 2756-2786; and Tr. (Lopez), Dkt. 580-1, at 1-185 (word search does not result in reference to Gawrys on August 27, 1988). Gawrys has testified that other than visiting the hospital (around September 10, 1988), he was not involved in the investigation until September 15, 1988. Tr. (Gawrys), at 1696:17-1698:16; 1721:15-17; 1732:11-12; 1772:4-7; 1772:23-24; 1779:17-20; 1812: 1-2; 1883:3-9; 1887:7-10; 1889:18-23; 1997: 15-

---

[1] Plaintiff also alleged that the September 16, 1988 report violated his due process rights, but the Court granted summary judgment on that claim because the report was disclosed to Plaintiff's criminal defense counsel (not suppressed), and the allegedly fabricated report and information therein was not used at trial (no causation). Dkt. 373, pg. 50; Dkt. 528, pg. 1-3.

5

22; 1998:24-1999:2; 2006:9-15. Plaintiff's lack of any contradictory or impeaching evidence of Gawrys, confirms that Gawrys was not involved in this case on August 27, 1988, so he could not have violated Plaintiff's due process rights on that day.

Similarly, there was no evidence presented that Defendant Mingey was involved in the Valentin murder investigation in August 1988. No witness who testified about events of August 27, 1988 even mentioned him. Tr. (Guzman), at 2681-2716; Tr. (Noon), at 2717-2756; Tr. (Machain), at 3498-3515; Tr. (Sparks), at 2756-2786; and Tr. Lopez, Dkt. 580-1, at 1-185 (word search does not result in reference to Mingey on August 27, 1988). Mingey's name is not found on any documentation from August 1988, nor is he referenced performing any acts or approving any reports prior to September 1988. DX 1.9; DX 1.16; DX 1.24; DX 1.25; PX 12; PX 15; PX 16; and PX 19D. Plaintiff's improper questioning of Mingey about his involvement at that time (Tr. (Mingey), at 2509:5-2510:3), and Mingey's Fifth Amendment invocation, is insufficient to sustain Plaintiff's burden of proof absent corroborating evidence. *LaSalle Bank Lake View,* 54 F.3d at 390. The complete lack of corroborating evidence, and the corresponding lack of a proper adverse inference, demonstrates that Mingey was not involved in the investigation on August 27, 1988, and could not have violated Plaintiff's due process rights.[2]

For similar reasons, there was insufficient evidence at trial that Guevara was present for the August 27, 1988 identification. No witness who was asked about events of August 27, 1988 testified unequivocally that Guevara was there. Tr. (Guzman), at 2681-2716; Tr. (Noon), at 2717-2756; Tr. (Machain), at 3498-3515; Tr. (Sparks), at 2756-2786; and Tr. Lopez, Dkt. 580-1, at 1-185. To be sure, Joseph Sparks acknowledged that at his deposition he believed Guevara

---

[2]Testimony about Mingey generally being a "hands on supervisor" is not sufficient to support his involvement on August 27, 1988 without improper speculation because there is no evidence in this case that he was involved on that day. *See, Colbert*, 851 F.3d at 657 (personal involvement required for individual liability under Section 1983).

6

was present on August 27, 1988, but he explained at trial that his memory was better and that he was mistaken in his deposition. Sparks testified:

> Q. Now, in the room with the boy, there had to be a police officer, right?
>
> A. Correct.
>
> Q. And your memory is that that police officer was Rey Guevara, correct?
>
> A. At the time I thought it was.
>
> \*\*\*
>
> Q. So let me ask it this way, you're not claiming to have a real certain memory about exactly who was in the room, right?
>
> A. Correct.
>
> Q. The only thing you remember was Guevara was in the room?
>
> A. At the time I thought he was. At the time of my deposition.
>
> Q. All right. Has your memory gotten better since your deposition?
>
> A. Yes.
>
> \*\*\*
>
> Q. All right. But now you remember that Guevara wasn't in the room?
>
> A. I believe he wasn't.

Tr. (Sparks), at 2768:17-2770:5. Plaintiff's minimal impeachment of Sparks on this point is insufficient to support a verdict against Guevara based on his alleged presence on August 27.[3]

Importantly, there are no documents from August 27 bearing Guevara's name, nor any that refer to Guevara's involvement in the identification on August 27, again demonstrating he was not present. DX 1.9; DX 1.16; DX 1.24; DX 1.25; PX 12; PX 15; PX 16; and PX 19D. Further, and even more significantly, the consistent testimony of disinterested third party

---

[3] In closing, Plaintiff advised the jury not to rely on Sparks because he wore sunglasses, though Plaintiff then relied on Sparks's deposition testimony while completely ignoring his trial testimony. Tr., at 4157.

