**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-04428 |
| | ) | |
| v. | ) | |
| | ) | The Hon. Joan B. Gottschall |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**PLAINTIFF'S PETITION FOR FEES OF THE MACARTHUR
<u>JUSTICE CENTER ATTORNEYS AND FOR AN AWARD OF COSTS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.     PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS FEES FOR THE WORK OF THE MJC ATTORNEYS BASED ON HOURLY RATES APPROPRIATE TO THOSE ATTORNEYS' SKILL AND EXPERIENCE. .............................................................. 3

      A.   The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates. ............................ 4

      B.   Hourly Rates Awarded to Other Attorneys in the Community Support Plaintiff's Attorneys' Claimed Hourly Rates. ......................................................................... 6

      C.   The *Laffey Matrix* Also Supports Plaintiff's Claimed Hourly Rates. ............................ 8

      D.   Plaintiff's MJC Attorneys' Qualifications and Accomplishments Justify Rates at the Upper End of the Spectrum of Hourly Rates. ........................................................ 9

      E.   Plaintiff's Lodestar Is Amply Justified, and Plaintiff's Lawyers Ask for Nothing More or Less ......................................................................................................... 16

   II.    PLAINTIFF'S CLAIMED COSTS ARE REASONABLE. ............................................ 17

CONCLUSION .................................................................................................................. 19

ii

## TABLE OF AUTHORITIES

**Cases**

*Abu-Jamal v. Kane*, 105 F. Supp. 3d 448 (M.D. Pa. 2015) ........................................... 13

*Abu-Jamal v. Kane*, 96 F. Supp. 3d 447 (M.D. Pa. 2015) ............................................. 13

*Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072 (N.D. Ill. May 23, 2018)........................ 18

*Beaman v. Freesmeyer,* __ N.E.3d __, 2019 IL 122654 (February 7, 2019)................................ 13

*Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854 (7th Cir. 2005)......................................... 18

*Corcoran v. City of Chicago*, 2016 WL 5445694 (N.D. Ill. Sep. 15, 2015)................................. 18

*Degorski v. Wilson*, 2014 WL 6704561 (N.D. Ill. Nov. 26, 2014)................................................. 6

*Delgado v. Mak*, 2009 WL 211862 (N.D. Ill. Jan. 29, 2009) ........................................................ 7

*Downes v. Volkswagen of America*, 41 F.3d 1132 (7th Cir. 1994)................................................. 17

*Farrar v. Hobby*, 506 U.S. 103 (1992) ....................................................................................... 4

Fields v. City of Chicago, No. 10 C 1168, 2018 WL 253716 (N.D. Ill. 2018) .................. 6, 18, 19

*Flanagan v. Cook County*, 2009 WL 3156716 (N.D. Ill. Sep. 28, 2009) ...................................... 7

*Foltin v. Ugarte*, 09 C 5237 (N.D. Ill, 2012)............................................................................. 7

*Gautreaux v. Chicago Housing Authority*, 491 F.3d 649 (7th Cir. 2007) ...................................... 3

*Handott v. City of Chicago*, 2010 WL 1499473 (N.D. Ill. Apr. 12, 2010)..................................... 8

*Harney v. City of Chicago*, 702 F.3d 916 (7th Cir. 2011) ............................................................ 18

*Harris N.A. v. Acadia Investments L.C.*, 2012 WL 1681985 (N.D. Ill. May 14, 2012) ................ 8

*Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984) ........................................................ 18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................ 4, 16

*Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir. 2009) ................. 7

*Jimenez v. City of Chicago,* 2012 WL 5512266 (N.D. Ill. November 14, 2012) ......................... 12

*King v. State Bd. of Elections*, 2003 WL 22019357 (N.D. Ill. Aug. 26, 2003) ........................... 18

*Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014) ..................................................................... 6, 8

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931 (N.D. Ill. 2009) ........... 8

*Prison Legal News v. DeWitt*, No. 2:10-cv-2594 (D. S.C.) .......................................................... 13

*Prison Legal News v. Schwarzenegger*, No. 07 C 2058 (N.D. Cal.) ............................................ 7

*Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ...................... 8

*Riverside v. Rivera*, 447 U.S. 561 (1986) ................................................................................... 5

*Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679

   (N.D. Ill. Sep. 13, 2016) ......................................................................................................... 8

*Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994) ............................................ 4

*Trammel v. BASF Corp.*, 2002 WL 59114 (N.D. Ill. Jan. 14, 2002) ........................................... 18

*United States ex rel. Green v. Peters*, 917 F. Supp. 1238 (N.D. Ill. 1996).................................. 10

*Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F.Supp.2d 1031 (N.D. Ill. 2011)......... 8

**Other Authorities**

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, https://www.macarthurjustice.org ....... 5

*Legal Fees Cross New Mark: $1500 an Hour*, THE WALL STREET JOURNAL,

   http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (last

   visited Oct. 31, 2016) ............................................................................................................. 8

Plaintiff Jacques Rivera, by his undersigned attorneys, respectfully petitions pursuant to 42 U.S.C. § 1988 for an award of attorneys' fees to the attorneys of the Roderick and Solange MacArthur Justice Center ("MJC") and for his costs of suit.