Orlando Lopez also supports Defendant Officers' Rule 50(b) motion; in reviewing a Rule 50 motion, the Court should give credence to the evidence favoring the non-movant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000). Here, Lopez confirms unequivocally that he identified Plaintiff on the night of the shooting (August 27, 1988)[4], and also unequivocally confirmed he was left alone to look at the gang books without interference from the police and that he picked out Plaintiff:

> Q. And were you talking to a police officer as you were looking at the books?
>
> A. They let me be and let me – just take your time. Just look at the pictures.
>
> Q. How long did you look at pictures for?
>
> A. Remember I was a child. I can't really tell you an hour or two. I cannot tell you that. I just remember looking through some and picking out Jacques Rivera.
>
> Q. Can you estimate how many pictures you looked at?
>
> A. If you want me to give you a number, I cannot give you a number.
>
> Q. Can you ballpark it for me?
>
> A. Probably -- let's just say I went through a book. I don't want to assume it. I don't want to say that I did how many. I don't want to do that. I want to be clear to what I said. I don't want to add on or take away. I don't want to do that. I want to stick to what I remember, and that's what I remember just going through a book of pictures of Latin Kings and once I came to that -- when I saw the individual, which was Jacques Rivera, I pointed him out and they asked me are you sure? Are you sure? And my response was yes, I am. Nobody pressured me to doing anything. I just went based on what I felt and what I saw and the resemblance of Jacques Rivera.

---

[4] Tr. (Lopez 1990 Cr. Trial), at 3933:25-3935:16: Tr. (Lopez 2011 PC), at 1648:24-1650:20, 1664:3-1665:18; Tr. Lopez, Dkt. 580-1, at 60:6-61:10.

Tr. Lopez, Dkt. 580-1, at72:05-73:9. And nowhere does Lopez ever testify that Guevara was present at the August 27 identification. This lack of evidence cannot support an adverse inference against Guevara on this point.

Additionally, there is no evidence to support the speculation that prior to Lopez's August 27 identification of Plaintiff, Guevara ordered Plaintiff's rap sheet on August 27, 1988 (*see* DX 1.25) to somehow "steer" Lopez, as Plaintiff's counsel repeatedly argued. Tr., *passim*. Not a single witness provided any evidence that Guevara ordered the rap sheet. Tr. (Machain), at 3529:20-3530:7 (somebody requested the rap sheet but does not know who). There is no documentation connecting Guevara's name to the ordering of Plaintiff's rap sheet, and Guevara's invocation of the Fifth Amendment alone (Tr. (Guevara), at 1278:8-13) is not sufficient evidence upon which liability can be based. *Baxter*, 425 U.S. at 318. No negative inference can be made without some corroborating evidence – there is none.

A "mere scintilla" of evidence is not sufficient to sustain a verdict. *Massey*, 226 F.3d at 924. Speculation that Guevara was involved, based on alleged other bad acts, is insufficient to save the verdict. Yet, all Plaintiff has to support the verdict against Guevara is unsupported speculation and inference. Accordingly, Guevara could not have violated Plaintiff's Due Process rights on August 27, 1988 because there is insufficient evidence that he was involved in the investigation on that date.

B. <u>The jury's verdict for McLaughlin requires judgment for the Defendant officers on any claim involving an alleged "first lineup."</u>

Plaintiff's second alleged factual situation supporting his due process claim was that there was a "first lineup" on August 31, 1988. Plaintiff alleged that Defendant Officers conducted a live lineup on August 31, 1988 and suppressed the results because Lopez did not pick out Plaintiff. Defendant Officers and McLaughlin argued there that was no live lineup on August 31,