## INTRODUCTION

In the aftermath of the substantial jury verdict in Plaintiff's favor—$17,000,000.00 in compensatory damages and $175,000.00 total in punitive damages—the parties have attempted, in accordance with the procedures set out in Local Rule 54.3, to resolve the amounts owed to Plaintiff's counsel for fees and costs. To a substantial degree, the process worked. The fees of Loevy & Loevy have been resolved, with the defendants' agreement to pay that firm's fees in the total amount of $5,300,000.00.

What remains in dispute are the proper fee award for the work of MJC lawyers Locke Bowman, David Shapiro and Alexa Van Brunt and the proper amount of total costs for Plaintiff. The defendants do not dispute the reasonableness of the hours spent by the MJC lawyers on this case; they do contest the MJC attorneys' proposed hourly rates. As the Joint Fee Statement (Exhibit A hereto) reflects, the magnitude of this dispute is about $210,000: Plaintiff claims attorneys' fees for the MJC lawyers in the total amount of $587,940; the City is willing to pay no more than $379,475. The parties are about $127,000 apart with respect to costs, with Plaintiff seeking $154,376.25 in costs and the City agreeing to pay no more than $27,048.78.

In the context of the City's expenditures for fees and costs and the attorneys' fees of Plaintiff already agreed to, this dispute is trivial. The City's Local Rule 54.3(d)(5) disclosure (Exhibit B hereto) reveals that the City has paid its attorneys and the attorneys for the individual police officer defendants a total of $5,257,815.00 in fees. Combining this figure with the $5,300,000.00 the City has agreed to pay to the Loevy firm, the attorneys' fees for which the

1

City has assumed responsibility in this case already total close to $10.6 million. The approximately $210,000.00 in disputed fees is less than 2% of that amount. Indeed, litigating this disputed fee amount will likely cost the City a substantial portion of the disputed amount.

The City's disclosure also reports that the City has paid a total of $412,019.61 in expenses invoiced by counsel for the City and for the individual defendants—more than two and one half times the $154,376.25 in costs being sought by Plaintiff's counsel. During the Local Rule 54.3 process, Plaintiff carefully examined his own claimed costs and the law, and he worked in good faith to reduce those costs dramatically. Conversely, Defendants simply objected to every one of Plaintiff's litigation costs, in the vast majority of instances without articulating what precisely was objectionable about the cost being claimed.

This petition is necessitated by the City's unjustified refusal to agree to hourly rates for the MJC attorneys that are commensurate with those for civil rights attorneys of their skill and experience, and the City's equally unjustified refusal to agree to pay costs that were obviously reasonable in the course of this litigation. After spending nearly $6,000,000 to defend a case that resulted in one of the largest wrongful conviction verdicts in U.S. history, and after agreeing that more than $5,000,000 of Plaintiff's attorneys' fees are uncontestable, the City's decision to spend additional taxpayer dollars disputing approximately $300,000 of fees and costs is unfortunate. This Court should award Plaintiff's lawyers from the MJC $587,940 in attorneys' fees, as well as Plaintiff's claimed costs of $154,376.25.

## ARGUMENT

**I.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS FEES FOR THE WORK OF THE MJC ATTORNEYS BASED ON HOURLY RATES APPROPRIATE TO THOSE ATTORNEYS' SKILL AND EXPERIENCE.**

Ample evidence and authority support the reasonableness of the hourly rates that Plaintiff's MJC attorneys have requested in this case. A reasonable hourly rate is the rate that lawyers of similar ability and experience in the community charge for their work. *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659-60 (7th Cir. 2007). The burden of proving the market rate is on Plaintiff, but "once an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* The parties' positions are as follows:

| Attorney | Plaintiff's Proposed Hourly Rates | Respondents' Proposed Hourly Rates |
|---|---|---|
| Locke E. Bowman, University of Chicago, 1982 | $600.00 | $400.00 |
| David M. Shapiro, Yale, 2005 | $400.00 | $250.00 |
| Alexa Van Brunt, Stanford, 2009 | $325.00 | $175.00 |

The time requested is for the three MJC lawyers who worked on this case at various phases, as reflected in their time records. Mr. Bowman worked on this case throughout the discovery period and participated extensively in the trial. *See* Exhibit C (Bowman time records). Mr. Shapiro and Ms. Van Brunt handled significant drafting and discovery responsibilities near the beginning of the litigation. *See* Exhibit D (Shapiro time records); Exhibit E (Van Brunt time records). MJC does not seek recovery for the time spent by paralegal staff, who devoted numerous hours to this litigation under the direction of the MJC lawyers. Nor does MJC seek recovery for the time spent by law students working under MJC attorney supervision pursuant to Ill. S. Ct. Rule 711.[1]

---

[1] MJC is part of the clinical program at Northwestern Pritzker School of Law and MJC law students devoted numerous hours to legal and factual research during the life of this case.

MJC is a public interest law firm and all of its attorneys are salaried. Fee awards to MJC do not enrich the individual attorneys. Instead, the fees become part of MJC's general funds and are used to further the public interest work of the organization.