9

1988, or accepting there was, that (1) Lopez testified he selected Plaintiff in every identification process and (2) Plaintiff and his criminal defense attorney were aware of the alleged "first lineup," so it was neither exculpatory nor suppressed. McLaughlin was inextricably intertwined in this claimed event, as Plaintiff alleged that she had conducted the lineup. Tr. (McLaughlin), at 625:16-626:18; 944:25-945:4; 962:17-963:2.[5] Her name was on the Supplementary Report that detailed the attempted identification procedures and omitted any reference to a live lineup. DX 1.13 (9/1/88 Supp. Rpt. Wron. 34-36). However, the jury found McLaughlin was not liable for any due process violation, which necessarily means the jury did not believe there was a first lineup, or alternatively that the lineup was not suppressed or exculpatory. Based on Plaintiff's allegations about the "first lineup," however, there is no rational basis which would explain how McLaughlin could be found not liable for the lineup and Defendant Officers could be liable for it. Accordingly, the jury's verdict for McLaughlin reveals that there was no constitutional violation related to an alleged first lineup on August 31, 1988. McLaughlin's favorable verdict necessitates that Gawrys, Guevara and Mingey are entitled to judgment as a matter of law on Plaintiff's due process claim premised on an August 31, 1988 lineup.

C. Plaintiff's evidence about the "recant" is insufficient to support the verdict.

The only evidence adduced at trial about Lopez's alleged "recant" was from Lopez's testimony. Lopez testified that on September 15, 1988 he told a white-haired lady and a cop something like "wrong guy", which Plaintiff argued was a recant. Lopez explained that the only people present for the "recant" were a "white haired lady" and a "cop" who was eventually described as Hispanic, bespectacled, with an afro and mustache. Gawrys specifically denied being present for any such recant, and there is no contrary evidence. Similarly, there is no direct

---

[5] There was not even a scintilla of evidence that Gawrys or Mingey was involved in the investigation, much less part of an alleged "first lineup," on August 31, 1988.

10

evidence that Mingey was present for a recant. Further, there is no evidence beyond pure speculation and improper inference that anyone present for the "recant" advised Mingey or Gawrys about it. Thus, neither Mingey nor Gawrys could have violated Plaintiff's rights with regard to the "recant."

As for Guevara, there was inferential evidence the jury could believe that he was the "cop" Lopez testified was present during the "recant." At trial, Plaintiff argued that Guevara violated Plaintiff's rights by suppressing the "recant" of Lopez, so Plaintiff's related due process claim hinges on Guevara's alleged suppression.

Lopez explained the context of his "recant":

Q. Could you please give me your best recollection, and I know it's a long time ago, that you were young at the time and so forth, your best recollection of what you said in the presence of the gentleman and the lady?

A. That's not the person. The wrong guy, wrong guy, wrong guy. And that was pretty much it.

Q. Did you tell them how you had come to realize that it was the wrong guy?

A. I didn't tell them. I just said it was the wrong guy, wrong guy. And now this is assumptions. This is not -- I know we're here about facts. I'm just saying -- I just said it was the wrong guy, wrong guy. I never told them it was an Imperial Gangster. I never told them none of that stuff.

Q. When you said it's the wrong guy, it's the wrong guy, what did they say to you?

A. They were assuring me don't be --you know, they didn't force me either way. They were just assuring me don't be afraid. You know, everything is going to be just fine. They assumed that I was afraid and I wanted to change my story, because I was afraid, but that was not the case. You know, they're not telling me, you know -- they're not telling me that no, you have to stick to your story. They never told me that. They just seen what I told them, and they were just assuring me you're going to be fine, nothing is going to happen to you, and that's it.

Tr. (Lopez), Dkt. 580-1, at 96:8-97:15.

Lopez's testimony was clear and unequivocal that neither the white haired lady nor the cop understood the import of what Lopez was trying to say. Plaintiff adduced no contrary evidence. *See Filopovich v. K & R Express Systems, Inc.*, 391 F. 3d 859, 865 (7th Cir. 2004) (reversing verdict for plaintiff because the plaintiff's story was a bald assertion unsupported by facts.). Here, Plaintiff only can rely on Guevara's invocation of the Fifth Amendment to create an improper adverse inference; accordingly, there is a complete void of evidence supporting that Guevara knowingly suppressed evidence he knew was exculpatory.

To prove a Section 1983 due process claim under *Brady*, the plaintiff must establish the defendant police officer deliberately withheld exculpatory evidence. *Cairel v. Alderden*, 821 F.3d 823, 832 n. 2 (7th Cir. 2016) (acknowledging level of culpability without deciding); *Newsome v. McCabe*, 260 F.3d 824, 825 (7th Cir. 2001) (petition for rehearing); <u>Seventh Circuit Civil Pattern Jury Instruction</u> 7.14 ("knowingly"). At trial, Plaintiff failed to present sufficient evidence to prove that Guevara acted knowingly or deliberately with regard to the alleged suppression of the "recant." Because Guevara did not understand the "recant," as Lopez has testified without contradiction, Guevara could not have knowingly suppressed exculpatory evidence - He did not know it was exculpatory. Plaintiff failed to present any additional evidence to support his assertion that Guevara deliberately concealed Lopez's "recant."