### A.    The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates.

The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), instructed lower courts to consider a variety of factors in deciding the reasonableness of rates:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3. In this case, the salient *Hensley* factors demonstrate ample support for Plaintiff's attorneys' hourly rates.

By far "'the most critical factor'" in determining the reasonableness of a fee award "'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436)); *see also Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994) ("The degree of the plaintiff's success in relation to his claims is the most critical factor in determining the amount of attorney's fees awarded.").

By any measure, Plaintiff's counsel attained an extraordinary result in this case. In collaboration with the lawyers from the Loevy firm, Plaintiff's MJC lawyers achieved a jury verdict of $17 million plus punitive damages for a man who spent more than 20 years imprisoned for a crime he did not commit. A number of such cases have been litigated in this district. A not-insignificant percentage is won by the defense; many settle for substantially smaller amounts. To the knowledge of Plaintiff's undersigned counsel, there are only two jury verdicts in wrongful

conviction cases in this District that exceed the verdict in this case.[2] Moreover, in this case, Plaintiff's attorneys proved that the City was liable as a result of its official policies, a feat that is exceptionally rare in this District and in cases around the country.

*Hensley* also requires consideration of "the experience, reputation, and ability of the attorneys." 461 U.S. at 430 n.3. Plaintiff's MJC attorneys respectfully submit that their credentials are on par with attorneys practicing at the most renowned firms in Chicago. *See* Exhibit F (Bowman affidavit); Exhibit G (Shapiro affidavit); and Exhibit H (Van Brunt affidavit). If they worked at large, commercial firms, Plaintiff's MJC lawyers would command top-tier market rates, far exceeding the rates requested in this petition. Plaintiff's attorneys should not face reduced compensation for taking a different path than their peers at those firms and pursuing careers in public interest litigation. They strive to provide their clients with the same premium legal services enjoyed by the clients of the world's most prestigious firms. *See Riverside v. Rivera*, 447 U.S. 561, 578 (1986) (§1988 is designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"). Moreover, few civil rights organizations in the country can compare with MJC's experience and success in advancing through litigation the rights of persons who have been victimized or abused by the criminal justice system. *See* https://www.macarthurjustice.org. The qualifications of each of Plaintiff's MJC attorneys are discussed in more detail below, but their "experience, reputation and ability" certainly support the proposed hourly rates.

Another *Hensley* factor is the opportunity cost associated with representation. Plaintiff's MJC attorneys in this case devoted many hours and advanced tens of thousands of dollars of

---

[2] One of those two cases, *Jimenez v. City of Chicago,* No. 09-cv-8081 (N.D. Ill.), which resulted in a $25 million verdict, was also a collaboration between the Loevy firm and MJC.

expenses, all with the risk that nothing would be recovered. In doing so, Plaintiff's MJC counsel were precluded from devoting time and resources to other cases. This was not an easy case to develop or to win, particularly given the talented opposing counsel, the vigor with which it was defended, and experienced defense counsel's evident belief that they would prevail at trial. The case was therefore "undesirable" in the sense that it was risky, difficult, and a drain on time and resources. Plaintiff's attorneys' willingness to accept the risk of the case is further support for the proposed rates.

### B. Hourly Rates Awarded to Other Attorneys in the Community Support Plaintiff's Attorneys' Claimed Hourly Rates.

The proposed rates of Plaintiff's attorneys are on par with fee awards in other cases—a fact this court may consider in setting the appropriate hourly rate here. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (courts may consider "rates awarded to similarly experienced Chicago attorneys in other civil-rights cases in the district" to determine reasonable rates). Attorneys in this and other jurisdictions have sought and have been awarded hourly rates that exceed or are directly in line with Plaintiff's proposed hourly rates.

In *Montanez*, the Seventh Circuit approved a lower court's 2013 award of $385 per hour to an attorney with nine years' experience. 755 F.3d 547. That rate, awarded five years ago, is $60/hour more than the $325/hour that Ms. Van Brunt—an attorney with ten years' experience—requests here. It is also only $15/hour less than the $400/hour requested by Mr. Shapiro—an attorney with 14 years' experience. Similarly, 15 years ago, in 2004, Judge Dow awarded $450/hour to an attorney with 15 years' experience in *Degorski v. Wilson*, 2014 WL 6704561, at *6-7 (N.D. Ill. Nov. 26, 2014). Last year, in *Fields v. City of Chicago*, Judge Kennelly awarded attorneys with 11 years' experience $360/hour and attorneys with eight years' experience $325/hour. No. 10 C 1168, 2018 WL 253716, at *3 (N.D. Ill. 2018). Adjusted for their

experience and inflation, these past awards amply support Plaintiff's attorneys' requested rates here, which are considerably more modest.