Plaintiff's reliance on Guevara's invocation of the Fifth Amendment without any corroborating evidence of deliberately or knowingly suppressing evidence must fail. *Baxter*, 425 U.S. at 318. Plaintiff lacked evidence "from which the jury could have reasonably reached a verdict without speculation or drawing unreasonable inferences which conflict with the undisputed facts." *Selle v. Gibb*, 741 F.2d 896, 900 (7th Cir. 1984). It is undisputed that neither the white haired lady nor the cop understood what Lopez was trying to say, so neither of them

could have deliberately violated Plaintiff's rights. Judgment as a matter of law is proper for Guevara on the due process claim based on the "recant."

## II.    Plaintiff's Federal Conspiracy and Failure to Intervene Claims Fail Because Plaintiff Has Not Proved a Constitutional Violation

The law is clear that to establish a §1983 federal conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) **overt acts in furtherance actually deprived him of those rights**." *Beaman v. Freesmeyer*, 776 F.3d 500, 510-11 (7th Cir. 2015) (emphasis added). "Conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Thus, the failure to prove a substantive constitutional injury precludes relief on a conspiracy claim. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). As set forth in Section I above, Plaintiff's evidence of a constitutional violation was insufficient so he cannot meet his burden of proof for his conspiracy claim.

Plaintiff's failure to intervene claim fails for the same reason. The law is clear that to establish a §1983 failure to intervene claim, the plaintiff must show the defendant officer was present, failed to stop another officer from **violating the constitutional rights** of the plaintiff, and had a realistic opportunity to prevent the violation of the plaintiff's rights. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir.2005) (emphasis added). Absent proof of an underlying constitutional violation, there cannot be liability for a failure to intervene. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001). As set forth in Section I above, Plaintiff's evidence of a constitutional violation was insufficient so he cannot meet his burden of proof for his failure to intervene claim.

**III.     Plaintiff's IIED Claim Fails For the Same Reasons as His Constitutional Claims**

To prove an IIED claim under Illinois law, a plaintiff must put forth evidence establishing the following: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir.2010). Here, Plaintiff's IIED claim was based on the same alleged conduct that allegedly violated his constitutional rights; and because those claims fail, so does his IIED claim. Accordingly, Plaintiff cannot show that Guevara engaged in "extreme and outrageous" behavior in regards to Plaintiff. *Cooney*, 746 F.Supp.2d at 977-78. Thus, judgment should be entered in Guevara's favor on Plaintiff's IIED claim.

**IV.     Guevara is entitled to qualified immunity for the "recant"**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012). To defeat qualified immunity, a plaintiff must show that: (1) "the defendant's conduct violated a constitutional right," and (2) the "particular constitutional right was clearly established at the time of the alleged violation." *Volkman v. Ryker*, 736 F.3d 1084, 1091 (7th Cir. 2013). "[T]he plaintiff must show that the right is clearly established such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). In this case, qualified immunity is appropriate for Guevara on the "recant" claim against him because there was no constitutional violation and the law was not clearly established.

The only evidence of the circumstances surrounding the "recant" was provided by Lopez's testimony. He explained that the white-haired lady and cop did not understand what he was attempting to tell them and that they thought he was scared to identify Plaintiff. Plaintiff cannot show it was clearly established that police violated *Brady* by failing to disclose "every tidbit that with the benefit of hindsight (and the context of other evidence) could be said to assist defendants." *Newsome v. James*, 260 F.3d 824, 825 (7th Cir. 2001). This is especially true when police do not deliberately withhold or conceal exculpatory evidence because they fail to appreciate the ramifications of the evidence. *Newsome v. James*, 2001 WL 1242889 at *4 (N.D. Ill. Oct. 17, 2001). There was no evidence that either the white haired lady or the cop appreciated what Lopez, himself, explained was a confusing attempt to recant. Nor did Lopez make any subsequent effort to recant despite ample opportunities when talking to Assistant State's Attorneys Julie Rosner, her supervisor Norma Reyes, and Larry Victorson. Tr. (Rosner), at 2663:16-2664:8; Tr. (Victorson), at 3098:2-22. No clearly established case law put Guevara on notice that a perceived scared witness who makes confusing statements about a "wrong guy" on a single occasion was recanting, which would violate the Constitution if not disclosed. *White v. Pauley*, 580 U.S. \_\_\_\_, 137 S.Ct. 548, 552, (2017) (clearly established law must be "particularized" to the facts of the case). Thus, Guevara is entitled to qualified immunity for the alleged suppression of the "recant."