A decade ago, in 2009, Judge Dow awarded one of the more experienced members of the civil rights bar in Chicago, Flint Taylor, an hourly rate of $525. *Delgado v. Mak*, 2009 WL 211862 (N.D. Ill. Jan. 29, 2009).[3] At that time, Mr. Taylor had practiced the same number of years that Mr. Bowman has practiced today, and adjusted for inflation, Mr. Taylor's awarded hourly rate in *Delgado* would be approximately $622/hour today. Experienced civil rights attorneys have long received similar awards. *See Foltin v. Ugarte*, 09 C 5237 (N.D. Ill.), Doc. Nos. 144 & 165 (2012) (awarding civil rights attorney $535 per hour);[4] *Flanagan v. Cook County*, 2009 WL 3156716, *9 (N.D. Ill. Sep. 28, 2009) (approving a rate of $500 per hour in an employment case). At the beginning of 2018, Judge Kennelly awarded Jon Loevy, an attorney with 10 years' less experience than Mr. Bowman, $550/hour. These rates support the $600/hour requested by Mr. Bowman.

This Court may also consider reasonable rates in markets outside of Chicago. *See Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (when "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country). Hourly rates for top-end work in civil rights cases exceed the rates that Plaintiff's MJC attorneys request here. For example, in *Prison Legal News v. Schwarzenegger*, No. 07 C 2058 (N.D. Cal.), a California district court in 2008 approved hourly rates of $740 for a 1962 graduate (with 40+ years' experience), $370 for a 2001

---

[3] Judge Dow's opinion in *Delgado* approves Mr. Taylor's rate without stating what that rate is. *Id.* Therefore, a copy of the Joint Fee Statement in the *Delgado* case is attached to this petition as Exhibit I.
[4] The relevant docket entries in *Foltin* are attached to this petition as Exhibit J.

graduate (with seven years' experience), $340 for a 2003 graduate (with five years' experience), and $170 for a paralegal. *See* Exhibit K (*PLN v. Schwarzenegger* Award).

Attorneys who have expertise and experience in other fields comparable to Plaintiff's attorneys' expertise and experience in civil rights routinely seek and are awarded rates higher than those requested here.[5] Hourly rates paid to attorneys practicing at larger litigation firms dwarf the rates that the MJC attorneys seek here, and they have for a long time.[6]

The rates awarded to other attorneys in the community provide support for Plaintiff's attorneys' requested rates. Plaintiff's attorneys are as experienced, expert, and successful as the attorneys in the above-cited cases, and they ask for rates, adjusted for inflation and level of experience, that are lower than those awarded in those cases.

### C.    The *Laffey Matrix* Also Supports Plaintiff's Claimed Hourly Rates.

The *Laffey* Matrix, created by the U.S. Attorney's Office for the District of Columbia as a guideline for reasonable rates in fee-shifting cases, also supports Plaintiff's claimed hourly rates. "The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees." *See* Exhibit M (USAO Attorney's Fees Matrix, 2015-2019, https://www.justice.gov/usao-dc/file/796471/download). Though the Seventh Circuit has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington, D.C.,"

---

[5] *See, e.g.*, *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016) (in class action, $800 per hour awarded to attorney with 23 years' experience, $595-630 to attorneys with 17 years' experience, $510 to an attorney with 12 years' experience, and $425 to an attorney with 10 years' experience); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F.Supp.2d 1031, 1037 (N.D. Ill. 2011) ($500-750 to multiple lawyers in ERISA case); *Harris N.A. v. Acadia Investments L.C.*, 2012 WL 1681985, at *2-3 (N.D. Ill. May 14, 2012) ($560-650 in a case involving default on a note); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ($500+ to counsel in copyright action)

[6] *See, e.g.*, *Legal Fees Cross New Mark: $1500 an Hour*, THE WALL STREET JOURNAL, http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (last visited Oct. 31, 2016) (noting that large law firm partners bill $600-$1,445 per hour); Exhibit L (Block Aff., *Dominguez v. Hendley*) (noting that 2007 hourly rates for Chicago attorneys ranged from $505-685 for partners with 15-43 years' experience and $440 for associates with 8 years' experience).

it "ha[s] left it to trial judges to exercise their discretion in evaluating its usefulness in any particular case." *Montanez*, 755 F.3d at 554. Courts in this District consider the *Laffey* Matrix as one among a number of factors in determining a reasonable hourly rate. *Handott v. City of Chicago*, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (collecting cases).

The following chart sets out Plaintiff's attorneys' years of experience and compares the hourly rate from the *Laffey* Matrix to the proposed hourly rates:

| Attorney | Graduation Year (Years of Experience) | *Laffey* Matrix Rate (2018-19) | Plaintiff's Proposed Rate | Difference |
|---|---|---|---|---|
| Locke Bowman | 1982 (37) | $613 | $600 | - $13/hr |
| David Shapiro | 2005 (14) | $491 | $400 | - $91/hr |
| Alexa Van Brunt | 2009 (10) | $417 | $325 | - $92/hr |

Plaintiff's lawyers' proposed rates are all below—most of them well below—the rates set out in the *Laffey* Matrix. The proposed hourly rates should be approved on that basis as well.

### D. Plaintiff's MJC Attorneys' Qualifications and Accomplishments Justify Rates at the Upper End of the Spectrum of Hourly Rates.