## CONCLUSION

The evidence specific to Plaintiff's constitutional claims does not support those claims. Because Plaintiff's evidence is insufficient to support his constitutional claims, his intentional infliction of emotional distress claim fails in addition to his derivative claims of federal

conspiracy and failure to intervene. Accordingly, Defendant Officers are entitled to judgment as a matter of law.

Dated: August 31, 2018                                      Respectfully submitted,


/s/Thomas M. Leinenweber                                    /s/ Jeffrey N. Given
THOMAS M. LEINENWEBER                                       JEFFREY N. GIVEN
*One of the Attorneys for Reynaldo Guevara*                 *One of the Attorneys for Individual Defendants*

Thomas M. Leinenweber                                       James G. Sotos
James V. Daffada                                            Jeffrey N. Given
Kevin E. Zibolski                                           Caroline P. Golden
Leinenweber Baroni & Daffada, LLC                           Jeffrey R. Kivetz
120 N. LaSalle Street, Suite 2000                           Joseph M. Polick
Chicago, IL 60602                                           David A. Brueggen
Tel:(312)663-3003                                           The Sotos Law Firm, P.C.
thomas@ilesq.com                                            550 E. Devon Avenue, Suite 150
jim@ilesq.com                                               Itasca, IL 60143
kevin@ilesq.com                                             Tel: (630)735-3300
                                                            jgiven@jsotoslaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on August 31, 2018, I electronically filed the foregoing City **Defendants Officers' Rule 50(b) Renewed Motion for Judgment as a Matter of Law** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants below.

| **Attorneys for Plaintiff** | **Attorneys for City of Chicago** |
|---|---|
| Arthur R. Loevy | Eileen E. Rosen |
| Jonathan I. Loevy | Stacy A. Benjamin |
| Elizabeth N. Mazur | Catherine M. Barber |
| Russel Ainsworth | Theresa B. Carney |
| Michael I. Kanovitz | Rock Fusco & Connelly, LLC |
| Steven E. Art | 321 N. Clark Street, Suite 2200 |
| Anad Swaminathan | Chicago, IL 60654 |
| Rachel Brady | (312)494-1000 |
| Sean C. Starr | (312)494-1001(Fax) |
| 311 N. Aberdeen | erosen@rfclaw.com |
| Chicago, IL 60607 | sbenjamin@rfclaw.com |
| (312)243-5900 | cbarber@rfclaw.com |
| (312)243-5902(Fax) | tcarney@rfclaw.com |
| loevylaw@loevy.com | |
| jon@loevy.com | |
| Elizabethm@loevy.com | |
| russell@loevy.com | **Attorneys for Reynaldo Guevara** |
| mike@loevy.com | Thomas M. Leinenweber |
| steve@loevy.com | James V. Daffada |
| annad@loevy.com | Kevin E. Zibolski |
| Brady@loevy.com | Leinenweber Baroni & Daffada, LLC |
| sean@loevy.com | 120 N. LaSalle Street, Suite 200 |
| | (312)663-3003 |
| J. Samuel Tenenbaum | thomas@ilesq.com |
| Bluhm Legal Clinic | jim@ilesq.com |
| 375 East Chicago Avenue | kevin@ilesq.com |
| Bluhm Legal Clinic | |
| 375 East Chicago Avenue | |
| Chicago, IL 60611 | |
| (312)503-4808 | |
| s-tenenbaul@law.northwestern.edu | |
| | |
| Locke E. Bowman, III | |
| Alexa Van Brunt | |
| Roderick MacArthur Justice Center | |
| Northwestern University School of Law | |
| 375 East Chicago Avenue | |
| Chicago, IL 60611 | |
| (312)503-0844 | |
| (312)503-1272 (fax) | |
| l-bowman@law.northwestern.edu | |
| a-vanbrunt@law.northwestern.edu | /s/ Jeffrey N. Given |
| | JEFFREY N. GIVEN, Attorney No. 6184989 |
| | *One of the Attorneys for Individual Defendant*s |