In addition to the evidence set out above, Plaintiff's MJC attorneys respectfully submit that their credentials, experience, and accomplishments justify the hourly rates that they seek.

#### 1. Locke Bowman (University of Chicago, 1982).

Locke Bowman's affidavit and attached *curriculum vitae* (Exhibit F hereto) reflect that he is a senior member of the plaintiffs' civil rights bar in Chicago with an impeccable reputation and a substantial record of success and achievement. For the past 26 plus years, Mr. Bowman has served as Executive Director of MJC, a nationally prominent public interest law firm specializing in impact litigation on behalf of vulnerable persons in the criminal justice system. He supervises and directs the work of 17 superbly skilled and accomplished litigators in five MJC offices around the country. Prior to assuming his current position, Bowman gained knowledge and

experience in civil rights and criminal justice issues in prior positions as an Assistant Corporation Counsel for the City of Chicago and thereafter as an associate and partner at Silets & Martin, a prominent Chicago criminal defense firm. For the past 13 years, Bowman has been a Clinical Professor of Law at Northwestern Pritzker School of Law. Bowman was admitted to practice in 1982—37 years ago.

Mr. Bowman has extensive experience and a track record of success in wrongful conviction civil rights matters like this one. Including the $17 million verdict in this case, Bowman has been lead or co-lead counsel in wrongful conviction cases that have resulted in a combined total of over $100 million in verdicts and settlements. The cases include the following, among others:

      a. *Jimenez v. City of Chicago*, (N.D. Ill.) ($25 million jury verdict) (with Jon Loevy and Stuart Chanen);

      b. *Kitchen v. Burge,* (N.D. Ill.) ($6.85 million settlement);

      c. *Willis v. Fish,* (Cir. Ct. of Cook County) ($2.6 million settlement);

      d. *Bell v. Cummings,* (Cir. Ct. of Cook County) ($1 million settlement);

      e. *Wilson v. O'Brien,* (N.D. Ill.) ($3.6 million settlement);

      f. *Tillman v. Burge,* (N.D. Ill.) ($5.375 million settlement);

      g. *Swift v. City of Chicago,* (Cir. Ct. of Cook County) ($12.375 million settlement);

      h. *Strong v. Tessmann*, (N.D. Ill.) ($9 million settlement);

      i. *Rivera v. Lake County,* (N.D. Ill.) ($20 million settlement).

Mr. Bowman has also handled a variety of cases seeking principally injunctive relief. The non-damages cases in which Bowman was lead or co-lead counsel have resulted in:

a. A major overhaul of the Chicago office of the State Appellate Defender. *United States ex rel. Green v. Peters*, 917 F. Supp. 1238 (N.D. Ill. 1996).

b. The implementation of a formal prohibition on Chicago Police holding witnesses against their will. *Ayala v. City of Chicago*, (N.D. Ill.).

c. An end to the conduct of Cook County bond hearings via closed circuit video. *Mason v. County of Cook,* (N.D. Ill.).

d. The appointment of a Special Prosecutor to investigate possible crimes committed by Chicago Police Commander Jon Burge. *In re Appointment of Special Prosecutor (Jon Burge cases)* (Cir. Ct. of Cook County).

e. The appointment of a Special Prosecutor to investigate the homicide of David Koschman by the nephew of former Chicago Mayor Richard M. Daley. *In re Appointment of Special Prosecutor (David Koschman homicide),* (Cir. Ct. of Cook County).

Mr. Bowman is the recipient of numerous awards and honors, including the Legal Legend Award of the Chicago Chapter of the American Constitution Society (2015), the First Defender Award of First Defense Legal Aid (2008), the Rev. Willie Baker Award from Citizens Alert (2005), and the Clarence Darrow Award from the Clarence Darrow Commemorative Committee (2003). Bowman was named an Illinois Superlawyer in 2005, 2006, 2007, 2008 and 2009. Additional awards and a more comprehensive account of Mr. Bowman's career are contained in the CV attached to Bowman's affidavit.

The City's only stated basis during Local Rule 54.3 negotiations for objecting to Bowman's requested hourly rate is that he purportedly "does not have extensive trial experience." *See* City's Local Rule 54.3(d) Letter Regarding Fees, Exhibit N. That contention is

belied not only by the lengthy list of significant trials on Bowman's CV (Exhibit F at 3-5) but also by the finding of Judge Kennelly, in connection with Mr. Bowman's fee petition in *Jimenez v. City of Chicago*, that Bowman "*has extensive experience litigating and trying significant civil rights litigation in this district.*" *Jimenez v. City of Chicago,* 2012 WL 5512266 at *4 (N.D. Ill. November 14, 2012) (emphasis added). In full, Judge Kennelly had this to say about Bowman's skill, experience and reputation:

> Bowman has practiced law for thirty years, initially as a law clerk for a district judge here, then with a large law firm for several years, eventually for a several years as an associate and then a partner with a white collar criminal defense "boutique" firm, and as legal director of the Center since 1992. He has extensive experience litigating and trying significant civil rights litigation in this district. He performed at a very high level of skill in the present case. Bowman's closing argument to the jury on the issue of damages was among the best closing arguments—in terms of both content and delivery—that the undersigned judge has observed in thirteen years on the bench. The evidence submitted by plaintiff establishes that Bowman's experience, ability, and reputation make him quite worthy of an hourly rate that places him at or near the top tier of plaintiff's civil rights litigators in Chicago.

*Id.* Seven years ago*, in Jimenez,* Judge Kennelly approved an hourly rate of $450 for Bowman. But the court made a point of saying that Bowman may have undersold himself: "a higher rate might have been warranted had plaintiff requested it." *Id.*

Bowman performed at a high level of skill in the present case. He conducted the adverse examination of the City's principal *Monell* witness, the examination of Plaintiff's criminal trial counsel, and the examinations of a number of other key witnesses. He presented Plaintiff's closing argument on damages. The very substantial jury verdict in this case is in significant part a testament to Bowman's top tier abilities. In light of his considerable skill and long experience, a rate of $600 per hour is appropriate for Mr. Bowman.

### 2. David Shapiro (Yale, 2005).

David Shapiro's declaration and CV (Exhibit G hereto) show that he is a very highly qualified and skilled practitioner in the area of civil rights law. Mr. Shapiro is a 2005 graduate of Yale Law School where he served on the managing board of the *Yale Law Journal.* Following law school graduation, Mr. Shapiro clerked for Judge Edward R. Becker on the Third Circuit. He then worked at a prominent Washington, DC law firm for several years before joining the ACLU's National Prison Project. He joined MJC in 2012 and become its Director of Appellate Litigation in 2016. He is a Clinical Associate Professor of Law at Northwestern Pritzker School of Law.

Mr. Shapiro is a recognized expert in the area of civil rights law. He regularly trains federal court staff on civil rights litigation through two Federal Judicial Center educational programs, Court Web and the National Conference for Pro Se Law Clerks. He has published extensively on civil rights in the criminal justice system. Among other publications, Mr. Shapiro's work has been featured in the *Notre Dame Law Review*, the *George Washington Law Review*, the *Columbia Human Rights Law Review*, the *Harvard Law Review,* and the online component of the *Michigan Law Review*.

Mr. Shapiro concentrates his practice in the area of appellate litigation, where he has a lengthy and impressive record of success. See Exhibit G ¶ 8 for a list of Shapiro's appellate victories in the past two years alone. That list does not include the Illinois Supreme Court's recent decision in *Beaman v. Freesmeyer,* __ N.E.3d __, 2019 IL 122654 (February 7, 2019), the definitive Illinois analysis of the circumstances in which police officers may be liable for the tort of malicious prosecution, which Mr. Shapiro argued and won.

Mr. Shapiro is also an able trial-level litigator. Prior to becoming the MJC's Director of Appellate Litigation in 2016, he litigated principally in the trial courts for a decade. He has acted as lead counsel in multiple cases that resulted in significant victories. *See, e.g., Abu-Jamal v. Kane*, 96 F. Supp. 3d 447 (M.D. Pa. 2015) and 105 F. Supp. 3d 448 (M.D. Pa. 2015); *Prison Legal News v. DeWitt*, No. 2:10-cv-2594 (D. S.C.). In the present litigation, Mr. Shapiro conducted several key depositions, he helped frame the complaint, and he handled a variety of important and time consuming tasks in the course of document discovery. *See* Exhibit D, Shapiro time records. In all of these facets, Mr. Shapiro performed with impeccable competence.

In discounting Mr. Shapiro's trial experience, the City ignores Mr. Shapiro's recognition for trial excellence. In 2012, Mr. Shapiro was a member of a trial team that was a finalist for the Public Justice Trial Lawyer of the Year Award, a national award for civil rights trial litigation, for his work in *Henderson v. Thomas*. Exhibit G ¶ 7. This case involved the segregation of prisoners with HIV in Alabama. Mr. Shapiro conducted key examinations at trial, including direct examinations of two class members and an expert witness, and cross examinations of prison officials, including the warden of Alabama's women's prison.

In any case, Mr. Shapiro is not seeking to recover fees for trial work in this particular matter. His level of trial experience is therefore irrelevant. Even more important, the degree of trial experience is, to the knowledge of the undersigned counsel, nowhere listed as a decisive factor with respect to setting an appropriate rate for prevailing counsel. Instead, the attributes that Mr. Shapiro possesses—skill and ability, years of experience, extensive knowledge of civil rights law, and important contributions to the undeniably exceptional result in this case—are the proper considerations. Weighing all of them, an hourly rate of $400 for Mr. Shapiro is fully justified.

14

### 3. Alexa Van Brunt (Stanford 2009).

Alexa Van Brunt is an exceptionally well-qualified and successful civil rights litigator. *See* Van Brunt Declaration and CV, Exhibit H. Ms. Van Brunt graduated from Stanford Law School in 2009, where she received an award for outstanding public service by a graduating student. She went on to clerk for Judge Myron H. Thompson in the Middle District of Alabama, before joining MJC and the clinical faculty at Northwestern Pritzker School of Law in 2010.

Ms. Van Brunt is recognized as an emerging leader in the Chicago civil rights bar. She is a frequent speaker on topics related to bail and pre-trial detention, parole reform, police reform and wrongful conviction litigation. *See* Exhibit H ¶ 8. She is the recipient of numerous awards, including this Court's Award for Excellence in Pro Bono Service (2017) and the IVI-IPO Legal Eagle Award (2014). *Id.* ¶ 9.

Ms. Van Brunt has very substantial experience in the area of wrongful conviction and related police misconduct suits, in particular, not only in Chicago, but around the State of Illinois. She has been counsel of record in nine such suits (more than all but a very few members of the plaintiffs' civil rights bar) and is responsible for achieving settlements in seven of those cases that total tens of millions of dollars. *See* Exhibit H ¶ 4.

In addition, Ms. Van Brunt has been co-lead counsel in a number of important injunctive civil rights matters. By way of example, Ms. Van Brunt was co-lead counsel in *Campbell v. City of Chicago,* No. 17-cv-4467 (N.D. Ill.), a case that was instrumental in catalyzing the recently entered Consent Decree between the Chicago Police and the Illinois Attorney General (*State of Illinois v. Chicago,* No. 17-cv-6260 (N.D. Ill.)) and through which a consortium of community groups and activists gained the unprecedented right to enforce a police reform decree. She was co-lead counsel in two suits that resulted in substantial procedural reforms in the parole

15

revocation process, both for adults (*King v. Walker,* No. 06-cv-204 (N.D. Ill.)) and for juveniles (*M.H. v. Monreal*, No. 12-cv-8523 (N.D. Ill.)). She has a lengthy record of accomplishment in a variety of civil rights matters litigated throughout the country. *See* Exhibit H ¶ 6.

In this case, Ms. Van Brunt worked extensively on a variety of discovery-related matters, conducted a deposition, and was deeply involved in framing the complaint. Her work on all of these matters reflected her exceptional skill and ability.

It is also true that Ms. Van Brunt, at this stage in her career, does not have extensive trial experience, as the City notes. Her extensive and accomplished practice has not involved logging a high number of courtroom hours. But, as with Mr. Shapiro, that fact should not bear on the appropriate rate for Ms. Van Brunt. Again*,* Ms. Van Brunt is not seeking to recover fees for trial work in this particular matter. Her level of trial experience is therefore irrelevant. And again, the degree of trial experience is, to the knowledge of the undersigned counsel, nowhere listed as a decisive factor with respect to setting an appropriate rate for prevailing counsel. Instead, the attributes that Ms. Van Brunt possesses—skill and ability, years of experience, extensive knowledge of civil rights law, and important contributions to the undeniably exceptional result in this case—are the proper considerations. Weighing all of them, an hourly rate of $325 for Ms. Van Brunt is fully justified.

### E. Plaintiff's Lodestar Is Amply Justified, and Plaintiff's Lawyers Ask for Nothing More or Less

In conclusion, the time that Plaintiff's MJC attorneys claimed for the litigation of this very difficult case was reasonable and Defendants do not contest that time. As described above, the hourly rates requested, which Defendants do contest, are a fair reflection of the work that Plaintiff's MJC counsel performed, their expertise and experience, and their place in the market. Given the outstanding result in the case, Plaintiff's lawyers should be awarded their full lodestar.

The Supreme Court recognizes that after the lodestar is calculated, a fee awarded can be adjusted upward or downward to account for the results obtained. *Hensley*, 461 U.S. at 434. Plaintiff's attorneys respectfully submit that an analysis of the *Hensley* factors in this case would call for an upward adjustment of the lodestar. But Plaintiff's attorneys seek no such increase. Instead, they simply request the lodestar, which is supported by all of the evidence set out above.[7]

## II.     PLAINTIFF'S CLAIMED COSTS ARE REASONABLE.

Lastly, during their six-year effort to prevail for Plaintiff, his attorneys spent $294,919.70 in costs out of pocket. All of these costs, including substantial expert fees necessary to prove Plaintiff's claims at trial, were reasonably expended by Plaintiff's attorneys. In an effort to reach agreement with Defendants during Local Rule 54.3 discussions, and taking account of the governing law, Plaintiff's attorneys cut the costs that Plaintiff is claiming in this fee petition in half, submitting a total of $154,376.25 in costs. Exhibit A. Among other things, Plaintiff's attorneys excluded from this petition all expenditures on expert fees.

Plaintiff's claimed $154,376.25 of costs represents an eminently reasonable amount spent on a hotly contested, multi-year wrongful conviction case. A spreadsheet listing each cost reasonably expended in this case is being submitted along with this petition as Exhibit O. Along with that spreadsheet, Plaintiff is submitting a copy of receipts corresponding to each expense listed on the spreadsheet of costs as Exhibit P.[8] Andy Thayer of Loevy & Loevy has reviewed these records in detail and has declared that they accurately represent the costs in this matter. *See*

---

[7] Plaintiff's attorneys are not advocating for an increased award because, in their view, the lodestar represents eminently reasonable compensation for the time and resources committed to the case. If Plaintiff's attorneys asked for an increase in the lodestar based on the outstanding success in this case, it would likely be rejected as asking too much. Respondents' attempt to reduce the lodestar in this case should be analyzed the same way, except that Respondents will not be able to point to any *Hensley* factor or other case law supporting a reduction of the lodestar in this case.

[8] Exhibit P has been submitted for *in camera* review. Again, Plaintiff will file those records publicly if the Court wishes. The receipts are in the same order that the costs appear on the spreadsheet.

Exhibit Q (Andy Thayer Affidavit).

Courts in the Seventh Circuit have long held that the categories of costs that Plaintiff seeks are recoverable under 42 U.S.C. § 1988. *See Downes v. Volkswagen of America*, 41 F.3d 1132, 1144 (7th Cir. 1994) ("[E]xpenses for such things as postage, long distance phone calls, xeroxing, travel, paralegals and expert witnesses—are part of the reasonable attorney's fee[.]"); *see also Heiar v. Crawford County*, 746 F.2d 1190, 1203-04 (7th Cir. 1984) (recoverable expenses include postage, phone calls, copying, travel, and expert witnesses); *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *10 (N.D. Ill. 2018) (awarding fees for printing, copying, scanning; service of subpoenas and other process; witness fees; transcripts and court reporter fees; taxis and Uber rides; and parking fees); *Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072, at *8-9 (N.D. Ill. May 23, 2018) (awarding copying costs, the expense of court reporters, mailing, and travel, including local travel and taxis, airfare, gasoline); *Corcoran v. City of Chicago*, 2016 WL 5445694, at *5 (N.D. Ill. Sep. 15, 2015) (computerized legal research recoverable); *King v. State Bd. of Elections*, 2003 WL 22019357, at *4 (N.D. Ill. Aug. 26, 2003) (overruling objection that "local transportation is not recoverable"); *Trammel v. BASF Corp.*, 2002 WL 59114, at *4 (N.D. Ill. Jan. 14, 2002) (local transportation expenses may be recovered). Plaintiff's full claimed costs should be awarded.

The Seventh Circuit has noted that "[t]here is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005); *see also Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2011). During Local Rule 54.3 discussions, rather than make a particularized showing that certain items of Plaintiff's claimed costs were inappropriate, Defendants simply objected to every single one of Plaintiff's costs.

Worse yet, Defendants' objections were stated in fatally vague terms. *See* Exhibit R (Defendants' Rule 54.3 Objections to Plaintiff's Costs) (*e.g.*, lodging more than 100 objections that simply say "lack of info" when Plaintiff has provided all of the expense records supporting all costs claimed; stating "need attorney time records" for 70 objections; stating for 200 objections "either no receipt or just a cc receipt," when many of the line items involve charges that would only appear on a credit card receipt). Defendants' objections are wholly insufficient to meet their burden of showing that Plaintiff's costs are inappropriate. *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *10 (N.D. Ill. 2018) ("The objections, which are conclusory and perfunctory, are insufficient to sustain defendants' burden to show that [the plaintiff's] requested taxable costs are inappropriate.").

Moreover, Defendants' vague and blanket objections to all of the costs incurred in the case deprived Plaintiff of any opportunity to identify what costs were actually in dispute and why, and to respond to Defendants' position. Plaintiff even asked Defendants to provide more concrete objections during Local Rule 54.3 discussions, but Defendants never did so. Exhibit S (Correspondence between Parties). As a result, Plaintiff still has no idea how Defendants calculated the $27,048.78 in costs that they think Plaintiff has properly incurred. Exhibit A. Defendants' refusal to meaningfully engage in the Local Rule 54.3 process and their failure to demonstrate that Plaintiff's costs are inappropriate is further reason to award Plaintiff his claimed costs of $154,376.25.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter a judgment for $587,940 in fees and $154,376.25 in costs against Defendants.

RESPECTFULLY SUBMITTED,

**JACQUES RIVERA**

By:    /s/ Steven Art
        Steven Art

| | |
|---|---|
| Locke Bowman | Jon Loevy |
| David Shapiro | Anand Swaminathan |
| Alexa Van Brunt | Steven Art |
| MacArthur Justice Center | Rachel Brady |
| Northwestern University Pritzker | Sean Starr |
|    School of Law | LOEVY & LOEVY |
| 375 East Chicago Avenue | 311 N. Aberdeen St., 3rd Floor |
| Chicago, Illinois 60611 | Chicago, Illinois 60607 |
| locke.bowman@macarthurjustice.org | (312) 243-5900 |
| | steve@loevy.com |

## CERTIFICATE OF SERVICE

I, Steven Art, an attorney, hereby certify that on May 7, 2019, I filed the foregoing

PLAINTIFF'S PETITION FOR FEES OF THE MACARTHUR JUSTICE CENTER

ATTORNEYS AND FOR AN AWARD OF COSTS using the Court's CM/ECF system, which

effected service on all counsel of record.

/s/ Steven Art
Steven Art
*One of Plaintiff's Attorneys*

Jon Loevy
Anand Swaminathan
Steven Art
Rachel Brady
Sean Starr
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
steve@loevy.com